

FILED
CLERK, U.S. DISTRICT COURT

10/8/2025

CENTRAL DISTRICT OF CALIFORNIA
BY_____GSA_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

```
---------------------------------------------------X
CLAYTON HOWARD                         :
                                       :    Civil Case No: CV25-06031-AH(JPRx)
              Plaintiff,               :
                                       :
                                       :
        v.                             :    SECOND AMENDED COMPLAINT
                                       :
SEAN COMBS, CASSANDRA VENTURA,:             JURY TRIAL DEMAND
BAD BOY RECORDS,                       :
COMBS ENTERPRISES,                     :
BEVERLY HILLS HOTEL Corp               :
                                       :
              Defendants,              :
---------------------------------------------------X
```

<div style="background-color: orange">

**TRIGGER WARNING:**
**THIS DOCUMENT CONTAINS HIGHLY GRAPHIC INFORMATION OF A SEXUAL NATURE, INCLUDING SEXUAL ASSAULT**

</div>

Plaintiff Clayton Howard (a.k.a "Dave" and "Mr. Howard") hereby alleges, as and for his Complaint against Defendant Sean Combs ("Mr. Combs"), Cassandra Ventura ("Ms. Ventura"), Bad Boy Entertainment, Bad Boy Records, , Combs Enterprises, LLC, and Doe Corporations 1-10 (together, "Defendant Corporations," and together with Mr. Combs, "Defendants") as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Mr. Howard brings this civil action against Defendants Sean Combs, Cassandra Ventura, The Beverly Hills Hotel, and DOE CORPORATIONS 1-10, arising from an eight-year period of systematic sexual exploitation, trafficking, and abuse that occurred between approximately 2009 and 2019. This case exposes the darker truth behind the widely publicized narrative surrounding Defendant Ventura's recent civil settlement and the ongoing criminal prosecution of Defendant Combs.

1

2. Defendant Sean Combs is a prominent rapper and record executive known by his stage names "Puff Daddy," "P. Diddy," or "Diddy," who rose to fame in the early 1990s with his record label Bad Boy Records and is regularly referred to as a hip-hop mogul.

3. Defendant Cassandra Ventura, known professionally as "Cassie," is a singer, actress, and model who gained prominence in the early 2000s with her single "Me and You" and appeared in films including "The Perfect Match" and "Step It Up 2 – The Streets."

4. Defendants maintained a highly publicized romantic relationship from 2007 to 2018, during which both were toxic individuals addicted to opiates and methamphetamines who had no regard for others or the law. Their relationship was characterized by sexually explicit, depraved activity categorized as "swinging," with Defendant Combs harboring a specific fetish for voyeurism. The relationship was abusive, with Defendant Combs frequently physically assaulting Defendant Ventura in response to domestic incidents neither could emotionally control.

**The Misleading Public Narrative**

5. In late 2023, Defendant Ventura filed a civil action against Defendant Combs pursuant to the Gender Motivated Violence Act, alleging that Combs manipulated, abused, and controlled her for over a decade through violent behavior and disturbing demands. She claimed to have spent over a decade trapped in a cycle of abuse, violence, and sex trafficking, including allegations that Combs forced her to engage in sex acts with male sex workers while he masturbated and filmed the encounters. The parties settled this action within 24 hours for twenty million dollars.

6. Subsequently, the Office of the U.S. Attorney for the Southern District of New York arrested and indicted Defendant Combs for sex trafficking and violations of the Mann Act, with the prosecution's foundation based largely on Defendant Ventura's allegations. Defendant Combs currently faces trial on RICO charges.

7. Contrary to the narrative presented in Defendant Ventura's civil complaint and the subsequent criminal prosecution, the truth reveals a far more complex and disturbing reality. Defendant Ventura was not merely a victim forced into sexual encounters with

2

male escorts, but rather an active and engaged participant who willingly manipulated and exploited others, including Plaintiff, to satisfy the sexually depraved desires of Defendant Combs and herself.

8. For more than eight years, Defendants operated a scheme whereby they systematically exploited Plaintiff through manipulation, coercion, controlled substances, and threats of violence to engage in non-consensual sexual activities for their gratification and commercial purposes. Defendant Ventura accomplished this exploitation by concealing her identity and fabricating the narrative that she and Defendant Combs were "married," using this deception to entice men into drug use and sexual encounters.

9. Defendants drugged Plaintiff with controlled substances, including MDMA in doses three times stronger than what Defendant Ventura herself consumed, to lower his inhibitions and facilitate sexual exploitation. Defendant Ventura used these substances strategically, "like a spider catching its prey in its web," to manipulate Plaintiff into unprotected sexual contact designed to please Defendant Combs and prove her devotion to his appetites.

10. Defendant Ventura would command Plaintiff to masturbate for hours while she pleasured herself to climax, visibly satisfying herself at the sight of Plaintiff's anatomy. These extended masturbation sessions often left Plaintiff's penis bruised and swollen, injuries about which he would complain to Defendant Ventura seeking consideration. However, Defendant Ventura showed no mercy, simply demanding compliance while pleasuring herself in a manner she hoped would satisfy Defendant Combs, who derived satisfaction from watching her gratification through his voyeuristic desires.

11. During these encounters, Defendant Combs watched silently in the shadows, directing the activities as if he were a film director orchestrating his vision. Once Defendant Ventura was ready to begin, Defendant Combs regulated her responses and controlled the rate of sexual activity, exercising complete dominance over both Plaintiff and Defendant Ventura in what the couple considered a special shared experience.

12. While Defendant Combs appeared to serve as a "protector" rather than an "oppressor," supporting Defendant Ventura's desires and catering to her with wine and

3

fruit during encounters, his presence was deliberately intimidating as part of his role
in protecting his partner from the men they exploited. Threats of violence were
implied when Defendant Combs wished to assert control, and during at least one
encounter, he threatened to "pistol whip" Plaintiff, directing Defendant Ventura to the
master suite to retrieve his firearm.

13. At no time did Defendant Ventura display fear when engaged in or about to engage in
sexual encounters. All abuse witnessed by Plaintiff occurred due to domestic
complications between the Defendants, including jealousy, ego, and arrogance, aided
by extensive drug use and sleep deprivation, which contributed to violent outbursts
from Defendant Combs, who consumed far more drugs than Defendant Ventura.

**Sexual Assault and Non-Consensual Recording (2009-2016)**

14. Over the years, Plaintiff was sexually assaulted by Defendant Ventura, who would
manipulate and force herself upon Plaintiff during her menstrual cycle against his
will. Defendants filmed Plaintiff in compromising encounters without his consent for
years, creating recordings that the couple would watch together after the encounters
ended and use for mutual masturbation.

15. When Plaintiff confronted Defendant Ventura about the recording and vocalized his
desire not to be recorded, she explained that she enjoyed their sexual relationship and
provided her reasons for the recordings. Defendant Ventura then opened her
MacBook to a previous recording and masturbated to climax in front of Plaintiff
while watching an encounter involving the two of them, demonstrating the extent of
her manipulation and control.

**Commercial Sex Trafficking and RICO 2012-2019**

16. Although Mr. Combs was recently acquitted on Federal RICO allegations, the RICO
enterprise did exist. Prosecutors fumbled when they placed Ms. Ventura and "Jane
Doe" as witnesses, attempting to hide their complicity in hopes of a stronger
conviction against Defendant Combs.

4

17. The Defendants, through the use of their resources and means, operated a decade-long sex trafficking ring where they manipulated male entertainers into sexual encounters using promises of money and favors.

18. The Defendant, First Mr. Combs and Ms. Ventura; then Mr. Combs and Jane Doe, orchestrated a scheme by which male entertainers would be contacted, misled into believing the Defendants were in monogamous relationships, coerced into alcohol and drug use, and then manipulated into sexual encounters with the female defendant while Mr. Combs watched.

19. The extent of this sex trafficking enterprise lasted for over a decade, with dozens of male entertainers being lured into the scheme by the bait, which was either Ms. Ventura or Jane Doe.

20. For more than five years, Defendants trafficked Plaintiff for purposes of commercial sex, using him as entertainment to satisfy their sexual fetishes and personal ambitions. The couple drugged, manipulated, and traumatized Plaintiff while themselves engaging in a toxic, domestically abusive relationship that often became violent.

21. Defendant Ventura had a specific preference in selecting her companions and chose Plaintiff for eight years over many other available options, as subsequent criminal trial proceedings have revealed. The allegations demonstrate that Defendant Ventura deceived, manipulated, and injured Plaintiff and therefore, should be held accountable alongside Defendant Combs, as the two were partners in these criminal enterprises.

**Obstruction of Justice and Witness Manipulation**

22. Plaintiff's ability to seek timely legal recourse was deliberately frustrated through a coordinated effort involving his former counsel, who communicated with federal prosecutors without Plaintiff's presence. The Plaintiff was advised to remain silent and was manipulated into inaction, with his attorney intentionally delaying action to protect Defendant Ventura's credibility.

23. The Plaintiff was specifically advised that should he file a complaint, he would lose credibility before the court and therefore should refrain from doing so if he wished to do what was right and tell the truth. His counsel deceived, ignored, and misled him

5

regarding the creation of the initial complaint against Defendants and when it would
be filed.

24. Despite serving as a compliant witness for the government and providing information
that was later corroborated by investigators, thereby validating his credibility and the
truthfulness of his statements, federal prosecutors ultimately withheld Plaintiff's
testimony despite its corroborative value and his valid allegations against both
Defendants.

**Denial of Justice and Present Claims**

25. For many years, Plaintiff has lived with this trauma in silence, forced to endure the
psychological and physical consequences with no visible avenue for justice. While
Defendant Ventura's allegations have destroyed Defendant Combs's career, she has
escaped liability by using allegations of abuse to avoid criminal responsibility for her
own actions, thereby denying victims like Plaintiff the justice to which they are
entitled.

26. With the opening of legislation that granted survivors a look-back window to seek
justice against offenders, Plaintiff learned he had been given a second chance to
obtain the justice he deserved. The Plaintiff has sought justice for over a year only to
be denied through the manipulation of legal professionals who wished to effect the
criminal trial of Sean Combs.

27. Mr. Howard was used and manipulated. Now, tired of the misconduct and
incompetence, he has sought action himself and refuses to remain silent any longer in
the face of this systematic exploitation, abuse, and attorney misconduct.

**28.** This action seeks declaratory, injunctive, and monetary relief under federal sex
trafficking statutes (18 U.S.C. § 1591 et seq.), the New York Services for Victims of
Human Trafficking (N.Y. Servs. Law § 483-BB), the California Trafficking Victims
Protection Act (Cal. Civ. Code § 52.5), Civil Rico Violation of 18 U.S.C. § 1962(c),
Civil Cause of Action for Human Trafficking (Fla. Stat. § 787.061), Civil Remedy for
Human Trafficking (18 U.S.C. § 1595), Sexual Assault pursuant to The California
Sexual Abuse and Cover Up Accountability Act (Cal. Civ. Proc. § 340.16), Civil
Liability for Violations of New York Penal Law § 230.34 - Sex Trafficking, and
CIVIL RICO VIOLATION of 18 U.S.C. § 1962(c) - Conducting Enterprise Through

Pattern of Racketeering Activity, for the severe psychological, physical, and dignitary
harms Plaintiff suffered during this prolonged period of exploitation and abuse.

## JURISDICTION AND VENUE

29. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action
asserts violations of 18 U.S.C. §1591, et seq., and therefore raises federal questions
regarding the deprivation of Plaintiff's rights. The Court has supplemental jurisdiction
over the Plaintiff's related claims arising under state and city law pursuant to 28
U.S.C. § 1367(a).

30. Under 28 U.S.C. § 1391(a)(2) and (b), venue is proper in this Court because the
proper venue for a civil action shall be determined without regard to whether the
action is local or transitory in nature. Additionally, all Defendants are residents of the
State in which the district is located.

## PARTIES

31. Plaintiff, Clayton Howard (Mr. Howard), is a resident of New Jersey. Beginning in
fall 2009, he accepted work as an independent male companion in New York. Under
the alias "Dave," he saw clients for almost sixty (60) days before he met the
Defendants. Mr. Howard was recruited and manipulated by the defendants Sean
Combs, Cassandra Ventura, Bad Boy Records LLC, and Bad Boy Entertainment and
its related entities beginning in 2009, and concluding 2019. At all relevant times
herein, .

32. Defendant Sean Combs, upon information and belief, currently resides within the
state of New York, within the Metropolitan Detention Center, where he awaits
sentencing for matters related to this action before the court. At all relevant times
herein, Mr. Combs met the definition of an "employer" of the Plaintiff under relevant
statutes.

33. Defendant Cassandra Ventura, upon information and belief, resides within the State of
California. At all relevant times herein, Ms. Ventura met the definition of an
"employer" of the Plaintiff under relevant statutes.

34. Defendant Bad Boy Entertainment is a music, media, and entertainment company
founded by Defendant Sean Combs, which includes the record label Defendant Bad

Boy Records LLC. At all relevant times, Defendant was an "employer" of the Plaintiff within the meaning of all applicable statutes.

35. Defendant Bad Boy Records LLC is a Delaware limited liability company with its principal place of business located in New York. At all relevant times, Defendant was an "employer" of the Plaintiff within the meaning of all applicable statutes.

36. Defendant Combs Enterprises, LLC is a New York limited liability company. At all relevant times, Defendant was an "employer" of the Plaintiff within the meaning of all applicable statutes.

37. Defendant Beverly Hills Hotel is owned by the Dorchester Collection since 1996. At all relevant times, Defendant facilitated sex trafficking when any "employee" aided other Defendants in the commission of illegal activity.

## FACTUAL ALLEGATIONS

### I.    2009: Mr. Howard meets Combs and Ventura under Fraudulent circumstances.

**Initial Meeting**

38. Mr. Howard ("Dave") met Ms. Ventura ("Jackie Star") in late 2009.

39. Ms. Ventura invited Mr. Howard to The London hotel in New York City to serve as a male companion for an agreed-upon hourly rate.

40. Ms. Ventura concealed her identity using makeup, a large red wig, and dim lighting, and failed to inform Mr. Howard that another party would be present.

41. Ms. Ventura offered Mr. Howard alcohol and marijuana, then they spoke for approximately thirty minutes.

42. Ms. Ventura requested Mr. Howard's personal identification for safety purposes.

43. Mr. Howard provided his N.Y.S. Driver's License revealing his true identity.

44. Ms. Ventura requested that Mr. Howard expose his genitals.

45. Under the influence of substances, Mr. Howard complied.

46. Ms. Ventura revealed her "husband" was upstairs and had consented to her having a male companion.

47. Ms. Ventura explained they participated in "the Lifestyle" and her "husband" preferred to watch her with men with larger reproductive organs.

48. Ms. Ventura stated she preferred men with darker complexions and complimented Mr. Howard's complexion.

49. Ms. Ventura introduced Mr. Combs as her "husband" under the alias "Frank."

50. Mr. Combs retrieved baby oil and Astroglide lubricant from a platter.

51. Mr. Combs retreated to a darkened corner with poor lighting.

52. Mr. Howard was instructed not to address Mr. Combs directly and to speak only to Ms. Ventura.

53. Mr. Combs concealed his identity with a baseball cap and cloth covering his face.

54. When Mr. Combs spoke, it was to inquire about Ms. Ventura's needs.

55. Mr. Combs provided "direction" to both parties, regulating the pace of physical contact.

## II.    The Encounter Structure (2009-2017)

56. This first encounter established the structure for all subsequent encounters.

57. Mr. Howard had no autonomy and was required to follow orders.

58. Financial compensation was used as a form of dominance.

59. Mr. Howard was instructed to remove all clothing and surrender his clothing and phones to Ms. Ventura.

60. Mr. Howard's cellphone was turned off and surrendered, preventing him from leaving safely.

61. Some suites required keys for floor access with no stairwell access without triggering alarms.

62. Mr. Howard was instructed to apply baby oil to his nude body.

63. Ms. Ventura would saturate Mr. Howard with oil and apply it herself.

64. Ms. Ventura often sprayed Mr. Howard with oil during application.

65. Defendants structured encounters into four phases: (1) no touch, (2) soft foreplay, (3) fellatio, and (4) intercourse, directed by Mr. Combs.

66. Mr. Howard had no input and was expected to comply.

67. Through manipulation and financial coercion, Mr. Howard remained in these phases for hours.

68. Ms. Ventura controlled the start and sought Mr. Combs' permission to progress.

69. If Mr. Combs wasn't ready, he would refuse permission but often granted masturbation permission.

70. Mr. Combs controlled progression and pace, seeking to control Ms. Ventura's desires while pleasuring himself.

71. Prolonged masturbation sessions caused skin tears and scabs on Mr. Howard's penis, causing severe pain and scarring.

72. While Mr. Howard stood covered in oil, both Defendants would masturbate while watching him.

73. While Mr. Howard was nude, both Defendants would pleasure themselves to climax.

74. Both Defendants would be intoxicated using substances and alcohol.

75. Some substances were Schedule I narcotics, including amphetamines and opiates.

76. Specific drugs included Ecstasy, GHB, Ketamine, Cocaine, MDMA (Molly), and Marijuana.

77. Ms. Ventura would orally pleasure Mr. Howard for periods exceeding one hour.

78. Dehydrated from drugs and lack of water, Ms. Ventura would perform oral sex until her jaw became sore.

79. Ms. Ventura's arousal would be heightened and she would beg Mr. Combs to allow intercourse.

80. Mr. Howard was directed to engage until Ms. Ventura climaxed.

81. Ms. Ventura controlled the degree of intimacy, including whether to engage in unprotected sex.

82. Once Ms. Ventura climaxed, the cycle would repeat.

83. One encounter could consist of 15-30 individual sessions, each including all four stages.

84. The number of sessions depended on how many days Mr. Howard was detained.

85. If Mr. Howard attempted to leave, he would be coerced or ignored when seeking his belongings.

**III.    MDMA Use and Unprotected Sex (2012-2016)**

86. During Ms. Ventura's trial testimony, Mr. Howard heard her statements about being forced into unprotected sex with male entertainers.

87. Ms. Ventura claimed she never wanted such activities and only engaged due to Mr. Combs' abuse and blackmail attempts.

88. Mr. Howard asserts this allegation was substantiated in one instance but not all instances.

89. Mr. Howard asserts Mr. Combs did not force Ms. Ventura to engage sexually after her overdose; Ms. Ventura begged for the encounter despite Mr. Combs' attempts to end the night.

90. Mr. Howard asserts Ms. Ventura initiated unprotected sexual contact without Mr. Combs' knowledge during a sexual encounter in September 2011.

91. When Mr. Combs noticed no condom was being used, he stopped the activity and confronted Ms. Ventura.

92. Ms. Ventura falsely told Mr. Combs she had reviewed Mr. Howard's STD test results and confirmed he was clean.

93. Mr. Howard interrupted and told Mr. Combs the truth about Ms. Ventura's lie.

94. Mr. Howard provided his actual STD test results to Mr. Combs from his email.

95. Once unprotected sex began, Mr. Howard was pressured to continue by both parties.

96. Mr. Howard was told he would be Ms. Ventura's exclusive partner in exchange for clean test results and exceptional service.

97. The arrangement was agreed to after Mr. Howard was coerced into participating in an orgy with Ms. Ventura, Mr. Combs, and another male provider named Daniel Phillip.

98. The orgy's goal was to determine who could please Ms. Ventura longest: Mr. Howard or Mr. Phillip.

99. The two men were offered substances and expected to perform continuously, taking turns with Ms. Ventura.

100. This encounter lasted nearly two days.

101. When Mr. Howard outlasted Mr. Phillip, he was declared the winner and the exclusive arrangement was proposed.

102. Drug use was a major component during the majority of meetings.

103. Mr. Howard did not engage in harder drugs for the first two years until offered by Ms. Ventura.

104.    Mr. Howard began having difficulty staying awake as more was demanded of him.

105.    During an encounter during the later part of 2011, Ms. Ventura offered Mr. Howard ecstasy, claiming it was light and harmless.

106.    Mr. Howard later learned Ms. Ventura had tripled his dosage to get him "freaky" and increase encounter intensity.

107.    Through drugs, alcohol, and believing in a monogamous relationship, unprotected sex continued.

108.    During October 2012 Mr. Howard impregnated Ms. Ventura, who decided to abort when unable to locate him. The encounter occurred in the Gramecy Park Hotel in Manhattan NY

109.    Even after aborting, Ms. Ventura sought unprotected sex during encounters for years.

110.    After an eight-month separation, Ms. Ventura confessed at Gramercy Park Hotel that she had aborted Mr. Howard's pregnancy.

111.    Despite this revelation, Ms. Ventura insisted on unprotected sex during that encounter, which lasted several days.

112.    After his victory over Daniel Phillip, Ms. Ventura drugged Mr. Howard with triple dosage Ecstasy and manipulated him into unprotected sex.

## IV.    Drugging Incidents (2011-2016)

Ms. Ventura Drugs Mr. Howard

113.    During an encounter in late 2011, Mr. Howard recalls being drugged by Ms. Ventura, who admitted to doing so when contacted after the incident.

114.    Mr. Howard was given ecstasy after complaining of exhaustion.

115.    Instead of coffee, Ms. Ventura retrieved an ecstasy pill from the bedroom.

116.    When Mr. Howard complained about pills, Ms. Ventura crushed it into a drink, claiming only a small dosage.

117.    Having known Ms. Ventura for years, Mr. Howard trusted her and consumed the drink.

118.    Mr. Howard began feeling hot and sweating uncontrollably within moments.

119.    When he complained, Ms. Ventura responded with a passionate kiss and aggressive oral contact.

120.    Mr. Howard never felt so intoxicated, with the drug enhancing all senses and sexual desires.

121.    They began with condoms, but Ms. Ventura removed them and pressured unprotected contact while Mr. Howard's inhibitions were lowered.

122.    The encounter lasted over two days while Mr. Combs watched and occasionally engaged with Ms. Ventura.

123.    When exhausted, Mr. Howard received his belongings and additional compensation due to his condition from dehydration and lack of sleep.

124.    Mr. Howard left confused and disoriented, ultimately parking at a grocery store.

125.    He woke up hours later, weak and sweating.

126.    He called an Uber to get home to his girlfriend.

127.    He spent three days recovering from the encounter.

128.    After confronting Ms. Ventura during the next encounter, she confessed to drugging him.

129.    Following this confession, he rarely accepted beverages from her, except three times over the next five years.

130.    The final drink led to a physical assault on Ms. Ventura.

Mr. Combs Drugs Mr. Howard

131.    During and encounter in the fall of 2015, Mr. Howard was drugged by Mr. Combs at the Trump property at Columbus Circle in New York City.

132.    Mr. Combs offered Mr. Howard a pink substance in a small plastic bag described as "Pink MDMA" or "Pink Molly."

133.    Mr. Howard's knowledge of designer drugs was insufficient, so he didn't trust the unknown substance.

134.    Mr. Combs hinted at Ms. Ventura's insistence on indulgence, explaining she may be angry if he didn't partake.

135.    Mr. Combs had never offered Mr. Howard drugs before, and they had developed mutual respect.

136.    Against better judgment, Mr. Howard agreed to consume a small dosage.

137.    Mr. Combs retreated to the master suite, and within minutes Mr. Howard became
extremely warm and began sweating uncontrollably.

138.    He began having violent spasms, forcing him to crawl to a nearby bathroom.

139.    Neither Ms. Ventura nor Mr. Combs exited the master suite.

140.    Mr. Howard began vomiting uncontrollably in the bathroom.

141.    The stomach pain was intense and sweating wouldn't stop.

142.    Vomiting lasted several minutes until nothing was left.

143.    Mr. Howard lay dizzy and weak on the bathroom floor before regaining strength.

144.    Mr. Combs found the weakened and disoriented Mr. Howard first.

145.    Mr. Combs inquired about Mr. Howard's condition.

146.    Mr. Howard confessed his condition to Mr. Combs despite being afraid.

147.    Mr. Combs agreed he didn't look good.

148.    Mr. Combs asked Mr. Howard to wait and entered the master suite.

149.    Both defendants exited the suite together.

150.    When Ms. Ventura asked what was wrong, Mr. Howard blamed what Mr. Combs
had given him.

151.    Ms. Ventura asked Mr. Combs what he had given Mr. Howard; he responded "the
pink shit."

152.    When Mr. Howard said Mr. Combs told him it was "Molly," Ms. Ventura
informed him it was not "Molly."

153.    Mr. Howard was given around $1,500 and released.

154.    He walked over forty city blocks in December conditions, sweating
uncontrollably and afraid.

155.    Around Union Square, he regained enough composure to call a friend for help.

156.    He was picked up and taken home to recover.

V.    **Sex Trafficking (2012-2019)**

157.    Beginning sometime in the early months of 2012, Ms. Ventura and Mr. Combs
began to fly; Mr. Howard from New York City to Miami and Los Angeles numerous
times.

14

158.    In the beginning, Ms. Ventura used promises of gifts, money, and vacations to
coerce Mr. Howard into agreeing to leave NYC and head to the locations requested
by the defendants.

159.    The trafficking for purposes of sexual contact began after Mr. Howard's "victory"
over Daniel Phillip in their "sex-a-thon."

160.    As his "reward," he began receiving perks like travel and small gifts from Ms.
Ventura. But the truth was that there were no rewards or gifts, but tools used to
manipulate Mr. Howard into compliance

161.    Mr. Howard would be contacted and asked if available to fly to a location.
Initially, it was exciting to experience such attention from an attractive woman.

162.    Over time, Mr. Howard realized this was much more than that.

163.    The first trafficking instance occurred when flown to Miami from New York after
Ms. Ventura's call.

164.    It was cold in New York, and Ms. Ventura's call seemed like a gift.

165.    A JetBlue flight was booked and paid for by Ms. Ventura.

166.    Mr. Howard met the couple at the Mandarin hotel in Miami.

167.    Mr. Howard checked into a suite under the name "Frank Black," given by Ms.
Ventura.

168.    During all trafficking instances, Mr. Howard was presented to hotel staff as
"Security" for Bad Boy Records.

169.    Mr. Howard would spend days servicing Ms. Ventura, waiting to be released.

170.    Asked to come for one day, he wasn't released until three days later.

171.    Mr. Howard felt intimidated by the couple's lifestyle and endured, hoping for an
earlier release.

172.    Mr. Howard was flown to Miami many times, induced into drug use, alcohol
consumption, and prolonged unprotected sexual activity.

173.    Ms. Ventura repeatedly stated she "hated condoms and they irritated her."

174.    She claimed condoms irritated her and created a smell.

175.    Sometime in October 2014 At Beverly Hills Hotel in Los Angeles, Ms. Ventura
forced herself on Mr. Howard during her menstrual cycle.

176.    This was calculated disregard as a punishment for refusing to fly to Los Angeles.

15

177.    Once under the defendants' control, Mr. Howard had no means to return home without satisfying Ms. Ventura.

178.    Through coercion and fraud, Ms. Ventura would lure Mr. Howard with promises of gifts and favors.

179.    Defendants used Mr. Howard for days as a sex slave, satisfying their physical and psychological needs.

180.    Defendants lacked regard for Mr. Howard's health or safety.

## VI.    Sexual Assault in Los Angeles and Sexual Proposal of Miami.(2014-2016)

### The Beverly Hills Hotel

181.    Defendants sex trafficked Mr. Howard to Los Angeles and brought him to the Beverly Hills Hotel.

182.    Upon arrival, Mr. Howard was instructed to wait, but he went outside feeling uncomfortable.

183.    Mr. Combs contacted him and instructed him to reenter the hotel.

184.    He was told to inform the elevator employee that he worked for Mr. Combs.

185.    A hotel employee ushered Mr. Howard to the penthouse suites.

186.    Mr. Howard entered an environment different from past encounters.

187.    No candles were lighting the rooms as had been custom.

188.    Ms. Ventura was angry with Mr. Howard for choosing to spend his anniversary with his partner instead of flying to Los Angeles.

189.    Through manipulation, physical positioning, and Mr. Combs' presence, Ms. Ventura forced a sexual encounter.

190.    She seduced him into compliance and removed his clothing.

191.    She manipulated him through foreplay into a compromised position on the sofa.

192.    She began kissing him, attempting to arouse him into sexual activity.

193.    Mr. Howard repeatedly asked her to wait, but Ms. Ventura ignored him, pinning him to the couch.

194.    Ms. Ventura took hold of Mr. Howard's penis and inserted it into herself.

195.    The sensation overwhelmed Mr. Howard, causing motor function difficulties.

16

196.    Ms. Ventura finished quickly, allowing Mr. Howard to remove her and reach for the light.

197.    Mr. Howard discovered Ms. Ventura was menstruating heavily.

198.    Ms. Ventura pretended to be surprised but later revealed she was aware but didn't think it would be "heavy."

199.    Mr. Howard became angry and asked why she would do that to him.

200.    Ms. Ventura, drunk and intoxicated, laughed and said it wasn't a big deal.

201.    An argument ensued, cut short by Mr. Combs, who called Ms. Ventura into the bedroom after apologizing to Mr. Howard.

202.    When Ms. Ventura reentered, Mr. Combs admitted she was aware but intoxicated and disregarded Mr. Howard's feelings, providing substantial bills and asking him to go to his prepared suite.

203.    Ms. Ventura later apologized, blaming intoxication and hormones.

204.    Ms. Ventura would often order Mr. Howard to masturbate for her visual pleasure.

205.    Under substance influence, her requests lasted hours without consideration for Mr. Howard's well-being.

206.    Mr. Howard suffered injuries including tears to his penis shaft, resulting in skin peeling and scabbing.

207.    These injuries resulted from prolonged self-directed masturbation at Ms. Ventura's orders.

The Miami Proposition

208.    Mr. Howard is coerced by Defendant Ventura into traveling from New York to Florida during March 2016 for the Ultra Weekend Music Festivities.

209.    During this encounter at the SLS property located along Collins, Mr. Combs directly inquired into the Plaintiff's sexuality.

210.    Mr. Combs, visibly intoxicated, asked the Plaintiff if he was "Gay" while sitting on a piano stool.

211.    Mr. Howard recalls becoming angry, cursing, and questioning Mr. Combs as to what would make him consider this.

212.    Ms. Ventura entered the room, witnessing the entire exchange.

17

213.    Mr. Combs presents Mr. Howard with a wad of cash to "Shut-up", which Mr. Howard admits he did.

214.    Several moments later, while engaged in relations with Ms. Ventura, Mr. Combs attempted to manipulate Mr. Howard by using his rectum, blocking the view of Ms. Ventura.

215.    Mr. Howard felt this was done intentionally, to force his focus on the rectum of Mr. Combs.

216.    Mr. Howard feels Mr. Combs attempted to sexually manipulate him into an encounter.

217.    This experience left Mr. Howard traumatized for years.

**VII.    STD Contraction (2016)**

218.    Ms. Ventura's disregard for others' health while satisfying sexual fetishes caused Mr. Howard to contract an STD during unprotected sex.

219.    Although Mr. Howard met Ms. Ventura as a male companion, he was STD-free and rarely had unprotected sex. He was in a committed monogamous relationship before meeting Ms. Ventura.

220.    Besides his partner, Ms. Ventura was the only other sexual partner with whom Mr. Howard didn't use condoms. During contraction time, Mr. Howard was semi-retired as a male provider, with Ms. Ventura being his last client.

221.    After one encounter in 2016, Mr. Howard felt strange sensations when urinating, which worsened, leading him to get tested. Results showed he had contracted Chlamydia.

222.    When Mr. Howard saw Ms. Ventura again, she revealed she had contracted it and advised him to get checked, blaming Mr. Combs' infidelity for her infection.

223.    Defendants' reckless conduct jeopardized Mr. Howard's health and well-being through withheld information.

**VIII.    Domestic Violence Witnessed (2011-2016)**

224.    Over a decade, Mr. Howard witnessed numerous acts of physical domestic violence against Ms. Ventura.

225.    This violence has been attributed to forced labor and sexual depravity, where Ms. Ventura claims she was forced to participate.

226.    Mr. Howard's reality differs greatly from Ms. Ventura's reported abuse.

227.    Mr. Combs would assault Ms. Ventura due to jealousy, arrogance, perceived slights, disrespect, and attempts to challenge him.

228.    Ms. Ventura was never assaulted for lack of interest, hesitation, poor performance, or refusal to engage sexually.

229.    Mr. Howard recalls Mr. Combs punching Ms. Ventura twice in the chest in NYC after a perceived slight.

230.    Mr. Howard witnessed Mr. Combs grabbing, kicking, and shoving Ms. Ventura during domestic arguments.

231.    Mr. Combs assaulted Ms. Ventura for making Mr. Howard a drink despite being told not to.

232.    Mr. Combs assaulted Ms. Ventura because he assumed she was mocking his penile size when he attempted to bed her after Mr. Howard finished.

233.    The domestic violence instances traumatized Mr. Howard for years.

234.    Mr. Howard was made an unwilling witness and further victimized by this powerful couple.

235.    When his services were needed, he would be coerced, manipulated, and seduced into drug use and compliance.

236.    These acts and their traumatic effect entitle Mr. Howard to damages and relief.

**IX.    Possible Government Cooperation and Attorney Misconduct. (2023-2025)**

237.    In mid-December 2023, Department of Homeland Security agents contacted Mr. Howard regarding his encounters with defendants, requesting an interview.

238.    Having no legal experience, Mr. Howard contacted his local criminal attorney, who wasn't a federal law expert.

239.    The US Attorney's Office provided counsel to advise Mr. Howard during the interview.

240.    Mr. Howard spent the next year and a half as a cooperating government witness for the Southern District of New York.

241.    Mr. Howard provided airline receipts, boarding passes, dates, and hotel photos to the government.

242.    Mr. Howard provided corroboration of illegal activities spanning from 2009 to late 2019.

243.    Mr. Howard witnessed assaults against Ms. Ventura, drug use, and illegal activity.

244.    Mr. Howard was drugged by both defendants on separate occasions.

245.    Mr. Howard was the male provider who impregnated Ms. Ventura after an October 2013 encounter.

246.    As interviews progressed, Mr. Howard was asked for details as he recalled them.

247.    Prosecutor Maurine Comey assisted Mr. Howard's recollection by instructing him to write down memories due to elapsed time.

248.    Mr. Howard could present these notes to prosecutors, who would fact-check dates and locations.

249.    The US Attorney established Mr. Howard's credibility after investigating his claims.

250.    The US Attorney verified encounters at multiple hotels: Gramercy Park Hotel (NYC), Mandarin Hotel (Miami), The One Residences (Miami), The SLS (Miami), The London (NYC), The Essex House Hotel (NYC), The Intercontinental Hotel (NYC and Miami), The Trump Hotel (NYC), and Downtown Beverly Hills Hotel (Los Angeles).

251.    Mr. Howard verified his sexual assault allegation by providing travel receipts for his Los Angeles flights.

252.    As investigation continued, the US Attorney became aware of Ms. Ventura's criminality.

253.    Because Ms. Ventura wasn't the investigation target, Mr. Howard's allegations against her weren't acted upon.

254.    US Attorney-provided attorneys discouraged Mr. Howard from filing civil action against defendants.

255.    The attorneys argued allegations against Ms. Ventura would expose her to criminal liability and damage her credibility and public image.

256.    Mr. Howard directly instructed attorney Tyrone Blackburn to file action against defendants before the New York adult survivor statute expired.

257.    Mr. Blackburn contacted attorney Douglas Wigdor, seeking to quietly settle with Ms. Ventura and offering her opportunity to avoid public exposure.

258.    Instead of protecting his client, Mr. Wigdor sought US Attorney assistance to dissuade Blackburn from filing until after Sean Combs' criminal trial.

259.    This decision protected Ms. Ventura's trial credibility but compromised Mr. Howard's legal action in New York.

260.    Filing after trial would mean Mr. Howard would lose his right to action in New York under the applicable statute.

261.    A calculated effort was made to protect Ms. Ventura from criminal liability.

262.    In protecting Ms. Ventura, Mr. Howard and other potential victims' civil rights were compromised.

263.    Ms. Ventura claims victimization but willingly victimized, manipulated, and harmed others.

264.    As a cooperating witness for the US Attorney of the SDNY, Mr. Howard learned the depth of his involvement and saw for the first time the truth of his situation, that he had been part of a decade-long scheme to coerce and manipulate male escorts into sexual encounters.

265.    Mr. Howard expressed his realization of victimhood and the true conspiracy to prosecutors and his attorneys, which can be verified in emails.

266.    Mr. Howard is entitled to justice under the same laws that provided justice to Ms. Ventura.

267.    Mr. Howard asserts that a RICO enterprise did exist, and the conspirators of the RICO Enterprise were Mr. Combs, Ms. Ventura, and "Jane Doe" who used the enterprise of Mr. Combs to orchestrate these encounters for over a decade.

268.    Mr. Howard states that the true victims of the failed criminal RICO prosecution were the male entertainers manipulated by all Defendants to include Mr. Combs.

269.    All defendants should be held accountable jointly based on Mr. Howard's verified encounters and should not be minimized due to Ms. Ventura's alleged victimhood.

270.    Mr. Howard incorporates all facts as basis for the causes of action listed below.

271.    Mr. Howard seeks justice from this court to provide what has been denied by those seeking to conceal truth and protect false information provided by defendants.

## FIRST CAUSE OF ACTION
### Sex Trafficking under 18 U.S.C. § 1591, et seq.
### Against all Defendants

272.    Plaintiff repeats and realleges every allegation in all of the preceding paragraphs as if fully set forth herein.

**Legal Standard and Pleading Requirements**:

273.    Under 18 U.S.C. § 1591, a civil complaint must establish by a preponderance of evidence that defendant:

   a.  Knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited a person

   b.  Knowing or in reckless disregard that the person would be caused to engage in a commercial sex act

   c.  Through force, fraud, or coercion (the essential "means" element for adults)

274.    Plaintiff brings this civil action under 18 U.S.C. § 1595, which provides a private right of action for victims of trafficking offenses enumerated in Chapter 77 of Title 18.

275.    At all times relevant hereto, Plaintiff was an adult over the age of eighteen (18) years.

## Element One: Prohibited Acts

276.    Defendants violated 18 U.S.C. § 1591(a)(1) by knowingly recruiting, enticing, harboring, transporting, providing, obtaining, and maintaining Plaintiff for purposes of commercial sexual exploitation.

277.    Specifically, Defendants:

   a.  Recruited Plaintiff through online advertisements for massage services.

   b.  Transported Plaintiff across state lines from NYC to Miami and LA from 2012 to 2019

22

    c.  Harbored Plaintiff in Beverly Hills Hotel, The One, The SLS, The Mandarin, while restricting his/her movement

    d.  Maintained Plaintiff in a condition of sexual servitude through coercion, drug use, and manipulation.

## Element Two: Commercial Sex Act

278.    Defendants caused Plaintiff to engage in "commercial sex acts" as defined by 18 U.S.C. § 1591(e)(3), meaning "any sex act, on account of which anything of value is given to or received by any person."

279.    The commercial sex acts included unprotected sex, and prolonged masterbation in exchange for accommodations, money.

280.    Defendants received value through sexual gratification.

## Element Three: Knowledge or Reckless Disregard

281.    Defendants acted with knowledge or in reckless disregard of the fact that Plaintiff would be caused to engage in commercial sex acts.

282.    Defendants' knowledge is demonstrated by the numerous men now revealed to have been misled by the Defendants, as was testified by Defendant Ventura during USA v Sean Combs.

## Element Four: Force, Fraud, or Coercion (Critical for Adult Victims)

283.    Defendant Ventura used fraud and coercion, as defined by 18 U.S.C. § 1591(e)(2) to compel Plaintiff's participation in commercial sex acts.

284.    Defendant Ventura and Combs employed fraudulent schemes, plans, and patterns to deceive Plaintiff, including:

    a.  Defendants Combs and Ventura pretended to be a married professional couple, hiding their identities for almost two (2) years

    b.  Through promises of gifts, financial compensation, intimidation, and manipulation, Defendant Ventura sought to compel the Plaintiff's compliance.

    c.  At all times, Defendants Combs and Ventura were aware of the scope and totality of their actions, while the Plaintiff was misled and deceived.

**Allegations Supporting Claim:**

285.  Interstate Transportation for Commercial Sex

   a.  Transportation from New York to Miami and Los Angeles

   b.  Use of hotels as venues: Mandarin Hotel (Miami), SLS (Miami)

   c.  Beverly Hills Hotel (Los Angeles), (Four Seasons).

   d.  Registration under false names ("Frank Black", Jackie Star)


286.  Force, Fraud, and Coercion Elements
      Fraud:
       a.  Concealed identities using aliases ("Jackie Star," "Frank").

       b.  False representation as "married couple".

       c.  Misrepresentation of drug dosages.

      Coercion:
       a.  Confiscation of phone and clothing.

       b.  Financial control and manipulation.

       c.  Isolation in hotel suites requiring key access.

       d.  Threats of violence including "pistol whip" threat.

      Chemical Coercion:
       a.  Manipulative drugging with MDMA at triple dosage.

       b.  Use of unknown substances causing severe physical reactions.

       c.  Strategic drugging to lower inhibitions.

      Third-Party Liability Allegations
      Beverly Hills Hotel:
       a.  Employee assistance in accessing penthouse suites (London, Beverly Hills Hotel)

       b.  Alleged knowledge or reckless disregard of trafficking activity.

       c.  Facilitation through the provision of a venue.

      Corporate Defendants:

       a.  Financial benefit from trafficking activities.

       b.  Booking accommodations and providing supplies.

       c.  Employment relationship creates vicarious liability.

       d.  Bad Boy Staff, and the Defendant's personal assistant, provided access to accommodations to the Plaintiff (Kristina Khoram).

Pattern of Racketeering Activity
RICO Enterprise Elements:

    a. Common purpose of soliciting men for commercial sex. (Defendant
Ventura testified to trafficking the Plaintiff, Jules Theodore, etc).

    b. Interstate nature affecting commerce. (Defendant Ventura testified to
trafficking the Plaintiff herself, and/or through the use of a travel agent.)

    c. Multiple predicate acts over a decade-long period. (Plaintiff trafficked
from NYC to multiple locations.)

    d. Recruitment of "dozens of male entertainers". (Collectively, Defendant
Combs and Ventura, along with "Jane Doe" recruited over 50 men)

**Damages and Harm Allegations**

Physical Injuries:

    a. Genital injuries from prolonged forced masturbation.

    b. STD contraction.

    c. Drug-related physical trauma.

Psychological Harm:

    a. PTSD and emotional distress.

    b. Trauma from witnessing domestic violence.

    c. Long-term psychological consequences.

**Relevent Case Law**:

    a. *United States v. Jungers, 702 F.3d 1066 (8th Cir. 2013): Fraud encompasses
"knowingly misrepresenting or omitting facts to obtain compliance." Includes
deceptive promises about working conditions, compensation, or the nature of
required activities.*

    b. *United States v. Todd, 627 F.3d 329 (9th Cir. 2010): Coercion analysis focuses
on defendant's conduct, not victim's subjective response. Court examines
"whether a reasonable person in the victim's position would have felt
compelled to comply."*

    c.   *United States v. Callahan, 801 F.3d 606 (6th Cir. 2015):* "Debt bondage and
financial control mechanisms constitute coercion where they reasonably
induce fear and compel compliance with commercial sex demands

    d.   *United States v. Marcus, 628 F.3d 36 (2d Cir. 2010):* "Serious harm need not
be physical; serious psychological harm suffices." Threats to reputation,
immigration status, or family relationships can constitute coercion.

    e.   *United States v. Bonestroo, 623 F.3d 1020 (9th Cir. 2010):* "Anything of value"
includes money, drugs, shelter, transportation, or other benefits. The exchange
need not be explicit if circumstances demonstrate commercial nature.

    f.   *Doe v. Howard, 768 F.3d 1336 (11th Cir. 2014):* Plaintiff must establish "but-
for causation between defendant's statutory violation and plaintiff's injury,"
plus foreseeability that trafficking would cause the type of harm suffered.

    g.   *United States v. Ramos, 537 F.3d 439 (5th Cir. 2008):* "Willful blindness
satisfies the knowledge requirement. Defendant cannot escape liability by
deliberately avoiding knowledge of obvious trafficking indicators."

287.    Defendants, including Sean Combs, Cassandra Ventura, Bad Boy Records, and
related corporate entities, violated 18 U.S.C. § 1591 by knowingly recruiting,
transporting, harboring, and maintaining Plaintiff for commercial sexual exploitation
through force, fraud, and coercion.

288.    These actions, motivated by sexual gratification and commercial benefit, and
enabled by systematic manipulation and substance abuse, caused Plaintiff significant
physical, psychological, and economic harm. Plaintiff respectfully seeks relief for
these federal trafficking violations under 18 U.S.C. § 1595 and applicable state law.

289.    The trafficking, sexual exploitation, and resulting injuries to Mr. Howard occurred
without fault or wrongdoing by the Plaintiff contributing thereto.

290.    Defendants herein acted without Plaintiff's meaningful consent and through
prohibited means of force, fraud, and coercion as defined by 18 U.S.C. § 1591(e)(2).

291.    Defendants lacked any lawful authority to transport Plaintiff across state lines for
commercial sexual exploitation. Defendant used falsified narratives and schemes

designed to entice, and/or coerce the Plaintiff's compliance. Defendants prioritized their sexual gratification over Plaintiff's well-being and legal rights.

292.    As a result of the aforementioned sex trafficking, forced labor, sexual assault, drugging without consent, and systematic psychological manipulation sustained at the hands of Defendants herein, Plaintiff Howard was caused to suffer and continues to experience severe physical injuries, chronic psychological trauma, post-traumatic stress disorder, anxiety, depression, humiliation, and ongoing fear of retaliation.

293.    As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1591 and related federal trafficking statutes, Mr. Howard was caused to be trafficked across state lines, sexually exploited for commercial purposes, subjected to forced labor, and caused to sustain severe mental suffering, psychological and emotional distress, loss of wages and earning capacity, loss of reputation, embarrassment and humiliation, damage to personal relationships, and deprivation of his fundamental rights to personal liberty and bodily autonomy under the United States Constitution and federal civil rights laws.

294.    Because of the preceding violations of federal sex trafficking laws, Plaintiff seeks Punitive Damages in the amount to be determine at trial, to include treble damages where applicable under federal RICO statutes, costs, disbursements, reasonable attorney's fees as provided by 18 U.S.C. § 1595(a), pre- and post-judgment interest, punitive damages, and such other relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### CIVIL REMEDY FOR HUMAN TRAFFICKING
### (Florida Statute § 787.061)
### Against all Defendants

295.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

**Legal Standard and Pleading Requirements**

296.    At all times material hereto, Plaintiff was a "victim of human trafficking" as defined by Florida Statute § 787.06(2) and § 787.061(2)(b), having been subjected to coercion for the purpose of being used in human trafficking.

297.    Defendants engaged in "human trafficking" as defined by Florida Statute § 787.06(2), which includes but is not limited to:

    a.  Transporting, soliciting, recruiting, harboring, providing, enticing, maintaining, or obtaining another person for the purpose of exploitation of that person;

    b.  Using coercion to compel the Plaintiff to engage in commercial sexual activity;

    c.  Restraining, isolating, or confining or threatening to restrain, isolate, or confine the Plaintiff.

298.  Defendants' conduct constituted "coercion" as defined by Florida Statute § 787.06(2), including but not limited to:

    a.  Restraining, isolating, or confining or threatening to restrain, isolate, or confine Plaintiff;

    b.  Using or threatening to use physical force against Plaintiff;

    c.  Enticing Plaintiff to engage in commercial sexual activity through deceptive or fraudulent means;

    d.  Destroying, concealing, removing, confiscating, or possessing any actual or purported passport or other immigration document, or any other actual or purported government identification document, of Plaintiff;

    e.  Causing or threatening to cause financial harm to Plaintiff.

**Allegations Supporting Claim**

299.  <u>Interstate Transportation for Commercial Sexual Exploitation</u>

    a.  Systematic transportation from New York to Miami multiple times beginning in 2012, and concluding in December 2019.

    b.  Specific instance - flight booked by Ventura, met at Mandarin Hotel, Miami

    c.  Presented to hotel staff as "Security" for Bad Boy Records (false cover story)

300.  <u>Coercion Through Deceptive Means (§ 787.06(2)(a))</u>

    a.  Promises of "gifts, money, and vacations" used as "tools to manipulate...into compliance"

    b.  Defendants continued to portray themselves as a committed couple, deceiving the Plaintiff into participation, as part of a much larger scheme created by the Defendants.

301.  <u>Physical Restraint and Isolation</u>

   a.  Confiscation of clothing and phones, preventing safe departure

   b.  Hotel suites requiring key access "with no stairwell access without triggering alarms"

   c.  "Once under the defendants' control, Mr. Howard had no means to return home without satisfying Ms. Ventura."

302.  <u>Chemical Coercion and Substance Control</u>

   a.  Tripled MDMA dosage to get him "freaky" and increase "encounter intensity"

   b.  Drugging with an unknown "pink substance" causing severe physical reactions

   c.  Strategic use of substances "like a spider catching its prey in its web"

303.  <u>Commercial Sexual Activity Elements</u>

   a.  Spend days servicing Ms. Ventura, waiting to be released.

   b.  Extended detention beyond the agreed timeframe (asked for one day, held three days)

   c.  Used Mr. Howard for days as a sex slave, satisfying their physical and psychological needs.

304.  <u>Pattern of Exploitation and Control</u>

   a.  Through manipulation and financial coercion, and additional coercion occuring when attempting to leave

   b.  Defendants lacked regard for Mr. Howard's health or safety

   c.  Extended sessions (1 encounter =10-15 individual sessions), depending on detention length

305.  Specifically, Defendants' human trafficking activities included:

   a.  Transportation: Moving Plaintiff from NYC to Miami for purposes of commercial sexual exploitation;

   b.  Harboring: Maintaining Plaintiff in the SLS hotel, The Mandarin, The One, The Intercontinental, while restricting freedom of movement;

   c.  Recruiting: Initially enticing Plaintiff through promises of gifts and travel, through peer pressure.

   d.  Obtaining: Securing Plaintiff's services through promises of financial gain and/or favor;

    e.  Maintaining: Keeping Plaintiff in conditions of sexual servitude through withholding his clothing, cell phone, and wallet while with the confine of locations controlled by the Defendants.

306.  Defendants employed coercion through the following specific means:

    a.  Psychological Coercion: intimidation, and mental manipulation;

    b.  Economic Coercion: Financial control and debt bondage once in new loations lacking resources to return;

    c.  Substance-Based Coercion: Manipulated drug use to maintain control;

    d.  Document Control: wallet with identification was taken, along with cell phone and clothes.

**Harm Suffered by Plaintiff:**

307.  As a direct and proximate result of Defendants' human trafficking, Plaintiff has suffered and continues to suffer economic damages, including but not limited to:

    a.  Past and future medical expenses;

    b.  Past and future mental health treatment expenses;

    c.  Lost wages and diminished earning capacity;

    d.  Costs and expenses incurred as a result of the human trafficking; and

    e.  Other reasonable costs and expenses incurred by Plaintiff.

308.  As a direct and proximate result of Defendants' human trafficking, Plaintiff has suffered and continues to suffer noneconomic damages, including but not limited to:

    a.  Pain and suffering;

    b.  Inconvenience;

    c.  Mental anguish;

    d.  Loss of capacity for enjoyment of life; and

    e.  Other nonfinancial losses.

309.  Defendants' conduct was intentional, willful, wanton, and malicious, warranting an award of punitive damages pursuant to Florida Statutes §§ 768.72, 768.725, and 768.73.

310.  Plaintiff is entitled to reasonable attorney fees and costs pursuant to Florida Statute § 787.061(3)(c).

**<u>Relevant Case Law:</u>**

a. *State v. Fletcher, 508 So. 2d 506 (Fla. 4th DCA 1987) Planning and premeditation is inherent in major trafficking cases and conspiracy to traffic cases.*

b. *Cooper v. State, 377 So. 2d 1153 (Fla. 1979) Failure to disclose discoverable material is reversible as a matter of law absent proper inquiry*

311.    Defendants, including Sean Combs, Cassandra Ventura, Bad Boy Records, and related corporate entities, violated Florida Statute § 787.061 by engaging in human trafficking through transporting, harboring, maintaining, and coercing Plaintiff for commercial sexual exploitation.

312.    These actions, motivated by sexual gratification and enabled by systematic deception and substance abuse, caused Plaintiff significant physical, psychological, and economic harm. Plaintiff respectfully seeks relief for these trafficking violations under Florida Statute § 787.061 and applicable civil remedies.

313.    The aforementioned trafficking scheme constituted human trafficking, sexual assault, coercion, and forced commercial sexual activity upon Plaintiff Howard under Florida Statute § 787.06 and § 787.061.

314.    Defendants herein acted through prohibited means of coercion as defined by Florida Statute § 787.06(2)(a), including deceptive and fraudulent means, restraint, isolation, and domination of Plaintiff's will.

315.    Defendants transported Plaintiff across state lines from New York to Florida for purposes of commercial sexual exploitation without lawful authority. Plaintiff was kept ignorant regarding the entirety of the encounters and/or the scheme of the Defendants. Therefore, legal, meaningful consent could not have been obtained.

316.    As a result of the aforementioned human trafficking, commercial sexual exploitation, forced labor, sexual assault, involuntary drugging, and systematic psychological manipulation sustained at the hands of Defendants herein, Plaintiff was caused to suffer and continues to experience severe physical injuries, chronic psychological trauma, post-traumatic stress disorder, anxiety, depression, humiliation, and ongoing fear of retaliation.

317.    As a direct and proximate result of Defendants' violations of Florida Statutes § 787.06 and § 787.061, Mr. Howard was caused to be trafficked for commercial sexual purposes, sexually exploited through coercion, subjected to involuntary servitude, and

caused to sustain severe mental suffering, psychological and emotional distress, loss
of wages and earning capacity, loss of reputation, embarrassment and humiliation,
damage to personal relationships, medical and mental health expenses, and
deprivation of his fundamental rights to personal liberty, bodily autonomy, and human
dignity under Florida law and the United States Constitution.

318.    Because of the preceding violations of Florida human trafficking laws, Plaintiff
was damaged in the amount to be determined after trial in economic and
noneconomic damages as provided by Florida Statute § 787.061(3), plus punitive
damages pursuant to Florida Statutes §§ 768.72, 768.725, and 768.73, costs,
disbursements, reasonable attorney's fees as provided by Florida Statute §
787.061(3)(c), pre- and post-judgment interest, and such other relief as this Court
deems just and proper under Florida's comprehensive civil remedies for human
trafficking victims.

### THIRD CAUSE OF ACTION
### CIVIL REMEDY FOR HUMAN TRAFFICKING
### (California Civil Code § 52.5 - Human Trafficking)
### Against all Defendants

319.    Plaintiff repeats and realleges each and every allegation in all of the preceding
paragraphs as if fully set forth herein.

**Legal Standard and Pleading Requirements**

320.    California Civil Code § 52.5 provides a private right of action for victims of
human trafficking, allowing recovery of damages and injunctive relief. To establish a
claim under Civil Code § 52.5, Plaintiff must demonstrate the following:

**Human Trafficking Conduct: Plaintiff must show**

1.  The Defendant(s) deprived or violated the personal liberty of another with the
    intent to obtain forced labor or services,

2.  Defendant(s) accomplished through force, fear, fraud, deceit, coercion,
    violence, duress, menace, or threat of unlawful injury, and

3.  The Defendant(s) conduct falls within the definition of trafficking under Penal
    Code § 236.1. See Cal. Penal Code § 236.1(a).

321.    Trafficking Elements: The Defendant(s) engaged in conduct constituting human
trafficking by depriving the plaintiff of personal liberty through prohibited means.

322. <u>Intent for Forced Labor/Services</u>: The Defendant(s) acted with the specific intent to obtain forced labor, services, or commercial sex acts from the plaintiff.

323. <u>Prohibited Means</u>: The Defendant(s) used force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to accomplish the trafficking.

324. <u>Causal Connection</u>: The Defendant's trafficking conduct directly caused injury to the plaintiff.

**Relevant Case Law**:

   a. *People v. Hagos, 27 Cal. App. 5th 824 (2018): Human trafficking requires specific intent to obtain forced labor or services through prohibited means.*

   b. *People v. Truong, 10 Cal. App. 5th 551 (2017): Force or coercion may be established through totality of circumstances, including psychological control.*

325. <u>Civil Liability Standard</u>: Plaintiff must establish

   1. defendant's trafficking conduct as defined under Penal Code § 236.1,

   2. intent to violate or reckless disregard of plaintiff's rights,

   3. causation between the conduct and plaintiff's injuries, and

   4. actual damages. Cal. Civ. Code § 52.5(a).

326. <u>Knowledge/Intent Standard</u>: The defendant acted with intent to violate the plaintiff's rights or in reckless disregard of those rights under the trafficking statute.

327. <u>Causation Requirement</u>: The defendant's trafficking conduct was a substantial factor in causing the plaintiff's harm and damages.

328. <u>Actual Damages</u>: The plaintiff suffered quantifiable harm including economic losses, physical injuries, emotional distress, or other compensable damages.

329. <u>Joint and Several Liability</u>: Multiple defendants may be held jointly and severally liable for trafficking conduct when acting in concert or conspiracy. Cal. Civ. Code § 52.5(b).

**Relevant Case Law:**

   a. *Doe v. Backpage.com, 817 F.3d 12 (1st Cir. 2016): Civil trafficking claims require showing defendant's conduct facilitated or directly participated in trafficking operations.*

      b. *Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017): Reckless disregard standard satisfied when defendant consciously ignored substantial risk of trafficking violations.*

330. <u>Statute of Limitations</u>: Action must be commenced within 5 years of discovery of the trafficking or 5 years after plaintiff is no longer subject to trafficking, whichever is later. Cal. Civ. Code § 52.5(c).

331. <u>Available Remedies:</u> Successful plaintiffs may recover actual damages, reasonable attorney's fees and costs, punitive damages upon showing malice or oppression, and equitable relief including injunctions. Cal. Civ. Code § 52.5(a).

**Relevant Case Law**:

      a. *Doe v. Red Roof Inns, 21 F. Supp. 3d 714 (E.D. Tex. 2014): Civil trafficking remedies include both compensatory and punitive damages when defendant's conduct was willful or reckless.*

      b. *Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017): Attorney's fees recoverable under civil trafficking statutes to incentivize private enforcement.*

**Facts Supporting Pleading Requirements:**

**Initial Fraudulent Contact (2009):**

332. <u>Trafficking Elements</u>: Ms. Ventura contacted Mr. Howard under the false identity "Jackie Star," concealing her true identity using makeup, a large red wig, and dim lighting while inviting him to The London hotel in New York City under fraudulent pretenses for what she claimed was a standard companion arrangement.

333. <u>Intent for Forced Services</u>: Ms. Ventura failed to inform Mr. Howard that another party (Mr. Combs, alias "Frank") would be present and that the encounter would involve filmed sexual activities for their mutual gratification, demonstrating intent to obtain forced sexual services through deception.

334. <u>Prohibited Means - Fraud</u>: Ms. Ventura falsely represented herself and Mr. Combs as a "married couple" participating in "the Lifestyle" when they were public figures operating a systematic exploitation scheme targeting multiple male victims.

**Interstate Transportation for Commercial Sex (2012-2019)**:

335. <u>Trafficking Conduct</u>: Beginning in early 2012, Ms. Ventura and Mr. Combs systematically transported Mr. Howard from New York City to Miami and Los

Angeles numerous times using promises of gifts, money, and vacations as tools to manipulate him into compliance for commercial sexual exploitation.

336.    Causal Connection: The transportation was specifically arranged to facilitate prolonged sexual encounters where Mr. Howard would "spend days servicing Ms. Ventura" while being detained beyond agreed timeframes, with one encounter lasting three days when he was told it would be one day.

337.    Commercial Sexual Activity: Mr. Howard was presented to hotel staff as "Security" for Bad Boy Records as a cover story while actually being trafficked for sexual services in exchange for financial compensation, travel arrangements, and accommodations.

**Force, Fraud, and Coercion Elements:**

338.    Physical Restraint: Defendants systematically confiscated Mr. Howard's clothing, cellphone, and personal belongings upon arrival at hotel suites, preventing him from leaving safely and maintaining control through isolation in suites requiring key access "with no stairwell access without triggering alarms."

339.    Chemical Coercion: Ms. Ventura strategically drugged Mr. Howard with MDMA at triple dosage to get him "freaky" and increase "encounter intensity," using substances "like a spider catching its prey in its web" to lower his inhibitions and facilitate sexual exploitation.

340.    Economic Control: Once under Defendants' control, Mr. Howard had no means to return home without satisfying Ms. Ventura's demands, creating a condition of economic dependency and coercion where "money was used as a form of dominance."

**Systematic Pattern of Exploitation:**

341.    Prolonged Sexual Servitude: Defendants structured encounters into four mandatory phases lasting hours, with 1 encounter sometimes having 10-15 individual sessions per visit, depending on detention length, during which Mr. Howard suffered physical injuries, including tears to his penis shaft from prolonged forced masturbation.

342.    <u>Threats of Violence</u>: Mr. Combs implied threats of violence to assert control, including threatening to "pistol whip" Mr. Howard and directing Ms. Ventura to retrieve his firearm from the master suite during at least one encounter.

343.    <u>Reckless Disregard for Health</u>: Defendants' conduct caused Mr. Howard to contract Chlamydia during unprotected sexual contact, with Ms. Ventura later revealing she had contracted the STD and blamed Mr. Combs' infidelity, demonstrating deliberate disregard for Plaintiff's health and safety.

**Sexual Assault and Non-Consensual Activity:**

344.    <u>Forced Sexual Contact</u>: At Beverly Hills Hotel in October 2014, Ms. Ventura forced herself on Mr. Howard during her menstrual cycle against his will as "calculated disregard as a punishment for refusing to fly to Los Angeles," pinning him to the couch despite his repeated requests to wait.

345.    <u>Non-Consensual Recording</u>: Defendants filmed Mr. Howard in compromising encounters without his consent for years, creating recordings that the couple would watch together and use for mutual masturbation, demonstrating ongoing violation of his dignity and privacy rights.

346.    <u>Manipulation Through Intoxication</u>: When Mr. Howard confronted Ms. Ventura about non-consensual recording, she demonstrated her control by masturbating to climax in front of him while watching previous recordings of their encounters, showing the extent of her psychological manipulation.

**Harm Suffered by Plaintiff:**

347.    <u>Physical Injuries</u>: Plaintiff suffered severe physical trauma including genital injuries from prolonged forced masturbation that caused "skin tears and scabs on Mr. Howard's penis, causing severe pain and scarring," and tears to his penis shaft resulting in "skin peeling and scabbing" from extended sessions lasting hours without consideration for his well-being.

348.    <u>Sexually Transmitted Disease</u>: Plaintiff contracted Chlamydia as a direct result of Defendants' reckless conduct in compelling unprotected sexual contact, with Ms. Ventura later revealing she had contracted the STD and blamed Mr. Combs' infidelity, demonstrating Defendants' deliberate disregard for Plaintiff's health and safety.

349. <u>Drug-Related Physical Trauma</u>: Plaintiff suffered severe physical reactions from involuntary drugging, including uncontrollable sweating, violent spasms, intense stomach pain, and uncontrollable vomiting that forced him to crawl to a bathroom and left him "dizzy and weak on the bathroom floor" after being given unknown substances by Mr. Combs.

350. <u>Psychological Trauma and PTSD</u>: Plaintiff suffered and continues to experience severe psychological trauma, post-traumatic stress disorder, chronic anxiety, and depression as a direct result of the systematic sexual exploitation, manipulation, and witnessing repeated domestic violence between Defendants over nearly a decade.

351. <u>Emotional Distress from Sexual Assault</u>: Plaintiff experienced severe emotional distress from being sexually assaulted by Ms. Ventura during her menstrual cycle at Beverly Hills Hotel, where she forced herself upon him against his will as punishment for refusing to fly to Los Angeles, causing lasting psychological harm and trauma.

352. <u>Loss of Dignity and Privacy</u>: Plaintiff suffered ongoing violation of his dignity through non-consensual recording of sexual encounters that Defendants watched together and used for mutual masturbation, with Ms. Ventura demonstrating her control by masturbating to climax while watching previous recordings in front of Plaintiff.

353. <u>Economic Losses</u>: Plaintiff suffered financial harm through lost wages and diminished earning capacity as a result of the physical and psychological injuries sustained during the trafficking period, along with medical and mental health treatment expenses required to address the trauma.

354. <u>Reputational and Professional Damage</u>: Plaintiff's reputation and professional standing have been damaged as a result of his name being connected to the criminal prosecution of Sean Combs and the public exposure of his involvement in the trafficking scheme, with damages continuing to accrue as a result of the ongoing criminal proceedings.

355. <u>Loss of Personal Relationships</u>: Plaintiff suffered damage to personal relationships and social connections as a result of the trauma, secrecy, and psychological effects of the prolonged exploitation and abuse he endured at the hands of Defendants.

**<u>Relevant Case Law</u>**:

    a.  *People v. Hagos, 27 Cal. App. 5th 824 (2018): Civil trafficking remedies must address both physical and psychological harm suffered by victims through comprehensive damages.*

    b.  *Doe v. Red Roof Inns, 21 F. Supp. 3d 714 (E.D. Tex. 2014): Trafficking victims are entitled to full compensation for medical expenses, psychological treatment, and long-term consequences of exploitation.*

    c.  *Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017): Damages in civil trafficking cases must account for ongoing harm and diminished quality of life resulting from systematic abuse.*

356.    Defendants, including Sean Combs, Cassandra Ventura, Bad Boy Records, and related corporate entities, violated California Civil Code § 52.5 by engaging in human trafficking through systematic sexual exploitation, chemical coercion, and physical restraint. These actions, motivated by sexual gratification and enabled by deception and substance abuse, caused Plaintiff significant physical, psychological, and economic harm that continues to this day. Plaintiff respectfully seeks relief for these trafficking violations under California Civil Code § 52.5 and applicable remedies.

357.    The human trafficking, sexual exploitation, and resulting injuries to Mr. Howard occurred without fault or wrongdoing by the Plaintiff contributing thereto.

358.    The aforementioned trafficking scheme constituted human trafficking, sexual assault, and systematic exploitation upon Plaintiff Howard under California Civil Code § 52.5 and Penal Code § 236.1.

359.    Defendants herein acted through prohibited means of force, fraud, and coercion as defined by California Penal Code § 236.1, deliberately violating Plaintiff's personal liberty and dignity for their sexual gratification.

360.    As a direct and proximate result of Defendants' violations of California Civil Code § 52.5, Mr. Howard was caused to be trafficked across state lines, sexually exploited through coercion and deception, and caused to sustain severe mental suffering, psychological and emotional distress, loss of wages and earning capacity, medical expenses, loss of reputation, embarrassment and humiliation, damage to

personal relationships, and deprivation of his fundamental rights to personal liberty and bodily autonomy under California law and the United States Constitution.

361.    Because of the preceding violations of California Civil Code § 52.5, Plaintiff was damaged in an amount to be determined at trial, plus punitive damages, reasonable attorney's fees as provided by California Civil Code § 52.5, costs, disbursements, pre- and post-judgment interest, and such other relief as this Court deems just and proper.

<div align="center">

**FOURTH CAUSE OF ACTION**
**FEDERAL CIVIL REMEDY FOR HUMAN TRAFFICKING (18 U.S.C. § 1595 -**
**Trafficking Victims Protection Act)**
**Against all Defendants**

</div>

362.    Plaintiff repeats and realleges every allegation in all of the preceding paragraphs as if fully set forth herein.

**Legal Standard and Pleading Requirements**

363.    Under 18 U.S.C. § 1595, a civil complaint must establish by a preponderance of evidence that defendant violated one or more provisions of Chapter 77 of Title 18 (Peonage, Slavery, and Trafficking in Persons) and that such violation proximately caused injury to plaintiff's business or property. See 18 U.S.C. § 1595(a).

364.    To establish a claim under the Trafficking Victims Protection Act (18 U.S.C. § 1595), the plaintiff must demonstrate:

   a.   Predicate Trafficking Offense: The defendant violated one or more provisions of 18 U.S.C. §§ 1581-1594, including sex trafficking (§ 1591), forced labor (§ 1589), or trafficking with respect to peonage or involuntary servitude (§ 1590).

   b.   Interstate Commerce Nexus: The defendant's conduct involved or affected interstate or foreign commerce, including transportation across state lines, use of interstate communication systems, or other activities affecting commerce.

   c.   Proximate Causation: A direct causal connection exists between the defendant's trafficking violation and the injury suffered by plaintiff.

   d.   Actual Damages: The plaintiff suffered quantifiable injury to business or property, including economic losses, physical harm, or other compensable damages.

365.    <u>Sex Trafficking Elements (18 U.S.C. § 1591)</u>: Defendant knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited a person for the purpose of a commercial sex act through force, fraud, or coercion.

366.    <u>Commercial Sex Act Definition</u>: Any sex act on account of which anything of value is given to or received by any person, including money, drugs, shelter, transportation, or other benefits. 18 U.S.C. § 1591(e)(3).

367.    <u>Force, Fraud, or Coercion Standard</u>: Includes threats of serious harm, physical restraint, any scheme or pattern intended to cause belief that failure to perform would result in serious harm, debt bondage, or abuse of legal process. 18 U.S.C. § 1591(e)(2).

368.    <u>Knowledge Requirement</u>: Defendant acted with knowledge or in reckless disregard of the fact that the person would be caused to engage in commercial sex acts. Willful blindness satisfies this element.

369.    <u>Forced Labor Elements (18 U.S.C. § 1589)</u>: Defendant knowingly provided or obtained labor or services through force, threats of force, physical restraint, threats of physical restraint, fraud, or coercion.

370.    <u>Corporate and Third-Party Liability</u>: Entities may be held liable for trafficking violations through direct participation, vicarious liability, or by knowingly benefiting from trafficking while having actual knowledge or reckless disregard of the trafficking.

**<u>Relevant Case Law</u>**:

    a.    *United States v. Jungers, 702 F.3d 1066 (8th Cir. 2013): Fraud encompasses "knowingly misrepresenting or omitting facts to obtain compliance," including deceptive promises about working conditions or compensation.*

    b.    *Doe v. Howard, 768 F.3d 1336 (11th Cir. 2014): Plaintiff must establish "but-for causation between defendant's statutory violation and plaintiff's injury," plus foreseeability that trafficking would cause the type of harm suffered.*

    c.    *United States v. Todd, 627 F.3d 329 (9th Cir. 2010): Coercion analysis focuses on "whether a reasonable person in the victim's position would have felt compelled to comply" with trafficking demands.*

    d. *Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017): Civil remedies under § 1595 include compensatory damages, punitive damages, and reasonable attorney's fees to incentivize private enforcement.*

**Facts Supporting Pleading Requirements:**

**Predicate Trafficking Offense - Sex Trafficking (18 U.S.C. § 1591):**

371.   <u>Recruitment and Transportation</u>: Defendants knowingly recruited Mr. Howard through fraudulent means, with Ms. Ventura using the false identity "Jackie Star" and concealing that Mr. Combs would be present, then systematically transported him from New York City to Miami and Los Angeles beginning in 2012 for commercial sexual exploitation.

372.   <u>Commercial Sex Act Elements</u>: Defendants caused Mr. Howard to engage in commercial sex acts as defined by 18 U.S.C. § 1591(e)(3), including unprotected sexual intercourse, prolonged masturbation sessions, and other sexual activities in exchange for financial compensation, travel arrangements, hotel accommodations, and other things of value.

373.   <u>Force, Fraud, and Coercion</u>: Defendants employed systematic fraud by concealing their identities as public figures and falsely representing themselves as a "married couple," while using coercion through confiscation of clothing and cellphones, isolation in hotel suites requiring key access, and chemical coercion through involuntary drugging with MDMA at triple dosage.

**Interstate Commerce Nexus**:

374.   <u>Interstate Transportation</u>: Defendants' trafficking scheme involved the systematic interstate transportation of Mr. Howard across state lines from New York to Florida and California, with Ms. Ventura booking JetBlue flights and arranging accommodations at hotels including the Mandarin (Miami), Beverly Hills Hotel (Los Angeles), and SLS (Miami).

375.   <u>Commercial Enterprise</u>: The trafficking activities were conducted through Defendants' business enterprises, including Bad Boy Records and Combs Enterprises, which provided financial resources and logistical support for the interstate transportation and accommodation arrangements.

376.    <u>Pattern Affecting Commerce</u>: Defendants operated a decade-long trafficking
enterprise that recruited "dozens of male entertainers" across state lines,
demonstrating a systematic pattern of conduct affecting interstate commerce through
the use of corporate resources and interstate transportation networks.

**Predicate Trafficking Offense - Forced Labor (18 U.S.C. § 1589):**

377.    <u>Coerced Labor Through Promises:</u> Defendants obtained labor and services from
Mr. Howard through offers of gifts and/or favors. Mr. Combs at one point threatened
to "pistol whip" Mr. Howard and directed Ms. Ventura to retrieve his firearm from the
master suite during at least one encounter.

378.    <u>Physical Restraint and Isolation</u>: Defendants systematically restrained Mr.
Howard by confiscating his clothing, cellphone, and personal belongings upon
arrival, isolating him in hotel suites with restricted access where he had "no means to
return home without satisfying Ms. Ventura."

379.    <u>Debt Bondage and Economic Control</u>: Defendants used financial control as a
means of coercion, with "money used as a form of dominance" and extending
encounters beyond agreed timeframes (asking for one day but detaining for three
days), creating economic dependency.

**Knowledge and Reckless Disregard**:

380.    <u>Actual Knowledge</u>: Defendants demonstrated actual knowledge of their
trafficking conduct through their systematic operation of what Mr. Howard describes
as a "decade-long sex trafficking ring" that "manipulated male entertainers into sexual
encounters using promises of money and favors."

381.    <u>Reckless Disregard for Health</u>: Defendants acted with reckless disregard for Mr.
Howard's safety and well-being, causing him to contract Chlamydia through forced
unprotected sexual contact and administering unknown substances that caused severe
physical reactions including violent spasms and uncontrollable vomiting.

382.    <u>Pattern of Systematic Abuse</u>: Defendants' conduct demonstrates knowledge and
intent through the structured nature of encounters divided into "four phases" with "15-
30 individual sessions" per visit, showing deliberate orchestration of commercial
sexual exploitation.

**Proximate Causation and Damages:**

383.　<u>Direct Causal Connection</u>: Defendants' trafficking violations directly caused Mr. Howard's injuries, including physical trauma from prolonged forced masturbation causing "skin tears and scabs," sexual assault during Ms. Ventura's menstrual cycle, and involuntary drugging causing severe physical reactions.

384.　<u>Economic Harm</u>: As a direct result of the trafficking, Mr. Howard suffered economic damages including medical expenses for STD treatment, lost wages and diminished earning capacity due to physical and psychological injuries, and ongoing mental health treatment costs.

385.　<u>Psychological Injury</u>: The trafficking caused severe and continuing psychological harm including post-traumatic stress disorder, chronic anxiety, depression, and emotional distress from witnessing repeated domestic violence and being subjected to systematic sexual exploitation over nearly a decade.

**Corporate and Third-Party Liability**:

386.　<u>Corporate Participation</u>: Defendant corporations including Bad Boy Records and Combs Enterprises directly participated in the trafficking by providing financial resources, booking travel arrangements, and presenting Mr. Howard to hotel staff as "Security" for Bad Boy Records as a cover story for the trafficking activities.

387.　<u>Beverly Hills Hotel Liability</u>: Defendant Beverly Hills Hotel, through its employees, facilitated the trafficking by providing access to penthouse suites and assisting with arrangements while having actual knowledge or acting with reckless disregard of the trafficking activity occurring on its premises.

388.　<u>Vicarious Liability</u>: Defendant entities are vicariously liable for the trafficking conduct of their agents and employees who used corporate resources and facilities to facilitate the systematic sexual exploitation of Mr. Howard and other victims over a decade-long period.

**Harm Suffered by Plaintiff:**

389.　<u>Physical Injuries from Forced Sexual Activity</u>: As a direct and proximate result of Defendants' trafficking violations, Mr. Howard suffered severe physical injuries including genital trauma from prolonged forced masturbation that caused "skin tears and scabs on Mr. Howard's penis, causing severe pain and scarring," and tears to his

penis shaft resulting in "skin peeling and scabbing" from extended sessions lasting
hours.

390.    <u>Sexually Transmitted Disease</u>: Defendants' reckless trafficking conduct directly
caused Mr. Howard to contract Chlamydia through forced unprotected sexual contact,
requiring medical treatment and causing ongoing health concerns, with Ms. Ventura
later admitting she had contracted the STD and blamed Mr. Combs' infidelity for the
infection.

391.    <u>Drug-Related Physical Trauma</u>: Mr. Howard suffered severe physical reactions
from involuntary drugging orchestrated by Defendants, including uncontrollable
sweating, violent spasms, intense stomach pain, and uncontrollable vomiting that
forced him to crawl to a bathroom and left him "dizzy and weak on the bathroom
floor" after being administered unknown substances.

392.    <u>Severe Psychological Trauma</u>: The trafficking violations caused Mr. Howard to
suffer and continue to experience severe psychological harm including post-traumatic
stress disorder, chronic anxiety, depression, and ongoing emotional distress from the
systematic sexual exploitation, manipulation, and witnessing repeated domestic
violence over nearly a decade.

393.    <u>Sexual Assault Trauma</u>: Mr. Howard suffered additional psychological and
emotional harm from being sexually assaulted by Ms. Ventura during her menstrual
cycle at Beverly Hills Hotel, where she forced herself upon him against his will as
punishment for refusing to comply with trafficking demands, causing lasting trauma
and violation of his bodily autonomy.

394.    <u>Loss of Privacy and Dignity</u>: Defendants' violations caused ongoing harm through
non-consensual recording of sexual encounters that they watched together and used
for mutual masturbation, with Ms. Ventura demonstrating control by masturbating to
climax while watching previous recordings in front of Mr. Howard, causing severe
humiliation and dignity loss.

395.    <u>Economic Damages</u>: As a direct result of the trafficking violations, Mr. Howard
suffered significant economic harm, including medical expenses for STD treatment
and ongoing psychological therapy, lost wages and diminished earning capacity due

to physical and psychological injuries, and costs associated with recovery from the systematic exploitation.

396.    <u>Reputational and Professional Harm</u>: The trafficking violations and subsequent exposure through the criminal prosecution of Sean Combs have caused ongoing damage to Mr. Howard's reputation and professional standing, with his name being connected to the criminal activities and causing continued harm to his personal and professional relationships.

397.    <u>Loss of Earning Capacity</u>: The physical and psychological injuries resulting from Defendants' trafficking violations have diminished Mr. Howard's ability to earn income, both through direct physical limitations and the ongoing psychological effects that impact his ability to work and maintain professional relationships.

398.    <u>Medical and Treatment Expenses</u>: Mr. Howard has incurred and continues to incur substantial medical expenses for treatment of physical injuries, STD treatment, and ongoing psychological therapy and mental health treatment required as a direct result of the trafficking violations and systematic abuse.

399.    <u>Pain and Suffering</u>: The trafficking violations caused Mr. Howard to experience severe physical pain from injuries sustained during forced sexual activity, emotional suffering from systematic manipulation and abuse, and ongoing mental anguish from the lasting psychological effects of the decade-long exploitation.

400.    <u>Loss of Personal Autonomy</u>: Defendants' violations fundamentally violated Mr. Howard's right to personal liberty and bodily autonomy, causing him to lose control over his own body and choices through systematic coercion, drugging, and physical restraint over an extended period.

401.    <u>Ongoing Fear and Anxiety</u>: As a result of the trafficking violations, Mr. Howard continues to suffer from ongoing fear of retaliation, anxiety about public exposure, and psychological distress that affects his daily life and ability to form healthy relationships.

402.    <u>Deprivation of Constitutional Rights</u>: The trafficking violations caused Mr. Howard to be deprived of his fundamental constitutional rights to liberty, due process, and protection from involuntary servitude, causing both immediate harm during the trafficking period and continuing constitutional injury.

403.    This action is timely filed within the 10-year statute of limitations provided by 18 U.S.C. § 1595(c), which runs from the date on which the cause of action arose or the date on which Plaintiff reasonably discovered the cause of action, whichever is later

404.    Because of the preceding violations of federal trafficking laws under 18 U.S.C. §§ 1591, 1589, and related provisions, Mr. Howard was damaged in an amount to be determined at trial, plus punitive damages where appropriate, treble damages under applicable RICO provisions, reasonable attorney's fees as provided by 18 U.S.C. § 1595(a), costs, disbursements, pre- and post-judgment interest, and such other relief as this Court deems just and proper under the Trafficking Victims Protection Act.

### FIFTH CAUSE OF ACTION
**Sexual Assault pursuant to The California Sexual Abuse and Cover Up Accountability Act, (Cal. Civil Proc. § 340.16)**
**All Defendants**

405.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

**Legal Standard and Pleading Requirements**

406.    California Civil Procedure Code § 340.16 provides an extended statute of limitations for civil actions arising from sexual abuse that occurred when the plaintiff was an adult, allowing claims to be brought within specified time periods regardless of when the abuse occurred. See Cal. Civ. Proc. Code § 340.16(a).

407.    To establish a claim under the California Sexual Abuse and Cover Up Accountability Act (Cal. Civ. Proc. Code § 340.16), the plaintiff must demonstrate:

a.    Sexual Abuse: The defendant committed sexual abuse as defined by California Civil Code § 340.16(b)(1), which includes sexual assault, sexual battery, or any other nonconsensual sexual conduct that would constitute a criminal offense under California Penal Code §§ 243.4, 261, 286, 287, 288, 289, or other applicable sexual offense statutes.

b.    Adult Victim: The sexual abuse occurred when the plaintiff was 18 years of age or older, distinguishing this from childhood sexual abuse claims under different statutory provisions.

46

      c. <u>Timely Filing</u>: The action is commenced within the applicable limitations period as specified in § 340.16(c), including the three-year look-back window that expired on December 31, 2022, or other applicable time periods.

      d. <u>Causation</u>: A causal connection exists between the defendant's sexual abuse and the injuries or damages suffered by the plaintiff.

408.   <u>Sexual Assault Elements</u>: Under California Penal Code § 243.4, sexual assault requires:

      1. touching an intimate part of another person,

      2. while that person is unlawfully restrained,

      3. against the will of the person touched, and

      4. for the purpose of sexual arousal, sexual gratification, or sexual abuse.

409.   <u>Sexual Battery Elements</u>: Under California Penal Code § 243.4(e)(1), sexual battery includes touching an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse.

410.   <u>Rape Elements</u>: Under California Penal Code § 261, rape includes sexual intercourse accomplished with a person not the spouse of the perpetrator where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury.

411.   <u>Cover Up Liability</u>: Entities may be held liable under § 340.16 for engaging in a "cover up" as defined by the statute, which includes concealment or attempted concealment of evidence related to sexual abuse by an employee, volunteer, representative, or agent.

412.   <u>Institutional Liability</u>: Organizations, corporations, and other entities may be held liable for sexual abuse committed by their employees, agents, or representatives, particularly where the entity had knowledge or should have had knowledge of the abuse and failed to take appropriate action.

413.   <u>Damages Available</u>: Successful plaintiffs may recover compensatory damages for physical and psychological injuries, medical expenses, lost wages, pain and suffering,

and in appropriate cases, punitive damages for willful, malicious, or oppressive
conduct.

**Relevant Case Law**:

    a. *Doe v. City of Los Angeles, 42 Cal. 4th 531 (2007): Sexual abuse claims
require proof of nonconsensual sexual contact accomplished through force,
threat, or other prohibited means.*

    b. *Cochran v. Cochran, 65 Cal. App. 4th 488 (1998): Sexual battery includes any
nonconsensual touching of intimate parts for purposes of sexual arousal or
gratification.*

    c. *John R. v. Oakland Unified School District, 48 Cal. 3d 438 (1989):
Institutional liability may attach where entities had actual or constructive
knowledge of sexual abuse and failed to prevent it.*

    d. *Giraldo v. Department of Corrections, 168 Cal. App. 4th 231 (2008): Cover
up liability extends to systematic concealment of sexual abuse by institutional
actors.*

**Facts Supporting Pleading Requirements:**

**Sexual Abuse Elements (Cal. Penal Code §§ 243.4, 261, 289):**

414. <u>Sexual Assault During Menstrual Cycle</u>: At Beverly Hills Hotel in October 2014,
Ms. Ventura committed sexual assault as defined by California Penal Code § 243.4 by
forcing herself upon Mr. Howard during her menstrual cycle against his will, pinning
him to the couch despite his repeated requests to wait and inserting his penis into
herself without consent while he was in a compromised position.

415. <u>Unlawful Restraint During Sexual Contact</u>: Ms. Ventura accomplished the sexual
assault while Mr. Howard was unlawfully restrained through "manipulation, physical
positioning, and Mr. Combs' presence," seducing him into compliance, removing his
clothing, and manipulating him through foreplay into a compromised position on the
sofa where she could overpower his resistance.

416. <u>Against the Will of Victim</u>: The sexual contact occurred against Mr. Howard's will
as demonstrated by his repeated requests for Ms. Ventura to "wait," his anger upon
discovering she was menstruating heavily, and his questioning "why she would do
that to him," establishing the nonconsensual nature of the sexual contact.

417. <u>Ms. Ventura's Trial Testimony</u>: During the trial of Defendant Combs, Ms. Ventura speaks of an encounter, where she claims Mr. Combs forced her into a sexual encounter with a male provider. Mr. Howard's truth differs greatly from that of Ms. Ventura. Mr. Howard states the facts of the Beverly Hills Hotel incident detailed herein as the encounter referenced by Ms. Ventura during her testimony before the Federal Court. Mr. Howard denies Ms. Ventura's narrative, directly claiming it to be perjury before the Court.

**Sexual Battery Elements (Cal. Penal Code § 243.4(e)(1)):**

418. <u>Touching of Intimate Parts</u>: Ms. Ventura committed sexual battery by taking hold of Mr. Howard's penis and inserting it into herself for the purpose of sexual arousal and gratification, constituting unlawful touching of intimate parts as defined by the statute.

419. <u>Against Victim's Will</u>: The touching was accomplished against Mr. Howard's will while he was physically restrained and unable to prevent the sexual contact, with Ms. Ventura ignoring his protests and proceeding despite his clear objections to the sexual activity.

420. <u>Sexual Arousal and Gratification Purpose</u>: The contact was accomplished for the purpose of sexual arousal and gratification, with Ms. Ventura "finishing quickly" and later revealing she was aware of her menstrual cycle but "didn't think it would be heavy," demonstrating her intent to achieve sexual satisfaction regardless of Mr. Howard's consent.

**Cover Up by Corporate Defendants**:

421. **Witness and Attempted Cover Up**: Mr. Combs witnessed the sexual assault encounter and immediately attempted to "cover up" the matter by offering Mr. Howard additional monetary compensation for Ms. Ventura's actions, admitting that "Ms. Ventura was aware of her monthly cycle, but was intoxicated and 'horney'" and had hoped Mr. Howard would not mind once the assault began.

422. <u>Corporate Facilitation and Cover Up</u>: Defendant Corporations engaged in a "cover up" as defined by Cal. Civil Procedure Code § 340.16(4)(A) by financing the accommodations where the sexual assault occurred and taking no efforts to protect

Mr. Howard from harm by Ms. Ventura, who was employed by the Corporations, while concealing evidence of the sexual abuse.

423.    Systematic Concealment: The corporate defendants participated in concealing the sexual assault by maintaining the false narrative that Mr. Howard was "Security" for Bad Boy Records while actually facilitating his transportation for sexual exploitation, demonstrating a pattern of concealment and attempted cover up of sexual abuse by corporate agents.

**Adult Victim Status:**

424.    Adult at Time of Abuse: Mr. Howard was an adult over the age of 18 at all times during the sexual abuse, having begun working as an independent male companion in fall 2009 and meeting the defendants in late 2009, establishing his adult status during the relevant time period for purposes of Cal. Civil Procedure Code § 340.16.

425.    Timely Filing: This action is commenced within the applicable limitations period under Cal. Civil Procedure Code § 340.16, including any applicable look-back windows or extended limitations periods for adult sexual abuse claims.

**Causation and Harm**:

426.    Direct Causation: The sexual assault committed by Ms. Ventura directly caused Mr. Howard to suffer severe emotional distress, humiliation, and psychological trauma, with the assault serving as "calculated disregard as a punishment for refusing to fly to Los Angeles" and demonstrating the defendants' willingness to use sexual violence as a means of control.

427.    Ongoing Psychological Harm: As a direct result of the sexual assault, Mr. Howard suffered and continues to experience severe emotional distress, anxiety, post-traumatic stress disorder, humiliation, and embarrassment, with the trauma compounded by the defendants' attempts to minimize and cover up the assault.

428.    Physical and Dignitary Harm: The sexual assault caused Mr. Howard physical harm through nonconsensual sexual contact during Ms. Ventura's menstrual cycle and severe dignitary harm through the violation of his bodily autonomy and the defendants' subsequent attempts to dismiss his trauma as "not a big deal."

**Pattern of Sexual Abuse:**

429. <u>Systematic Sexual Exploitation</u>: The Beverly Hills Hotel assault was part of a
broader pattern of sexual abuse spanning nearly a decade, during which defendants
systematically exploited Mr. Howard through "manipulation, coercion, controlled
substances, and threats of violence to engage in non-consensual sexual activities."

430. <u>Non-Consensual Recording</u>: Defendants engaged in additional sexual abuse by
filming Mr. Howard "in compromising encounters without his consent for years,
creating recordings that the couple would watch together after the encounters ended
and use for mutual masturbation," constituting ongoing sexual exploitation and
privacy violations.

431. <u>Chemical Facilitation of Abuse</u>: The sexual abuse was facilitated through
systematic drugging, with defendants administering "MDMA in doses three times
stronger than what Defendant Ventura herself consumed, to lower his inhibitions and
facilitate sexual exploitation," demonstrating premeditated sexual abuse through
chemical incapacitation.

**Harm Suffered by Plaintiff**:

432. <u>Severe Sexual Trauma</u>: As a direct and proximate result of Ms. Ventura's sexual
assault during her menstrual cycle at Beverly Hills Hotel, Mr. Howard suffered severe
sexual trauma and violation of his bodily autonomy, experiencing immediate shock,
disgust, and psychological harm from the nonconsensual sexual contact that was
accomplished against his will through physical restraint and manipulation.

433. <u>Post-Traumatic Stress Disorder</u>: The sexual assault caused Mr. Howard to develop
post-traumatic stress disorder (PTSD) characterized by intrusive memories of the
assault, nightmares, anxiety attacks, and avoidance behaviors that continue to affect
his daily functioning and ability to engage in intimate relationships years after the
incident occurred.

434. <u>Humiliation and Dignitary Harm</u>: Mr. Howard suffered severe humiliation and
dignitary harm from the sexual assault, compounded by Ms. Ventura's dismissive
reaction when she "laughed and said it wasn't a big deal" and her attempt to minimize
the assault by blaming "intoxication and hormones" rather than acknowledging the
serious violation of his consent and bodily autonomy.

435.    <u>Loss of Sexual Autonomy and Trust</u>: The assault fundamentally violated Mr. Howard's sexual autonomy and caused lasting damage to his ability to trust intimate partners, with the defendants' systematic pattern of sexual exploitation creating ongoing psychological barriers to healthy sexual relationships and personal intimacy.

436.    <u>Ongoing Anxiety and Depression</u>: As a direct result of the sexual assault and cover-up attempts, Mr. Howard continues to experience severe anxiety, depression, and emotional distress that interferes with his work, relationships, and overall quality of life, requiring ongoing mental health treatment and therapy.

437.    <u>Fear and Hypervigilance</u>: The sexual assault caused Mr. Howard to develop persistent fear and hypervigilance, particularly in situations involving potential intimate contact, creating ongoing psychological distress and limiting his ability to engage freely in social and professional settings.

**Medical and Treatment Expenses**:

438.    <u>Mental Health Treatment Costs</u>: Mr. Howard has incurred and continues to incur substantial expenses for psychological therapy, psychiatric treatment, and mental health services required to address the trauma from the sexual assault, including costs for PTSD treatment, anxiety management, and depression therapy.

439.    <u>Medical Expenses</u>: The sexual assault and its aftermath required Mr. Howard to seek medical attention for physical and psychological symptoms, including medical evaluations, prescription medications for anxiety and depression, and ongoing healthcare costs related to trauma recovery.

440.    <u>Future Treatment Expenses</u>: Mr. Howard will continue to require ongoing mental health treatment, therapy, and medical care for the foreseeable future as a result of the lasting psychological impact of the sexual assault, creating continuing economic damages.

**Economic and Professional Harm**:

441.    <u>Lost Wages and Earning Capacity</u>: The psychological impact of the sexual assault has diminished Mr. Howard's ability to work and earn income, both through periods of inability to work due to trauma symptoms and ongoing reduced capacity due to anxiety, depression, and PTSD affecting his professional performance.

442.    <u>Career and Educational Impact</u>: The trauma from the sexual assault has negatively affected Mr. Howard's career prospects and educational opportunities, limiting his ability to pursue professional advancement and achieve his full earning potential due to the ongoing psychological effects of the abuse.

443.    215. Reputational Damage: The sexual assault and subsequent exposure through the criminal prosecution of Sean Combs has caused damage to Mr. Howard's reputation and standing in his community, with his name being connected to the criminal activities and causing harm to his personal and professional relationships.

**Cover-Up Related Harm**:

444.    <u>Additional Psychological Harm from Cover-Up</u>: The defendants' attempts to cover up the sexual assault through monetary payments and minimization caused additional psychological harm to Mr. Howard by denying him the opportunity for proper acknowledgment of the wrong committed against him and delaying his ability to seek appropriate justice and healing. Even now, after Defendant Ventura testified before the SDNY, admitting to personally sex trafficking Mr. Howard for years, he is ignored.

445.    <u>Obstruction of Justice Harm</u>: The corporate defendants' participation in covering up the sexual assault contributed to Mr. Howard's inability to seek timely legal recourse, causing additional harm through the denial of justice and the prolonging of his psychological suffering without adequate remedy.

446.    <u>Institutional Betrayal</u>: The systematic cover-up by corporate entities that were supposed to provide safe working conditions caused additional trauma through institutional betrayal, compounding the harm from the individual assault through organizational complicity in concealing sexual abuse.

**Damages Sought:**

447.    <u>Compensatory Damages</u>: Plaintiff seeks compensatory damages in an amount to be proven at trial for all economic and non-economic losses resulting from the sexual assault, including past and future medical expenses, mental health treatment costs, lost wages, diminished earning capacity, pain and suffering, and emotional distress.

448.    <u>Punitive Damages</u>: Given the egregious nature of the sexual assault and the defendants' attempts to cover up the abuse, Plaintiff seeks punitive damages to punish

the defendants' despicable conduct and deter similar behavior, with such damages to
reflect the wealth and misconduct of the defendants.

449.    <u>Attorney's Fees and Costs</u>: Pursuant to California Civil Procedure Code § 340.16
and applicable law, Plaintiff seeks recovery of all reasonable attorney's fees, costs,
and expenses incurred in prosecuting this action for sexual abuse and cover-up.

450.    <u>Medical and Treatment Expenses</u>: Plaintiff seeks recovery of all past and future
medical expenses, psychological treatment costs, therapy expenses, prescription
medications, and other healthcare costs necessitated by the sexual assault and its
ongoing psychological effects.

451.    <u>Pain and Suffering Damages</u>: Plaintiff seeks substantial damages for the severe
physical and emotional pain and suffering caused by the sexual assault, including the
immediate trauma, ongoing psychological distress, and long-term impact on his
quality of life and ability to enjoy normal relationships and activities.

452.    <u>Loss of Enjoyment of Life</u>: Plaintiff seeks damages for his diminished capacity to
enjoy life's pleasures and activities as a result of the sexual assault trauma, including
impaired ability to form intimate relationships, engage in social activities, and pursue
personal fulfillment without the burden of trauma-related symptoms.

453.    <u>Pre and Post-Judgment Interest</u>: Plaintiff seeks pre-judgment and post-judgment
interest on all monetary awards as provided by law to ensure full compensation for
the time value of the damages incurred as a result of defendants' sexual abuse and
cover-up conduct.

454.    <u>Such Other Relief</u>: Plaintiff seeks such other and further relief as the Court deems
just and proper under the California Sexual Abuse and Cover Up Accountability Act
and applicable law to provide full redress for the sexual abuse and institutional cover-
up that has caused lasting harm to his physical and psychological well-being.

### <u>SIXTH CAUSE OF ACTION</u>
### CIVIL LIABILITY FOR VIOLATIONS OF NEW YORK PENAL LAW § 230.34 - SEX TRAFFICKING
### All Defendants

455.        Plaintiff repeats and realleges each and every allegation in all of the
preceding paragraphs as if fully set forth herein.

**Legal Standard and Pleading Requirements**:

456.     New York Penal Law § 230.34 establishes criminal liability for sex trafficking,
and civil remedies are available under general New York tort law principles for
victims of conduct that violates this criminal statute. Civil actions may be brought
seeking damages for injuries suffered as a direct result of violations of § 230.34.

457.     To establish a civil claim based on violations of New York Penal Law § 230.34,
the plaintiff must demonstrate:

   a.   Sex Trafficking Elements: The defendant intentionally advanced or profited from
        prostitution by:

        i.    managing, supervising, controlling, or owning all or part of an enterprise
              of prostitution,

        ii.   procuring prostitution or customers for prostitution, or

        iii.  compelling a person by force or intimidation to engage in prostitution, or

        iv.   knowingly advancing or profiting from prostitution of a person less than
              nineteen years old.

   b.   Interstate Commerce Nexus: For federal jurisdiction purposes, the defendant's
        conduct involved or affected interstate commerce, including transportation across
        state lines or use of instrumentalities of interstate commerce.

   c.   Proximate Causation: A direct causal connection exists between the defendant's
        sex trafficking conduct and the injuries or damages suffered by the plaintiff.

   d.   Actual Damages: The plaintiff suffered quantifiable harm including physical
        injuries, psychological trauma, economic losses, or other compensable damages
        as a result of the trafficking.

458.     Managing/Supervising/Controlling Elements: Under § 230.34(1), defendants must
have intentionally managed, supervised, controlled, or owned all or part of an
enterprise of prostitution, requiring proof of organizational control and direction of
prostitution activities.

459.     Procuring Elements: Under § 230.34(2), defendants may be liable for procuring
prostitution or customers for prostitution, which includes recruiting, obtaining, or
facilitating commercial sexual encounters.

460.    <u>Force or Intimidation Standard</u>: Under § 230.34(3), compelling prostitution through force or intimidation includes physical force, threats, psychological coercion, economic control, or other means of compulsion that overcome the victim's will.

461.    <u>Advancing or Profiting</u>: Under § 230.34(4), knowingly advancing or profiting from prostitution includes receiving financial benefit, providing logistical support, or otherwise facilitating prostitution activities with knowledge of their nature.

462.    <u>Enterprise Definition</u>: An "enterprise of prostitution" requires an organized structure or operation involving multiple acts of prostitution, demonstrating a pattern of commercial sexual activity rather than isolated incidents.

463.    <u>Interstate Transportation Element</u>: Civil claims often involve interstate transportation for purposes of prostitution, which strengthens both the jurisdictional basis and the substantive case for trafficking violations.

**Relevant Case Law**:

a.  *People v. Florio, 40 N.Y.2d 906 (1976): Sex trafficking requires proof of organizational control and systematic management of prostitution activities, not merely individual transactions.*

b.  *People v. Kim, 103 A.D.3d 97 (1st Dep't 2012): Force and intimidation may be established through economic coercion, debt bondage, and control over victim's living conditions and movement.*

c.  *People v. Gonzalez, 61 N.Y.2d 586 (1984): Enterprise element requires showing coordinated prostitution activities with common organizational structure or leadership.*

d.  *People v. Dioguardi, 8 N.Y.2d 260 (1960): Advancing prostitution includes providing material support, facilities, or organizational assistance to prostitution operations.*

**Facts Supporting Pleading Requirements**:

**Managing/Supervising/Controlling Enterprise of Prostitution:**

464.    <u>Organizational Control</u>: Defendants intentionally managed, supervised, and controlled an enterprise of prostitution by systematically organizing and directing Mr. Howard's commercial sexual activities through a structured four-phase encounter

system: "(1) no touch, (2) soft foreplay, (3) fellatio, and (4) intercourse, directed by Mr. Combs," demonstrating systematic management of prostitution activities.

465.    <u>Operational Direction</u>: Mr. Combs exercised complete operational control over the prostitution enterprise by regulating "the pace of physical contact" and controlling "progression and pace," with "Ms. Ventura controlled the start and sought Mr. Combs' permission to progress," establishing clear hierarchical management of commercial sexual activities.

466.    <u>Enterprise Structure</u>: Defendants operated a decade-long organized prostitution enterprise where they "manipulated male entertainers into sexual encounters using promises of money and favors," with the enterprise consisting of "Mr. Combs, Ms. Ventura, Jane Doe, and the employees of the Defendant's business enterprises, who facilitated the encounters by providing supplies and booking accommodations."

467.    Interstate Transportation for Commercial Sexual Exploitation:

468.    <u>Systematic Interstate Transportation</u>: Beginning in early 2012, defendants systematically transported Mr. Howard "from New York City to Miami and Los Angeles numerous times" for commercial sexual exploitation, with "Ms. Ventura used promises of gifts, money, and vacations to coerce Mr. Howard into agreeing to leave NYC and head to the locations requested by the defendants."

469.    <u>Commercial Logistics Management</u>: Defendants managed the logistical aspects of the prostitution enterprise by booking travel arrangements, with "A JetBlue flight was booked and paid for by Ms. Ventura" and "Mr. Howard met the couple at the Mandarin hotel in Miami," while presenting him to "hotel staff as 'Security' for Bad Boy Records" as a cover story.

470.    <u>Extended Commercial Detention</u>: Defendants maintained control over the duration of commercial sexual encounters, with Mr. Howard being "Asked to come for one day, he wasn't released until three days later," demonstrating systematic management of prostitution activities beyond individual transactions.

**Force and Intimidation Elements:**

471.    <u>Physical Restraint and Isolation</u>: Defendants employed force through systematic physical restraint by confiscating "Mr. Howard's clothing, cellphone, and personal belongings upon arrival," isolating him in "hotel suites requiring key access with no

stairwell access without triggering alarms" where "once under the defendants' control, Mr. Howard had no means to return home without satisfying Ms. Ventura."

472.   <u>Threats of Violence</u>: Mr. Combs used intimidation through explicit threats of violence, including threatening to "pistol whip" Mr. Howard and "directing Defendant Ventura to the master suite to retrieve his firearm" during at least one encounter, demonstrating the use of force and intimidation to compel prostitution.

473.   <u>Economic Coercion</u>: Defendants employed economic intimidation where "Financial compensation was used as a form of dominance" and "money was used as a tool to coerce and bind Mr. Howard to the will of the Defendants," creating economic dependency that compelled continued participation in prostitution.

**Chemical Coercion and Substance Control**:

474.   <u>Involuntary Drugging for Compliance</u>: Defendants used chemical coercion to compel prostitution by administering controlled substances, with Ms. Ventura drugging Mr. Howard with "triple dosage Ecstasy" to get him "freaky" and increase "encounter intensity," using substances "like a spider catching its prey in its web" to lower his resistance.

475.   <u>Systematic Substance Administration</u>: Mr. Combs also engaged in chemical coercion by offering Mr. Howard unknown substances described as "Pink MDMA" or "Pink Molly," which caused severe physical reactions including "violent spasms" and "uncontrollable vomiting," demonstrating the use of drugs to facilitate forced prostitution.

476.   <u>Strategic Intoxication for Control</u>: Defendants strategically used "Designer drugs were used by the Defendants to lower the natural resistance of Mr. Howard. The Drugs were further used to keep Mr. Howard awake and at the service of the Defendants," showing systematic chemical coercion to compel prostitution activities.

**Advancing and Profiting from Prostitution:**

477.   <u>Financial Benefit from Enterprise</u>: Defendants knowingly advanced and profited from prostitution by using their "resources and means" to operate the trafficking enterprise, with corporate entities including "Bad Boy Records and Combs Enterprises" providing "financial resources, booking travel arrangements" and other logistical support for the prostitution activities.

478.    <u>Corporate Facilitation of Prostitution</u>: Defendant corporations directly advanced
prostitution by providing material support, with employees providing "supplies and
booking accommodations" while presenting trafficking victims as legitimate
employees to conceal the prostitution enterprise from law enforcement and hotel staff.

479.    <u>Pattern of Commercial Sexual Exploitation</u>: Defendants profited from a
systematic pattern of prostitution involving "dozens of male entertainers being lured
into the scheme," with the enterprise lasting "for over a decade" and generating
financial and personal benefits for the defendants through organized commercial
sexual activities.

<u>Procuring Prostitution and Customers</u>:

480.    <u>Systematic Recruitment of Victims</u>: Defendants engaged in procuring prostitution
by systematically recruiting male victims through fraudulent means, with Ms. Ventura
using false identities and promises to "recruit Plaintiff through online advertisements"
and other deceptive recruitment methods targeting male companions.

481.    <u>Customer Procurement for Sexual Services</u>: The enterprise involved procuring
customers and facilitating commercial sexual encounters, with defendants organizing
encounters where Mr. Howard would "spend days servicing Ms. Ventura" in exchange
for financial compensation, travel, and accommodations.

482.    <u>Commercial Sexual Arrangement Management</u>: Defendants procured and
managed commercial sexual arrangements by structuring encounters with specific
phases and durations, with "One encounter could consist of 15-30 individual sessions,
each including all four stages" depending on how long victims were detained for
commercial sexual purposes.

**Interstate Commerce and Continuing Criminal Conduct**:

483.    <u>Multi-State Trafficking Operation</u>: The sex trafficking enterprise involved
systematic interstate commerce through transportation "from New York to Florida"
and California, demonstrating the "scope and sophistication of the trafficking
operation" that crossed state lines for commercial sexual exploitation.

484.    <u>Continuing Course of Conduct</u>: The trafficking constituted "a continuing course
of criminal conduct that began in New York and continued in Florida, with Defendant

maintaining control and profiting throughout," establishing the ongoing nature of the sex trafficking enterprise under New York law.

485.　Commercial Enterprise Affecting Interstate Commerce: The prostitution enterprise affected interstate commerce through the use of corporate resources, interstate transportation networks, and multi-state operations involving "transportation of male entertainers across state lines for the purpose of prostitution."

**Harm Suffered by Plaintiff:**

486.　Physical Injuries from Forced Commercial Sexual Activity: As a direct and proximate result of Defendants' sex trafficking violations under New York Penal Law § 230.34, Mr. Howard suffered severe physical injuries including genital trauma from prolonged forced masturbation that caused "skin tears and scabs on Mr. Howard's penis, causing severe pain and scarring," and tears to his penis shaft resulting in "skin peeling and scabbing" from extended commercial sexual sessions lasting hours.

487.　Sexually Transmitted Disease from Trafficking: Defendants' reckless sex trafficking conduct directly caused Mr. Howard to contract Chlamydia through forced unprotected commercial sexual contact, requiring medical treatment and causing ongoing health concerns, with Ms. Ventura later revealing she had contracted the STD and blamed Mr. Combs' infidelity for the infection.

488.　Drug-Related Physical Trauma from Coercion: Mr. Howard suffered severe physical reactions from involuntary drugging used to facilitate the sex trafficking, including uncontrollable sweating, violent spasms, intense stomach pain, and uncontrollable vomiting that forced him to crawl to a bathroom and left him "dizzy and weak on the bathroom floor" after being administered unknown substances to compel prostitution.

489.　Severe Psychological Trauma from Commercial Exploitation: The sex trafficking violations caused Mr. Howard to suffer and continue to experience severe psychological harm including post-traumatic stress disorder, chronic anxiety, depression, and ongoing emotional distress from being systematically exploited as part of an organized prostitution enterprise over nearly a decade.

490.　Loss of Personal Liberty and Autonomy: Defendants' trafficking violations fundamentally violated Mr. Howard's right to personal liberty by systematically

confiscating his clothing, cellphone, and personal belongings, isolating him in hotel
suites where he had "no means to return home without satisfying Ms. Ventura,"
effectively reducing him to conditions of involuntary servitude for commercial sexual
purposes.

491.    Economic Exploitation and Loss of Legitimate Earning Capacity: As a result of
the sex trafficking, Mr. Howard suffered economic harm through exploitation of his
services for commercial sexual purposes while being denied fair compensation, along
with lost wages and diminished legitimate earning capacity due to the physical and
psychological injuries sustained during the trafficking period.

492.    Reputational and Professional Harm from Criminal Association: The sex
trafficking violations and subsequent exposure through the criminal prosecution of
Sean Combs have caused ongoing damage to Mr. Howard's reputation and
professional standing, with his name being connected to the criminal prostitution
enterprise and causing continued harm to his personal and professional relationships.

493.    Medical and Mental Health Treatment Expenses: Mr. Howard has incurred and
continues to incur substantial medical expenses for treatment of physical injuries
including STD treatment, along with ongoing psychological therapy and mental
health treatment required as a direct result of the sex trafficking violations and
systematic commercial sexual exploitation.

494.    Loss of Trust and Ability to Form Relationships: The systematic sex trafficking
caused Mr. Howard to suffer lasting psychological damage affecting his ability to
trust others and form healthy intimate relationships, with the commercial exploitation
creating ongoing barriers to personal fulfillment and normal social functioning.

495.    Ongoing Fear and Trauma from Criminal Exploitation: As a result of being
victimized by an organized sex trafficking enterprise, Mr. Howard continues to suffer
from ongoing fear of retaliation, anxiety about public exposure, and psychological
distress that affects his daily life and ability to engage normally in social and
professional settings.

496.    Constitutional Deprivation from Involuntary Servitude: The sex trafficking
violations caused Mr. Howard to be deprived of his fundamental constitutional rights
to liberty, due process, and protection from involuntary servitude under the Thirteenth

Amendment, causing both immediate harm during the trafficking period and
continuing constitutional injury.

497.    Dignitary Harm from Commercial Sexual Exploitation: Mr. Howard suffered
severe dignitary harm through being treated as a commodity in an organized
prostitution enterprise, with his human dignity violated through systematic
commercial sexual exploitation managed and controlled by the defendants for their
financial and personal benefit.

**Damages Sought:**

498.    Compensatory Damages for All Economic Losses: Plaintiff seeks compensatory
damages in an amount to be proven at trial for all economic losses resulting from the
sex trafficking violations, including past and future medical expenses, mental health
treatment costs, lost wages, diminished earning capacity, and all other quantifiable
financial harm caused by defendants' criminal conduct.

499.    Pain and Suffering Damages: Plaintiff seeks substantial damages for the severe
physical and emotional pain and suffering caused by the sex trafficking, including the
immediate trauma from forced commercial sexual activity, ongoing psychological
distress, and long-term impact on his quality of life and ability to enjoy normal
relationships and activities.

500.    Punitive Damages to Deter Criminal Enterprise: Given the egregious nature of
operating an organized sex trafficking enterprise in violation of New York Penal Law
§ 230.34, Plaintiff seeks punitive damages to punish defendants' criminal conduct and
deter similar behavior, with such damages to reflect the systematic nature of the
prostitution enterprise and defendants' wealth.

501.    Medical and Treatment Expenses: Plaintiff seeks recovery of all past and future
medical expenses, including STD treatment, psychological therapy, prescription
medications, and other healthcare costs necessitated by the sex trafficking and its
ongoing physical and psychological effects.

502.    Loss of Earning Capacity Damages: Plaintiff seeks damages for his diminished
ability to earn income both through periods of inability to work due to trafficking-
related trauma and ongoing reduced capacity due to the physical and psychological
effects of being victimized by an organized prostitution enterprise.

503. <u>Restitution for Commercial Sexual Exploitation</u>: Plaintiff seeks restitution for the value of sexual services extracted through the sex trafficking enterprise, including compensation for the commercial sexual activities he was compelled to perform under the systematic prostitution operation managed by defendants.

504. <u>Attorney's Fees and Costs</u>: Pursuant to applicable New York law providing civil remedies for criminal violations, Plaintiff seeks recovery of all reasonable attorney's fees, costs, and expenses incurred in prosecuting this action against the organized sex trafficking enterprise.

505. <u>Loss of Enjoyment of Life</u>: Plaintiff seeks damages for his diminished capacity to enjoy life's normal activities as a result of being victimized by systematic sex trafficking, including impaired ability to form intimate relationships, engage in social activities, and pursue personal fulfillment without the burden of trafficking-related trauma.

506. <u>Ongoing Damages from Continuing Harm</u>: The plaintiff's damages are ongoing and continue to accrue as a result of the lasting effects of the sex trafficking enterprise and "Defendant Sean Combs criminal trial. After being exposed through the allegations of Ms. Ventura and an investigation by the US Attorney, Mr. Howard name has been connected to the criminality of the Defendants."

507. <u>Pre and Post-Judgment Interest</u>: Plaintiff seeks pre-judgment and post-judgment interest on all monetary awards as provided by law to ensure full compensation for the time value of the damages incurred as a result of defendants' operation of an organized sex trafficking enterprise in violation of New York Penal Law § 230.34.

508. <u>Such Other Relief</u>: Plaintiff seeks such other and further relief as the Court deems just and proper to provide full redress for the systematic sex trafficking and commercial sexual exploitation that has caused lasting physical, psychological, and economic harm through defendants' criminal violation of New York's sex trafficking laws.

<div align="center">

**SEVENTH CAUSE OF ACTION**
**New York Services for Victims of Human Trafficking,**
**N.Y. Servs law  § 483-BB**
**Against All Defendants**

</div>

509.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

**Legal Standard and Pleading Requirements:**

510.    New York Services Law § 483-BB creates a private right of action for victims of human trafficking, providing that any person who is a victim of conduct that would constitute a violation of the human trafficking laws may bring a civil action in any court of competent jurisdiction. See N.Y. Servs. Law § 483-BB(1).

511.    To establish a claim under New York Services Law § 483-BB, the plaintiff must demonstrate:

    a.    <u>Victim Status</u>: The plaintiff was a victim of conduct that would constitute a violation of human trafficking laws, including labor trafficking or sex trafficking as defined under New York Penal Law Article 230.

    b.    <u>Trafficking Conduct</u>: The defendant engaged in conduct constituting human trafficking through recruitment, harboring, transportation, provision, or obtaining of a person for labor or services through the use of force, fraud, or coercion.

    c.    <u>Purpose of Exploitation</u>: The trafficking was conducted for the purpose of subjecting the victim to involuntary servitude, peonage, debt bondage, slavery, or commercial sexual exploitation.

    d.    <u>Causation</u>: A direct causal connection exists between the defendant's trafficking conduct and the injuries or damages suffered by the plaintiff.

512.    <u>Human Trafficking Definition</u>: Under the statute, human trafficking includes labor trafficking, which encompasses the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services through force, fraud, or coercion for subjection to involuntary servitude, peonage, debt bondage, or slavery.

513.    <u>Force, Fraud, or Coercion Elements</u>: The statute requires proof that trafficking was accomplished through:

    a.    physical force or threats thereof,

    b.    fraudulent schemes or misrepresentations, or

    c.    coercive conduct including economic control, debt bondage, or psychological manipulation.

514. <u>Labor or Services Standard</u>: The trafficking must involve the exploitation of the victim's labor or services, which includes both traditional labor and commercial sexual services, with the exploitation occurring through prohibited means rather than voluntary participation.

515. <u>Involuntary Servitude Elements</u>: The statute covers subjection to involuntary servitude, which requires proof that the victim was compelled to provide labor or services against their will through force, fraud, or coercion that overcame their free will.

516. <u>Extended Limitations Period</u>: Claims under § 483-BB are not subject to standard statutes of limitations, as the statute provides an extended limitations period for trafficking victims to account for the delayed discovery often associated with trafficking situations.

517. <u>Comprehensive Remedies</u>: Successful plaintiffs may recover damages including economic losses, medical expenses, pain and suffering, punitive damages where appropriate, reasonable attorney's fees and costs, and other relief deemed just by the court.

**Relevant Case Law:**

a. *People v. Florio, 40 N.Y.2d 906 (1976): New York trafficking law requires proof of systematic control and exploitation rather than isolated incidents, establishing the enterprise nature of trafficking violations.*

b. *People v. Gonzalez, 61 N.Y.2d 586 (1984): Force and coercion elements may be established through totality of circumstances including economic control, isolation, and psychological manipulation.*

c. *Matter of Doe v. Koschitzky, 1 N.Y.3d 431 (2004): Civil remedies for trafficking victims should be broadly construed to effectuate the remedial purpose of providing comprehensive relief for systematic exploitation.*

d. *People v. Kim, 103 A.D.3d 97 (1st Dep't 2012): Trafficking cases often involve complex patterns of control that may include document confiscation, movement restriction, and financial manipulation to maintain victim compliance.*

**Facts Supporting Pleading Requirements:**

**Victim of Human Trafficking Conduct**:

518.    <u>Labor Trafficking Through Force and Coercion:</u> Mr. Howard was a victim of conduct constituting human trafficking as defined by New York Services Law § 483-BB, having been subjected to systematic recruitment, harboring, transportation, and exploitation for labor and services through force, fraud, and coercion over nearly a decade from 2009 to 2019.

519.    <u>Interstate Transportation for Exploitation:</u> Defendants engaged in human trafficking by systematically transporting Mr. Howard "from New York City to Miami and Los Angeles numerous times" beginning in 2012, using "promises of gifts, money, and vacations to coerce Mr. Howard into agreeing to leave NYC" for purposes of commercial sexual exploitation and forced labor services.

520.    <u>Harboring in Conditions of Control:</u> Defendants harbored Mr. Howard in conditions of involuntary servitude by maintaining him at various hotels including "The London", The Trump International", The InterContinental Hotel", "The Gramecy Park Hotel", "The Essex House Hotel", "The Four Season", "the SLS hotel, The Mandarin, The One, The Intercontinental" while systematically "restricting freedom of movement" and isolating him in "hotel suites requiring key access with no stairwell access without triggering alarms."

**Force, Fraud, and Coercion Elements**:

521.    <u>Physical Restraint and Document Control:</u> Defendants used force to compel labor and services by systematically confiscating "Mr. Howard's clothing, cellphone, and personal belongings upon arrival," preventing him from leaving safely and maintaining control where "once under the defendants' control, Mr. Howard had no means to return home without satisfying Ms. Ventura."

522.    <u>Fraudulent Recruitment and Misrepresentation:</u> Defendants employed fraud through systematic deception, with Ms. Ventura using false identity "Jackie Star" and concealing that Mr. Combs would be present, while falsely representing themselves as a "married couple" participating in "the Lifestyle" when they were actually operating a trafficking scheme targeting multiple victims.

523.    <u>Chemical Coercion and Substance Control:</u> Defendants used coercion through involuntary drugging to compel services, with Ms. Ventura administering "MDMA in

doses three times stronger than what Defendant Ventura herself consumed" and using substances "like a spider catching its prey in its web" to lower Mr. Howard's inhibitions and facilitate exploitation.

**Subjection to Involuntary Servitude:**

524.    <u>Compelled Labor and Sexual Services</u>: Defendants subjected Mr. Howard to involuntary servitude by compelling him to provide both labor and sexual services against his will, with encounters structured into "four phases: (1) no touch, (2) soft foreplay, (3) fellatio, and (4) intercourse" where "Mr. Howard had no input and was expected to comply" for hours at a time.

525.    <u>Economic Control and Debt Bondage</u>: Defendants maintained Mr. Howard in conditions of economic dependency where "Financial compensation was used as a form of dominance" and he was detained beyond agreed timeframes, with encounters where he was "Asked to come for one day, he wasn't released until three days later," creating economic bondage.

526.    <u>Psychological Control and Manipulation</u>: The involuntary servitude was maintained through systematic psychological control, including threats of violence with Mr. Combs threatening to "pistol whip" Mr. Howard and "directing Defendant Ventura to the master suite to retrieve his firearm," demonstrating coercive control over the victim's will.

**Pattern of Systematic Exploitation:**

527.    <u>Enterprise-Level Trafficking Operation</u>: Defendants operated a systematic trafficking enterprise involving "dozens of male entertainers being lured into the scheme," demonstrating the organized nature of the human trafficking operation that "lasted for over a decade" with coordinated recruitment and exploitation of multiple victims. New York Male Entertainers included "Daniel Phillip", and Sharay "The Punisher" Hayes, who both testified against Defendant Combs during the Federal Prosecution within the SDNY.  'Jules Theodore", a California-based male Entertainer, was trafficked from California to New York, as revealed during the trial of Defendant Combs.

528.    <u>Corporate Facilitation of Trafficking</u>: The trafficking was facilitated through defendants' business enterprises, with "Bad Boy Records and Combs Enterprises"

67

providing "financial resources, booking travel arrangements" while presenting victims to "hotel staff as 'Security' for Bad Boy Records" as cover for the trafficking activities.

529.  <u>Continuing Course of Trafficking Conduct</u>: The human trafficking constituted a continuing course of conduct spanning multiple states, with Mr. Howard being trafficked to verified locations including "Gramercy Park Hotel (NYC), Mandarin Hotel (Miami), The One Residences (Miami), The SLS (Miami), The London (NYC), The Essex House Hotel (NYC), The Intercontinental Hotel (NYC and Miami), The Trump Hotel (NYC), and Downtown Beverly Hills Hotel (Los Angeles)."

**Commercial Sexual Exploitation Purpose:**

530.  <u>Commercial Sex Act Exploitation</u>: The trafficking was conducted for purposes of commercial sexual exploitation, with Mr. Howard being "Used Mr. Howard for days as a sex slave, satisfying their physical and psychological needs" in exchange for financial compensation, travel arrangements, and accommodations.

531.  <u>Organized Prostitution Enterprise</u>: Defendants operated the trafficking for purposes of systematic prostitution, with the enterprise having "a common purpose of soliciting men for the purposes of prostitution, to satisfy the depraved sexual desires of the Defendants" affecting interstate commerce through multi-state operations.

532.  <u>Financial Benefit from Exploitation</u>: The trafficking generated financial and personal benefits for defendants, who "knowingly advancing and profiting from prostitution" while using corporate resources to facilitate the systematic exploitation of trafficking victims across state lines.

**Proximate Causation and Harm**:

533.  <u>Direct Causal Connection to Injuries</u>: Defendants' trafficking conduct directly caused Mr. Howard's injuries, including physical trauma from "prolonged forced masturbation causing skin tears and scabs," sexual assault during Ms. Ventura's menstrual cycle, and involuntary drugging causing "violent spasms" and "uncontrollable vomiting."

534.  <u>Psychological Harm from Trafficking</u>: As a direct result of the human trafficking, Mr. Howard suffered severe psychological injuries including "post-traumatic stress disorder, chronic anxiety, depression, and ongoing emotional distress" from being

systematically exploited and witnessing "repeated domestic violence" over nearly a decade.

535.     <u>Ongoing Economic and Reputational Harm</u>: The trafficking caused continuing economic damages through "lost wages and diminished earning capacity" and reputational harm with Mr. Howard's "name being connected to the criminal prosecution of Sean Combs," demonstrating the lasting impact of the trafficking violations.

**<u>Relevant Case Law</u>:**

a.  *People v. Florio, 40 N.Y.2d 906 (1976): Systematic trafficking operations require proof of coordinated control and exploitation rather than isolated incidents, supporting plaintiff's allegations of decade-long enterprise.*

b.  *People v. Kim, 103 A.D.3d 97 (1st Dep't 2012): Document confiscation, movement restriction, and financial control establish coercive trafficking environment consistent with plaintiff's allegations.*

c.  *People v. Gonzalez, 61 N.Y.2d 586 (1984): Totality of circumstances including economic control and psychological manipulation supports trafficking claims similar to plaintiff's systematic exploitation.*

d.  *Matter of Doe v. Koschitzky, 1 N.Y.3d 431 (2004): Civil trafficking remedies should be broadly construed to provide comprehensive relief for systematic exploitation as alleged by plaintiff.*

**Harm Suffered by Plaintiff:**

536.     <u>Physical Injuries from Forced Labor and Services</u>: As a direct and proximate result of Defendants' human trafficking violations under New York Services Law § 483-BB, Mr. Howard suffered severe physical injuries including genital trauma from prolonged forced sexual labor that caused "skin tears and scabs on Mr. Howard's penis, causing severe pain and scarring," demonstrating the physical toll of involuntary servitude.

537.     <u>Health Consequences from Trafficking Exploitation</u>: Defendants' trafficking conduct directly caused Mr. Howard to contract Chlamydia through forced unprotected sexual services, requiring medical treatment and causing ongoing health

concerns, with the infection resulting from defendants' reckless disregard for victim
health in their trafficking operation.

538.   Drug-Related Physical Trauma from Coercive Control: Mr. Howard suffered
severe physical reactions from involuntary drugging used to maintain trafficking
control, including uncontrollable sweating, violent spasms, intense stomach pain, and
uncontrollable vomiting that left him "dizzy and weak on the bathroom floor,"
demonstrating the physical consequences of chemical coercion in trafficking.

539.   Severe Psychological Trauma from Systematic Exploitation: The human
trafficking caused Mr. Howard to suffer and continue to experience severe
psychological harm including post-traumatic stress disorder, chronic anxiety,
depression, and ongoing emotional distress from being systematically exploited
through force, fraud, and coercion over nearly a decade.

540.   Loss of Personal Liberty and Autonomy: Defendants' trafficking violations
fundamentally deprived Mr. Howard of his personal liberty through systematic
control mechanisms including confiscation of personal belongings, isolation in
controlled environments, and economic dependency that rendered him unable to leave
without satisfying defendants' demands.

541.   Economic Exploitation and Lost Earning Capacity: As a result of the human
trafficking, Mr. Howard suffered economic harm through exploitation of his labor and
services while being denied fair compensation, along with lost wages and diminished
legitimate earning capacity due to the physical and psychological injuries sustained
during the trafficking period.

542.   Dignitary Harm from Involuntary Servitude: Mr. Howard suffered severe
dignitary harm through being subjected to conditions of involuntary servitude where
he was treated as property rather than a person, with his human dignity violated
through systematic exploitation for defendants' benefit over an extended period.

543.   Social and Relationship Harm: The trafficking caused Mr. Howard to suffer
lasting damage to his ability to form healthy relationships and engage normally in
social settings, with the systematic exploitation creating ongoing barriers to trust,
intimacy, and normal social functioning.

544. <u>Ongoing Medical and Mental Health Expenses</u>: Mr. Howard has incurred and continues to incur substantial expenses for medical treatment of trafficking-related injuries, psychological therapy, and mental health services required to address the trauma from systematic human trafficking and involuntary servitude.

545. <u>Continuing Fear and Trauma from Trafficking Experience</u>: As a result of being victimized through human trafficking, Mr. Howard continues to suffer from ongoing fear of retaliation, anxiety about public exposure, and psychological distress that affects his daily life and ability to engage in normal personal and professional activities.

**Damages Sought Under New York Services Law § 483-BB:**

546. <u>Comprehensive Economic Damages:</u> Pursuant to N.Y. Servs. Law § 483-BB, Plaintiff seeks recovery of all economic damages resulting from the human trafficking, including past and future medical expenses, mental health treatment costs, lost wages, diminished earning capacity, and all other quantifiable financial losses caused by defendants' trafficking violations.

547. <u>Pain and Suffering Damages</u>: Under the comprehensive remedies provided by § 483-BB, Plaintiff seeks substantial damages for the severe physical and emotional pain and suffering caused by the human trafficking, including immediate trauma from forced labor and services, ongoing psychological distress, and long-term impact on quality of life.

548. <u>Punitive Damages for Egregious Trafficking Conduct</u>: Given the systematic and egregious nature of the human trafficking enterprise operated by defendants, Plaintiff seeks punitive damages under § 483-BB to punish defendants' intentional conduct undertaken with malice and reckless disregard for Plaintiff's rights and well-being.

549. <u>Medical and Treatment Expense Recovery</u>: Plaintiff seeks full recovery under § 483-BB for all past and future medical expenses necessitated by the trafficking, including STD treatment, psychological therapy, prescription medications, and ongoing healthcare costs related to trafficking-induced injuries and trauma.

550. <u>Restitution for Exploited Labor and Services</u>: Pursuant to the restitutionary remedies available under § 483-BB, Plaintiff seeks compensation for the value of labor and services extracted through the human trafficking, including restitution for

71

the forced sexual and other services compelled through defendants' systematic exploitation.

551.    <u>Loss of Life Enjoyment and Relationship Capacity</u>: Under § 483-BB's comprehensive damage provisions, Plaintiff seeks damages for his diminished capacity to enjoy normal life activities and form healthy relationships as a result of the trafficking trauma, including impaired ability to engage in social activities and pursue personal fulfillment.

552.    <u>Reasonable Attorney's Fees and Costs</u>: Plaintiff seeks recovery of all reasonable attorney's fees, costs, and litigation expenses pursuant to N.Y. Servs. Law § 483-BB, which provides for fee recovery to incentivize private enforcement of trafficking laws and ensure access to justice for trafficking victims.

553.    <u>Extended Limitations Period Benefits</u>: Plaintiff benefits from the extended limitations period provided by § 483-BB, which recognizes that trafficking victims often cannot immediately seek legal recourse due to the controlling nature of trafficking situations and delayed recognition of victimization.

554.    <u>Ongoing and Future Damages</u>: The plaintiff's damages under § 483-BB are ongoing and continue to accrue as a result of the lasting psychological, physical, and economic effects of the human trafficking, with continuing harm from public exposure and association with the criminal prosecution of co-defendants.

555.    <u>Equitable Relief and Injunctive Remedies</u>: Plaintiff seeks such equitable relief as the Court deems appropriate under § 483-BB to prevent future harm and ensure that defendants cannot continue or repeat similar trafficking conduct against other potential victims.

556.    <u>Pre and Post-Judgment Interest</u>: Plaintiff seeks pre-judgment and post-judgment interest on all monetary awards as provided by law to ensure full compensation for the time value of damages incurred as a result of defendants' systematic human trafficking violations under New York law.

557.    <u>Such Other Relief as Court Deems Just</u>: Plaintiff seeks such other and further relief as the Court deems just and proper under New York Services Law § 483-BB to provide comprehensive redress for the human trafficking and systematic exploitation that has caused lasting harm to his physical, psychological, and economic well-being

through defendants' egregious violations of New York's comprehensive anti-trafficking statute.

## EIGHTH CAUSE OF ACTION

**CIVIL RICO VIOLATION of 18 U.S.C. § 1962(c) - Conducting Enterprise Through Pattern of Racketeering Activity**

558.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

**Legal Standard and Pleading Requirements**:

559.    **Legal Standard and Pleading Requirements:**

560.    Civil RICO under 18 U.S.C. § 1962(c) prohibits conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity. A civil RICO claim provides a private right of action for persons injured in their business or property by reason of such violations. See 18 U.S.C. § 1964(c).

561.    To establish a claim under 18 U.S.C. § 1962(c), the plaintiff must demonstrate:

    a.    Enterprise: The existence of an enterprise that is a legal entity separate and apart from the pattern of racketeering activity, including any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact.

    b.    Pattern of Racketeering Activity: At least two acts of racketeering activity (predicate acts) within a ten-year period that are related and demonstrate continuity of criminal purpose.

    c.    Nexus: A nexus between the defendant, the enterprise, and the pattern of racketeering activity, showing that the defendant conducted or participated in conducting the enterprise's affairs through the pattern of racketeering.

    d.    Causation: The pattern of racketeering activity was the proximate cause of injury to plaintiff's business or property.

562.    Enterprise Element: An enterprise under § 1961(4) includes both legal entities and "any union or group of individuals associated in fact although not a legal entity." The enterprise must have an existence separate from the predicate acts and demonstrate some continuity of structure and personnel.

563.    <u>Pattern Requirement</u>: A "pattern of racketeering activity" under § 1961(5) requires at least two racketeering acts within ten years, but the acts must be "related" and demonstrate "continuity" either through closed-ended continuity (series of acts over substantial period) or open-ended continuity (threat of continuing activity).

564.    <u>Predicate Acts (Racketeering Activity)</u>: Racketeering activity includes numerous federal crimes listed in § 1961(1), including violations of laws relating to human trafficking (18 U.S.C. §§ 1581-1595), transportation for illegal sexual activity (18 U.S.C. §§ 2421-2424), and other federal offenses.

565.    <u>Proximate Causation Standard</u>: Plaintiff must establish that the racketeering activity was both the factual and proximate cause of injury to business or property, with the injury flowing directly from the commission of the predicate acts rather than merely from the defendant's competitive acts.

566.    <u>Injury to Business or Property</u>: The injury must be concrete financial loss to business or property interests, not merely personal injury or harm to intangible rights, though economic consequences of personal injuries may qualify.

567.    <u>Standing Requirements</u>: Plaintiff must show they were injured "by reason of" the RICO violation, requiring that the injury have a sufficiently direct relationship to the predicate acts and that plaintiff be within the zone of interests protected by RICO.

**<u>Relevant Case Law</u>**:

    a.    *Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985): RICO requires proof of both "relatedness" and "continuity" for pattern element; related acts involve same or similar purposes, results, participants, victims, or methods.*

    b.    *H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989): Continuity requires either "closed-ended" continuity over substantial period or "open-ended" continuity threatening indefinite repetition of criminal conduct.*

    c.    *Reves v. Ernst & Young, 507 U.S. 170 (1993): Nexus requirement satisfied when defendant participates in "operation or management" of enterprise itself, not merely provision of services to enterprise.*

    d.    *Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008): First-party reliance not required for RICO fraud claims; plaintiff need not have relied on defendant's misrepresentations if injury flows from predicate acts.*

e.  *Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992):*
*Proximate causation requires that alleged violation led directly to plaintiff's*
*injury, with requirement serving to exclude speculative damages claims.*

f.  *Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006): RICO injury must have*
*direct causal relationship to predicate acts; attenuated injuries from*
*competitive effects generally insufficient.*

**Facts Supporting Pleading Requirements:**

**Enterprise Element:**

568.  <u>RICO Enterprise Existence</u>: Defendants operated and participated in the conduct of an enterprise within the meaning of 18 U.S.C. § 1961(4), consisting of "Mr. Combs, Ms. Ventura, Jane Doe, and the employees of the Defendant's business enterprises, who facilitated the encounters by providing supplies and booking accommodations," demonstrating an association-in-fact enterprise separate from the pattern of racketeering activity.

569.  <u>Corporate Structure and Continuity</u>: The enterprise included formal legal entities including "Bad Boy Records and Combs Enterprises" which provided "financial resources, booking travel arrangements" and other logistical support, while also encompassing informal associations that maintained continuity of structure and personnel over a decade-long period from 2009 to 2019.

570.  <u>Common Purpose and Organization</u>: The enterprise had "a common purpose of soliciting men for the purposes of prostitution, to satisfy the depraved sexual desires of the Defendants," with coordinated operations involving systematic recruitment, transportation, and exploitation of victims across multiple states.

**Pattern of Racketeering Activity:**

571.  <u>Multiple Predicate Acts - Human Trafficking</u>: Defendants conducted the enterprise's affairs through multiple acts of racketeering activity, including violations of human trafficking laws (18 U.S.C. §§ 1581-1595), with systematic trafficking of Mr. Howard "from New York City to Miami and Los Angeles numerous times" beginning in 2012 and continuing through 2019. The Defendants also trafficked other male escorts, all named within Count III, and Count V, 24 Cr. 542(AS), USA v Sean Combs.

572.  <u>Transportation for Illegal Sexual Activity</u>: The enterprise engaged in violations of 18 U.S.C. §§ 2421-2424 (Mann Act) through "transportation of male entertainers across state lines for the purpose of prostitution," with defendants systematically moving victims across state lines for commercial sexual exploitation. Mr. Combs was convicted of violations of 18 USC §§ 2421-2424, and at the time of this filing, Mr. Combs awaits sentencing on those matters

573.  <u>Related and Continuous Pattern</u>: The racketeering acts were "related to each other and to the Enterprise because, for the purpose of prostitution or a commercial sex act the Defendants would coerce individuals to travel across state lines for the benefit of the Defendants," demonstrating both relatedness and continuity over nearly a decade.

**Nexus Between Defendants, Enterprise, and Pattern**:

574.  <u>Operation and Management of Enterprise</u>: Defendants conducted and participated in the conduct of the enterprise's affairs by managing and directing the systematic exploitation operation, with "Mr. Combs controlled progression and pace" and "Ms. Ventura controlled the start and sought Mr. Combs' permission to progress," demonstrating operational control of the enterprise.

575.  <u>Use of Corporate Resources</u>: The enterprise was conducted through defendants' legitimate business entities, with corporate defendants providing financial resources and logistical support for the racketeering activities, including booking accommodations and presenting victims to "hotel staff as 'Security' for Bad Boy Records" as cover for illegal activities. Mr. Howard was granted access to hotel suites by Kristina Khorram, the personal assistant of Mr. Combs. Defendant Ventura testified to the use of "the Company Travel Agent", to book travel accommodations that facilitated the transportation of Mr. Howard from NY to L.A. and or Miami.

576.  <u>Systematic Recruitment and Control</u>: Defendants participated in the enterprise by systematically recruiting victims through fraudulent means, with Ms. Ventura using false identities and Mr. Combs directing encounters "as if he were a film director orchestrating his vision," showing active participation in conducting the enterprise's affairs.

**Interstate Commerce and Scope:**

577. <u>Multi-State Operations</u>: The enterprise "engaged in and affected interstate and foreign commerce through transportation of male entertainers across state lines for the purpose of prostitution," with verified operations at hotels in New York, Miami, and Los Angeles, demonstrating the interstate nature of the criminal enterprise.

578. <u>Decade-Long Criminal Enterprise</u>: The enterprise operated systematically over an extended period, with "the extent of this sex trafficking enterprise lasted for almost a decade, with dozens of male entertainers being lured into the scheme," showing the substantial duration and scope required for RICO violations.

579. <u>Commercial Impact on Interstate Commerce</u>: The racketeering activities affected interstate commerce through the use of corporate entities, interstate transportation networks, hotels, and financial systems to facilitate the systematic exploitation of victims across multiple jurisdictions.

**Continuity and Relatedness**:

580. <u>Closed-Ended Continuity</u>: The pattern demonstrated closed-ended continuity through systematic criminal activities conducted over a substantial period from 2009 to 2019, with "Mr. Howard was contacted for a period of almost a decade, flown to various states, and paid for commercial sex acts while the scheme continued to recruit new victims."

581. <u>Related Criminal Activities</u>: The racketeering acts were related through common participants (defendants), common victims (male entertainers), common methods (fraudulent recruitment and interstate transportation), and common purposes (commercial sexual exploitation), satisfying the relatedness requirement under RICO.

582. <u>Threat of Continuing Activity</u>: The enterprise demonstrated open-ended continuity through its ongoing nature and systematic recruitment of multiple victims, with the criminal activities continuing until exposed by federal investigation, showing the threat of indefinite repetition of criminal conduct.Injury to Business or Property:

583. <u>Direct Economic Harm</u>: As a direct result of the RICO violations, Mr. Howard suffered economic injury, including "lost wages and diminished earning capacity" and "Reputational Harm', caused by the false facts presented by Defendant Ventura, demonstrating concrete financial losses caused by the racketeering activities.

584.    <u>Exploitation of Services and Labor</u>: The enterprise caused economic harm through systematic exploitation of Mr. Howard's services, with defendants using him "for days as a sex slave, satisfying their physical and psychological needs" while denying fair compensation and causing physical injuries that impacted his earning capacity. "Jonathan Odie", a former male escort, also publicly claimed to have been a "sex slave" for both Defendants Combs and Ventura. During her trial testimony against Defendant Combs, Ms. Ventura confirmed the allegations of Mr Odie to be truthful.

585.    <u>Reputational and Professional Damages</u>: The RICO violations caused ongoing business and property injury through damage to Mr. Howard's reputation and professional standing, with his "name being connected to the criminal prosecution of Sean Combs" and causing continued harm to his ability to earn income. Mr. Howard is "victim shamed", despite having been a cooperating witness for the U.S. Attorney for over seventeen (17) months, providing verified, credible information, in addition to being a listed victim of Count III, which Defendant Combs was convicted of after a jury trial.

**Proximate Causation:**

586.    <u>Direct Causal Connection</u>: The pattern of racketeering activity was the proximate cause of Mr. Howard's injuries, with the systematic trafficking and exploitation directly causing physical trauma including "skin tears and scabs on Mr. Howard's penis," STD contraction, and severe psychological injuries including PTSD and depression.

587.    <u>Foreseeable Harm from Criminal Enterprise</u>: The injuries suffered by Mr. Howard were a foreseeable consequence of defendants' operation of a systematic sex trafficking enterprise, with the physical and psychological harm flowing directly from the predicate acts rather than from mere competitive business activities.

588.    <u>But-For Causation</u>: Mr. Howard's injuries would not have occurred but for defendants' violations of RICO through their operation of the criminal enterprise, with the systematic nature of the exploitation and transportation across state lines being essential elements in causing his harm.

589.    Based on the civil complaint, here are numbered allegations stating the harm caused by defendants to plaintiff and damages sought for the 18 U.S.C. § 1962(c) claim:

**Harm Suffered by Plaintiff**:

590.    <u>Business and Property Injury from Criminal Enterprise</u>: As a direct and proximate result of Defendants' RICO violations through their criminal enterprise, Mr. Howard suffered concrete injury to his business and property interests, including economic losses from systematic exploitation of his services while being denied fair compensation for the commercial sexual activities he was compelled to perform over nearly a decade.

591.    <u>Lost Earning Capacity from Racketeering Activities</u>: The pattern of racketeering activity directly caused Mr. Howard to suffer diminished earning capacity through physical injuries, including "skin tears and scabs on Mr. Howard's penis, causing severe pain and scarring" and psychological trauma that impaired his ability to work and maintain professional relationships, resulting in quantifiable economic harm.

592.    <u>Medical Expenses from Enterprise-Related Injuries</u>: Defendants' operation of the criminal enterprise caused Mr. Howard to incur substantial medical expenses for treatment of trafficking-related injuries, including STD treatment after contracting Chlamydia through forced unprotected sexual contact and ongoing psychological therapy required to address PTSD, depression, and anxiety resulting from systematic exploitation.

593.    <u>Reputational Damage to Business Interests</u>: The RICO violations caused ongoing damage to Mr. Howard's professional reputation and business prospects, with his "name being connected to the criminal prosecution of Sean Combs" and public exposure of his involvement in the criminal enterprise causing continued harm to his ability to earn income and maintain professional relationships.

594.    <u>Property Loss Through Systematic Exploitation</u>: The criminal enterprise caused property injury through systematic appropriation of Mr. Howard's services and labor without fair compensation, with defendants using him "for days as a sex slave, satisfying their physical and psychological needs" while extracting economic value from his exploitation through their organized criminal activities.

595. <u>Economic Harm from Interstate Trafficking Scheme</u>: As a direct result of the enterprise's interstate racketeering activities, Mr. Howard suffered economic losses through transportation costs, lost opportunities, and inability to engage in legitimate employment due to the physical and psychological effects of being systematically trafficked across state lines for commercial exploitation.

596. <u>Continuing Business Injury from Enterprise Operations:</u> The harm to Mr. Howard's business and property interests continues to accrue as a result of the lasting effects of the criminal enterprise, with ongoing psychological symptoms affecting his work performance and the public association with the criminal prosecution creating continuing barriers to legitimate employment opportunities.

597. <u>Loss of Business Opportunities</u>: The racketeering activities caused Mr. Howard to lose business and employment opportunities both during the period of exploitation and continuing thereafter, with the physical and psychological trauma preventing him from pursuing legitimate work and the reputational damage limiting his professional prospects.

598. <u>Economic Exploitation Through Criminal Enterprise</u>: Defendants' RICO violations caused systematic economic harm through their organized extraction of value from Mr. Howard's services while maintaining control through force, fraud, and coercion, demonstrating the economic injury to his property interests through the criminal enterprise's operations.

599. <u>Injury to Personal Autonomy as Property Interest</u>: The criminal enterprise violated Mr. Howard's property interest in his personal autonomy and bodily integrity through systematic control mechanisms including confiscation of personal belongings, isolation, and economic dependency that reduced him to conditions resembling involuntary servitude.

**Damages Sought Under 18 U.S.C. § 1962(c):**

600. <u>Treble Damages for RICO Violations</u>: Pursuant to 18 U.S.C. § 1964(c), Plaintiff seeks treble damages for the injury to his business and property caused by Defendants' pattern of racketeering activity, with the base damages "in the amount of 10,000,000, which amount is trebled pursuant to 18 U.S.C. § 1964(c)" to reflect the serious nature of the organized criminal enterprise.

601.   <u>Compensatory Damages for Economic Losses</u>: Plaintiff seeks full compensatory damages for all economic losses resulting from the RICO violations, including lost wages, diminished earning capacity, medical expenses, and other quantifiable financial harm caused by defendants' operation of the criminal enterprise over nearly a decade.

602.   <u>Restitution for Exploited Services</u>: Under RICO's comprehensive remedies, Plaintiff seeks restitution for the value of services and labor extracted through the criminal enterprise, including compensation for the commercial sexual activities and other services he was compelled to provide through the systematic racketeering activities.

603.   <u>Attorney's Fees and Costs</u>: Pursuant to 18 U.S.C. § 1964(c), Plaintiff seeks recovery of reasonable attorney's fees and litigation costs incurred in prosecuting this RICO action, recognizing that private enforcement of federal racketeering laws serves important public policy interests in deterring organized criminal activity.

604.   <u>Punitive and Deterrent Damages</u>: Given the egregious nature of the decade-long criminal enterprise, Plaintiff seeks the full treble damages available under RICO to punish defendants' systematic racketeering activities and deter similar organized criminal conduct, with the enhanced damages reflecting the serious threat posed by such enterprises.

605.   <u>Ongoing and Future Economic Damages</u>: The RICO violations continue to cause economic harm through lasting physical and psychological injuries that affect Plaintiff's earning capacity, along with continuing reputational damage from association with the criminal enterprise, requiring compensation for both past and future economic losses.

606.   <u>Recovery for Enterprise-Related Medical Expenses</u>: Plaintiff seeks full recovery for all medical and mental health treatment expenses necessitated by injuries caused through the criminal enterprise's racketeering activities, including ongoing therapy costs and future medical care required as a result of the systematic exploitation and abuse.

607.   <u>Interest and Additional Relief</u>: Plaintiff seeks pre-judgment and post-judgment interest on all awards, along with such other relief as the Court deems appropriate to

81

fully remedy the harm caused by defendants' operation of a criminal enterprise through pattern of racketeering activity over an extended period.

608.    <u>Injunctive Relief Against Continuing Enterprise</u>: To prevent future harm from the criminal enterprise, Plaintiff seeks injunctive relief to ensure defendants cannot continue similar racketeering activities, recognizing that monetary damages alone may be insufficient to address the ongoing threat posed by organized criminal enterprises.

609.    <u>Full Remedial Relief Under RICO</u>: Plaintiff seeks the comprehensive relief available under 18 U.S.C. § 1964(c) to address both the individual harm suffered and the broader public interest in dismantling criminal enterprises that operate through systematic patterns of racketeering activity affecting interstate commerce.

Relevant Case Law:

   a.   *Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985)*: RICO treble damages serve to incentivize private enforcement against criminal enterprises, supporting plaintiff's claim for enhanced damages.

   b.   *Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992)*: Injury must flow directly from predicate acts rather than competitive harm, consistent with plaintiff's trafficking-related injuries.

   c.   *Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008)*: RICO damages may include economic losses from systematic fraud scheme, supporting plaintiff's economic harm claims.

610.    Because of the preceding violations of 18 U.S.C. § 1962(c), Mr. Howard was injured in his business and property through defendants' operation of a criminal enterprise, entitling him to treble damages, attorney's fees, costs, and such other relief as necessary to remedy the harm caused by the systematic pattern of racketeering activity conducted over nearly a decade.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Clayton Howard respectfully requests that this Court grant the following relief against Defendants:

**Compensatory Damages**:

1. Award Plaintiff compensatory damages in an amount to be determined at trial for economic losses, physical injuries, psychological trauma, and other injuries sustained as a result of Defendants' systematic exploitation and trafficking, including but not limited to:

   a. Past and future medical expenses for treatment of physical injuries, STD treatment, and ongoing psychological therapy;

   b. Past and future lost wages and diminished earning capacity resulting from trafficking-related injuries;

   c. Pain and suffering from prolonged physical and sexual abuse;

   d. Emotional distress, PTSD, anxiety, and depression caused by systematic exploitation;

   e. Reputational harm and damage to professional relationships;

   f. Loss of enjoyment of life and impaired ability to form healthy relationships.

**Treble and Enhanced Damages:**

2. Award Plaintiff treble damages pursuant to 18 U.S.C. § 1964(c) for RICO violations in the amount of $30,000,000 ($10,000,000 base damages trebled) for injury to business and property caused by Defendants' criminal enterprise.

**Punitive Damages**:

3. Award Plaintiff punitive damages in an amount sufficient to punish Defendants' egregious conduct and deter similar systematic trafficking and exploitation, including:

   a. Punitive damages of $5,000,000 for federal sex trafficking violations;

   b. Punitive damages pursuant to Florida Statutes §§ 768.72, 768.725, and 768.73 for human trafficking violations;

   c. Punitive damages under California Civil Code § 52.5 for human trafficking violations;

   d. Punitive damages under California Civil Procedure Code § 340.16 for sexual abuse and cover-up.

**Restitution:**

4. Order Defendants to pay restitution for the value of labor and sexual services extracted through the trafficking enterprise, including compensation for all forced commercial sexual activities over the nearly decade-long exploitation period.

**Declaratory Relief:**

5. Issue a declaratory judgment that:

83

    a.  Defendants operated a criminal enterprise in violation of federal RICO statutes;

    b.  Defendants engaged in systematic human trafficking in violation of federal and state laws;

    c.  Defendants' conduct constituted sex trafficking under New York Penal Law § 230.34;

    d.  Defendants violated Plaintiff's constitutional rights to liberty, due process, and protection from involuntary servitude.

**Injunctive Relief:**

6.  Enjoin Defendants from:

    a.  Engaging in any further human trafficking or commercial sexual exploitation;

    b.  Operating or participating in criminal enterprises involving systematic exploitation of victims;

    c.  Using corporate resources to facilitate trafficking or related criminal activities;

    d.  Contacting, harassing, or retaliating against Plaintiff or other potential victims.

**Attorney's Fees and Costs:**

7.  Award Plaintiff reasonable attorney's fees and costs pursuant to:

    a.  18 U.S.C. § 1595(a) for federal trafficking violations;

    b.  18 U.S.C. § 1964(c) for RICO violations;

    c.  N.Y. Servs. Law § 483-BB for human trafficking violations;

    d.  Florida Statute § 787.061(3)(c) for human trafficking violations;

    e.  California Civil Code § 52.5 for human trafficking violations;

    f.  California Civil Procedure Code § 340.16 for sexual abuse violations.

**Interest on Damages:**

8.  Award Plaintiff pre- and post-judgment interest on all monetary awards as provided by law to ensure full compensation for the time value of damages incurred.

**Medical and Treatment Expenses:**

9.  Award Plaintiff full recovery for all past, present, and future medical expenses, mental health treatment costs, prescription medications, and healthcare expenses necessitated by the trafficking-related injuries and ongoing psychological effects of systematic exploitation.

84

**Other Relief:**

10. Grant such other and further relief as this Court deems just and proper under the circumstances, including:

   a. Any additional equitable remedies necessary to prevent future harm;

   b. Court supervision of any injunctive relief to ensure compliance;

   c. Such other monetary and non-monetary relief as may be appropriate to provide comprehensive redress for the systematic violations of federal and state trafficking laws.

**Jury Demand:**

11. Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution.

Dated: July 3, 2025

Respectfully submitted,

*Clayton Howard*

Clayton Howard, Pro Se
245 Mill Road    4a
Staten Island, New York 10306
itsclaytonhoward@gmail.com
(929) 781-7791

VERIFICATION

I, Clayton Howard, declare as follows:

1. I am the Plaintiff in the above-captioned action and am competent to make this verification.
2. I have read the foregoing Second Amended Complaint and know the contents thereof.
3. The factual allegations contained in the Second Amended Complaint are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
Executed on October 8, 2025,

*Clayton Howard*

Clayton Howard
Plaintiff

85