Clayton Howard

24 Orchard Street

Carteret, New Jersey 07008

(929)781-7791

itsclaytonhoward@gmail.com

**FILED**

CLERK, U.S. DISTRICT COURT

**3/7/26**

CENTRAL DISTRICT OF CALIFORNIA

BY_____CS_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAYTON HOWARD | Civil Case No:CV25-06031-AH(JPRx) |
| *Plaintiff,* | |
| | |
| v. | **FOURTH AMENDED COMPLAINT** |
| | |
| SEAN COMBS, CASSANDRA VENTURA, | JURY TRIAL DEMAND |
| BAD BOY ENTERTAINMENT, L.L.C., | |
| CEOPCO, L.L.C, | |
| *Defendants,* | |

Plaintiff Clayton Howard (a.k.a "Dave" and "Mr. Howard") hereby alleges, as and for his Complaint against Defendant Sean Combs ("Mr. Combs"), Cassandra Ventura ("Ms. Ventura"), Bad Boy Entertainment, L.L.C., CeOpco, L.L.C. (f/k/a Combs Enterprises, LLC) and together with Mr. Combs, "Defendants") as follows:

### PRELIMINARY STATEMENT

1. Plaintiff Mr. Howard brings this civil action against Defendants Sean Combs, Cassandra Ventura, , Bad Boy Entertainment, and CeOpco, L.L.C, arising from a 10 year period of systematic sexual exploitation, trafficking, and abuse that occurred

1

FOURTH AMENDED COMPLAINT

between approximately 2009 and 2019. This case exposes the darker truth behind the widely publicized narrative surrounding Defendant Ventura's recent civil settlement and the ongoing criminal prosecution of Defendant Combs.

2. Defendant Sean Combs is a prominent rapper and record executive known by his stage names "Puff Daddy," "P. Diddy," or "Diddy," who rose to fame in the early 1990s with his record label Bad Boy Records and is regularly referred to as a hip-hop mogul.

3. Defendant Cassandra Ventura, known professionally as "Cassie," is a singer, actress, and model who gained prominence in the early 2000s with her single "Me and You" and appeared in films including "The Perfect Match" and "Step It Up 2 – The Streets."

4. Defendants maintained a highly publicized romantic relationship from 2007 to 2018, during which both were toxic individuals addicted to opiates and methamphetamines who had no regard for others or the law. Their relationship was characterized by sexually explicit, depraved activity categorized as "swinging," with Defendant Combs harboring a specific fetish for voyeurism. The relationship was abusive, with Defendant Combs frequently physically assaulting Defendant Ventura in response to domestic incidents neither could emotionally control.

**The Misleading Public Narrative**

5. In late 2023, Defendant Ventura filed a civil action against Defendant Combs pursuant to the Gender Motivated Violence Act, alleging that Combs manipulated, abused, and controlled her for over a decade through violent behavior and disturbing demands. She claimed to have spent over a decade trapped in a cycle of abuse, violence, and sex trafficking, including allegations that Combs forced her to engage in sex acts with male sex workers while he masturbated and filmed the encounters. The parties settled this action within 24 hours for twenty million dollars.

6. Subsequently, the Office of the U.S. Attorney for the Southern District of New York arrested and indicted Defendant Combs for sex trafficking and violations of the Mann Act, with the prosecution's foundation based largely on Defendant Ventura's allegations. Defendant Combs currently faces trial on RICO charges.

FOURTH AMENDED COMPLAINT

7. Contrary to the narrative presented in Defendant Ventura's civil complaint and the subsequent criminal prosecution, the truth reveals a far more complex and disturbing reality. Defendant Ventura was not merely a victim forced into sexual encounters with male escorts, but rather an active and engaged participant who willingly manipulated and exploited others, including Plaintiff, to satisfy the sexually depraved desires of Defendant Combs and herself.

8. For more than eight years, Defendants operated a scheme whereby they systematically exploited Plaintiff through manipulation, coercion, controlled substances, and threats of violence to engage in non-consensual sexual activities for their gratification and commercial purposes. Defendant Ventura accomplished this exploitation by concealing her identity and fabricating the narrative that she and Defendant Combs were "married," using this deception to entice men into drug use and sexual encounters.

9. Defendants drugged Plaintiff with controlled substances, including MDMA in doses three times stronger than what Defendant Ventura herself consumed, to lower his inhibitions and facilitate sexual exploitation. Defendant Ventura used these substances strategically, "like a spider catching its prey in its web," to manipulate Plaintiff into unprotected sexual contact designed to please Defendant Combs and prove her devotion to his appetites.

10. Defendant Ventura would command Plaintiff to masturbate for hours while she pleasured herself to climax, visibly satisfying herself at the sight of Plaintiff's anatomy. These extended masturbation sessions often left Plaintiff's penis bruised and swollen, injuries about which he would complain to Defendant Ventura seeking consideration. However, Defendant Ventura showed no mercy, simply demanding compliance while pleasuring herself in a manner she hoped would satisfy Defendant Combs, who derived satisfaction from watching her gratification through his voyeuristic desires.

11. During these encounters, Defendant Combs watched silently in the shadows, directing the activities as if he were a film director orchestrating his vision. Once Defendant Ventura was ready to begin, Defendant Combs regulated her responses and controlled

3

FOURTH AMENDED COMPLAINT

the rate of sexual activity, exercising complete dominance over both Plaintiff and Defendant Ventura in what the couple considered a special shared experience.

12. While Defendant Combs appeared to serve as a "protector" rather than an "oppressor," supporting Defendant Ventura's desires and catering to her with wine and fruit during encounters, his presence was deliberately intimidating as part of his role in protecting his partner from the men they exploited. Threats of violence were implied when Defendant Combs wished to assert control, and during at least one encounter, he threatened to "pistol whip" Plaintiff, directing Defendant Ventura to the master suite to retrieve his firearm.

13. At no time did Defendant Ventura display fear when engaged in or about to engage in sexual encounters. All abuse witnessed by Plaintiff occurred due to domestic complications between the Defendants, including jealousy, ego, and arrogance, aided by extensive drug use and sleep deprivation, which contributed to violent outbursts from Defendant Combs, who consumed far more drugs than Defendant Ventura.

**Sexual Assault and Non-Consensual Recording (2009-2016)**

14. Over the years, Plaintiff was sexually assaulted by Defendant Ventura, who would manipulate and force herself upon Plaintiff during her menstrual cycle against his will. Defendants filmed Plaintiff in compromising encounters without his consent for years, creating recordings that the couple would watch together after the encounters ended and use for mutual masturbation.

15. When Plaintiff confronted Defendant Ventura about the recording and vocalized his desire not to be recorded, she explained that she enjoyed their sexual relationship and provided her reasons for the recordings. Defendant Ventura then opened her MacBook to a previous recording and masturbated to climax in front of Plaintiff while watching an encounter involving the two of them, demonstrating the extent of her manipulation and control.

**Commercial Sex Trafficking and RICO 2012-2019**

16. Although Mr. Combs was recently acquitted on Federal RICO allegations, the RICO enterprise did exist. Prosecutors fumbled when they placed Ms. Ventura and "Jane Doe" as witnesses, attempting to hide their complicity in hopes of a stronger conviction against Defendant Combs.

4

FOURTH AMENDED COMPLAINT

17. The Defendants, through the use of their resources and means, operated a decade-long sex trafficking ring where they manipulated male entertainers into sexual encounters using promises of money and favors.

18. The Defendants, First Mr. Combs and Ms. Ventura; then Mr. Combs and Jane Doe, orchestrated a scheme by which male entertainers would be contacted, misled into believing the Defendants were in monogamous relationships, coerced into alcohol and drug use, and then manipulated into sexual encounters with the female defendant while Mr. Combs watched.

19. The extent of this sex trafficking enterprise lasted for over a decade, with dozens of male entertainers being lured into the scheme by the bait, which was either Ms. Ventura or Jane Doe.

20. For more than five years, Defendants trafficked Plaintiff for purposes of commercial sex, using him as entertainment to satisfy their sexual fetishes and personal ambitions. The couple drugged, manipulated, and traumatized Plaintiff while themselves engaging in a toxic, domestically abusive relationship that often became violent.

21. Defendant Ventura had a specific preference in selecting her companions and chose Plaintiff for eight years over many other available options, as subsequent criminal trial proceedings have revealed. The allegations demonstrate that Defendant Ventura deceived, manipulated, and injured Plaintiff and therefore, should be held accountable alongside Defendant Combs, as the two were partners in the criminal enterprises.

**Obstruction of Justice and Witness Manipulation**

22. Plaintiff's ability to seek timely legal recourse was deliberately frustrated through a coordinated effort involving his former counsel, who communicated with federal prosecutors without Plaintiff's presence. The Plaintiff was advised to remain silent and was manipulated into inaction, with his attorney intentionally delaying action to protect Defendant Ventura's credibility.

23. The Plaintiff was specifically advised that should he file a complaint, he would lose credibility before the court and therefore should refrain from doing so if he wished to do what was right and tell the truth. His counsel deceived, ignored, and misled him regarding the creation of the initial complaint against Defendants and when it would be filed.

FOURTH AMENDED COMPLAINT

24. Despite serving as a compliant witness for the government and providing information that was later corroborated by investigators, thereby validating his credibility and the truthfulness of his statements, federal prosecutors ultimately withheld Plaintiff's testimony despite its corroborative value and his valid allegations against both Defendants.

**Denial of Justice and Present Claims**

25. For many years, Plaintiff has lived with this trauma in silence, forced to endure the psychological and physical consequences with no visible avenue for justice. While Defendant Ventura's allegations have destroyed Defendant Combs's career, she has escaped liability by using allegations of abuse to avoid criminal responsibility for her own actions, thereby denying victims like Plaintiff the justice to which they are entitled.

26. With the opening of legislation that granted survivors a look-back window to seek justice against offenders, Plaintiff learned he had been given a second chance to obtain the justice he deserved. The Plaintiff has sought justice for over a year only to be denied through the manipulation of legal professionals who wished to effect the criminal trial of Sean Combs.

27. Mr. Howard was used and manipulated. Now, tired of the misconduct and incompetence, he has sought action himself and refuses to remain silent any longer in the face of this systematic exploitation, abuse, and attorney misconduct.

28. This action seeks declaratory, injunctive, and monetary relief under federal sex trafficking statutes (18 U.S.C. § 1591 et seq.), the New York Services for Victims of Human Trafficking (N.Y. Servs. Law § 483-BB), the California Trafficking Victims Protection Act (Cal. Civ. Code § 52.5), Civil Rico Violation of 18 U.S.C. § 1962(c),Civil Cause of Action for Human Trafficking (Fla. Stat. § 787.061), Civil Remedy for Human Trafficking (18 U.S.C. § 1595), Sexual Assault pursuant to The California Sexual Abuse and Cover Up Accountability Act (Cal. Civ. Proc. § 340.16), Civil Liability for Violations of New York Penal Law § 230.34 - Sex Trafficking, and CIVIL RICO VIOLATION of 18 U.S.C. § 1962(c) - Conducting Enterprise Through Pattern of Racketeering Activity, for the severe psychological, physical, and dignitary harms Plaintiff suffered during this prolonged period of exploitation and abuse.

6

FOURTH AMENDED COMPLAINT

## JURISDICTION AND VENUE

29.  This Court has jurisdiction pursuant to 28 U.S.C.§§ 1331 and 1343, as this action asserts violations of 18 U.S.C. §1591, et seq., and therefore raises federal questions regarding the deprivation of Plaintiff's rights. The Court has supplemental jurisdiction over the Plaintiff's related claims arising under state and city law pursuant to 28 U.S.C.§ 1367(a).

30. Under 28 U.S.C. §1391(a)(2) and (b), venue is proper in this Court because the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature. Additionally,all Defendants are residents of the State in which the district is located.

## PARTIES

31.  Plaintiff, Clayton Howard (Mr. Howard), is a resident of New Jersey. Beginning in fall 2009, he accepted work as an independent male companion in New York. Under the alias "Dave," he saw clients for almost sixty (60) days before he met the Defendants.Mr. Howard was recruited and manipulated by the defendants Sean Combs, Cassandra Ventura, Bad Boy Entertainment, L.L.C., and CEOPCO, L.L.C and its related entities beginning in 2009, and concluding 2019.

32. Defendant Sean Combs, upon information and belief, currently resides within the state of New York, within the Metropolitan Detention Center, where he awaits sentencing for matters related to this action before the court. At all relevant times herein, Mr. Combs met the definition of an "employer" of the Plaintiff under relevant statutes.

33. Defendant Cassandra Ventura, upon information and belief, resides within the State of California. At all relevant times herein, Ms. Ventura met the definition of an "employer" of the Plaintiff under relevant statutes.

34. Defendant Bad Boy Entertainment, L.L.C., is a music, media, and entertainment company founded by Defendant Sean Combs, which includes the record label Defendant Bad Boy Records LLC. At all relevant times, Defendant was an "employer" of the Plaintiff within the meaning of all applicable statutes.

7

FOURTH AMENDED COMPLAINT

35. Defendant CeOpce (f/k/a Combs Enterprises, LLC) is a New York limited liability company. At all relevant times, Defendant was an "employer" of the Plaintiff within the meaning of all applicable statutes.

**FACTUAL ALLEGATIONS**

I.   **2009: Mr. Howard meets Combs and Ventura under Fraudulent circumstances.**

**Initial Meeting**

36. Mr. Howard ("Dave") met Ms. Ventura ("Jackie Star") in late 2009.

37. Ms. Ventura invited Mr. Howard to The London hotel in New York City to serve as a male companion for an agreed-upon hourly rate.

38. Ms. Ventura concealed her identity using makeup, a large red wig, and dim lighting, and failed to inform Mr. Howard that another party would be present.

39. Ms. Ventura offered Mr. Howard alcohol and marijuana, then they spoke for approximately thirty minutes.

40. Ms. Ventura requested Mr. Howard's personal identification for safety purposes.

41. Mr. Howard provided his N.Y.S. Driver's License revealing his true identity.

42. Ms. Ventura requested that Mr. Howard expose his genitals.

43. Under the influence of substances, Mr. Howard complied.

44. Ms. Ventura revealed her "husband" was upstairs and had consented to her having a male companion.

45. Ms. Ventura explained they participated in "the Lifestyle" and her "husband" preferred to watch her with men with larger reproductive organs.

46. Ms. Ventura stated she preferred men with darker complexions and complimented Mr. Howard's complexion.

47. Ms. Ventura introduced Mr. Combs as her "husband" under the alias "Frank."

48. Mr. Combs retrieved baby oil and Astroglide lubricant from a platter.

49. Mr. Combs retreated to a darkened corner with poor lighting.

50. Mr. Howard was instructed not to address Mr. Combs directly and to speak only to Ms. Ventura.

51. Mr. Combs concealed his identity with a baseball cap and cloth covering his face.

52. When Mr. Combs spoke, it was to inquire about Ms. Ventura's needs.

8

FOURTH AMENDED COMPLAINT

53. Mr. Combs provided "direction" to both parties, regulating the pace of physical contact.

## II.    The Encounter Structure (2009-2017)

54. This first encounter established the structure for all subsequent encounters.

55. Mr. Howard had no autonomy and was required to follow orders.

56. Financial compensation was used as a form of dominance.

57. Mr. Howard was instructed to remove all clothing and surrender his clothing and phones to Ms. Ventura.

58. Mr. Howard's cellphone was turned off and surrendered, preventing him from leaving safely.

59. Some suites required keys for floor access with no stairwell access without triggering alarms.

60. Mr. Howard was instructed to apply baby oil to his nude body.

61. Ms. Ventura would saturate Mr. Howard with oil and apply it herself.

62. Ms. Ventura often sprayed Mr. Howard with oil during application.

63. Defendants structured encounters into four phases: (1) no touch, (2) soft foreplay, (3) fellatio, and (4) intercourse, directed by Mr. Combs.

64. Mr. Howard had no input and was expected to comply.

65. Through manipulation and financial coercion, Mr. Howard remained in these phases for hours.

66. Ms. Ventura controlled the start and sought Mr. Combs' permission to progress.

67. If Mr. Combs wasn't ready, he would refuse permission but often granted masturbation permission.

68. Mr. Combs controlled progression and pace, seeking to control Ms. Ventura's desires while pleasuring himself.

69. Prolonged masturbation sessions caused skin tears and scabs on Mr. Howard's penis, causing severe pain and scarring.

70. While Mr. Howard stood covered in oil, both Defendants would masturbate while watching him.

71. While Mr. Howard was nude, both Defendants would pleasure themselves to climax.

72. Both Defendants would be intoxicated using substances and alcohol.

9

FOURTH AMENDED COMPLAINT

73. Some substances were Schedule I narcotics, including amphetamines and opiates.

74. Specific drugs included Ecstasy, GHB, Ketamine, Cocaine, MDMA (Molly), and Marijuana.

75. Ms. Ventura would orally pleasure Mr. Howard for periods exceeding one hour.

76. Dehydrated from drugs and lack of water, Ms. Ventura would perform oral sex until her jaw became sore.

77. Ms. Ventura's arousal would be heightened and she would beg Mr. Combs to allow intercourse.

78. Mr. Howard was directed to engage until Ms. Ventura climaxed.

79. Ms. Ventura controlled the degree of intimacy, including whether to engage in unprotected sex.

80. Once Ms. Ventura climaxed, the cycle would repeat.

81. One encounter could consist of 15-30 individual sessions, each including all four stages.

82. The number of sessions depended on how many days Mr. Howard was detained.

83. If Mr. Howard attempted to leave, he would be coerced or ignored when seeking his belongings.

### III.    MDMA Use and Unprotected Sex (2012-2016)

84. During Ms. Ventura's trial testimony, Mr. Howard heard her statements about being forced into unprotected sex with male entertainers.

85. Ms. Ventura claimed she never wanted such activities and only engaged due to Mr. Combs' abuse and blackmail attempts.

86. Mr. Howard asserts this allegation was substantiated in one instance but not all instances.

87. Mr. Howard asserts Mr. Combs did not force Ms. Ventura to engage sexually after her overdose; Ms. Ventura begged for the encounter despite Mr. Combs' attempts to end the night.

88. Mr. Howard asserts Ms. Ventura initiated unprotected sexual contact without Mr. Combs' knowledge during a sexual encounter in September 2011.

89. When Mr. Combs noticed no condom was being used, he stopped the activity and confronted Ms. Ventura.

FOURTH AMENDED COMPLAINT

90. Ms. Ventura falsely told Mr. Combs she had reviewed Mr. Howard's STD test results and confirmed he was clean.

91. Mr. Howard interrupted and told Mr. Combs the truth about Ms. Ventura's lie.

92. Mr. Howard provided his actual STD test results to Mr. Combs from his email.

93. Once unprotected sex began, Mr. Howard was pressured to continue by both parties.

94. Mr. Howard was told he would be Ms. Ventura's exclusive partner in exchange for clean test results and exceptional service.

95. The arrangement was agreed to after Mr. Howard was coerced into participating in an orgy with Ms. Ventura, Mr. Combs, and another male provider named Daniel Phillip.

96. The orgy's goal was to determine who could please Ms. Ventura longest: Mr. Howard or Mr. Phillip.

97. The two men were offered substances and expected to perform continuously, taking turns with Ms. Ventura.

98. This encounter lasted nearly two days.

99. When Mr. Howard outlasted Mr. Phillip, he was declared the winner and the exclusive arrangement was proposed.

100. Drug use was a major component during the majority of meetings.

101. Mr. Howard did not engage in harder drugs for the first two years until offered by Ms. Ventura.

102. Mr. Howard began having difficulty staying awake as more was demanded of him.

103. During an encounter during the later part of 2011, Ms. Ventura offered Mr. Howard ecstasy, claiming it was light and harmless.

104. Mr. Howard later learned Ms. Ventura had tripled his dosage to get him "freaky" and increase encounter intensity.

105. Through drugs, alcohol, and believing in a monogamous relationship, unprotected sex continued.

106. During October 2012 Mr. Howard impregnated Ms. Ventura, who decided to abort when unable to locate him. The encounter occurred in the Gramecy Park Hotel in Manhattan NY

11

FOURTH AMENDED COMPLAINT

107. Even after aborting, Ms. Ventura sought unprotected sex during encounters for years.

108. After an eight-month separation, Ms. Ventura confessed at Gramercy Park Hotel that she had aborted Mr. Howard's pregnancy.

109. Despite this revelation, Ms. Ventura insisted on unprotected sex during that encounter, which lasted several days.

110. After his victory over Daniel Phillip, Ms. Ventura drugged Mr. Howard with triple dosage Ecstasy and manipulated him into unprotected sex.

## IV. Drugging Incidents (2011-2016)

### Ms. Ventura Drugs Mr. Howard

111. During an encounter in late 2011, Mr. Howard recalls being drugged by Ms. Ventura, who admitted to doing so when contacted after the incident.

112. Mr. Howard was given ecstasy after complaining of exhaustion.

113. Instead of coffee, Ms. Ventura retrieved an ecstasy pill from the bedroom.

114. When Mr. Howard complained about pills, Ms. Ventura crushed it into a drink, claiming only a small dosage.

115. Having known Ms. Ventura for years, Mr. Howard trusted her and consumed the drink.

116. Mr. Howard began feeling hot and sweating uncontrollably within moments.

117. When he complained, Ms. Ventura responded with a passionate kiss and aggressive oral contact.

118. Mr. Howard never felt so intoxicated, with the drug enhancing all senses and sexual desires.

119. They began with condoms, but Ms. Ventura removed them and pressured unprotected contact while Mr. Howard's inhibitions were lowered.

120. The encounter lasted over two days while Mr. Combs watched and occasionally engaged with Ms. Ventura.

121. When exhausted, Mr. Howard received his belongings and additional compensation due to his condition from dehydration and lack of sleep.

122. Mr. Howard left confused and disoriented, ultimately parking at a grocery store.

123. He woke up hours later, weak and sweating.

12

124. He called an Uber to get home to his girlfriend.

125. He spent three days recovering from the encounter.

126. After confronting Ms. Ventura during the next encounter, she confessed to drugging him.

127. Following this confession, he rarely accepted beverages from her, except three times over the next five years.

128. The final drink led to a physical assault on Ms. Ventura.

Mr. Combs Drugs Mr. Howard

129. During and encounter in the fall of 2015, Mr. Howard was drugged by Mr. Combs at the Trump property at Columbus Circle in New York City.

130. Mr. Combs offered Mr. Howard a pink substance in a small plastic bag described as "Pink MDMA" or "Pink Molly."

131. Mr. Howard's knowledge of designer drugs was insufficient, so he didn't trust the unknown substance.

132. Mr. Combs hinted at Ms. Ventura's insistence on indulgence, explaining she may be angry if he didn't partake.

133. Mr. Combs had never offered Mr. Howard drugs before, and they had developed mutual respect.

134. Against better judgment, Mr. Howard agreed to consume a small dosage.

135. Mr. Combs retreated to the master suite, and within minutes Mr. Howard became extremely warm and began sweating uncontrollably.

136. He began having violent spasms, forcing him to crawl to a nearby bathroom.

137. Neither Ms. Ventura nor Mr. Combs exited the master suite.

138. Mr. Howard began vomiting uncontrollably in the bathroom.

139. The stomach pain was intense and sweating wouldn't stop.

140. Vomiting lasted several minutes until nothing was left.

141. Mr. Howard lay dizzy and weak on the bathroom floor before regaining strength.

142. Mr. Combs found the weakened and disoriented Mr. Howard first.

143. Mr. Combs inquired about Mr. Howard's condition.

144. Mr. Howard confessed his condition to Mr. Combs despite being afraid.

145. Mr. Combs agreed he didn't look good.

13

FOURTH AMENDED COMPLAINT

146. Mr. Combs asked Mr. Howard to wait and entered the master suite.

147. Both defendants exited the suite together.

148. When Ms. Ventura asked what was wrong, Mr. Howard blamed what Mr. Combs had given him.

149. Ms. Ventura asked Mr. Combs what he had given Mr. Howard; he responded "the pink shit."

150. When Mr. Howard said Mr. Combs told him it was "Molly," Ms. Ventura informed him it was not "Molly."

151. Mr. Howard was given around $1,500 and released.

152. He walked over forty city blocks in December conditions, sweating uncontrollably and afraid.

153. Around Union Square, he regained enough composure to call a friend for help.

154. He was picked up and taken home to recover.

## V.   Sex Trafficking (2012-2019)

155. Beginning sometime in the early months of 2012, Ms. Venturaand Mr. Combs began to fly; Mr. Howard from New York City to Miami and Los Angeles numerous times.

156. In the beginning,Ms. Ventura used promises of gifts, money, and vacations to coerce Mr. Howard into agreeing to leave NYC and head to the locations requested by the defendants.

157. The trafficking for purposes of sexual contact began after Mr. Howard's "victory" over Daniel Phillip in their "sex-a-thon."

158. As his "reward," he began receiving perks like travel and small gifts from Ms. Ventura. But the truth was that there were no rewards or gifts, but tools used to manipulate Mr. Howard into compliance

159. Mr. Howard would be contacted and asked if available to fly to a location. Initially, it was exciting to experience such attention from an attractive woman.

160. Over time, Mr. Howard realized this was much more than that.

161. The first trafficking instance occurred when flown to Miami from New York after Ms. Ventura's call.

162. It was cold in New York, and Ms. Ventura's call seemed like a gift.

14

163. A JetBlue flight was booked and paid for by Ms. Ventura.

164. Mr. Howard met the couple at the Mandarin hotel in Miami.

165. Mr. Howard checked into a suite under the name "Frank Black," given by Ms. Ventura.

166. During all trafficking instances, Mr. Howard was presented to hotel staff as "Security" for Bad Boy Records.

167. Mr. Howard would spend days servicing Ms. Ventura, waiting to be released.

168. Asked to come for one day, he wasn't released until three days later.

169. Mr. Howard felt intimidated by the couple's lifestyle and endured, hoping for an earlier release.

170. Mr. Howard was flown to Miami many times, induced into drug use, alcohol consumption, and prolonged unprotected sexual activity.

171. Ms. Ventura repeatedly stated she "hated condoms and they irritated her."

172. She claimed condoms irritated her and created a smell.

173. Sometime in October 2014 At Beverly Hills Hotel in Los Angeles, Ms. Ventura forced herself on Mr. Howard during her menstrual cycle.

174. This was calculated disregard as a punishment for refusing to fly to Los Angeles.

175. Once under the defendants' control, Mr. Howard had no means to return home without satisfying Ms. Ventura.

176. Through coercion and fraud, Ms. Ventura would lure Mr. Howard with promises of gifts and favors.

177. Defendants used Mr. Howard for days as a sex slave, satisfying their physical and psychological needs.

178. Defendants lacked regard for Mr. Howard's health or safety.

VI. **Sexual Assault in Los Angeles and Sexual Proposal of Miami.(2014-2016)**

The Beverly Hills Hotel

179. Defendants sex trafficked Mr. Howard to Los Angeles and brought him to the Beverly Hills Hotel.

15

FOURTH AMENDED COMPLAINT

180. Upon arrival, Mr. Howard was instructed to wait, but he went outside feeling uncomfortable.

181. Mr. Combs contacted him and instructed him to reenter the hotel.

182. He was told to inform the elevator employee that he worked for Mr. Combs.

183. A hotel employee ushered Mr. Howard to the penthouse suites.

184. Mr. Howard entered an environment different from past encounters.

185. No candles were lighting the rooms as had been custom.

186. Ms. Ventura was angry with Mr. Howard for choosing to spend his anniversary with his partner instead of flying to Los Angeles.

187. Through manipulation, physical positioning, and Mr. Combs' presence, Ms. Ventura forced a sexual encounter.

188. She seduced him into compliance and removed his clothing.

189. She manipulated him through foreplay into a compromised position on the sofa.

190. She began kissing him, attempting to arouse him into sexual activity.

191. Mr. Howard repeatedly asked her to wait, but Ms. Ventura ignored him, pinning him to the couch.

192. Ms. Ventura took hold of Mr. Howard's penis and inserted it into herself.

193. The sensation overwhelmed Mr. Howard, causing motor function difficulties.

194. Ms. Ventura finished quickly, allowing Mr. Howard to remove her and reach for the light.

195. Mr. Howard discovered Ms. Ventura was menstruating heavily.

196. Ms. Ventura pretended to be surprised but later revealed she was aware but didn't think it would be "heavy."

197. Mr. Howard became angry and asked why she would do that to him.

198. Ms. Ventura, drunk and intoxicated, laughed and said it wasn't a big deal.

199. An argument ensued, cut short by Mr. Combs, who called Ms. Ventura into the bedroom after apologizing to Mr. Howard.

200. When Ms. Ventura reentered, Mr. Combs admitted she was aware but intoxicated and disregarded Mr. Howard's feelings, providing substantial bills and asking him to go to his prepared suite.

201. Ms. Ventura later apologized, blaming intoxication and hormones.

16

FOURTH AMENDED COMPLAINT

202.    Ms. Ventura would often order Mr. Howard to masturbate for her visual pleasure.

203.    Under substance influence, her requests lasted hours without consideration for Mr. Howard's well-being.

204.    Mr. Howard suffered injuries including tears to his penis shaft, resulting in skin peeling and scabbing.

205.    These injuries resulted from prolonged self-directed masturbation at Ms. Ventura's orders.

The Miami Proposition

206.    Mr. Howard is coerced by Defendant Ventura into traveling from New York to Florida during March 2016 for the Ultra Weekend Music Festivities.

207.    During this encounter at the SLS property located along Collins, Mr. Combs directly inquired into the Plaintiff's sexuality.

208.    Mr. Combs, visibly intoxicated, asked the Plaintiff if he was "Gay" while sitting on a piano stool.

209.    Mr. Howard recalls becoming angry, cursing, and questioning Mr. Combs as to what would make him consider this.

210.    Ms. Ventura entered the room, witnessing the entire exchange.

211.    Mr. Combs presents Mr. Howard with a wad of cash to "Shut-up", which Mr. Howard admits he did.

212.    Several moments later, while engaged in relations with Ms. Ventura, Mr. Combs attempted to manipulate Mr. Howard by using his rectum, blocking the view of Ms. Ventura.

213.    Mr. Howard felt this was done intentionally, to force his focus on the rectum of Mr. Combs.

214.    Mr. Howard feels Mr. Combs attempted to sexually manipulate him into an encounter.

215.    This experience left Mr. Howard traumatized for years.

VII.    **STD Contraction (2016)**

216.    Ms. Ventura's disregard for others' health while satisfying sexual fetishes caused Mr. Howard to contract an STD during unprotected sex.

FOURTH AMENDED COMPLAINT

217.   Although Mr. Howard met Ms. Ventura as a male companion, he was STD-free and rarely had unprotected sex. He was in a committed monogamous relationship before meeting Ms. Ventura.

218.   Besides his partner, Ms. Ventura was the only other sexual partner with whom Mr. Howard didn't use condoms. During contraction time, Mr. Howard was semi-retired as a male provider, with Ms. Ventura being his last client.

219.   After one encounter in 2016, Mr. Howard felt strange sensations when urinating, which worsened, leading him to get tested. Results showed he had contracted Chlamydia.

220.   When Mr. Howard saw Ms. Ventura again, she revealed she had contracted it and advised him to get checked, blaming Mr. Combs' infidelity for her infection.

221.   Defendants' reckless conduct jeopardized Mr. Howard's health and well-being through withheld information.

## VIII.   Domestic Violence Witnessed (2011-2016)

222.   Over a decade, Mr. Howard witnessed numerous acts of physical domestic violence against Ms. Ventura.

223.   This violence has been attributed to forced labor and sexual depravity, where Ms. Ventura claims she was forced to participate.

224.   Mr. Howard's reality differs greatly from Ms. Ventura's reported abuse.

225.   Mr. Combs would assault Ms. Ventura due to jealousy, arrogance, perceived slights, disrespect, and attempts to challenge him.

226.   Ms. Ventura was never assaulted for lack of interest, hesitation, poor performance, or refusal to engage sexually.

227.   Mr. Howard recalls Mr. Combs punching Ms. Ventura twice in the chest in NYC after a perceived slight.

228.   Mr. Howard witnessed Mr. Combs grabbing, kicking, and shoving Ms. Ventura during domestic arguments.

229.   Mr. Combs assaulted Ms. Ventura for making Mr. Howard a drink despite being told not to.

230.   Mr. Combs assaulted Ms. Ventura because he assumed she was mocking his penile size when he attempted to bed her after Mr. Howard finished.

18

FOURTH AMENDED COMPLAINT

231. The domestic violence instances traumatized Mr. Howard for years.

232. Mr. Howard was made an unwilling witness and further victimized by this powerful couple.

233. When his services were needed, he would be coerced, manipulated, and seduced into drug use and compliance.

234. These acts and their traumatic effect entitle Mr. Howard to damages and relief.

**IX.    Possible Government Cooperation and Attorney Misconduct. (2023-2025)**

235. In mid-December 2023, Department of Homeland Security agents contacted Mr. Howard regarding his encounters with defendants, requesting an interview.

236. Having no legal experience, Mr. Howard contacted his local criminal attorney, who wasn't a federal law expert.

237. The US Attorney's Office provided counsel to advise Mr. Howard during the interview.

238. Mr. Howard spent the next year and a half as a cooperating government witness for the Southern District of New York.

239. Mr. Howard provided airline receipts, boarding passes, dates, and hotel photos to the government.

240. Mr. Howard provided corroboration of illegal activities spanning from 2009 to late 2019.

241. Mr. Howard witnessed assaults against Ms. Ventura, drug use, and illegal activity.

242. Mr. Howard was drugged by both defendants on separate occasions.

243. Mr. Howard was the male provider who impregnated Ms. Ventura after an October 2013 encounter.

244. As interviews progressed, Mr. Howard was asked for details as he recalled them.

245. Prosecutor Maurine Comey assisted Mr. Howard's recollection by instructing him to write down memories due to elapsed time.

246. Mr. Howard could present these notes to prosecutors, who would fact-check dates and locations.

247. The US Attorney established Mr. Howard's credibility after investigating his claims.

19

FOURTH AMENDED COMPLAINT

248. The US Attorney verified encounters at multiple hotels: Gramercy Park Hotel (NYC), Mandarin Hotel (Miami), The One Residences (Miami), The SLS (Miami), The London (NYC), The Essex House Hotel (NYC), The Intercontinental Hotel (NYC and Miami), The Trump Hotel (NYC), and Downtown Beverly Hills Hotel (Los Angeles).

249. On or about July 2, 2025, Defendant Sean Combs was convicted by jury verdict in the Southern District of New York on COUNT III: INTERSTATE TRANSPORTATION FOR PROSTITUTION in violation of 18 U.S.C. § 2421 et seq.

250. Plaintiff Clayton Howard is specifically named as a VICTIM of COUNT III in the Government's Sentencing Memorandum filed in United States v. Sean Combs, No. 24-cr-00542 (S.D.N.Y.).

251. As a federally designated victim in the criminal prosecution, Plaintiff is entitled to rights under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771.

252. Plaintiff's victim status establishes:

   a. Standing: Federal jury determination that Plaintiff is "victim" establishes prima facie standing for civil claims;

   b. Collateral Estoppel: Conviction on COUNT III collaterally estops Defendants from denying interstate transportation;

   c. Credibility: Federal prosecutors' victim designation after investigation establishes credibility

253. Mr. Howard verified his sexual assault allegation by providing travel receipts for his Los Angeles flights.

254. As investigation continued, the US Attorney became aware of Ms. Ventura's criminality.

255. Because Ms. Ventura wasn't the investigation target, Mr. Howard's allegations against her weren't acted upon.

256. US Attorney-provided attorneys discouraged Mr. Howard from filing civil action against defendants.

257. The attorneys argued allegations against Ms. Ventura would expose her to criminal liability and damage her credibility and public image.

20

FOURTH AMENDED COMPLAINT

258. Mr. Howard directly instructed attorney Tyrone Blackburn to file action against defendants before the New York adult survivor statute expired.

259. Mr. Blackburn contacted attorney Douglas Wigdor, seeking to quietly settle with Ms. Ventura and offering her opportunity to avoid public exposure.

260. Instead of protecting his client, Mr. Wigdor sought US Attorney assistance to dissuade Blackburn from filing until after Sean Combs' criminal trial.

261. This decision protected Ms. Ventura's trial credibility but compromised Mr. Howard's legal action in New York.

262. Filing after trial would mean Mr. Howard would lose his right to action in New York under the applicable statute.

263. A calculated effort was made to protect Ms. Ventura from criminal liability.

264. In protecting Ms. Ventura, Mr. Howard and other potential victims' civil rights were compromised.

265. Ms. Ventura claims victimization but willingly victimized, manipulated, and harmed others.

266. As a cooperating witness for the US Attorney of the SDNY, Mr. Howard learned the depth of his involvement and saw for the first time the truth of his situation, that he had been part of a decade-long scheme to coerce and manipulate male escorts into sexual encounters.

267. Mr. Howard expressed his realization of victimhood and the true conspiracy to prosecutors and his attorneys, which can be verified in emails.

268. Mr. Howard is entitled to justice under the same laws that provided justice to Ms. Ventura.

269. Mr. Howard asserts that a RICO enterprise did exist, and the conspirators of the RICO Enterprise were Mr. Combs, Ms. Ventura, and "Jane Doe" who used the enterprise of Mr. Combs to orchestrate these encounters for over a decade.

270. Mr. Howard states that the true victims of the failed criminal RICO prosecution were the male entertainers manipulated by all Defendants to include Mr. Combs.

271. All defendants should be held accountable jointly based on Mr. Howard's verified encounters and should not be minimized due to Ms. Ventura's alleged victimhood.

21

FOURTH AMENDED COMPLAINT

272.   Mr. Howard incorporates all facts as basis for the causes of action listed below. At all times during the encounters from 2009-2019, Plaintiff believed he was engaging in consensual arrangements with two private individuals operating within the bounds of legal adult activity, albeit morally questionable. Plaintiff did not know and could not have known the full scope, nature, and illegality of Defendants' systematic criminal enterprise.

273.   Plaintiff's awareness of the TRUE nature of his victimization—that he was a victim of a decade-long sex trafficking ENTERPRISE rather than a willing participant in private sexual encounters—did not and could not occur until the U.S. Attorney's investigation beginning in December 2023.

274.   Prior to the federal investigation, Plaintiff lacked critical information that was exclusively within Defendants' knowledge and was actively concealed from Plaintiff, including:

   a.   That Defendants were operating a systematic trafficking enterprise involving DOZENS of male victims beyond Plaintiff;

   b.   That Defendant Ventura trafficked other men using identical fraudulent schemes;

   c.   That encounters were part of a RICO enterprise with systematic recruitment across multiple states;

   d.   That corporate defendants provided financial resources and logistical support;

   e.   That Plaintiff was one victim in a decade-long pattern of racketeering activity;

   f.   That Ventura would testify under oath to personally trafficking Plaintiff and other men;

   g.   That Plaintiff's experiences were predicate acts in a larger criminal conspiracy.

275.   The systematic concealment of the enterprise's scope and nature constituted fraudulent concealment that tolled all applicable statutes of limitations pursuant to federal and state tolling doctrines.

276.   Plaintiff exercised reasonable diligence but could not have discovered the enterprise nature of his victimization because: (a) Defendants concealed their identities using aliases for two years; (b) Defendants falsely represented themselves as private married couple rather than public figures operating criminal enterprise; (c) Other victims were hidden from Plaintiff; (d) Corporate involvement was concealed

22

FOURTH AMENDED COMPLAINT

through false "Security" cover story; (e) The full RICO scope was unknowable until federal investigation; (f) No public information existed until Ventura's November 2023 complaint.

277. The "injury discovery rule" tolled all statutes of limitations because Plaintiff did not discover and could not reasonably have discovered that he was a victim of sex trafficking (as opposed to a willing participant) until December 2023 when Homeland Security agents contacted him.

278. Even if Plaintiff knew individual harmful acts occurred, he could not know they were part of a systematic trafficking ENTERPRISE actionable under federal and state statutes until the investigation revealed: (a) pattern of similar victims; (b) corporate facilitation; (c) interstate commercial purpose; (d) systematic nature; (e) full scope of manipulation across multiple victims.

279. Under federal tolling doctrine applicable to 18 U.S.C. §§ 1591, 1595, the statute of limitations did not begin to run until Plaintiff discovered or should have discovered the trafficking enterprise's existence, which occurred no earlier than December 2023.

280. For California claims, California's discovery rule tolled limitations until Plaintiff knew: (1) he had been harmed, AND (2) someone else was legally responsible. Jolly v. Eli Lilly & Co., 44 Cal.3d 1103 (1988). Plaintiff could not satisfy prong two until the investigation revealed the enterprise's systematic nature.

281. For Florida claims under Fla. Stat. § 787.061, Florida's discovery rule tolls limitations until victim knows of both injury AND causal connection to defendant's wrongful act. Barr v. Ronald Cadillac-Olds, Inc., 439 So.2d 437 (Fla. 1983).

282. For New York claims, New York's discovery rule tolls limitations when: (1) defendant actively concealed wrongdoing, AND (2) plaintiff exercised reasonable diligence but could not discover claim. Koch v. Christie's Int'l PLC, 699 F.3d 141 (2d Cir. 2012). Both elements satisfied.

283. Alternatively, all statutes of limitations are tolled under the continuing violation doctrine because Defendants' trafficking enterprise constituted a single, continuing course of conduct that did not terminate until Plaintiff's final encounter in late 2019.

284. The continuing violation doctrine applies when: (1) defendant's wrongful conduct continues over time, (2) each instance is part of larger pattern, and (3) earlier

23

FOURTH AMENDED COMPLAINT

instances connect to later ones by common participants, purposes, and methods. Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982).

285. All three elements satisfied: (a) trafficking continued 2009-2019 as unbroken pattern; (b) each encounter was part of RICO enterprise with common purpose; (c) identical participants, methods, structure, and purpose throughout.

286. The encounters were "successive links in a continuous and related chain of acts" constituting single continuing violation. Berry v. Bd. of Supervisors of L.S.U., 715 F.2d 971 (5th Cir. 1983).

287. Each encounter reinforced and perpetuated the enterprise through: (a) ongoing financial coercion; (b) repeated drugging; (c) systematic isolation; (d) continuing threats; (e) progressive injuries; (f) ongoing psychological manipulation.

288. Under RICO's continuing violation doctrine, "where violation is continuing, limitations period does not begin until violation ceases." Keystone Ins. Co. v. Houghton, 863 F.2d 1125 (3d Cir. 1988). Enterprise did not cease until late 2019. This 2025 action is timely.

289. For sex trafficking claims, courts apply continuing violation doctrine when trafficking involves repeated acts over extended period with same victims. United States v. Callahan, 801 F.3d 606 (6th Cir. 2015).

290. Each transport was not separate time-barred violation but part of continuing trafficking conduct extending through 2019

291. Independent of discovery rule, statutes are tolled under fraudulent concealment doctrine because Defendants actively concealed facts essential to Plaintiff's claims through affirmative acts of concealment.

292. Fraudulent concealment requires: (1) defendant engaged in affirmative acts of concealment, (2) plaintiff could not discover claim despite reasonable diligence, and (3) defendant's concealment prevented discovery. Hobson v. Wilson, 737 F.2d 1 (D.C. Cir. 1984).

293. Defendants engaged in numerous affirmative acts of concealment:

   a. Identity Concealment: Used aliases ("Jackie Star," "Frank") for two years

   b. False Cover Stories: Instructed Plaintiff to present as "Security for Bad Boy Records"

24

FOURTH AMENDED COMPLAINT

    c.   Victim Isolation: Prevented Plaintiff from learning about other victims

    d.   Corporate Concealment: Concealed Bad Boy Records' facilitation

    e.   False Relationship Narrative: Maintained false "married couple" representation

    f.   Settlement Concealment: Ventura settled for $20M to conceal her trafficking conduct

    g.   Attorney Manipulation: Coordinated with Plaintiff's attorneys to prevent filing

294. These acts prevented discovery despite reasonable diligence because: (a) no public record existed until November 2023; (b) no way to learn of other victims until investigation; (c) corporate involvement was concealed; (d) victims were kept isolated.

295. Under federal fraudulent concealment doctrine, "affirmative acts of concealment toll limitations until plaintiff discovers fraud." Hobson v. Wilson, 737 F.2d 1 (D.C. Cir. 1984).

296. California: "Where defendant is guilty of actual fraud in concealing cause of action, statute does not commence until plaintiff discovers concealment." Regents of Univ. of Cal. v. Superior Court, 20 Cal.4th 509 (1999).

297. Florida: Fla. Stat. § 95.051(1)(b) tolls limitations when "defendant has prevented plaintiff from obtaining knowledge essential to cause of action."

298. New York: Doctrine tolls limitations when defendant engages in "affirmative wrongful concealment." Pearl v. City of Long Beach, 296 F.3d 76 (2d Cir. 2002).

299. Concealment particularly effective because Defendants occupied positions of power (celebrity, wealth) while Plaintiff was vulnerable (sex worker, economically dependent).

300. Concealment continued through 2023 when Defendants' attorneys prevented Plaintiff from filing to protect Ventura's trial credibility, demonstrating ongoing concealment even after enterprise ended.

301. On or about December 15, 2023, agents from the U.S. Department of Homeland Security, Homeland Security Investigations Division, contacted Plaintiff requesting an interview regarding his encounters with Defendants pursuant to an ongoing federal investigation into Defendants' criminal activities.

25

FOURTH AMENDED COMPLAINT

302.    From December 2023 through approximately June 2025, Plaintiff served as a cooperating witness for the United States Attorney's Office for the Southern District of New York in connection with the federal prosecution of Defendant Sean Combs, United States v. Sean Combs, No. 24-cr-00542 (S.D.N.Y.).

303.    Plaintiff provided extensive cooperation to federal investigators, including:

    a.   Multiple interviews with AUSA Maurine Comey and other prosecutors;

    b.   Production of documentary evidence including airline receipts, boarding passes, hotel photographs, and text message communications;

    c.   Detailed testimony regarding encounters at verified locations spanning from 2009 to 2019;

    d.   Corroboration of encounters at: Gramercy Park Hotel (NYC), Mandarin Hotel (Miami), The One Residences (Miami), The SLS (Miami), The London (NYC), The Essex House Hotel (NYC), The Intercontinental Hotel (NYC and Miami), The Trump Hotel (NYC), and Beverly Hills Hotel (Los Angeles);

    e.   Testimony regarding drug use, physical assaults against Defendant Ventura, and drugging incidents involving both Defendants.

304.    The U.S. Attorney's Office verified Plaintiff's credibility by independently corroborating his allegations through hotel records, travel documentation, and testimony from other victims.

305.    On or about July 2, 2025 Defendant Sean Combs was convicted by jury verdict in the Southern District of New York on multiple counts, including COUNT III: INTERSTATE TRANSPORTATION FOR PROSTITUTION in violation of 18 U.S.C. § 2421 et seq.

306.    Plaintiff is specifically named as a VICTIM of COUNT III in the Government's Sentencing Memorandum filed in United States v. Sean Combs, No. 24-cr-00542 (S.D.N.Y.), which identifies Plaintiff Clayton Howard as one of the individuals transported interstate by Defendant Combs for purposes of prostitution.

307.    As a named victim in the federal criminal prosecution, Plaintiff is entitled to rights under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, including:

    a.   The right to be reasonably protected from the accused;

26

FOURTH AMENDED COMPLAINT

b. The right to reasonable, accurate, and timely notice of any public court proceeding;

c. The right to be treated with fairness and respect for dignity and privacy;

d. The right to confer with the government's attorney;

e. The right to full and timely restitution;

f. The right to proceedings free from unreasonable delay

## FIRST CAUSE OF ACTION

### Sex Trafficking under 18 U.S.C. §1591, et seq.

### Against all Defendants

308. Plaintiff repeats and realleges every allegation in all of the preceding paragraphs as if fully set forth herein.

**Legal Standard and Pleading Requirements**:

309. Under 18 U.S.C. § 1591, a civil complaint must establish by a preponderance of evidence that defendant:

a. Knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited a person

b. Knowing or in reckless disregard that the person would be caused to engage in a commercial sex act

c. Through force, fraud, or coercion (the essential "means" element for adults)

310. Plaintiff brings this civil action under 18 U.S.C. § 1595, which provides a private right of action for victims of trafficking offenses enumerated in Chapter 77 of Title 18.

311. At all times relevant hereto, Plaintiff was an adult over the age of eighteen (18) years.

**Element One: Prohibited Acts**

312. efendants violated 18 U.S.C. § 1591(a)(1) by knowingly recruiting, enticing, harboring, transporting, providing, obtaining, and maintaining Plaintiff for purposes of commercial sexual exploitation.

313. Specifically, Defendants:

a. Recruited Plaintiff through online advertisements for massage services.

27

FOURTH AMENDED COMPLAINT

      b.  Transported Plaintiff across state lines from NYC to Miami and LAfrom 2012 to 2019

      c.  Harbored Plaintiff in Beverly Hills Hotel, The One, The SLS, The Mandarin, while restricting his/her movement

      d.  Maintained Plaintiff in a condition of sexual servitude through coercion, drug use, and manipulation.

**Element Two: Commercial Sex Act**

314.    Defendants caused Plaintiff to engage in "commercial sex acts" as defined by 18 U.S.C. § 1591(e)(3), meaning "any sex act, on account of which anything of value is given to or received by any person."

315.    The commercial sex acts included unprotected sex, and prolonged masterbation in exchange for accommodations, money.

316.    Defendants received value through sexual gratification.

**Element Three: Knowledge or Reckless Disregard**

317.    Defendants acted with knowledge or in reckless disregard of the fact that Plaintiff would be caused to engage in commercial sex acts.

318.    Defendants' knowledge is demonstrated by the numerous men now revealed to have been misled by the Defendants, as was testified by Defendant Ventura during USA v Sean Combs.

**Element Four: Force, Fraud, or Coercion (Critical for Adult Victims)**

319.    Defendant Ventura used fraud and coercion, as defined by 18 U.S.C. § 1591(e)(2) to compel Plaintiff's participation in commercial sex acts.

320.    Defendant Ventura and Combs employed fraudulent schemes, plans, and patterns to deceive Plaintiff, including:

      a.  DefendantsCombs and Ventura pretended to be a married professional couple, hiding their identities for almost two (2) years

      b.  Through promises of gifts, financial compensation, intimidation, and manipulation,Defendant Ventura sought to compel the Plaintiff's compliance.

      c.  At all times, Defendants Combs and Ventura were aware of the scope and totality of their actions, while the Plaintiff was misled and deceived.

**Allegations Supporting Claim:**

28

321. Interstate Transportation for Commercial Sex

    a. Transportation from New York to Miami and Los Angeles

    b. Use of hotels as venues: Mandarin Hotel (Miami), SLS (Miami)

    c. Beverly Hills Hotel (Los Angeles), (Four Seasons).

    d. Registration under false names ("Frank Black", Jackie Star)

322. Force, Fraud, and Coercion Elements

Fraud:

    a. Concealed identities using aliases ("Jackie Star," "Frank").

    b. False representation as "married couple".

    c. Misrepresentation of drug dosages.

Coercion:

    a. Confiscation of phone and clothing.

    b. Financial control and manipulation.

    c. Isolation in hotel suites requiring key access.

    d. Threats of violence including "pistol whip" threat.

Chemical Coercion:

    a. Manipulative drugging with MDMA at triple dosage.

    b. Use of unknown substances causing severe physical reactions.

    c. Strategic drugging to lower inhibitions.

Third-Party Liability Allegations

Beverly Hills Hotel:

    a. Employee assistance in accessing penthouse suites (London, Beverly Hills Hotel)

    b. Alleged knowledge or reckless disregard of trafficking activity.

    c. Facilitation through the provision of a venue.

Corporate Defendants:

    a. Financial benefit from trafficking activities.

    b. Booking accommodations and providing supplies.

    c. Employment relationship creates vicarious liability.

    d. Bad Boy Staff, and the Defendant's personal assistant, provided access to accommodations to the Plaintiff (Kristina Khoram).

FOURTH AMENDED COMPLAINT

Pattern of Racketeering Activity

RICO Enterprise Elements:

    a.  Common purpose of soliciting men for commercial sex. (Defendant Ventura testified to trafficking the Plaintiff, Jules Theodore, etc).

    b.  Interstate nature affecting commerce.(Defendant Ventura testified to trafficking the Plaintiff herself, and/or through the use of a travel agent.)

    c.  Multiple predicate acts over a decade-long period. (Plaintiff trafficked from NYC to multiple locations.)

    d.  Recruitment of "dozens of male entertainers". (Collectively, Defendant Combs and Ventura, along with "Jane Doe" recruited over 50 men)

**Damages and Harm Allegations**

<u>Physical Injuries</u>:

    a.  Genital injuries from prolonged forced masturbation.

    b.  STD contraction.

    c.  Drug-related physical trauma.

<u>Psychological Harm</u>:

    a.  PTSD and emotional distress.

    b.  Trauma from witnessing domestic violence.

    c.  Long-term psychological consequences.

**<u>Relevent Case Law</u>**:

    a.  *<u>United States v. Jungers, 702 F.3d 1066 (8th Cir. 2013)</u>: Fraud encompasses "knowingly misrepresenting or omitting facts to obtain compliance." Includes deceptive promises about working conditions, compensation, or the nature of required activities.*

    b.  *<u>United States v. Todd, 627 F.3d 329 (9th Cir. 2010)</u>: Coercion analysis focuses on defendant's conduct, not victim's subjective response. Court examines "whether a reasonable person in the victim's position would have felt compelled to comply."*

30

FOURTH AMENDED COMPLAINT

     c.   *United States v. Callahan, 801 F.3d 606 (6th Cir. 2015):* "Debt bondage and financial control mechanisms constitute coercion where they reasonably induce fear and compel compliance with commercial sex demands

     d.   *United States v. Marcus, 628 F.3d 36 (2d Cir. 2010):* "Serious harm need not be physical; serious psychological harm suffices." Threats to reputation, immigration status, or family relationships can constitute coercion.

     e.   *United States v. Bonestroo, 623 F.3d 1020 (9th Cir. 2010):* "Anything of value" includes money, drugs, shelter, transportation, or other benefits. The exchange need not be explicit if circumstances demonstrate commercial nature.

     f.   *Doe v. Howard, 768 F.3d 1336 (11th Cir. 2014):* Plaintiff must establish "but-for causation between defendant's statutory violation and plaintiff's injury," plus foreseeability that trafficking would cause the type of harm suffered.

     g.   *United States v. Ramos, 537 F.3d 439 (5th Cir. 2008):* "Willful blindness satisfies the knowledge requirement. Defendant cannot escape liability by deliberately avoiding knowledge of obvious trafficking indicators."

323.   Defendants, including Sean Combs, Cassandra Ventura, Bad Boy Records, and related corporate entities, violated 18 U.S.C. § 1591 by knowingly recruiting, transporting, harboring, and maintaining Plaintiff for commercial sexual exploitation through force, fraud, and coercion.

324.   These actions, motivated by sexual gratification and commercial benefit, and enabled by systematic manipulation and substance abuse, caused Plaintiff significant physical, psychological, and economic harm. Plaintiff respectfully seeks relief for these federal trafficking violations under 18 U.S.C. § 1595 and applicable state law.

325.   The trafficking, sexual exploitation, and resulting injuries to Mr. Howard occurred without fault or wrongdoing by the Plaintiff contributing thereto.

326.   Defendants herein acted without Plaintiff's meaningful consent and through prohibited means of force, fraud, and coercion as defined by 18 U.S.C. § 1591(e)(2).

327.   Defendants lacked any lawful authority to transport Plaintiff across state lines for commercial sexual exploitation. Defendant used falsified narratives and schemes designed to entice, and/or coerce the Plaintiff's compliance. Defendants prioritized their sexual gratification over Plaintiff's well-being and legal rights.

31

FOURTH AMENDED COMPLAINT

328.    Plaintiff's awareness of the TRUE nature of his victimization—that he was a victim of a decade-long sex trafficking ENTERPRISE rather than a willing participant in private sexual encounters—did not and could not occur until the U.S. Attorney's investigation beginning in December 2023."

329.    As a result of the aforementioned sex trafficking, forced labor, sexual assault, drugging without consent, and systematic psychological manipulation sustained at the hands of Defendants herein, Plaintiff Howard was caused to suffer and continues to experience severe physical injuries, chronic psychological trauma, post-traumatic stress disorder, anxiety, depression, humiliation, and ongoing fear of retaliation.

330.    As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1591 and related federal trafficking statutes, Mr. Howard was caused to be trafficked across state lines, sexually exploited for commercial purposes, subjected to forced labor, and caused to sustain severe mental suffering, psychological and emotional distress, loss of wages and earning capacity, loss of reputation, embarrassment and humiliation, damage to personal relationships, and deprivation of his fundamental rights to personal liberty and bodily autonomy under the United States Constitution and federal civil rights laws.

331.    Because of the preceding violations of federal sex trafficking laws, Plaintiff seeks Punitive Damages in the amount to be determine at trial, to include treble damages where applicable under federal RICO statutes, costs, disbursements, reasonable attorney's fees as provided by 18 U.S.C. § 1595(a), pre- and post-judgment interest, punitive damages, and such other relief as this Court deems just and proper.

<u>**SECOND CAUSE OF ACTION**</u>

**CIVIL REMEDY FOR HUMAN TRAFFICKING**

**(Florida Statute § 787.061)**

**Against all Defendants**

332.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

**Legal Standard and Pleading Requirements**

32

FOURTH AMENDED COMPLAINT

333. At all times material hereto, Plaintiff was a "victim of human trafficking" as defined by Florida Statute § 787.06(2) and § 787.061(2)(b), having been subjected to coercion for the purpose of being used in human trafficking.

334. Defendants engaged in "human trafficking" as defined by Florida Statute § 787.06(2), which includes but is not limited to:

    a. Transporting, soliciting, recruiting, harboring, providing, enticing, maintaining, orobtaining another person for the purpose of exploitation of that person;

    b. Using coercion to compel the Plaintiff to engage in commercial sexual activity;

    c. Restraining, isolating, or confining or threatening to restrain, isolate, or confine the Plaintiff.

335. Defendants' conduct constituted "coercion" as defined by Florida Statute § 787.06(2), including but not limited to:

    a. Restraining, isolating, or confining or threatening to restrain, isolate, or confinePlaintiff;

    b. Using or threatening to use physical force against Plaintiff;

    c. Enticing Plaintiff to engage in commercial sexual activity through deceptive orfraudulent means;

    d. Destroying, concealing, removing, confiscating, or possessing any actual or purportedpassport or other immigration document, or any other actual or purported governmentidentification document, of Plaintiff;

    e. Causing or threatening to cause financial harm to Plaintiff.

**Allegations Supporting Claim**

336. <u>Interstate Transportation for Commercial Sexual Exploitation</u>

    a. Systematic transportation from New York to Miami multiple times beginning in 2012, and concluding in December 2019.

    b. Specific instance - flight booked by Ventura, met at Mandarin Hotel, Miami

    c. Presented to hotel staff as "Security" for Bad Boy Records (false cover story)

337. <u>Coercion Through Deceptive Means (§ 787.06(2)(a))</u>

FOURTH AMENDED COMPLAINT

    a. Promises of "gifts, money, and vacations" used as "tools to manipulate...into compliance"

    b. Defendants continued to portray themselves as a committed couple, deceiving the Plaintiff into participation, as part of a much larger scheme created by the Defendants.

338. <u>Physical Restraint and Isolation</u>

    a. Confiscation of clothing and phones, preventing safe departure

    b. Hotel suites requiring key access "with no stairwell access without triggering alarms"

    c. "Once under the defendants' control, Mr. Howard had no means to return home without satisfying Ms. Ventura."

339. <u>Chemical Coercion and Substance Control</u>

    a. Tripled MDMA dosage to get him "freaky" and increase "encounter intensity"

    b. Drugging with an unknown "pink substance" causing severe physical reactions

    c. Strategic use of substances "like a spider catching its prey in its web"

340. <u>Commercial Sexual Activity Elements</u>

    a. Spend days servicing Ms. Ventura, waiting to be released.

    b. Extended detention beyond the agreed timeframe (asked for one day, held three days)

    c. Used Mr. Howard for days as a sex slave, satisfying their physical and psychological needs.

341. <u>Pattern of Exploitation and Control</u>

    a. Through manipulation and financial coercion, and additional coercion occuring when attempting to leave

    b. Defendants lacked regard for Mr. Howard's health or safety

    c. Extended sessions (1 encounter =10-15 individual sessions), depending on detention length

342. Specifically, Defendants' human trafficking activities included:

    a. Transportation: Moving Plaintiff from NYC to Miami for purposes ofcommercial sexual exploitation;

FOURTH AMENDED COMPLAINT

      b. Harboring: Maintaining Plaintiff in the SLS hotel, The Mandarin, The One, The Intercontinental, while restricting freedom of movement;

      c. Recruiting: Initially enticing Plaintiff through promises of gifts and travel, through peer pressure.

      d. Obtaining: Securing Plaintiff's services through promises of financial gain and/or favor;

      e. Maintaining: Keeping Plaintiff in conditions of sexual servitude through withholding his clothing, cell phone, and wallet while with the confine of locations controlled by the Defendants.

343. Defendants employed coercion through the following specific means:

      a. Psychological Coercion: intimidation, and mental manipulation;

      b. Economic Coercion: Financial control and debt bondage once in new loations lacking resources to return;

      c. Substance-Based Coercion: Manipulated drug use to maintain control;

      d. Document Control: wallet with identification was taken, along with cell phone and clothes.

**Harm Suffered by Plaintiff:**

344. As a direct and proximate result of Defendants' human trafficking, Plaintiff has suffered and continues to suffer economic damages, including but not limited to:

      a. Past and future medical expenses;

      b. Past and future mental health treatment expenses;

      c. Lost wages and diminished earning capacity;

      d. Costs and expenses incurred as a result of the human trafficking; and

      e. Other reasonable costs and expenses incurred by Plaintiff.

345. As a direct and proximate result of Defendants' human trafficking, Plaintiff has suffered and continues to suffer noneconomic damages, including but not limited to:

      a. Pain and suffering;

      b. Inconvenience;

      c. Mental anguish;

      d. Loss of capacity for enjoyment of life; and

      e. Other nonfinancial losses.

346.    Defendants' conduct was intentional, willful, wanton, and malicious, warranting an award of punitive damages pursuant to Florida Statutes §§ 768.72, 768.725, and 768.73.

347.    Plaintiff is entitled to reasonable attorney fees and costs pursuant to Florida Statute § 787.061(3)(c).

**Relevant Case Law:**

a.    *State v. Fletcher, 508 So. 2d 506 (Fla. 4th DCA 1987) Planning and premeditation is inherent in major trafficking cases and conspiracy to traffic cases.*

b.    *Cooper v. State, 377 So. 2d 1153 (Fla. 1979) Failure to disclose discoverable material is reversible as a matter of law absent proper inquiry*

348.    Defendants, including Sean Combs, Cassandra Ventura, Bad Boy Records, and related corporate entities, violated Florida Statute § 787.061 by engaging in human trafficking through transporting, harboring, maintaining, and coercing Plaintiff for commercial sexual exploitation.

349.    These actions, motivated by sexual gratification and enabled by systematic deception and substance abuse, caused Plaintiff significant physical, psychological, and economic harm. Plaintiff respectfully seeks relief for these trafficking violations under Florida Statute § 787.061 and applicable civil remedies.

350.    The aforementioned trafficking scheme constituted human trafficking, sexual assault, coercion, and forced commercial sexual activity upon Plaintiff Howard under Florida Statute § 787.06 and § 787.061.

351.    Defendants herein acted through prohibited means of coercion as defined by Florida Statute § 787.06(2)(a), including deceptive and fraudulent means, restraint, isolation, and domination of Plaintiff's will.

352.    Defendants transported Plaintiff across state lines from New York to Florida for purposes of commercial sexual exploitation without lawful authority. Plaintiff was kept ignorant regarding the entirety of the encounters and/or the scheme of the Defendants. Therefore, legal, meaningful consent could not have been obtained.

353.    As a result of the aforementioned human trafficking, commercial sexual exploitation, forced labor, sexual assault, involuntary drugging, and systematic psychological manipulation sustained at the hands of Defendants herein, Plaintiff was

36

FOURTH AMENDED COMPLAINT

caused to suffer and continues to experience severe physical injuries, chronic psychological trauma, post-traumatic stress disorder, anxiety, depression, humiliation, and ongoing fear of retaliation.

354.    As a direct and proximate result of Defendants' violations of Florida Statutes § 787.06 and § 787.061, Mr. Howard was caused to be trafficked for commercial sexual purposes, sexually exploited through coercion, subjected to involuntary servitude, and caused to sustain severe mental suffering, psychological and emotional distress, loss of wages and earning capacity, loss of reputation, embarrassment and humiliation, damage to personal relationships, medical and mental health expenses, and deprivation of his fundamental rights to personal liberty, bodily autonomy, and human dignity under Florida law and the United States Constitution.

355.    Because of the preceding violations of Florida human trafficking laws, Plaintiff was damaged in the amount to be determined after trial in economic and noneconomic damages as provided by Florida Statute § 787.061(3), plus punitive damages pursuant to Florida Statutes §§ 768.72, 768.725, and 768.73, costs, disbursements, reasonable attorney's fees as provided by Florida Statute § 787.061(3)(c), pre- and post-judgment interest, and such other relief as this Court deems just and proper under Florida's comprehensive civil remedies for human trafficking victims.

<u>**THIRD CAUSE OF ACTION**</u>

**CIVIL REMEDY FOR HUMAN TRAFFICKING**

**(California Civil Code § 52.5 - Human Trafficking)**

**Against all Defendants**

356.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

**Legal Standard and Pleading Requirements**

357.    California Civil Code § 52.5 provides a private right of action for victims of human trafficking, allowing recovery of damages and injunctive relief. To establish a claim under Civil Code § 52.5, Plaintiff must demonstrate the following:

**Human Trafficking Conduct: Plaintiff must show**

37

FOURTH AMENDED COMPLAINT

   1. TheDefendant(s) deprived or violated the personal liberty of another with the intent to obtain forced labor or services,

   2. Defendant(s) accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury, and

   3. The Defendant(s) conduct falls within the definition of trafficking under Penal Code § 236.1. See Cal. Penal Code § 236.1(a).

358. <u>Trafficking Elements</u>: The Defendant(s) engaged in conduct constituting human trafficking by depriving the plaintiff of personal liberty through prohibited means.

359. <u>Intent for Forced Labor/Services</u>: The Defendant(s) acted with the specific intent to obtain forced labor, services, or commercial sex acts from the plaintiff.

360. <u>Prohibited Means</u>: The Defendant(s) used force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to accomplish the trafficking.

361. <u>Causal Connection</u>: The Defendant's trafficking conduct directly caused injury to the plaintiff.

**Relevant Case Law**:

   a. *People v. Hagos, 27 Cal. App. 5th 824 (2018): Human trafficking requires specific intent to obtain forced labor or services through prohibited means.*

   b. *People v. Truong, 10 Cal. App. 5th 551 (2017): Force or coercion may be established through totality of circumstances, including psychological control.*

362. <u>Civil Liability Standard</u>: Plaintiff must establish

   1. defendant's trafficking conduct as defined under Penal Code § 236.1,

   2. intent to violate or reckless disregard of plaintiff's rights,

   3. causation between the conduct and plaintiff's injuries, and

   4. actual damages. Cal. Civ. Code § 52.5(a).

363. <u>Knowledge/Intent Standard</u>: The defendant acted with intent to violate the plaintiff's rights or in reckless disregard of those rights under the trafficking statute.

364. <u>Causation Requirement</u>: The defendant's trafficking conduct was a substantial factor in causing the plaintiff's harm and damages.

38

365. <u>Actual Damages</u>: The plaintiff suffered quantifiable harm including economic losses, physical injuries, emotional distress, or other compensable damages.

366. <u>Joint and Several Liability</u>: Multiple defendants may be held jointly and severally liable for trafficking conduct when acting in concert or conspiracy. Cal. Civ. Code § 52.5(b).

**Relevant Case Law:**

a. *Doe v. Backpage.com, 817 F.3d 12 (1st Cir. 2016): Civil trafficking claims require showing defendant's conduct facilitated or directly participated in trafficking operations.*

b. *Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017): Reckless disregard standard satisfied when defendant consciously ignored substantial risk of trafficking violations.*

367. <u>Statute of Limitations</u>: Action must be commenced within 5 years of discovery of the trafficking or 5 years after plaintiff is no longer subject to trafficking, whichever is later. Cal. Civ. Code § 52.5(c).

368. <u>Available Remedies</u>: Successful plaintiffs may recover actual damages, reasonable attorney's fees and costs, punitive damages upon showing malice or oppression, and equitable relief including injunctions. Cal. Civ. Code § 52.5(a).

**Relevant Case Law**:

a. *Doe v. Red Roof Inns, 21 F. Supp. 3d 714 (E.D. Tex. 2014): Civil trafficking remedies include both compensatory and punitive damages when defendant's conduct was willful or reckless.*

b. *Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017): Attorney's fees recoverable under civil trafficking statutes to incentivize private enforcement.*

**Facts Supporting Pleading Requirements:**

**Initial Fraudulent Contact (2009):**

369. <u>Trafficking Elements</u>: Ms. Ventura contacted Mr. Howard under the false identity "Jackie Star," concealing her true identity using makeup, a large red wig, and dim lighting while inviting him to The London hotel in New York City under fraudulent pretenses for what she claimed was a standard companion arrangement.

FOURTH AMENDED COMPLAINT

370. <u>Intent for Forced Services</u>: Ms. Ventura failed to inform Mr. Howard that another party (Mr. Combs, alias "Frank") would be present and that the encounter would involve filmed sexual activities for their mutual gratification, demonstrating intent to obtain forced sexual services through deception.

371. <u>Prohibited Means - Fraud</u>: Ms. Ventura falsely represented herself and Mr. Combs as a "married couple" participating in "the Lifestyle" when they were public figures operating a systematic exploitation scheme targeting multiple male victims.

**Interstate Transportation for Commercial Sex (2012-2019)**:

372. <u>Trafficking Conduct</u>: Beginning in early 2012, Ms. Ventura and Mr. Combs systematically transported Mr. Howard from New York City to Miami and Los Angeles numerous times using promises of gifts, money, and vacations as tools to manipulate him into compliance for commercial sexual exploitation.

373. <u>Causal Connection</u>: The transportation was specifically arranged to facilitate prolonged sexual encounters where Mr. Howard would "spend days servicing Ms. Ventura" while being detained beyond agreed timeframes, with one encounter lasting three days when he was told it would be one day.

374. <u>Commercial Sexual Activity</u>: Mr. Howard was presented to hotel staff as "Security" for Bad Boy Records as a cover story while actually being trafficked for sexual services in exchange for financial compensation, travel arrangements, and accommodations.

**Force, Fraud, and Coercion Elements**:

375. <u>Physical Restraint</u>: Defendants systematically confiscated Mr. Howard's clothing, cellphone, and personal belongings upon arrival at hotel suites, preventing him from leaving safely and maintaining control through isolation in suites requiring key access "with no stairwell access without triggering alarms."

376. <u>Chemical Coercion</u>: Ms. Ventura strategically drugged Mr. Howard with MDMA at triple dosage to get him "freaky" and increase "encounter intensity," using substances "like a spider catching its prey in its web" to lower his inhibitions and facilitate sexual exploitation.

377. <u>Economic Control</u>: Once under Defendants' control, Mr. Howard had no means to return home without satisfying Ms. Ventura's demands, creating a condition of

40

FOURTH AMENDED COMPLAINT

economic dependency and coercion where "money was used as a form of dominance."

**Systematic Pattern of Exploitation:**

378.   Prolonged Sexual Servitude: Defendants structured encounters into four mandatory phases lasting hours, with 1 encounter sometimes having 10-15 individual sessions per visit, depending on detention length, during which Mr. Howard suffered physical injuries, including tears to his penis shaft from prolonged forced masturbation.

379.   Threats of Violence: Mr. Combs implied threats of violence to assert control, including threatening to "pistol whip" Mr. Howard and directing Ms. Ventura to retrieve his firearm from the master suite during at least one encounter.

380.   Reckless Disregard for Health: Defendants' conduct caused Mr. Howard to contract Chlamydia during unprotected sexual contact, with Ms. Ventura later revealing she had contracted the STD and blamed Mr. Combs' infidelity, demonstrating deliberate disregard for Plaintiff's health and safety.

**Sexual Assault and Non-Consensual Activity:**

381.   Forced Sexual Contact: At Beverly Hills Hotel in October 2014, Ms. Ventura forced herself on Mr. Howard during her menstrual cycle against his will as "calculated disregard as a punishment for refusing to fly to Los Angeles," pinning him to the couch despite his repeated requests to wait.

382.   Non-Consensual Recording: Defendants filmed Mr. Howard in compromising encounters without his consent for years, creating recordings that the couple would watch together and use for mutual masturbation, demonstrating ongoing violation of his dignity and privacy rights.

383.   Manipulation Through Intoxication: When Mr. Howard confronted Ms. Ventura about non-consensual recording, she demonstrated her control by masturbating to climax in front of him while watching previous recordings of their encounters, showing the extent of her psychological manipulation.

**Harm Suffered by Plaintiff:**

384.   Physical Injuries: Plaintiff suffered severe physical trauma including genital injuries from prolonged forced masturbation that caused "skin tears and scabs on Mr.

41

FOURTH AMENDED COMPLAINT

Howard's penis, causing severe pain and scarring," and tears to his penis shaft resulting in "skin peeling and scabbing" from extended sessions lasting hours without consideration for his well-being.

385.    Sexually Transmitted Disease: Plaintiff contracted Chlamydia as a direct result of Defendants' reckless conduct in compelling unprotected sexual contact, with Ms. Ventura later revealing she had contracted the STD and blamed Mr. Combs' infidelity, demonstrating Defendants' deliberate disregard for Plaintiff's health and safety.

386.    Drug-Related Physical Trauma: Plaintiff suffered severe physical reactions from involuntary drugging, including uncontrollable sweating, violent spasms, intense stomach pain, and uncontrollable vomiting that forced him to crawl to a bathroom and left him "dizzy and weak on the bathroom floor" after being given unknown substances by Mr. Combs.

387.    Psychological Trauma and PTSD: Plaintiff suffered and continues to experience severe psychological trauma, post-traumatic stress disorder, chronic anxiety, and depression as a direct result of the systematic sexual exploitation, manipulation, and witnessing repeated domestic violence between Defendants over nearly a decade.

388.    Emotional Distress from Sexual Assault: Plaintiff experienced severe emotional distress from being sexually assaulted by Ms. Ventura during her menstrual cycle at Beverly Hills Hotel, where she forced herself upon him against his will as punishment for refusing to fly to Los Angeles, causing lasting psychological harm and trauma.

389.    Loss of Dignity and Privacy: Plaintiff suffered ongoing violation of his dignity through non-consensual recording of sexual encounters that Defendants watched together and used for mutual masturbation, with Ms. Ventura demonstrating her control by masturbating to climax while watching previous recordings in front of Plaintiff.

390.    Economic Losses: Plaintiff suffered financial harm through lost wages and diminished earning capacity as a result of the physical and psychological injuries sustained during the trafficking period, along with medical and mental health treatment expenses required to address the trauma.

391.    Reputational and Professional Damage: Plaintiff's reputation and professional standing have been damaged as a result of his name being connected to the criminal

42

prosecution of Sean Combs and the public exposure of his involvement in the trafficking scheme, with damages continuing to accrue as a result of the ongoing criminal proceedings.

392.  Loss of Personal Relationships: Plaintiff suffered damage to personal relationships and social connections as a result of the trauma, secrecy, and psychological effects of the prolonged exploitation and abuse he endured at the hands of Defendants.

**Relevant Case Law**:

    a.  *People v. Hagos, 27 Cal. App. 5th 824 (2018): Civil trafficking remedies must address both physical and psychological harm suffered by victims through comprehensive damages.*

    b.  *Doe v. Red Roof Inns, 21 F. Supp. 3d 714 (E.D. Tex. 2014): Trafficking victims are entitled to full compensation for medical expenses, psychological treatment, and long-term consequences of exploitation.*

    c.  *Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017): Damages in civil trafficking cases must account for ongoing harm and diminished quality of life resulting from systematic abuse.*

393.  Defendants, including Sean Combs, Cassandra Ventura, Bad Boy Records, and related corporate entities, violated California Civil Code § 52.5 by engaging in human trafficking through systematic sexual exploitation, chemical coercion, and physical restraint. These actions, motivated by sexual gratification and enabled by deception and substance abuse, caused Plaintiff significant physical, psychological, and economic harm that continues to this day. Plaintiff respectfully seeks relief for these trafficking violations under California Civil Code § 52.5 and applicable remedies.

394.  The human trafficking, sexual exploitation, and resulting injuries to Mr. Howard occurred without fault or wrongdoing by the Plaintiff contributing thereto.

395.  The aforementioned trafficking scheme constituted human trafficking, sexual assault, and systematic exploitation upon Plaintiff Howard under California Civil Code § 52.5 and Penal Code § 236.1.

396.    Defendants herein acted through prohibited means of force, fraud, and coercion as defined by California Penal Code § 236.1, deliberately violating Plaintiff's personal liberty and dignity for their sexual gratification.

397.    As a direct and proximate result of Defendants' violations of California Civil Code § 52.5, Mr. Howard was caused to be trafficked across state lines, sexually exploited through coercion and deception, and caused to sustain severe mental suffering, psychological and emotional distress, loss of wages and earning capacity, medical expenses, loss of reputation, embarrassment and humiliation, damage to personal relationships, and deprivation of his fundamental rights to personal liberty and bodily autonomy under California law and the United States Constitution.

398.    Because of the preceding violations of California Civil Code § 52.5, Plaintiff was damaged in an amount to be determined at trial, plus punitive damages, reasonable attorney's fees as provided by California Civil Code § 52.5, costs, disbursements, pre- and post-judgment interest, and such other relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION

### FEDERAL CIVIL REMEDY FOR HUMAN TRAFFICKING(18 U.S.C. § 1595 - Trafficking Victims Protection Act)

### Against all Defendants

399.    Plaintiff repeats and realleges every allegation in all of the preceding paragraphs as if fully set forth herein.

**Legal Standard and Pleading Requirements**

400.    Under 18 U.S.C. § 1595, a civil complaint must establish by a preponderance of evidence that defendant violated one or more provisions of Chapter 77 of Title 18 (Peonage, Slavery, and Trafficking in Persons) and that such violation proximately caused injury to plaintiff's business or property. See 18 U.S.C. § 1595(a).

401.    To establish a claim under the Trafficking Victims Protection Act (18 U.S.C. § 1595), the plaintiff must demonstrate:

   a.    Predicate Trafficking Offense: The defendant violated one or more provisions of 18U.S.C. §§ 1581-1594, including sex trafficking (§ 1591), forced labor (§ 1589), ortrafficking with respect to peonage or involuntary servitude (§ 1590).

44

FOURTH AMENDED COMPLAINT

b. Interstate Commerce Nexus: The defendant's conduct involved or affectedinterstate or foreign commerce, including transportation across state lines, use ofinterstate communication systems, or other activities affecting commerce.

c. Proximate Causation: A direct causal connection exists between the defendant'strafficking violation and the injury suffered by plaintiff.

d. Actual Damages: The plaintiff suffered quantifiable injury to business or property,including economic losses, physical harm, or other compensable damages.

402. Sex Trafficking Elements (18 U.S.C. § 1591): Defendant knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited a person for the purpose of a commercial sex act through force, fraud, or coercion.

403. Commercial Sex Act Definition: Any sex act on account of which anything of value is given to or received by any person, including money, drugs, shelter, transportation, or other benefits. 18 U.S.C. § 1591(e)(3).

404. Force, Fraud, or Coercion Standard: Includes threats of serious harm, physical restraint, any scheme or pattern intended to cause belief that failure to perform would result in serious harm, debt bondage, or abuse of legal process. 18 U.S.C. § 1591(e)(2).

405. Knowledge Requirement: Defendant acted with knowledge or in reckless disregard of the fact that the person would be caused to engage in commercial sex acts. Willful blindness satisfies this element.

406. Forced Labor Elements (18 U.S.C. § 1589): Defendant knowingly provided or obtained labor or services through force, threats of force, physical restraint, threats of physical restraint, fraud, or coercion.

407. Corporate and Third-Party Liability: Entities may be held liable for trafficking violations through direct participation, vicarious liability, or by knowingly benefiting from trafficking while having actual knowledge or reckless disregard of the trafficking.

**Relevant Case Law**:

45

FOURTH AMENDED COMPLAINT

    a.   *United States v. Jungers, 702 F.3d 1066 (8th Cir. 2013): Fraud encompasses "knowingly misrepresenting or omitting facts to obtain compliance," including deceptive promises about working conditions or compensation.*

    b.   *Doe v. Howard, 768 F.3d 1336 (11th Cir. 2014): Plaintiff must establish "but-for causation between defendant's statutory violation and plaintiff's injury," plus foreseeability that trafficking would cause the type of harm suffered.*

    c.   *United States v. Todd, 627 F.3d 329 (9th Cir. 2010): Coercion analysis focuses on "whether a reasonable person in the victim's position would have felt compelled to comply" with trafficking demands.*

    d.   *Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017): Civil remedies under § 1595 include compensatory damages, punitive damages, and reasonable attorney's fees to incentivize private enforcement.*

**Facts Supporting Pleading Requirements:**

**Predicate Trafficking Offense - Sex Trafficking (18 U.S.C. § 1591):**

408.    <u>Recruitment and Transportation</u>: Defendants knowingly recruited Mr. Howard through fraudulent means, with Ms. Ventura using the false identity "Jackie Star" and concealing that Mr. Combs would be present, then systematically transported him from New York City to Miami and Los Angeles beginning in 2012 for commercial sexual exploitation.

409.    <u>Commercial Sex Act Elements</u>: Defendants caused Mr. Howard to engage in commercial sex acts as defined by 18 U.S.C. § 1591(e)(3), including unprotected sexual intercourse, prolonged masturbation sessions, and other sexual activities in exchange for financial compensation, travel arrangements, hotel accommodations, and other things of value.

410.    <u>Force, Fraud, and Coercion</u>: Defendants employed systematic fraud by concealing their identities as public figures and falsely representing themselves as a "married couple," while using coercion through confiscation of clothing and cellphones, isolation in hotel suites requiring key access, and chemical coercion through involuntary drugging with MDMA at triple dosage.

**Interstate Commerce Nexus:**

46

FOURTH AMENDED COMPLAINT

411.    Interstate Transportation: Defendants' trafficking scheme involved the systematic interstate transportation of Mr. Howard across state lines from New York to Florida and California, with Ms. Ventura booking JetBlue flights and arranging accommodations at hotels including the Mandarin (Miami), Beverly Hills Hotel (Los Angeles), and SLS (Miami).

412.    Commercial Enterprise: The trafficking activities were conducted through Defendants' business enterprises, including Bad Boy Records and Combs Enterprises, which provided financial resources and logistical support for the interstate transportation and accommodation arrangements.

413.    Pattern Affecting Commerce: Defendants operated a decade-long trafficking enterprise that recruited "dozens of male entertainers" across state lines, demonstrating a systematic pattern of conduct affecting interstate commerce through the use of corporate resources and interstate transportation networks.

**Predicate Trafficking Offense - Forced Labor (18 U.S.C. § 1589):**

414.    Coerced Labor Through Promises: Defendants obtained labor and services from Mr. Howard through offers of gifts and/or favors. Mr. Combs at one point threatened to "pistol whip" Mr. Howard and directed Ms. Ventura to retrieve his firearm from the master suite during at least one encounter.

415.    Physical Restraint and Isolation: Defendants systematically restrained Mr. Howard by confiscating his clothing, cellphone, and personal belongings upon arrival, isolating him in hotel suites with restricted access where he had "no means to return home without satisfying Ms. Ventura."

416.    Debt Bondage and Economic Control: Defendants used financial control as a means of coercion, with "money used as a form of dominance" and extending encounters beyond agreed timeframes (asking for one day but detaining for three days), creating economic dependency.

**Knowledge and Reckless Disregard:**

417.    Actual Knowledge: Defendants demonstrated actual knowledge of their trafficking conduct through their systematic operation of what Mr. Howard describes as a "decade-long sex trafficking ring" that "manipulated male entertainers into sexual encounters using promises of money and favors."

47

FOURTH AMENDED COMPLAINT

418. <u>Reckless Disregard for Health</u>: Defendants acted with reckless disregard for Mr. Howard's safety and well-being, causing him to contract Chlamydia through forced unprotected sexual contact and administering unknown substances that caused severe physical reactions including violent spasms and uncontrollable vomiting.

419. <u>Pattern of Systematic Abuse</u>: Defendants' conduct demonstrates knowledge and intent through the structured nature of encounters divided into "four phases" with "15-30 individual sessions" per visit, showing deliberate orchestration of commercial sexual exploitation.

**Proximate Causation and Damages:**

420. <u>Direct Causal Connection</u>: Defendants' trafficking violations directly caused Mr. Howard's injuries, including physical trauma from prolonged forced masturbation causing "skin tears and scabs," sexual assault during Ms. Ventura's menstrual cycle, and involuntary drugging causing severe physical reactions.

421. <u>Economic Harm</u>: As a direct result of the trafficking, Mr. Howard suffered economic damages including medical expenses for STD treatment, lost wages and diminished earning capacity due to physical and psychological injuries, and ongoing mental health treatment costs.

422. <u>Psychological Injury</u>: The trafficking caused severe and continuing psychological harm including post-traumatic stress disorder, chronic anxiety, depression, and emotional distress from witnessing repeated domestic violence and being subjected to systematic sexual exploitation over nearly a decade.

**Corporate and Third-Party Liability**:

423. <u>Corporate Participation</u>: Defendant corporations including Bad Boy Records and Combs Enterprises directly participated in the trafficking by providing financial resources, booking travel arrangements, and presenting Mr. Howard to hotel staff as "Security" for Bad Boy Records as a cover story for the trafficking activities.

424. <u>Beverly Hills Hotel Liability</u>: Defendant Beverly Hills Hotel, through its employees, facilitated the trafficking by providing access to penthouse suites and assisting with arrangements while having actual knowledge or acting with reckless disregard of the trafficking activity occurring on its premises.

48

FOURTH AMENDED COMPLAINT

425.   <u>Vicarious Liability</u>: Defendant entities are vicariously liable for the trafficking conduct of their agents and employees who used corporate resources and facilities to facilitate the systematic sexual exploitation of Mr. Howard and other victims over a decade-long period.

**Harm Suffered by Plaintiff:**

426.   <u>Physical Injuries from Forced Sexual Activity</u>: As a direct and proximate result of Defendants' trafficking violations, Mr. Howard suffered severe physical injuries including genital trauma from prolonged forced masturbation that caused "skin tears and scabs on Mr. Howard's penis, causing severe pain and scarring," and tears to his penis shaft resulting in "skin peeling and scabbing" from extended sessions lasting hours.

427.   <u>Sexually Transmitted Disease</u>: Defendants' reckless trafficking conduct directly caused Mr. Howard to contract Chlamydia through forced unprotected sexual contact, requiring medical treatment and causing ongoing health concerns, with Ms. Ventura later admitting she had contracted the STD and blamed Mr. Combs' infidelity for the infection.

428.   <u>Drug-Related Physical Trauma</u>: Mr. Howard suffered severe physical reactions from involuntary drugging orchestrated by Defendants, including uncontrollable sweating, violent spasms, intense stomach pain, and uncontrollable vomiting that forced him to crawl to a bathroom and left him "dizzy and weak on the bathroom floor" after being administered unknown substances.

429.   <u>Severe Psychological Trauma</u>: The trafficking violations caused Mr. Howard to suffer and continue to experience severe psychological harm including post-traumatic stress disorder, chronic anxiety, depression, and ongoing emotional distress from the systematic sexual exploitation, manipulation, and witnessing repeated domestic violence over nearly a decade.

430.   <u>Sexual Assault Trauma</u>: Mr. Howard suffered additional psychological and emotional harm from being sexually assaulted by Ms. Ventura during her menstrual cycle at Beverly Hills Hotel, where she forced herself upon him against his will as punishment for refusing to comply with trafficking demands, causing lasting trauma and violation of his bodily autonomy.

49

FOURTH AMENDED COMPLAINT

431.    Loss of Privacy and Dignity: Defendants' violations caused ongoing harm through non-consensual recording of sexual encounters that they watched together and used for mutual masturbation, with Ms. Ventura demonstrating control by masturbating to climax while watching previous recordings in front of Mr. Howard, causing severe humiliation and dignity loss.

432.    Economic Damages: As a direct result of the trafficking violations, Mr. Howard suffered significant economic harm, including medical expenses for STD treatment and ongoing psychological therapy, lost wages and diminished earning capacity due to physical and psychological injuries, and costs associated with recovery from the systematic exploitation.

433.    Reputational and Professional Harm: The trafficking violations and subsequent exposure through the criminal prosecution of Sean Combs have caused ongoing damage to Mr. Howard's reputation and professional standing, with his name being connected to the criminal activities and causing continued harm to his personal and professional relationships.

434.    Loss of Earning Capacity: The physical and psychological injuries resulting from Defendants' trafficking violations have diminished Mr. Howard's ability to earn income, both through direct physical limitations and the ongoing psychological effects that impact his ability to work and maintain professional relationships.

435.    Medical and Treatment Expenses: Mr. Howard has incurred and continues to incur substantial medical expenses for treatment of physical injuries, STD treatment, and ongoing psychological therapy and mental health treatment required as a direct result of the trafficking violations and systematic abuse.

436.    Pain and Suffering: The trafficking violations caused Mr. Howard to experience severe physical pain from injuries sustained during forced sexual activity, emotional suffering from systematic manipulation and abuse, and ongoing mental anguish from the lasting psychological effects of the decade-long exploitation.

437.    Loss of Personal Autonomy: Defendants' violations fundamentally violated Mr. Howard's right to personal liberty and bodily autonomy, causing him to lose control over his own body and choices through systematic coercion, drugging, and physical restraint over an extended period.

50

FOURTH AMENDED COMPLAINT

438.  <u>Ongoing Fear and Anxiety</u>: As a result of the trafficking violations, Mr. Howard continues to suffer from ongoing fear of retaliation, anxiety about public exposure, and psychological distress that affects his daily life and ability to form healthy relationships.

439.  <u>Deprivation of Constitutional Rights</u>: The trafficking violations caused Mr. Howard to be deprived of his fundamental constitutional rights to liberty, due process, and protection from involuntary servitude, causing both immediate harm during the trafficking period and continuing constitutional injury.

440.  This action is timely filed within the 10-year statute of limitations provided by 18 U.S.C. § 1595(c), which runs from the date on which the cause of action arose or the date on which Plaintiff reasonably discovered the cause of action, whichever is later

441.  Because of the preceding violations of federal trafficking laws under 18 U.S.C. §§ 1591, 1589, and related provisions, Mr. Howard was damaged in an amount to be determined at trial, plus punitive damages where appropriate, treble damages under applicable RICO provisions, reasonable attorney's fees as provided by 18 U.S.C. § 1595(a), costs, disbursements, pre- and post-judgment interest, and such other relief as this Court deems just and proper under the Trafficking Victims Protection Act.

**<u>FIFTH CAUSE OF ACTION</u>**

**Sexual Assault pursuant to The California Sexual Abuse and Cover Up Accountability Act, (Cal. Civil Proc.§ 340.16)**

**All Defendants**

442.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

**Legal Standard and Pleading Requirements**

443.  California Civil Procedure Code § 340.16 provides an extended statute of limitations for civil actions arising from sexual abuse that occurred when the plaintiff was an adult, allowing claims to be brought within specified time periods regardless of when the abuse occurred. See Cal. Civ. Proc. Code § 340.16(a).

444.  To establish a claim under the California Sexual Abuse and Cover Up Accountability Act (Cal. Civ. Proc. Code § 340.16), the plaintiff must demonstrate:

FOURTH AMENDED COMPLAINT

a. <u>Sexual Abuse</u>: The defendant committed sexual abuse as defined by California Civil Code § 340.16(b)(1), which includes sexual assault, sexual battery, or any other nonconsensual sexual conduct that would constitute a criminal offense under California Penal Code §§ 243.4, 261, 286, 287, 288, 289, or other applicable sexual offense statutes.

b. <u>Adult Victim</u>: The sexual abuse occurred when the plaintiff was 18 years of age or older, distinguishing this from childhood sexual abuse claims under different statutory provisions.

c. <u>Timely Filing</u>: The action is commenced within the applicable limitations period as specified in § 340.16(c), or other applicable time periods.

d. <u>Causation</u>: A causal connection exists between the defendant's sexual abuse and the injuries or damages suffered by the plaintiff.

445. <u>Sexual Assault Elements</u>: Under California Penal Code § 243.4, sexual assault requires:

1. touching an intimate part of another person,

2. while that person is unlawfully restrained,

3. against the will of the person touched, and

4. for the purpose of sexual arousal, sexual gratification, or sexual abuse.

446. <u>Sexual Battery Elements</u>: Under California Penal Code § 243.4(e)(1), sexual battery includes touching an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse.

447. <u>Rape Elements</u>: Under California Penal Code § 261, rape includes sexual intercourse accomplished with a person not the spouse of the perpetrator where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury.

448. <u>Cover Up Liability</u>: Entities may be held liable under § 340.16 for engaging in a "cover up" as defined by the statute, which includes concealment or attempted concealment of evidence related to sexual abuse by an employee, volunteer, representative, or agent.

52

449. <u>Institutional Liability</u>: Organizations, corporations, and other entities may be held liable for sexual abuse committed by their employees, agents, or representatives, particularly where the entity had knowledge or should have had knowledge of the abuse and failed to take appropriate action.

450. <u>Damages Available</u>: Successful plaintiffs may recover compensatory damages for physical and psychological injuries, medical expenses, lost wages, pain and suffering, and in appropriate cases, punitive damages for willful, malicious, or oppressive conduct.

**Relevant Case Law**:

a. *Doe v. City of Los Angeles, 42 Cal. 4th 531 (2007): Sexual abuse claims require proof of nonconsensual sexual contact accomplished through force, threat, or other prohibited means.*

b. *Cochran v. Cochran, 65 Cal. App. 4th 488 (1998): Sexual battery includes any nonconsensual touching of intimate parts for purposes of sexual arousal or gratification.*

c. *John R. v. Oakland Unified School District, 48 Cal. 3d 438 (1989): Institutional liability may attach where entities had actual or constructive knowledge of sexual abuse and failed to prevent it.*

d. *Giraldo v. Department of Corrections, 168 Cal. App. 4th 231 (2008): Cover up liability extends to systematic concealment of sexual abuse by institutional actors.*

**Facts Supporting Pleading Requirements:**

**Sexual Abuse Elements (Cal. Penal Code §§ 243.4, 261, 289):**

451. <u>Sexual Assault During Menstrual Cycle</u>: At Beverly Hills Hotel in October 2014, Ms. Ventura committed sexual assault as defined by California Penal Code § 243.4 by forcing herself upon Mr. Howard during her menstrual cycle against his will, pinning him to the couch despite his repeated requests to wait and inserting his penis into herself without consent while he was in a compromised position.

452. <u>Unlawful Restraint During Sexual Contact</u>: Ms. Ventura accomplished the sexual assault while Mr. Howard was unlawfully restrained through "manipulation, physical positioning, and Mr. Combs' presence," seducing him into compliance, removing his

FOURTH AMENDED COMPLAINT

clothing, and manipulating him through foreplay into a compromised position on the sofa where she could overpower his resistance.

453.    <u>Against the Will of Victim</u>: The sexual contact occurred against Mr. Howard's will as demonstrated by his repeated requests for Ms. Ventura to "wait," his anger upon discovering she was menstruating heavily, and his questioning "why she would do that to him," establishing the nonconsensual nature of the sexual contact.

454.    <u>Ms. Ventura's Trial Testimony</u>: During the trial of Defendant Combs, Ms. Ventura speaks of an encounter, where she claims Mr. Combs forced her into a sexual encounter with a male provider. Mr. Howard's truth differs greatly from that of Ms. Ventura. Mr. Howard states the facts of the Beverly Hills Hotel incident detailed herein as the encounter referenced by Ms. Ventura during her testimony before the Federal Court. Mr. Howard denies Ms. Ventura's narrative, directly claiming it to be perjury before the Court.

**Sexual Battery Elements (Cal. Penal Code § 243.4(e)(1)):**

455.    <u>Touching of Intimate Parts</u>: Ms. Ventura committed sexual battery by taking hold of Mr. Howard's penis and inserting it into herself for the purpose of sexual arousal and gratification, constituting unlawful touching of intimate parts as defined by the statute.

456.    <u>Against Victim's Will</u>: The touching was accomplished against Mr. Howard's will while he was physically restrained and unable to prevent the sexual contact, with Ms. Ventura ignoring his protests and proceeding despite his clear objections to the sexual activity.

457.    <u>Sexual Arousal and Gratification Purpose</u>: The contact was accomplished for the purpose of sexual arousal and gratification, with Ms. Ventura "finishing quickly" and later revealing she was aware of her menstrual cycle but "didn't think it would be heavy," demonstrating her intent to achieve sexual satisfaction regardless of Mr. Howard's consent.

**Cover Up by Corporate Defendants**:

458.    **Witness and Attempted Cover Up**: Mr. Combs witnessed the sexual assault encounter and immediately attempted to "cover up" the matter by offering Mr. Howard additional monetary compensation for Ms. Ventura's actions, admitting that

54

FOURTH AMENDED COMPLAINT

"Ms. Ventura was aware of her monthly cycle, but was intoxicated and 'horney'" and had hoped Mr. Howard would not mind once the assault began.

459.    Corporate Facilitation and Cover Up: Defendant Corporations engaged in a "cover up" as defined by Cal. Civil Procedure Code § 340.16(4)(A) by financing the accommodations where the sexual assault occurred and taking no efforts to protect Mr. Howard from harm by Ms. Ventura, who was employed by the Corporations, while concealing evidence of the sexual abuse.

460.    Systematic Concealment: The corporate defendants participated in concealing the sexual assault by maintaining the false narrative that Mr. Howard was "Security" for Bad Boy Records while actually facilitating his transportation for sexual exploitation, demonstrating a pattern of concealment and attempted cover up of sexual abuse by corporate agents.

**Adult Victim Status:**

461.    Adult at Time of Abuse: Mr. Howard was an adult over the age of 18 at all times during the sexual abuse, having begun working as an independent male companion in fall 2009 and meeting the defendants in late 2009, establishing his adult status during the relevant time period for purposes of Cal. Civil Procedure Code § 340.16.

462.    Timely Filing Under Discovery Rule: This action is timely filed under California's discovery rule because Plaintiff did not discover and could not reasonably have discovered that he was a victim of systematic sex trafficking (as opposed to a willing participant in private encounters) until December 2023 when federal investigators contacted him and revealed the enterprise's scope, including multiple other victims, corporate facilitation, and Defendants' true identities as public figures. See Cal. Civ. Proc. Code § 340.16; Jolly v. Eli Lilly & Co., 44 Cal.3d 1103 (1988).

463.    What Plaintiff Could Not Know: Prior to December 2023, Plaintiff lacked knowledge of: (a) dozens of other male victims trafficked using identical methods; (b) Bad Boy Records' corporate facilitation; (c) Defendants' true identities for nearly two years; (d) that encounters were part of decade-long RICO enterprise; (e) that Ventura would testify under oath to trafficking multiple men.

FOURTH AMENDED COMPLAINT

464. <u>Alternative Basis - Continuing Violation</u>: This action is timely under continuing violation doctrine because Defendants' trafficking constituted single, continuous course of conduct through 2019. Richards v. CH2M Hill, Inc., 26 Cal.4th 798 (2001).

465. <u>Alternative Basis - Fraudulent Concealment</u>: Limitations tolled under California's fraudulent concealment doctrine because Defendants actively concealed enterprise nature through aliases, victim isolation, and attorney manipulation. Regents of Univ. of Cal. v. Superior Court, 20 Cal.4th 509 (1999).

**Causation and Harm**:

466. <u>Direct Causation</u>: The sexual assault committed by Ms. Ventura directly caused Mr. Howard to suffer severe emotional distress, humiliation, and psychological trauma, with the assault serving as "calculated disregard as a punishment for refusing to fly to Los Angeles" and demonstrating the defendants' willingness to use sexual violence as a means of control.

467. <u>Ongoing Psychological Harm</u>: As a direct result of the sexual assault, Mr. Howard suffered and continues to experience severe emotional distress, anxiety, post-traumatic stress disorder, humiliation, and embarrassment, with the trauma compounded by the defendants' attempts to minimize and cover up the assault.

468. <u>Physical and Dignitary Harm</u>: The sexual assault caused Mr. Howard physical harm through nonconsensual sexual contact during Ms. Ventura's menstrual cycle and severe dignitary harm through the violation of his bodily autonomy and the defendants' subsequent attempts to dismiss his trauma as "not a big deal."

**Pattern of Sexual Abuse**:

469. <u>Systematic Sexual Exploitation</u>: The Beverly Hills Hotel assault was part of a broader pattern of sexual abuse spanning nearly a decade, during which defendants systematically exploited Mr. Howard through "manipulation, coercion, controlled substances, and threats of violence to engage in non-consensual sexual activities."

470. <u>Non-Consensual Recording</u>: Defendants engaged in additional sexual abuse by filming Mr. Howard "in compromising encounters without his consent for years, creating recordings that the couple would watch together after the encounters ended and use for mutual masturbation," constituting ongoing sexual exploitation and privacy violations.

FOURTH AMENDED COMPLAINT

471.   Chemical Facilitation of Abuse: The sexual abuse was facilitated through systematic drugging, with defendants administering "MDMA in doses three times stronger than what Defendant Ventura herself consumed, to lower his inhibitions and facilitate sexual exploitation," demonstrating premeditated sexual abuse through chemical incapacitation.

**Harm Suffered by Plaintiff**:

472.   Severe Sexual Trauma: As a direct and proximate result of Ms. Ventura's sexual assault during her menstrual cycle at Beverly Hills Hotel, Mr. Howard suffered severe sexual trauma and violation of his bodily autonomy, experiencing immediate shock, disgust, and psychological harm from the nonconsensual sexual contact that was accomplished against his will through physical restraint and manipulation.

473.   Post-Traumatic Stress Disorder: The sexual assault caused Mr. Howard to develop post-traumatic stress disorder (PTSD) characterized by intrusive memories of the assault, nightmares, anxiety attacks, and avoidance behaviors that continue to affect his daily functioning and ability to engage in intimate relationships years after the incident occurred.

474.   Humiliation and Dignitary Harm: Mr. Howard suffered severe humiliation and dignitary harm from the sexual assault, compounded by Ms. Ventura's dismissive reaction when she "laughed and said it wasn't a big deal" and her attempt to minimize the assault by blaming "intoxication and hormones" rather than acknowledging the serious violation of his consent and bodily autonomy.

475.   Loss of Sexual Autonomy and Trust: The assault fundamentally violated Mr. Howard's sexual autonomy and caused lasting damage to his ability to trust intimate partners, with the defendants' systematic pattern of sexual exploitation creating ongoing psychological barriers to healthy sexual relationships and personal intimacy.

476.   Ongoing Anxiety and Depression: As a direct result of the sexual assault and cover-up attempts, Mr. Howard continues to experience severe anxiety, depression, and emotional distress that interferes with his work, relationships, and overall quality of life, requiring ongoing mental health treatment and therapy.

477.   Fear and Hypervigilance: The sexual assault caused Mr. Howard to develop persistent fear and hypervigilance, particularly in situations involving potential

57

intimate contact, creating ongoing psychological distress and limiting his ability to engage freely in social and professional settings.

**Medical and Treatment Expenses**:

478.    Mental Health Treatment Costs: Mr. Howard has incurred and continues to incur substantial expenses for psychological therapy, psychiatric treatment, and mental health services required to address the trauma from the sexual assault, including costs for PTSD treatment, anxiety management, and depression therapy.

479.    Medical Expenses: The sexual assault and its aftermath required Mr. Howard to seek medical attention for physical and psychological symptoms, including medical evaluations, prescription medications for anxiety and depression, and ongoing healthcare costs related to trauma recovery.

480.    Future Treatment Expenses: Mr. Howard will continue to require ongoing mental health treatment, therapy, and medical care for the foreseeable future as a result of the lasting psychological impact of the sexual assault, creating continuing economic damages.

**Economic and Professional Harm**:

481.    Lost Wages and Earning Capacity: The psychological impact of the sexual assault has diminished Mr. Howard's ability to work and earn income, both through periods of inability to work due to trauma symptoms and ongoing reduced capacity due to anxiety, depression, and PTSD affecting his professional performance.

482.    Career and Educational Impact: The trauma from the sexual assault has negatively affected Mr. Howard's career prospects and educational opportunities, limiting his ability to pursue professional advancement and achieve his full earning potential due to the ongoing psychological effects of the abuse.

483.    215. Reputational Damage: The sexual assault and subsequent exposure through the criminal prosecution of Sean Combs has caused damage to Mr. Howard's reputation and standing in his community, with his name being connected to the criminal activities and causing harm to his personal and professional relationships.

**Cover-Up Related Harm**:

484.    Additional Psychological Harm from Cover-Up: The defendants' attempts to cover up the sexual assault through monetary payments and minimization caused

58

FOURTH AMENDED COMPLAINT

additional psychological harm to Mr. Howard by denying him the opportunity for proper acknowledgment of the wrong committed against him and delaying his ability to seek appropriate justice and healing. Even now, after Defendant Ventura testified before the SDNY, admitting to personally sex trafficking Mr. Howard for years, he is ignored.

485.  Obstruction of Justice Harm: The corporate defendants' participation in covering up the sexual assault contributed to Mr. Howard's inability to seek timely legal recourse, causing additional harm through the denial of justice and the prolonging of his psychological suffering without adequate remedy.

486.  Institutional Betrayal: The systematic cover-up by corporate entities that were supposed to provide safe working conditions caused additional trauma through institutional betrayal, compounding the harm from the individual assault through organizational complicity in concealing sexual abuse.

**Damages Sought:**

487.  Compensatory Damages: Plaintiff seeks compensatory damages in an amount to be proven at trial for all economic and non-economic losses resulting from the sexual assault, including past and future medical expenses, mental health treatment costs, lost wages, diminished earning capacity, pain and suffering, and emotional distress.

488.  Punitive Damages: Given the egregious nature of the sexual assault and the defendants' attempts to cover up the abuse, Plaintiff seeks punitive damages to punish the defendants' despicable conduct and deter similar behavior, with such damages to reflect the wealth and misconduct of the defendants.

489.  Attorney's Fees and Costs: Pursuant to California Civil Procedure Code § 340.16 and applicable law, Plaintiff seeks recovery of all reasonable attorney's fees, costs, and expenses incurred in prosecuting this action for sexual abuse and cover-up.

490.  Medical and Treatment Expenses: Plaintiff seeks recovery of all past and future medical expenses, psychological treatment costs, therapy expenses, prescription medications, and other healthcare costs necessitated by the sexual assault and its ongoing psychological effects.

491.  Pain and Suffering Damages: Plaintiff seeks substantial damages for the severe physical and emotional pain and suffering caused by the sexual assault, including the

FOURTH AMENDED COMPLAINT

immediate trauma, ongoing psychological distress, and long-term impact on his quality of life and ability to enjoy normal relationships and activities.

492. <u>Loss of Enjoyment of Life</u>: Plaintiff seeks damages for his diminished capacity to enjoy life's pleasures and activities as a result of the sexual assault trauma, including impaired ability to form intimate relationships, engage in social activities, and pursue personal fulfillment without the burden of trauma-related symptoms.

493. <u>Pre and Post-Judgment Interest</u>: Plaintiff seeks pre-judgment and post-judgment interest on all monetary awards as provided by law to ensure full compensation for the time value of the damages incurred as a result of defendants' sexual abuse and cover-up conduct.

494. <u>Such Other Relief</u>: Plaintiff seeks such other and further relief as the Court deems just and proper under the California Sexual Abuse and Cover Up Accountability Act and applicable law to provide full redress for the sexual abuse and institutional cover-up that has caused lasting harm to his physical and psychological well-being.

**<u>SIXTH CAUSE OF ACTION</u>**

**CIVIL LIABILITY FOR VIOLATIONS OF NEW YORK PENAL LAW § 230.34 - SEX TRAFFICKING**

**All Defendants**

495. Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

**Legal Standard and Pleading Requirements**:

496. New York Penal Law § 230.34 establishes criminal liability for sex trafficking, and civil remedies are available under general New York tort law principles for victims of conduct that violates this criminal statute. Civil actions may be brought seeking damages for injuries suffered as a direct result of violations of § 230.34.

497. To establish a civil claim based on violations of New York Penal Law § 230.34, the plaintiff must demonstrate:

a. Sex Trafficking Elements: The defendant intentionally advanced or profited from prostitution by:

    i. managing, supervising, controlling, or owning all or part of an enterprise of prostitution,

60

FOURTH AMENDED COMPLAINT

          ii.   procuring prostitution or customers for prostitution, or

          iii.  compelling a person by force or intimidation to engage in prostitution, or

          iv.  knowingly advancing or profiting from prostitution of a person less than nineteen years old.

b. Interstate Commerce Nexus: For federal jurisdiction purposes, the defendant's conduct involved or affected interstate commerce, including transportation across state lines or use of instrumentalities of interstate commerce.

c. Proximate Causation: A direct causal connection exists between the defendant's sex trafficking conduct and the injuries or damages suffered by the plaintiff.

d. Actual Damages: The plaintiff suffered quantifiable harm including physical injuries, psychological trauma, economic losses, or other compensable damages as a result of the trafficking.

498. Managing/Supervising/Controlling Elements: Under § 230.34(1), defendants must have intentionally managed, supervised, controlled, or owned all or part of an enterprise of prostitution, requiring proof of organizational control and direction of prostitution activities.

499. Procuring Elements: Under § 230.34(2), defendants may be liable for procuring prostitution or customers for prostitution, which includes recruiting, obtaining, or facilitating commercial sexual encounters.

500. Force or Intimidation Standard: Under § 230.34(3), compelling prostitution through force or intimidation includes physical force, threats, psychological coercion, economic control, or other means of compulsion that overcome the victim's will.

501. Advancing or Profiting: Under § 230.34(4), knowingly advancing or profiting from prostitution includes receiving financial benefit, providing logistical support, or otherwise facilitating prostitution activities with knowledge of their nature.

502. Enterprise Definition: An "enterprise of prostitution" requires an organized structure or operation involving multiple acts of prostitution, demonstrating a pattern of commercial sexual activity rather than isolated incidents.

503. Interstate Transportation Element: Civil claims often involve interstate transportation for purposes of prostitution, which strengthens both the jurisdictional basis and the substantive case for trafficking violations.

61

**Relevant Case Law**:

   a. *People v. Florio, 40 N.Y.2d 906 (1976): Sex trafficking requires proof of organizational control and systematic management of prostitution activities, not merely individual transactions.*

   b. *People v. Kim, 103 A.D.3d 97 (1st Dep't 2012): Force and intimidation may be established through economic coercion, debt bondage, and control over victim's living conditions and movement.*

   c. *People v. Gonzalez, 61 N.Y.2d 586 (1984): Enterprise element requires showing coordinated prostitution activities with common organizational structure or leadership.*

   d. *People v. Dioguardi, 8 N.Y.2d 260 (1960): Advancing prostitution includes providing material support, facilities, or organizational assistance to prostitution operations.*

**Facts Supporting Pleading Requirements**:

**Managing/Supervising/Controlling Enterprise of Prostitution:**

504.   Organizational Control: Defendants intentionally managed, supervised, and controlled an enterprise of prostitution by systematically organizing and directing Mr. Howard's commercial sexual activities through a structured four-phase encounter system: "(1) no touch, (2) soft foreplay, (3) fellatio, and (4) intercourse, directed by Mr. Combs," demonstrating systematic management of prostitution activities.

505.   Operational Direction: Mr. Combs exercised complete operational control over the prostitution enterprise by regulating "the pace of physical contact" and controlling "progression and pace," with "Ms. Ventura controlled the start and sought Mr. Combs' permission to progress," establishing clear hierarchical management of commercial sexual activities.

506.   Enterprise Structure: Defendants operated a decade-long organized prostitution enterprise where they "manipulated male entertainers into sexual encounters using promises of money and favors," with the enterprise consisting of "Mr. Combs, Ms. Ventura, Jane Doe, and the employees of the Defendant's business enterprises, who facilitated the encounters by providing supplies and booking accommodations."

507.   Interstate Transportation for Commercial Sexual Exploitation:

62

FOURTH AMENDED COMPLAINT

508. <u>Systematic Interstate Transportation</u>: Beginning in early 2012, defendants systematically transported Mr. Howard "from New York City to Miami and Los Angeles numerous times" for commercial sexual exploitation, with "Ms. Ventura used promises of gifts, money, and vacations to coerce Mr. Howard into agreeing to leave NYC and head to the locations requested by the defendants."

509. <u>Commercial Logistics Management</u>: Defendants managed the logistical aspects of the prostitution enterprise by booking travel arrangements, with "A JetBlue flight was booked and paid for by Ms. Ventura" and "Mr. Howard met the couple at the Mandarin hotel in Miami," while presenting him to "hotel staff as 'Security' for Bad Boy Records" as a cover story.

510. <u>Extended Commercial Detention</u>: Defendants maintained control over the duration of commercial sexual encounters, with Mr. Howard being "Asked to come for one day, he wasn't released until three days later," demonstrating systematic management of prostitution activities beyond individual transactions.

**Force and Intimidation Elements:**

511. <u>Physical Restraint and Isolation</u>: Defendants employed force through systematic physical restraint by confiscating "Mr. Howard's clothing, cellphone, and personal belongings upon arrival," isolating him in "hotel suites requiring key access with no stairwell access without triggering alarms" where "once under the defendants' control, Mr. Howard had no means to return home without satisfying Ms. Ventura."

512. <u>Threats of Violence</u>: Mr. Combs used intimidation through explicit threats of violence, including threatening to "pistol whip" Mr. Howard and "directing Defendant Ventura to the master suite to retrieve his firearm" during at least one encounter, demonstrating the use of force and intimidation to compel prostitution.

513. <u>Economic Coercion</u>: Defendants employed economic intimidation where "Financial compensation was used as a form of dominance" and "money was used as a tool to coerce and bind Mr. Howard to the will of the Defendants," creating economic dependency that compelled continued participation in prostitution.

**Chemical Coercion and Substance Control**:

514. <u>Involuntary Drugging for Compliance</u>: Defendants used chemical coercion to compel prostitution by administering controlled substances, with Ms. Ventura

63

FOURTH AMENDED COMPLAINT

drugging Mr. Howard with "triple dosage Ecstasy" to get him "freaky" and increase "encounter intensity," using substances "like a spider catching its prey in its web" to lower his resistance.

515. Systematic Substance Administration: Mr. Combs also engaged in chemical coercion by offering Mr. Howard unknown substances described as "Pink MDMA" or "Pink Molly," which caused severe physical reactions including "violent spasms" and "uncontrollable vomiting," demonstrating the use of drugs to facilitate forced prostitution.

516. Strategic Intoxication for Control: Defendants strategically used "Designer drugs were used by the Defendants to lower the natural resistance of Mr. Howard. The Drugs were further used to keep Mr. Howard awake and at the service of the Defendants," showing systematic chemical coercion to compel prostitution activities.

**Advancing and Profiting from Prostitution:**

517. Financial Benefit from Enterprise: Defendants knowingly advanced and profited from prostitution by using their "resources and means" to operate the trafficking enterprise, with corporate entities including "Bad Boy Records and Combs Enterprises" providing "financial resources, booking travel arrangements" and other logistical support for the prostitution activities.

518. Corporate Facilitation of Prostitution: Defendant corporations directly advanced prostitution by providing material support, with employees providing "supplies and booking accommodations" while presenting trafficking victims as legitimate employees to conceal the prostitution enterprise from law enforcement and hotel staff.

519. Pattern of Commercial Sexual Exploitation: Defendants profited from a systematic pattern of prostitution involving "dozens of male entertainers being lured into the scheme," with the enterprise lasting "for over a decade" and generating financial and personal benefits for the defendants through organized commercial sexual activities.

Procuring Prostitution and Customers:

520. Systematic Recruitment of Victims: Defendants engaged in procuring prostitution by systematically recruiting male victims through fraudulent means, with Ms. Ventura

64

FOURTH AMENDED COMPLAINT