# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

CLAYTON HOWARD,

                Plaintiff,

                v.

SEAN COMBS, CASANDRA VENTURA,
BAD BOY ENTERTAINMENT, L.L.C.,
CEOPCO, L.L.C.

                Defendants.

**Case No. 2:25-cv-6031-AH-JPR**

**Defendant Casandra Ventura's Motion to Dismiss Plaintiff's Fourth Amended Complaint or, in the Alternative, to Transfer Venue**

**WIGDOR LLP**

Melodie Han
Douglas H. Wigdor (*pro hac vice forthcoming*)
Meredith A. Firetog (*pro hac vice forthcoming*)
mhan@wigdorlaw.com
dwigdor@wigdorlaw.com
mfiretog@wigdorlaw.com
85 Fifth Avenue, Floor 5
New York, NY 10003
Tel. (212) 257-6800
Fax. (212) 257-6845

*Counsel for Defendant Casandra Ventura*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION ............................................................................................1

FACTS RELEVANT TO DEFENDANT VENTURA ..............................................3

MOTION TO DISMISS STANDARD ...................................................................5

ARGUMENT ...................................................................................................6

     I.    Many of Plaintiff's Claims Are Inactionable or Untimely ..................6

          a.    Plaintiff's Claims Under Criminal Statutes Are Not Actionable ...............................................................................6

          b.    NY Social Services Law Cannot Be Applied Retroactively ......7

          c.    Plaintiff's Claims Under Florida Law and Civil RICO are Untimely ...............................................................................7

          d.    Plaintiff Is Not Entitled to Tolling ...........................................8

     II.    Plaintiff Fails to State Any Claim ....................................................11

          a.    Plaintiff Fails to State a Claim Under the TVPA ....................11

          b.    Plaintiff Fails to State Claims Under the State Trafficking Statutes ...............................................................................20

          c.    Plaintiff Fails to State a California Sexual Assault Claim .......22

          d.    Plaintiff Does Not Sufficiently Plead a Civil RICO Claim......24

MOTION TO TRANSFER VENUE .....................................................................24

# **TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page(s)**

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.*,
   483 U.S. 143 (1987) ..............................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................................5, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................5, 6, 12

*Bias v. Moynihan*,
   508 F.3d 1212 (9th Cir. 2007)..............................................................................1

*Bird v. Dep't of Hum. Servs.*,
   935 F.3d 738 (9th Cir. 2019).............................................................................9, 10

*Brady v. Brown*,
   51 F.3d 810 (9th Cir. 1995)................................................................................19

*Capitol W. Appraisals LLC v. Countrywide Fin. Corp.*,
   467 F. App'x 738 (9th Cir. 2012)........................................................................12

*Croft v. Dolan*,
   No. 24-6150, 2025 WL 3720844 (9th Cir. Dec. 23, 2025)......................................15

*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986)..............................................................................24

*Ditullio v. Boehm*,
   662 F.3d 1091 (9th Cir. 2011).............................................................................18

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005)........................................................................................9

*Gaige v. Exer Holding Co., LLC*,
   No. 2:24 Civ. 06099 (AH) (AJRx), 2025 WL 559719
   (C.D. Cal. Jan. 30, 2025) ................................................................................10, 11

*Hexcel Corp. v. Ineos Polymers, Inc.*,
   681 F.3d 1055 (9th Cir. 2012)...........................................................................10, 11

*Johnson v. Riverside Healthcare Sys., LP*,
   534 F.3d 1116 (9th Cir. 2008)...............................................................................5

*Kumar v. Naiman*,
   No. 2:15 Civ. 2029 (KJM)(KJN) PS, 2016 WL 397596 (E.D. Cal. Feb. 2, 2016).....6

*Lesnik v. Eisenmann SE*,
   374 F. Supp. 3d 923 (N.D. Cal. 2019) ................................................................22

*Lesnik v. Eisenmann SE*,
   No.16 Civ. 01120 (LHK), 2018 WL 4700342 (N.D. Cal. Oct. 1, 2018)................22

*Linda R.S. v. Richard D.*,
93 S.Ct. 1146 (1973) ........................................................................................... 6

*Lucius v. Erewhon Market*,
No. 2:25 Civ. 02891 (AH)(RAOx), 2025 WL 3190901
(C.D. Cal. Oct. 16, 2025) ............................................................... 6, 9, 10

*Lukovsky v. City & Cnty. of San Francisco*,
535 F.3d 1044 (9th Cir. 2008) ............................................................ 8

*Lynwood Invs. CY Ltd. v. Konovalov*,
No. 22-16399, 2024 WL 4688895 (9th Cir. 2024) ........................................ 9

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ............................................................ 5

*Molski v. Mandarin Touch Restaurant*,
347 F. Supp. 2d 860 (C.D. Cal. 2004) ................................................. 3

*Morales v. City and Cnty. of San Francisco*,
603 F. Supp. 3d 841 (N.D. Cal. 2022) ............................................... 13

*Novoa v. GEO Grp., Inc.*,
No. EDCV172514J (GBS)(HKx), 2021 WL 4913286 (C.D. Cal. Sept. 30, 2021) .. 22

*O'Connor v. Boeing N. Am., Inc.*,
311 F.3d 1139 (9th Cir. 2002) ............................................................. 8

*People v. L.G.*,
41 Misc. 3d 428 (Crim. Ct. 2013) .................................................... 20

*People v. Ortega*,
240 Cal. App. 4th 956 (2015) ............................................................ 23

*People v. P.V.*,
64 Misc. 3d 344 (N.Y. Crim. Ct. 2019) ............................................. 21

*Ramsbottom v. Ashton*,
No. 3:21 Civ. 00272, 2024 WL 4993391 (M.D. Tenn. Dec. 5, 2024) ............... 15, 17

*Reves v. Ernst & Young*,
507 U.S. 170 (1990) ......................................................................... 24

*Richards v. CH2M Hill, Inc.*,
26 Cal. 4th 798 (2001) ..................................................................... 10

*Roberts v. eXp Realty, LLC*,
No. 2:23 Civ. 10492 (AB) (AGR), 2024 WL 3005892 (C.D. Cal. May 23, 2024) .. 13

*Rotella v. Wood*,
528 U.S. 549 (2000) ....................................................................... 8, 9

*S.J. v. Choice Hotels Int'l, Inc.*,
473 F. Supp. 3d 147 (E.D.N.Y. 2020) ............................................... 7

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ..................................................................................................... 6

*U.S. v. Chang Ru Meng Backman*,
  817 F.3d 662 (9th Cir. 2016)....................................................................................17, 18

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*,
  770 F.3d 834 (9th Cir. 2014)............................................................................................24

*United States v. Maynes*,
  880 F.3d 110 (4th Cir. 2018)............................................................................................15

Statutes

18 U.S.C. § 1591 ...........................................................................................................*passim*

18 U.S.C. § 1595 ....................................................................................................... 7, 11, 16

28 U.S.C. § 1332(a)(3)............................................................................................................20

28 U.S.C. § 1404(a) .........................................................................................................25, 26

Cal. Civ. Proc. § 340.16............................................................................................................23

Cal. Civil Code § 52.5 .......................................................................................................21, 22

Cal. Penal Code § 236.1...................................................................................................21, 22

Cal. Penal Code § 243.4...................................................................................................23, 24

Cal. Penal Code § 261 ..............................................................................................................23

Cal. Penal Code § 289..........................................................................................................23, 24

Fl. St. § 95.11(8) ..........................................................................................................................7

Fl. St. § 787.061 ...................................................................................................................7, 20

N.Y. Penal Code § 135.35 .......................................................................................................21

N.Y. Soc. Serv. Law § 483-aa ................................................................................................20

N.Y. Soc. Serv. Law § 483-bb ........................................................................................7, 20, 21

New York Penal Law § 230.34..........................................................................................6, 20, 21

Rules

Fed. R. Civ. P. 8(a)(2)..............................................................................................................6

Fed. R. Civ. P. 12(b)(6) ............................................................................................................5

## I.    INTRODUCTION

In November 2023, Casandra Ventura ("Ms. Ventura," a defendant in the instant case) filed a lawsuit alleging that music mogul Sean Combs ("Combs") trafficked and abused her for many years. *Ventura v. Combs*, No. 1:23 Civ. 10098 (S.D.N.Y.).[1] After telling her story, she received an outpouring of support. In late 2023, her husband received one such message of support from Clayton Howard, the Plaintiff in this action:

Now, a few years later, Plaintiff has changed his tune. He now asserts that when

---

[1]    The day after the lawsuit was filed, Ms. Ventura and Combs resolved her civil claims and she withdrew her case. The lawsuit prompted an investigation by the U.S. Attorneys' Office for the Southern District of New York into Combs, resulting in an indictment and two-month-long federal criminal jury trial at the conclusion of which a jury found Combs guilty of two counts of the Mann Act. Combs is currently serving time in prison for these offenses. *See U.S. v. Combs*, No. 23-cr-542 (AS) (S.D.N.Y.); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citation omitted).

he was working as a professional escort and sexual companion, he was trafficked by Combs *and* the woman whose truth he previously believed was "100% valid." Apparently absolved of his "guilt and regrets," Plaintiff now seeks monetary compensation from Ms. Ventura for the trafficking acts in which she was a victim and for which she provided four days of sworn testimony in a federal criminal trial.

Mr. Howard's Fourth Amended Complaint ("4AC") is sprawling, contradictory, and uses conclusory allegations and broad date ranges plead multiple claims against multiple defendants.[2] The 4AC should be dismissed in its entirety as to Ms. Ventura. First, Plaintiff cannot bring claims under criminal statutes. Second, many of Plaintiff's claims are untimely or cannot be applied retroactively, and Plaintiff is not entitled to toll the statute of limitations on his claims. Third, Plaintiff does not state any of his legal claims as a matter of law. Finally, this case should be transferred to the Southern District of New York ("SDNY") for the convenience of parties and in the interest of justice.

Ms. Ventura respects the judicial process and therefore moves to dismiss this action for failure to state a claim and, in the alternative, requests a transfer of this action to a more convenient and appropriate venue. But to be clear: baseless and harassing lawsuits like Mr. Howard's play a significant role in disincentivizing actual victims

---

[2]   To the extent Plaintiff cites case law to support his claims, Ms. Ventura has endeavored to find those cases but has either been unable to find the cited materials or otherwise have not been able to locate the quote Plaintiff contends exists within that case. It appears that Plaintiff has employed Artificial Intelligence ("AI") to draft his submissions to this Court, and that many of his citations are "AI hallucinations." While Plaintiff's *pro se* status affords him some deference, Plaintiff has represented that he is a full-time law student, ECF 77, and presumably intends to become a member of the profession. Defendant respectfully asks this Court to acknowledge these AI hallucinations and admonish their use, as courts in this circuit and beyond have done.

- 2 -

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

from coming forward or testifying truthfully as a government witness. This Court should not countenance this misuse of our legal system.[3]

## II.    FACTS RELEVANT TO DEFENDANT VENTURA

The 4AC states that Ms. Ventura was in a relationship with Combs from 2007 to 2018. ¶ 4.[4] The relationship was "abusive," characterized by Combs "frequently physically assaulting Defendant Ventura." *Id.* According to the 4AC, all Defendants collectively "systematically exploited" Plaintiff, with Ms. Ventura "accomplish[ing] this exploitation by concealing her identity and fabricating the narrative that she and Combs were 'married,' using this deception to entice men into drug use and sexual encounters." ¶ 8. In describing these encounters, the complaint makes clear that Combs "exercis[ed] complete dominance over both Plaintiff and Defendant Ventura." ¶ 11.

---

[3]    Mr. Howard is no stranger to using the legal system to pursue personal vendettas against and to rectify perceived wrongs committed by individuals, corporations, and government entities. This Court can and should take judicial notice of the proliferation of claims Mr. Howard has filed in evaluating the motive and purpose of the 4AC. *See Molski v. Mandarin Touch Restaurant*, 347 F. Supp. 2d 860, 864 (C.D. Cal. 2004) (setting forth the standard in evaluating the consequences of a litigant's numerous and vexatious filings). For instance, in the last few years alone, Mr. Howard has alleged that: Netflix intentionally inflicted emotional distress upon him by using his consented-to interview in a documentary, *Howard v. Netflix,* 1:26 Civ. 00707 (DEH)(SN) (S.D.N.Y. 2026); his ex-girlfriend conspired with her mother in a malicious scheme to hurt his reputation, *Howard v. Owens, et al.,* 100062/2024 (N.Y. Sup. Ct); a local district attorney's office "failed to prosecute" his ex-girlfriend and thereby deprived him of his constitutional due process rights, *Howard v. Richmond Cnty. Dist. Attorney*, 80119/2024 (Richmond Sup. Ct.); the prosecutor's office of the State of New Jersey "refused to provide necessary protection" of him by failing to prosecute his ex-girlfriend after she filed charges against him for domestic violence, *Howard v. State of New Jersey*, 24 Civ. 7661 (D.N.J. 2024), *appeal dismissed*, No. 25-2141 (3d Cir. 2025); a community activist defamed him by posting about public information he shared about his experiences with Combs, *Howard v. White*, 151836/2025 (Richmond Sup. Ct.); and the City and State of New York and various government officials violated his rights by, *inter alia*, not giving him access to an investigation and arresting him pursuant to his ex-girlfriend's "false reports," *Howard v. City of New York, et al.*, 24 Civ. 03291 (E.D.N.Y. 2024). Plaintiff's pattern and practice of filing abusive and frivolous lawsuits countenances dismissal of the instant suit.
[4]    Citations to paragraph numbers, i.e., ¶ __, refer to the 4AC.

- 3 -

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

Plaintiff alleges that he met Ms. Ventura in late 2009 in New York City, where he was hired to serve as a "male companion for an agreed-upon hourly rate." ¶ 37. According to the complaint, Ms. Ventura "concealed her identity," and had a conversation with Plaintiff. ¶¶ 38-41. Ms. Ventura allegedly asked Plaintiff to "expose his genitals," and he complied. ¶¶ 42-43. Ms. Ventura then introduced Plaintiff to Combs, stating he was her "husband." ¶ 44.

Without specifying any particular date, Plaintiff alleges generally that encounters took place from 2009-2017 during which cycles of sex and drugs lasted multiple days. He says that he participated in four "phases" of sexual encounters for hours "through manipulation and financial coercion." ¶ 65. Plaintiff explains that Ms. Ventura "sought Mr. Combs' permission to progress" activity during these encounters. ¶ 66.

Plaintiff alleges that in 2011, he entered a competition with another male sex worker, after which he "was declared the winner" and an arrangement for additional sexual encounters was proposed. ¶ 99. Also sometime in 2011, Plaintiff asserts he took drugs that Ms. Ventura had retrieved from the bedroom. ¶ 115. He also alleges that in 2014, he had sex with Ms. Ventura in California after which he learned that Ms. Ventura was menstruating, which made him angry. ¶¶ 187-199. He also alleges that he had a sexual encounter with the Defendants in Florida in March 2016. ¶¶ 206-212. Plaintiff does not reference any specific instance of encountering Ms. Ventura after 2016.

Plaintiff asserts that he has lived with trauma "for many years," and that because "the opening of legislation that granted survivors a look-back window to seek justice

- 4 -

against offenders," he has been given a "second chance" to obtain justice. ¶¶ 25-26. At the same time, Plaintiff contends he did not and could not have "awareness of the true nature of his victimization" until December 2023. ¶ 273. Until that point, he understood himself to have been a "willing participant in private sexual encounters." *Id.*

## III.   <u>MOTION TO DISMISS STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under a Rule 12(b)(6) motion can be based on either a "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation modified).

On a Rule 12(b)(6) motion, courts accept as true all well-pleaded allegations of material fact and construe them in a light most favorable to the non-moving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not" suffice. *Id.* (citation modified). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. A court may consider the allegations contained in the

- 5 -

pleadings, as well as exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice in ruling on a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *Lucius v. Erewhon Market*, No. 2:25 Civ. 02891 (AH)(RAOx), 2025 WL 3190901, at *2 (C.D. Cal. Oct. 16, 2025) (citing Fed. R. Civ. P. 8(a)(2)). "Complaints requiring outlines to determine who is being sued for what or that leave judges managing the litigation without knowing what claims are made against whom may run afoul of Rule 8." *Id.* (internal citations omitted).

## IV.  ARGUMENT

### I.  Many of Plaintiff's Claims Are Inactionable or Untimely

#### a.  Plaintiff's Claims Under Criminal Statutes Are Not Actionable

Plaintiff asserts two claims under criminal statutes: Count I is fashioned as a claim for "Sex Trafficking under 18 U.S.C. § 1591, et seq." and Count VI purports to be a claim for "Civil Liability for Violations of New York Penal Law § 230.34 – Sex Trafficking." It is firmly established that private individuals like Plaintiff cannot bring criminal claims. *Linda R.S. v. Richard D.*, 93 S.Ct. 1146, 1149 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Kumar v. Naiman*, No. 2:15 Civ. 2029 (KJM)(KJN) PS, 2016 WL 397596, at *2 (E.D. Cal. Feb. 2, 2016) ("[P]laintiffs, as

- 6 -

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

private citizens, have no standing to prosecute criminal claims."). Plaintiff has brought the equivalent civil claims to these criminal statutes, 18 U.S.C. § 1595 and New York Social Services Law § 483-bb, under Counts III and VII. Counts I and VI, which only purport to be causes of action pursuant to the criminal statutes, must be dismissed.

b.    NY Social Services Law Cannot Be Applied Retroactively

Plaintiff asserts a claim under NY Social Services Law § 483-bb. The civil right of action created by that section became effective on January 19, 2016, and the statute does not provide for retroactive application. In *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 156 (E.D.N.Y. 2020), the court analyzed the statutory construction of § 483-bb and determined that it could not be applied retroactively to events that occurred before 2016. Because Plaintiff does not plead a single event that took place in New York after January 19, 2016 involving Ms. Ventura, that claim must be dismissed.

c.    Plaintiff's Claims Under Florida Law and Civil RICO are Untimely

Plaintiff asserts a claim under Florida Statute § 787.061, alleging that he was transported from New York to Miami "multiple times beginning in 2012, and concluding in December 2019," ¶ 336(a), and referencing a single alleged occurrence in which Ms. Ventura was present in Miami in 2016, ¶ 206. Florida's trafficking statute law has a four-year statute of limitations. *See* Fl. St. § 787.061(4), citing Fl. St. § 95.11(8)). As a result, only events that took place four years before the date the lawsuit was filed, *i.e.*, June 30, 2021, would be timely. Count II must be dismissed.

A Civil RICO claim similarly has a four-year statute of limitations. *Agency*

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

*Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987). Only events that took place after June 30, 2021 would therefore be timely. No such events are alleged, and that claim must also be dismissed.

                **d.**       <u>Plaintiff Is Not Entitled to Tolling</u>

Plaintiff avers that he is entitled to tolling on his claims because his "awareness of the TRUE nature of his victimization—that he was a victim of a decade-long sex trafficking ENTERPRISE rather than a willing participant in private sexual encounters—did not and could not occur until the U.S. Attorney's investigation beginning in December 2023." ¶ 273. Plaintiff is not entitled to tolling under any theory: the discovery rule, the continuing violation doctrine, or fraudulent concealment.

The discovery rule "postpones the beginning of the limitations period from the date the plaintiff is actually injured to the date when he discovers (or reasonably should discover) he has been injured." *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). Importantly, it is "discovery of the injury, not discovery of the other elements of a claim [that] starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1148 (9th Cir. 2002) (limitations period is not tolled merely because a plaintiff did not have knowledge of a legal theory). "To rely on the discovery rule, a plaintiff must specifically plead facts to show the inability to have made earlier discovery despite reasonable diligence." *Lynwood Invs. CY Ltd. v. Konovalov*, No. 22-16399, 2024 WL 4688895, at *4 (9th Cir. 2024) (internal citation and punctuation omitted). "A plaintiff has reason to discover a

- 8 -

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

cause of action when he or she has reason at least to suspect a factual basis for its elements." *Lucius*, 2025 WL 3190901, at *5, quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (internal quotation omitted). In the RICO context, the Supreme Court specifically cautioned that "tying the start of the limitations period to a plaintiff's reasonable discovery of a pattern rather than to the point of injury or its reasonable discovery . . . would extend the potential limitations period for most civil RICO cases well beyond the time when a plaintiff's cause of action is complete." *Rotella*, 528 U.S. at 558 (2000).

As to his RICO claim, Plaintiff alleges that he suffered harm in the form of (i) lost income, (ii) medical expenses, (iii) emotional distress and (iv) reputational harm. *See* ¶¶ 630-39. However, the complaint is devoid of any allegation as to why Plaintiff could not have discovered these injuries immediately or soon after his interactions with Defendants. Plaintiff cannot deny that he has known about the *facts* underlying each of his claims since at least 2016, the year of the last sexual encounter specifically alleged in the 4AC. As a result, Plaintiff cannot invoke the discovery rule.

Plaintiff also contends that he is entitled to tolling under the continuing violation doctrine. "The continuing violations doctrine functions as an exception to the discovery rule of accrual allowing a plaintiff to seek relief for events outside of the limitations period." *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (internal quotation omitted). "[T]he continuing violation doctrine comes into play when an employee raises a claim based on conduct that occurred in part outside the limitations

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

period," and is a theory for "extending the statute of limitations in employment discrimination cases." *Lucius*, 2025 WL 3190901, at *5, quoting *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 812-13 (2001) (internal quotation omitted). Under Ninth Circuit law, the doctrine only applies to civil rights claims. *See Bird*, 935 F.3d at 746. Regardless, all conduct alleged that forms the basis for Plaintiff's RICO claim took place outside the statute of limitations. *See e.g.* 4AC ¶¶ 1, 31, 155, 240, 272, 283 (alleging that trafficking ended in 2019). Plaintiff's claims are not tolled by the continuing violation doctrine.

Lastly, Plaintiff argues that the doctrine of fraudulent concealment tolls his claims. "[A] statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *Gaige v. Exer Holding Co., LLC*, No. 2:24 Civ. 06099 (AH) (AJRx), 2025 WL 559719, at *3 (C.D. Cal. Jan. 30, 2025), quoting *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). To plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim. *Id.* "[A]llegations of fraudulent concealment must be pled with particularity." *Id.*, quoting *Lynwood*, 2021 WL 1198915, at *18. "The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to the discovery of the

- 10 -

fraud." *Hexcel Corp.*, 681 F.3d at 1060. If there were "red flags" that "should have excited [] suspicion," courts will find constructive knowledge even without actual awareness of the full facts. *Id.* at 1063.

Here, Plaintiff claims that Defendants "actively concealed facts essential to [his] claims," ¶ 291, but the complaint makes clear that Plaintiff repeatedly traveled across state lines over a period of several years to provide sexual services for Defendants, and that Plaintiff knew that Defendants engaged in similar activities with other men. *See* ¶¶ 95-99 (describing an orgy with another male escort). Plaintiff also fails to allege that he acted diligently in trying to uncover a pattern of racketeering once he observed these events. Plaintiff did not plead fraudulent concealment with the required particularity.

Plaintiff's untimely claims must therefore be dismissed.

## II.    Plaintiff Fails to State Any Claim

In addition to the pleading deficiencies set forth above, even accepting that Plaintiff's claims are timely or actionable, his 4AC should nevertheless be dismissed for failure to state a claim as a matter of law.

### a.      Plaintiff Fails to State a Claim Under the TVPA

Plaintiff's attempt to allege violations of the Trafficking Victim Protection Act ("TVPA"), 18 U.S.C. § 1595, fails.

The TVPA is violated when a person: "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person," 18 U.S.C. § 1591(a)(1), knowing "that means of force, threats of force, fraud,

- 11 -

coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(2).

At the outset, nearly all the allegations concerning this claim are conclusory or merely restate the elements of a TVPA claim. *See, e.g.*, ¶ 176 ("Through coercion and fraud, Ms. Ventura would lure Mr. Howard with promises of gifts and favors."); ¶ 313(d) ("[Defendants] [m]aintained Plaintiff in a condition of sexual servitude through coercion, drug use, and manipulation."); ¶ 323 ("Defendants . . . violated 18 U.S.C. § 1591 by knowingly recruiting, transporting, harboring, and maintaining Plaintiff for commercial sexual exploitation through force, fraud, and coercion."); ¶ 326 ("Defendants herein acted without Plaintiff's meaningful consent and through prohibited means of force, fraud, and coercion as defined by 18 U.S.C. § 1591(e)(2).").

As the Supreme Court noted in *Twombly*, "a formulaic recitation of the elements of a cause of action will not do" to state a claim. 550 U.S. at 555 (quotation omitted). Such "conclusory statements are not entitled to the presumption of truth." *Capitol W. Appraisals LLC v. Countrywide Fin. Corp.*, 467 F. App'x 738, 740 (9th Cir. 2012); *see further GateGuard, Inc. v. Amazon.com Inc.*, 2023 WL 2051739, at *16 n.17 (S.D.N.Y. Feb. 16, 2023) (conclusory allegations that "appear in the [complaint's] 'causes of action' section . . . cannot cure the [complaint's] failure to plead particularized facts"). The Court should dismiss the 4AC, and in particular the TVPA claim against Ms. Ventura, because of these fatal pleading deficiencies.

Plaintiff does not plead a commercial sex act.  He states in a conclusory fashion

- 12 -

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

that he received cash "gifts, money, and vacations" as a "reward" for his sexual performance, ¶¶ 156-58, and therefore he may contend that is sufficient. *See Roberts v. eXp Realty, LLC*, No. 2:23 Civ. 10492 (AB) (AGR), 2024 WL 3005892, at *4 (C.D. Cal. May 23, 2024). However, Plaintiff contradicts this conclusory pleading elsewhere in the 4AC, when he alleges that he was hired to serve as a "male companion for an agreed-upon hourly rate." ¶ 37. Thus, on the face of his complaint, Plaintiff suggests that there was a singular purpose for the monetary exchange, and that he in fact agreed to this exchange prior to any sex acts occurring—that the "things of value" he received were not causally related to the sex, but instead causally related to an agreed-upon employment arrangement for companionship. The Court is "not required to accept as true [contradictory] allegations in an amended complaint without more facts." *Morales v. City and Cnty. of San Francisco*, 603 F. Supp. 3d 841, 846 (N.D. Cal. 2022) (citation omitted). Regardless, even accepting that the 4AC contains sufficient non-conclusory allegations that a commercial sex act occurred, Plaintiff otherwise cannot sustain a claim under the TVPA as to Ms. Ventura.

First, Plaintiff has not sufficiently alleged that Ms. Ventura used force, fraud, coercion, or any combination thereof, to induce a commercial sex act with Plaintiff. To the extent Plaintiff cites to circumstances that have been found in other cases to support this prong of the TVPA, the 4AC is devoid of any allegation that the alleged commercial sex acts were induced by these illicit means—a necessary requirement of the TVPA. Mr. Howard does not, and cannot, contend that the single vague threat of the use of a

- 13 -

gun, Ms. Ventura's use of a pseudonym when first meeting him in 2009, or his decision to take drugs during an alleged encounter is what caused him to engage in commercial sex acts. Far from it, it appears that these circumstances did nothing to dissuade Plaintiff from continuing to accept requests of employment as a sex worker, as he continued returning for new encounters for nearly a decade.

Plaintiff makes a single allegation that, viewing the pleading in the light most favorable to him, may be construed as alleging that force was used to induce commercial sex acts. He states that "Threats of violence were implied when Defendant Combs wished to assert control, and during at least one encounter, he threatened to 'pistol whip' Plaintiff, directing Defendant Ventura to the master suite to retrieve his firearm." ¶ 12. However, an allegation that "threats of violence" occurred is a legal conclusion, an allegation that such threats were "implied," and vague references to the existence of a gun are not pleaded with sufficient specificity from which this Court can ascertain that the supposed threat was used to induce sex acts. Moreover, there is no allegation that *Ms. Ventura* threatened violence or used violence against Plaintiff—for instance, the 4AC does not plead that Ms. Ventura actually retrieved the gun Combs allegedly asked her to get, or that she herself made any similar threats. Indeed, the allegations in the complaint that suggest that Ms. Ventura was regularly beaten and abused by Combs, ¶¶ 4, 222, 225, 227-230, undermine the plausibility of any suggestion that she was in a position to threaten anyone else with violence.

As to fraud, the 9th Circuit has recently held that to support a TVPA claim

- 14 -

premised on fraud, a plaintiff must show the defendant engaged in a trafficking act with knowledge that fraud would be used to cause the commercial sex act itself. *Croft v. Dolan*, No. 24-6150, 2025 WL 3720844, at *2 (9th Cir. Dec. 23, 2025) (not enough that the plaintiff had allegedly been lied to about why she was invited to Los Angeles, which merely placed her in proximity to exploitation); *U.S. v. Maynes*, 880 F.3d 110, 113-14 (4th Cir. 2018) ("[F]or any fraud to be relevant to the question of guilt [under § 1591], it must have been fraud that 'would be used to cause that person to engage in a commercial sex act.'"); *Ramsbottom v. Ashton*, No. 3:21 Civ. 00272, 2024 WL 4993391, at *13 (M.D. Tenn. Dec. 5, 2024) ("fraud means a knowing misrepresentation of a material fact made to induce another to act to his or her detriment.").

Plaintiff is explicit that the "fraud" he believes supports his claim was that when he first met Ms. Ventura and Combs in 2009, they used aliases, concealed their identity using makeup, baseball caps, and dim lighting, and represented that they were a married couple who participated in "the Lifestyle." ¶¶ 38, 45, 47, 51; *see also* ¶¶ 408, 410; ¶ 562 ("Defendants employed fraud through systematic deception, with Ms. Ventura using false identity 'Jackie Star' and concealing that Mr. Combs would be present, while falsely representing themselves as a 'married couple' participating in 'the Lifestyle' when they were actually operating a trafficking scheme targeting multiple victims.").

As an initial matter, this alleged "fraud" took place in 2009—many years outside of the ten-year statute of limitations for Plaintiff's TVPRA claim. 18 U.S.C. § 1595(c)(1). The Court cannot find that Plaintiff has stated a claim when the means used

- 15 -

to establish the claim is based solely on facts outside of the limitations period.

But regardless, Mr. Howard has not pleaded anything to suggest that what Ms. Ventura or Combs supposedly misrepresented—their appearance, their marital status, or their professed lifestyle preferences—were material to his decision to engage in sex acts with them. And in fact, it appears Plaintiff himself *also* used an alias, undermining any inference that the use of fake names was material, detrimental, or induced him to do anything. ¶ 36 ("Mr. Howard ('Dave') met Ms. Ventura ('Jackie Star') in late 2009"). Additionally, Plaintiff's recounting of the first encounter makes clear that he was engaging in sex acts before the "married couple" representation was made, ¶¶ 42-45 (Plaintiff exposed his genitals prior to becoming aware of Combs' presence). And, far from pleading that the use of aliases induced him to engage in a commercial sex act, he in fact alleges that he engaged in these acts both before knowing their real names and for years thereafter. ¶¶ 54-83 (describing encounters from 2009-2017, encompassing and exceeding the first encounter detailed at ¶¶ 26-53).

Additionally, despite repeated averments that he was "coerced" into sex trafficking, Plaintiff does not plead facts that, even if true, would support a finding that he was coerced into a commercial sex act as required to state a claim under the TVPA.

There are no facts supporting that Plaintiff reasonably believed that failing to engage in the sex acts would result in any serious harm, whether financial or otherwise. *See* 18 U.S.C. § 1591(e)(2)(B) (defining "coercion" to include any scheme or plan intended to cause a person to believe that the failure to perform an act would cause

- 16 -

"serious harm"); *id.* § 1591(e)(5) (defining "serious harm" to mean "any harm . . . including . . . financial . . . harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm"). "While the standard [for coercion] is objective—referring to whether a 'reasonable' person would feel compelled to engage in commercial sex acts—it also requires that the court take into consideration 'all the surrounding circumstances,' including any factors that might make the victim particularly vulnerable." *Ramsbottom*, 2024 WL 4993391, at *13 (citations omitted).

It is not enough for Mr. Howard to simply state that he was lured into sex act "through coercion and fraud." ¶ 176; *see Ashcroft*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not'" suffice). And beyond these conclusory statements, Mr. Howard pleads no facts to suggest that he was either objectively or subjectively coerced.

While he asserts that Defendants collectively used "compensation . . . as a form of dominance," ¶ 56, he pleads no facts from which this Court could infer that he was particularly vulnerable, that Defendants provided him with otherwise unattainable resources, or that the compensation he allegedly received from Defendants was his only source of income. Cases where victims have been found vulnerable to financial pressure involve much more serious facts concerning the characteristics of the victim. *See U.S. v. Chang Ru Meng Backman*, 817 F.3d 662, 670 (9th Cir. 2016) (finding a vulnerable

- 17 -

victim where she "had no ties to family or friends," did not speak or understand English, and was limited in her movement as a result of her illegal immigration status. No such facts are alleged here, and Plaintiff's claim of "financial coercion" is unsupported.

To the extent Plaintiff contends that he had to give up his phone and clothing or that he was "restrained" in a hotel room, those sparse and conclusory factual allegations are insufficient to find that he felt coerced to remain—indeed, he simultaneously pleads that he was paid and left the encounters throughout the relevant time period. *See e.g.*, ¶ 151. Plaintiff's allegations that he was coerced because he was provided drugs is contradicted in his own pleadings, wherein he contends that "drug use was a major component during the majority of meetings" and then says he didn't use any "until offered." ¶¶ 100-101.[5] And, far from contending that the use of drugs induced him into a commercial sex act, he pleads that he consumed these drugs before and after the sex acts occurred—nothing about the drugs caused him to have sex, which is what the TVPA requires. *See Ditullio v. Boehm*, 662 F.3d 1091, 1094-95 (9th Cir. 2011) (defendants recruited victims "by offering them cocaine").

Additionally, even if the allegations were sufficient to find that any illicit means were used, Plaintiff has not alleged any facts to suggest that Ms. Ventura acted with the requisite knowledge of and intent to commit a violation of the TVPA.

First and foremost, Ms. Ventura herself is a victim. Combs was convicted of

---

[5] Plaintiff does not allege that Ms. Ventura had any knowledge or involvement in the incident concerning the "pink Molly." ¶¶ 129-134 ("Mr. Combs Drugs Mr. Howard.").

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

transporting Ms. Ventura across state lines for the purpose of sex, in violation of the Mann Act, including occasions in which she was transported to have sex with Plaintiff. *See U.S. v. Combs*, No. 24 Cr. 542, ECF 516 (Gov't Sentencing Mem.) at 9, 17, 44. And, Plaintiff devotes an entire section of his complaint to the "numerous acts of physical domestic violence against Ms. Ventura," noting that she was grabbed, kicked, and shoved by Combs in Plaintiff's presence. *See* ¶¶ 222-234. It is not a reasonable inference to draw that Ms. Ventura could have acted with the requisite intent of committing a trafficking violation, when she herself was in the throes of being trafficked. But additionally, there is no factual allegation in the entire 4AC that suggests Ms. Ventura herself had intent to use fraud or coercion to induce sex acts. To the contrary, the 4AC avers that "Mr. Combs provided 'direction' to both [Plaintiff and Ms. Ventura], regulating the pace of physical contact," ¶ 53, that Ms. Ventura "sought Mr. Combs' permission" during the encounters, ¶ 66, and that Combs "controlled progression and pace, seeking to control Ms. Ventura," ¶ 68. Even viewing the pleading in the light most favorable to Plaintiff, no reasonable inference can be drawn that Ms. Ventura had the requisite knowledge or intent under the TVPA.[6]

---

[6]   Importantly, to the extent the TVPRA claim against Ms. Ventura is dismissed, the court should decline supplemental jurisdiction over the remaining state law claims, as no other basis for subject matter jurisdiction exists. *Brady v. Brown*, 51 F.3d 810, 815 (9th Cir. 1995) (U.S. citizen living abroad was not citizen of any state or alien under 28 U.S.C. § 1332(a)(3)); Ventura Decl. ¶ 2.

- 19 -

b.      Plaintiff Fails to State Claims Under the State Trafficking Statutes

In addition to being untimely, *see supra* at p. 7, Plaintiff's cause of action under Florida Statute § 787.061 fails because that law only provides a civil cause of action for a victim of human trafficking "against an adult theater . . . or an owner, an operator, or a manager of such theater."  Fla. Stat. § 787.061(3). Plaintiff does not allege that Ms. Ventura is affiliated in any way with an adult theater—she is not. This claim must be dismissed.

As to New York law, in addition to being inapplicable because the law is not retroactive, *see supra* at p. 7, Plaintiff's claim under NYSS also fails because he failed to allege that Ms. Ventura used force, fraud or coercion. NY Soc. Serv. § 483-bb defines "human trafficking victim" by cross-reference to New York Penal Law § 230.34 (sex trafficking) and § 135.35 (labor trafficking). *See* N.Y. Soc. Serv. Law § 483-aa. "A person is guilty of sex trafficking if he or she 'intentionally advances or profits from prostitution' by inducing another person to engage in prostitution activity by any number of means specified under New York's sex trafficking statute which involve force, fraud or coercion." *People v. P.V.*, 64 Misc. 3d 344, 347 (N.Y. Crim. Ct. 2019); *see also* N.Y. Penal Law § 230.34. "A person is guilty of labor trafficking if he or she compels or induces another to engage in labor or recruits, entices, harbors, or transports such other person" by certain enumerated means. N.Y. Penal Law § 135.35.

Plaintiff does not dispute that the means by which prostitution or forced labor is induced or compelled under New York law are the same as the means provided by the

- 20 -

TVPRA. *See* ¶¶ 551-53, 555, 558 (pleading trafficking under New York law by "force, fraud, and coercion"); *see also People v. L.G.*, 41 Misc. 3d 428, 436-37 (Crim. Ct. 2013) (analyzing the defendant's status as a victim of sex trafficking under the TVPRA and Section 483-bb concurrently). Therefore, Plaintiff's trafficking claim under New York law fails for the same reasons as his claim under the TVPRA, *supra* pp. 11-19.

Plaintiff's California trafficking claim fails for the same reasons. Cal. Civil Code § 52.5 creates a civil cause of action for victims of human trafficking, which is defined by cross-reference to Cal. Penal Code § 236.1. Under Section 236.1, a person is guilty of human trafficking when he or she "deprives or violates the personal liberty of another with the intent to obtain forced labor or services." Cal. Penal Code § 236.1(a). "Forced labor or services" means labor or services that are performed or provided by a person and are obtained or maintained through force, fraud, duress, or coercion, or equivalent conduct that would reasonably overbear the will of the person." *Id.* at § 236.1(h)(5). Here, Mr. Howard does not state a claim for "forced labor or services" because he advertised his services and willingly entered into an agreement to provide his services in exchange for monetary compensation. ¶ 37.

"Deprivation or violation of the personal liberty of another" under California law "includes substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person." Cal. Penal Code § 236.1(h)(3). Although the California trafficking statute lists more means to compel labor or services

- 21 -

than the TVPA, in practice, "the elements of a CTVPA and TVPA claim overlap significantly." *Novoa v. GEO Grp., Inc.*, No. EDCV172514J (GBS)(HKx), 2021 WL 4913286, at *3 (C.D. Cal. Sept. 30, 2021), citing *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 954 (N.D. Cal. 2019). "[T]he California statutes at issue mirror the TVPRA" and Section 52.5 "does not provide a separate basis for liability from the TVPRA." *Lesnik v. Eisenmann SE*, No. 16 Civ. 01120 (LHK), 2018 WL 4700342, at *15 (N.D. Cal. Oct. 1, 2018). Moreover, Plaintiff only pleaded "force, fraud, and coercion" to support his trafficking claim under California law. *See* 4AC p. 40 and ¶ 396 ("Defendants herein acted through prohibited means of force, fraud, and coercion as defined by California Penal Code § 236.1"). As described above, Mr. Howard failed to sufficiently illicit means. As a result, his California trafficking claim must be dismissed.

### c.      Plaintiff Fails to State a California Sexual Assault Claim

Plaintiff alleges sexual assault under Cal. Civ. Proc. § 340.16 based on three penal code sections: (a) Section 261, (b) Section 289, and (c) Section 243.4. 4AC p. 53. Plaintiff has not pleaded sufficient facts to find that these allegations are plausible.

Cal. Penal Code § 261 codifies the crime of rape. Plaintiff contends that he was raped when he had intercourse with Ms. Ventura and later learned that she was menstruating. He does not claim that he ever protested sex with Ms. Ventura or otherwise showed any indicia of non-consent. Instead, he states that he was disgusted by Ms. Ventura's bodily function. Anger or regret after sex does not render the sex act non-consensual. There is of course no case law—nor would there be—stating that

- 22 -

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

having sex while menstruating is per se non-consensual. This claim must be dismissed.

Cal. Penal Code § 289 makes unlawful "an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person," i.e., sexual penetration of the vagina or anus. There is not a single fact in the 4AC that suggests Plaintiff was penetrated anally. Plaintiff's claim must be dismissed.

Cal. Penal Code § 243.4 defines sexual battery as "touch[ing] an intimate part of another person while that person is unlawfully restrained . . . if the touching is against the will of the person touched and is for the purpose of sexual arousal." § 243.4(a). Section 243.4(g)(2) clarifies that "'[s]exual battery' does not include the crimes defined in Section 261 or 289." That is, each Section "encompasses different types of contact." *People v. Ortega*, 240 Cal. App. 4th 956, 967 (2015). While Section 261 encompasses "act[s] of sexual intercourse" and Section 289 encompasses "act[s] of sexual penetration," Section 243.4 encompasses certain touching at the exclusion of those acts.

Plaintiff asserts that "Ms. Ventura committed a sexual battery by taking hold of Mr. Howard's penis and inserting it into herself for the purpose of sexual arousal and gratification." ¶ 455. But because the sexual act Mr. Howard describes is penetration ("insertion"), that act is not sexual battery under the law. Additionally, there are no facts that suggest that touching Plaintiff's penis was "against his will." As stated above, all Plaintiff contends is that he became angry after the sex act concluded once he saw that Ms. Ventura was menstruating. There are no facts that suggest the act was against his

- 23 -

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

will when it happened. This claim must be dismissed.

### d.    Plaintiff Does Not Sufficiently Plead a Civil RICO Claim

The elements of a civil RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014). To engage in "conduct" under RICO, a defendant must be part of the "operation or management" of the relevant enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1990).

Here, Plaintiff fails to allege any facts demonstrating that Ms. Ventura took part in the operation or management of the alleged enterprise. Nothing in the 4AC suggests that Ms. Ventura was operating anything—indeed, Plaintiff pleads that Combs controlled the encounters, ¶¶ 53, 66, 68, and that Ms. Ventura was the "bait" used to lure him into the scheme, ¶ 19. These allegations do not suffice as to Ms. Ventura.

## V.    MOTION TO TRANSFER VENUE

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Ninth Circuit has recognized that the "relative ease of access to sources of proof," "the cost of obtaining attendance of [] witnesses," and "all other practical problems that make trial of a case easy, expeditious and inexpensive" are relevant factors to be considered. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The law favors the adjudication of cases

- 24 -

in the district "where the claim arose." *Id.*

Here, all the factors point to the SDNY as the more appropriate and just venue. Most relevant facts took place in New York. Plaintiff worked in New York and met the Defendants in New York, ¶¶ 31, 36-37,. The 4AC describes multiple encounters in New York. ¶¶ 106, 129. Plaintiff repeatedly alleges that defendants transported him "from New York" to other places; New York is plainly the hub for the events relevant to his claims. *See, e.g.*, ¶¶ 155, 161, 206, 321. Combs's criminal prosecution in the SDNY is featured prominently in the 4AC; indeed, Plaintiff alleges he spent a "year and a half as a cooperating government witness for the [SDNY]." ¶ 238.

Moreover, SDNY is the more convenient venue. Ms. Ventura's attorneys, Combs Combs's primary counsel are all located in New York City. Plaintiff is a resident of New Jersey and can easily travel to New York City. Ms. Ventura does not reside in the United States, but it is more convenient for her to travel to New York than California. Ventura Decl. ¶ 6. The corporate defendants are both incorporated in New York. As described above, many of the relevant facts occurred in New York City, and over two dozen civil cases related to Combs' crimes—many of which involve the same factual and legal issues as this case—are currently pending in New York federal courts, with many others filed in New York state courts. As a result, relevant witnesses are likely to reside in or around New York. Viewed together, these facts all point to New York as a more convenient and appropriate forum. Therefore, Ms. Ventura respectfully requests the Court transfer the claims under 28 U.S.C. § 1404(a).

- 25 -

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

Dated: May 1, 2026

Respectfully submitted,

By: _____

Melodie Han
Douglas Wigdor (*pro hac vice forthcoming*)
Meredith Firetog (*pro hac vice forthcoming*)
WIGDOR LLP
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Telephone: (212) 257-6800
mhan@wigdorlaw.com
dwigdor@wigdorlaw.com
mfiretog@wigdorlaw.com

*Counsel for Ms. Ventura*

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE