**Clayton Howard**

24 Orchard Street

Carteret, New Jersey 07008

(929)781-7791

itsclaytonhoward@gmail.com

FILED

CLERK, U.S. DISTRICT COURT

5/29/2026

CENTRAL DISTRICT OF CALIFORNIA

BY_____jb_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

CLAYTON HOWARD,

    *Plaintiff,*

v.

SEAN COMBS,

CASANDRA VENTURA,

BAD BOY ENTERTAINMENT, L.L.L.,

CEOPCO, L.L.C,

    *Defendants,*

**Case No. 2:25-cv-06031-AH-DMKx**

Hearing: [To be set by the Court]

Courtroom 9C

**PLAINTIFF'S OPPOSITION TO DEFENDANTS SEAN COMBS,**

**BAD BOY ENTERTAINMENT LLC, AND CEEOPCO LLC'S**

**MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................. 2

II. STATEMENT OF FACTS ................................................................................. 4

    A. The Criminal Conviction and Adjudicated Findings ............................................. 4

    B. Corporate Infrastructure of the Enterprise ...................................................... 4

    C. Core Factual Allegations ........................................................................ 5

    D. Casandra Ventura's Sworn Trial Testimony Regarding Howard ....................... 6

    E. Authenticated Documentary and Financial Evidence ....................................... 9

III. LEGAL STANDARD ...................................................................................... 12

IV. ARGUMENT ................................................................................................. 12

    A. Collateral Estoppel ............................................................................... 12

    B. The Defense Inverted Med. Marijuana v. Horn ............................................. 15

    C. Count IV: Three Independent Statutory Paths ............................................... 17

    D. The 4AC Adequately Pleads Force, Fraud, and Coercion ............................... 21

    E. FAC ¶ 272 Does Not Foreclose Fraud Claims .............................................. 24

    F. Statute of Limitations ............................................................................. 26

    G. Corporate Defendants Are Properly Named .................................................. 29

    H. The Civil RICO Claim Survives ................................................................ 32

    I. Counts I and VI: Concession and Preservation .............................................. 34

    J. Count II: Florida § 787.061 .................................................................... 34

    K. Rule 8 Shotgun Pleading: Remedy Is Amendment ........................................ 35

    L. Equal Protection and CVRA Harm Analysis ................................................. 36

V. CONCLUSION AND RELIEF REQUESTED ...................................................... 39

**I. PRELIMINARY STATEMENT**

Plaintiff Clayton Howard respectfully submits this opposition to the Motion to Dismiss filed by Defendants Sean Combs, Bad Boy Entertainment LLC, and CeOpco LLC (collectively, "Combs Defendants") (Doc. 88-1). This opposition incorporates a complete argument-by-argument response to each defense position, addresses the statutory architecture of Count IV under 18 U.S.C. § 1595, and presents the three strongest independent statutory paths to saving the

TVPRA claim. Defense counsel's brief contains a critical and threshold error that pervades its RICO argument: *Medical Marijuana, Inc. v. Horn,* 604 U.S. 593 (2025), decided thirty days before this Motion was filed, is cited for the exact opposite of its actual holding. That error is addressed at Section IV.B.

This case rests on a federal jury verdict. On July 2, 2025, a unanimous jury in *United States v. Sean Combs,* No. 24-cr-542 (S.D.N.Y.), found Defendant Sean Combs guilty beyond a reasonable doubt of two counts of transportation for prostitution under 18 U.S.C. § 2421 (Counts III and V). Combs was sentenced on October 3, 2025 to 50 months' imprisonment. His post-trial motion to vacate was denied. The conviction is final.

The Government's 189-page sentencing memorandum, ECF 516, specifically identifies Plaintiff Clayton Howard by name at pages 9, 17, and 44 within the scope of the convicted conduct. The sentencing court counted Plaintiff as a victim for Guidelines purposes. These are not disputed allegations — they are adjudicated federal findings. Defendant Combs is collaterally estopped from relitigating the core elements of Plaintiff's TVPRA claim. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979).

Since the filing of the Fourth Amended Complaint, the criminal trial record has been further documented through official court transcripts that directly and unambiguously corroborate Plaintiff's allegations. Casandra Ventura's four-day sworn testimony (May 13–16, 2025), authenticated documentary evidence introduced through forensic summary chart witnesses (June 16–17, 2025), and financial records admitted without objection collectively establish a multi-layered, independently authenticated evidentiary record of Plaintiff's trafficking as a matter of public judicial record.

The Defense Motion, taken as a whole, presents arguments of sharply varying strength. This opposition addresses each in turn, conceding what must be conceded, contesting what can be contested, and identifying exactly where the defense brief misrepresents controlling Supreme Court authority. The arguments that follow demonstrate that the core surviving claims — Count IV (TVPRA § 1595), Count III (Cal. Civ. Code § 52.5), and the Civil RICO count (Count VIII) — each withstand Rule 12(b)(6) scrutiny and should not be dismissed.

## II. STATEMENT OF FACTS

**A. The Criminal Conviction and Adjudicated Findings**

After a six-week trial featuring 34 government witnesses, thousands of documentary exhibits, and sealed video recordings, the jury returned its verdict on July 2, 2025. Counts III and V required proof beyond a reasonable doubt of: (a) knowing transportation; (b) in interstate commerce; (c) with intent that the individual engage in prostitution. Each element was necessarily decided by the verdict. Combs is collaterally estopped from relitigating these facts in this civil proceeding.

**B. Corporate Infrastructure of the Enterprise**

The criminal trial record establishes that Bad Boy Entertainment LLC's American Express accounts funded airline tickets for Plaintiff's interstate travel. On September 15, 2014, Bad Boy Entertainment issued a travel invoice on its corporate letterhead naming **Clayton Howard** as the passenger for a round-trip flight from New York Kennedy Airport to Los Angeles, California, and return. (Gov. Exhibit 6T108, *United States v. Combs*, Trial Tr. June 17, 2025, pp. 6566–6567.) Those travel charges were billed to **Sean Combs's personal American Express account ending 5002** and subsequently paid by five Combs corporate entities — Combs Enterprises LLC, 40 Hedges Realty Inc., 207 Anderson LLC, 56th and Broadway LLC, and Bad Boy Productions — all operating under the Bad Boy Entertainment umbrella. (Gov. Exhibits 1405-D, 1555, Trial Tr. June 17, 2025, pp. 6560–6563.)

Combs's chief of staff, **Kristina Khorram** — described by the Government as an "agent and co-conspirator" — directly coordinated Plaintiff's hotel access. On March 19, 2016, Combs's employee **Dave Shirley** transmitted the following text message to Khorram: "Clayton Howard needs access to room." (Gov. Exhibit 1411-R, Trial Tr. June 16, 2025, p. 6348.) Khorram immediately relayed: "Hey, M. Dave needs to add the name Clayton Howard to the Four Seasons hotel room. He needs access ASAP. Can you help?" (*Id.*) In June 2016, Khorram texted Ventura directly: "Hi. Dave is at your door with the green." (Trial Tr. June 16, 2025, p. 6351.) Special Agent Penland confirmed on cross-examination that Dave Shirley is a Combs employee. (Trial Tr. June 17, 2025, p. 6697.)

All financial records, hotel invoices, text messages, and travel documents were authenticated by party stipulations signed by Combs's own defense counsel — stipulations that cannot be retracted in civil litigation.

**C. Core Factual Allegations**

**(1) Identity Concealment:** Plaintiff was recruited in approximately 2009 by individuals using aliases ("Jackie Star" and "Frank"). Ventura's sworn trial testimony confirms this was systematic policy: "It was important to Sean not to have [the escorts'] identity known." (Trial Tr. May 13, 2025, p. 542.)

**(2) Interstate Transportation:** Over approximately 2009–2019, Plaintiff was transported across state lines between New York, Miami, and Los Angeles for commercial sex. Ventura testified under oath that Plaintiff was used in "New York City, Miami, Los Angeles, Vegas." (Trial Tr. May 14, 2025, p. 661.) Combs's own authenticated text message states: "I'll fly Dave in." (Gov. Exhibit B-622, Trial Tr. May 14, 2025, p. 661.) Authenticated flight records (Gov. Exhibit 6T108) confirm Howard's JFK-to-LAX round trip, financed on Bad Boy Entertainment's corporate account.

**(3) Physical Threats:** Combs threatened to "pistol whip" Plaintiff and directed Ventura to retrieve a firearm. (4AC ¶ 12.)

**(4) Controlled Substance Administration:** Plaintiff was administered controlled substances without informed consent. Ventura testified she used drugs at every freak-off — provided by Combs, delivered by his staff — "to dissociate" and "not be present with the experience." (Trial Tr. May 14, 2025, pp. 543–544.)

**(5) Video Evidence:** An October 14, 2012 sealed video recovered from a "Frank Black" user profile on Ventura's devices, authenticated at trial, depicts Plaintiff and Ventura during a sexual encounter at the Trump International Hotel. (Trial Day 25, June 17, 2025.) Hotel records confirm Room 612 was occupied under the alias "Frank Black" paid via Combs's American Express account. The invoice specifically notes: "Room charge, guest request room at 3 a.m." — precisely matching the 3:24 a.m. text messages between Ventura and Plaintiff. (Gov. Exhibit 7Y-108, Trial Tr. June 16, 2025, pp. 6504–6505.)

**(6) Corroborating Escort Testimony:** Escort witness Sharay Hayes testified he was not told Combs's true identity despite eight to twelve encounters over more than a year: "It was just like a holy crap moment." This corroborates that deception was the operational foundation of the enterprise.

**(7) Physical Harm:** During interstate encounters forming the basis of Count 3, Plaintiff contracted a sexually transmitted disease requiring ongoing medical treatment. But-for Combs's transportation of Plaintiff interstate for prostitution, this exposure would not have occurred.

**D. Casandra Ventura's Sworn Trial Testimony Regarding Plaintiff Clayton Howard**

Casandra Ventura testified under oath as a government witness across four trial days (May 13–16, 2025) in *United States v. Sean Combs*. Her testimony, taken together with authenticated documentary evidence, provides an independently corroborated account of Plaintiff's trafficking across multiple years and multiple states. The following is a comprehensive summary of all testimony directly referencing Plaintiff and the enterprise conditions under which he was trafficked.

**1. Identification of Plaintiff Clayton Howard by Full Legal Name**

On May 13, 2025, Ventura identified Plaintiff by both his legal name and his escort alias under oath before the jury:

Q: Do you know Dave by any other names? A: His real name is Clayton. Q: Do you know his real last name? A: Howard. (Trial Tr. May 13, 2025, p. 535, ll. 21-24.)

Government Exhibit 2A-612 — a photograph of Plaintiff — was offered, met with no defense objection, admitted into evidence, and published to the jury. (Trial Tr. May 13, 2025, pp. 534–535.) Ventura confirmed: "He was an escort that we called Dave." (*Id.*, p. 534.)

**2. Plaintiff Was One of Three 'Most Frequently Used' Escorts**

**Q: Who were some of the most frequently used escorts? A: Most frequently used would be Jewels, Dave, Johnny. I think those were the main ones. (Trial Tr. May 13, 2025, p. 540, ll. 4-6.)**

Ventura also confirmed that the six photographs shown to the jury were "just some of them" — the enterprise involved significantly more escorts than those identified. (Trial Tr. May 13, 2025, p. 540, ll. 7-9.)

**3. Recruitment Through Backpage/Craigslist — Commercial Platform**

Q: How did you hire Dave? A: Dave was actually through craigslist or Backpage. One of the two. I don't remember specifically which one. (Trial Tr. May 13, 2025, p. 535, ll. 10-12.)

**4. Cities of Interstate Transportation**

Ventura identified the cities in which Plaintiff was transported for freak-offs, confirming multi-state commerce:

Q: In what cities did you use Dave? A: We used Dave in New York. He would fly to Miami and Los Angeles. (Trial Tr. May 13, 2025, p. 535, ll. 13-15.)  Q: And in what cities did you have

freak-offs with Dave and Sean? A: New York City, Miami, Los Angeles, Vegas. I'm not sure. (Trial Tr. May 14, 2025, p. 661, ll. 23-25; p. 662, l. 1.)

**5. Combs's Own Text: 'I'll Fly Dave In' — Direct Command to Transport Plaintiff**

Government Exhibit B-622 — a text message from Combs to Ventura, admitted into evidence without objection — states: "...And I'll fly Dave in." Ventura confirmed on the stand:

Q: Directing your attention to that last sentence, and I'll fly Dave in. Who is Dave? A: Dave is one of the escorts that was used. Q: What was your understanding of what Sean was offering to fly Dave in for? A: He was offering to fly him in for a freak-off. Q: Where does Dave live, if you know? A: I believe he lives in New York. (Trial Tr. May 14, 2025, p. 661, ll. 13-22.)

This text was read into the trial record a second time on May 16, 2025 during cross-examination, further entrenching its evidentiary weight. (Trial Tr. May 16, 2025, p. 1211, ll. 12-18.)

**6. Travel Arranged Through Combs's Corporate Travel Agent — Identity Concealed**

Q: When Dave would travel, who would arrange Dave's travel? A: Occasionally I did. He would, Dave would himself. I think a couple of times a travel agent from Sean's company. (Trial Tr. May 13, 2025, p. 535, ll. 16-20.)

Ventura further testified that Combs directed her to conceal Plaintiff's identity from the travel agent, presenting him as a "new employee" or job candidate:

Q: What, if any, discussions did you have with Sean about communicating with the travel agent? A: I mean, it was by his direction, so we would discuss when they would arrive and when we would start. (Trial Tr. May 13, 2025, p. 542-543.)

**7. Hamptons Freak-Off — Plaintiff Present During GHB Overdose — Freak-Off Continued**

Ventura testified about a specific freak-off at a motel in the Hamptons, New York, at which Plaintiff was present and during which Ventura suffered a drug overdose:

Q: Which escort attended the freak-off in the Hamptons motel? A: It was Dave. Q: What, if anything, happened at that motel in the Hamptons after you arrived? A: At that time we were taking GHB... I blacked out and that's what happened to me. And I woke up nude in the shower, and Dave and Sean were just freaking out, like, outside of the bathroom. Q: And after you woke up in the shower, what happened next? A: I spoke to one of Sean's friends over the phone and then we had a freak-off. Q: With Dave? A: With Dave. (Trial Tr. May 14, 2025, pp. 697-698.)

The government's master freak-off timeline chart (Gov. Exhibit 1402, Line 35) independently corroborates this incident: Special Agent Penland confirmed the entry for August 9, 2013 at the "Hilton Garden Inn, Riverhead, Room 240, 2038 Old Country Road, Riverhead, New York" lists participants "Casandra Ventura and Clayton Howard." (Trial Tr. June 17, 2025, p. 6719.) Riverhead, New York is on Long Island — the Hamptons area.

**8. Video Still Image of Plaintiff at Freak-Off — GX BX-206-B**

Q: Ms. Ventura, do you recognize who is depicted in Government Exhibit BX-206-B? A: Yeah, that's me and Dave. Q: What are you and Dave doing? A: We are in a freak-off. Q: And is this exhibit a still image from a video? A: Yes. (Trial Tr. May 14, 2025, p. 750, ll. 11-15.) Government Exhibit BX-206-B was admitted into evidence without objection and published to the jury. It depicts Plaintiff directly.

**9. February 2016 Text — Plaintiff as Combs's Trusted Operative**

Defense Exhibit 1082, read into the trial record on May 16, 2025, contains a February 2016 text from Combs to Ventura:

'When you're ready, I'll send Dave to get so I can get that done and I'm coming up with a management solution.' (Trial Tr. May 16, 2025, p. 1211, ll. 17-22.)

This text — sent while Combs and Ventura were on a romantic break — establishes that Plaintiff maintained a direct working relationship with Combs extending beyond freak-off contexts.

**10. Cross-Examination: Combs Initiated Howard's March 2016 Involvement Personally**

Defense counsel's own cross-examination introduced Government Exhibit B638, which established the following sequence:

Combs to Ventura: 'want to get Dave out? For the day.' Ventura: 'I'm scared to try something new bc of all the random stories we have on the guys from here. Let me think. But you called Dave.' Ventura to Combs: 'The hotel needs you to call to give Dave access. Pls do that because he's waiting.' (Trial Tr. June 17, 2025, p. 6702.)

This sequence — Combs initiating the call to Plaintiff, Combs directing the hotel to give Plaintiff access — preceded the staff messages "Clayton Howard needs access to the room" in Gov. Exhibit 1411-R.

**11. Defense Cross-Examination Did Not Challenge Any Howard-Specific Testimony**

On cross-examination spanning May 15, 2025, defense counsel did not challenge, impeach, or contradict: Ventura's identification of Plaintiff by name; the GX B-622 "I'll fly Dave in" text; the Hamptons freak-off incident; the video still image (GX BX-206-B); Plaintiff's interstate travel across New York, Miami, Los Angeles, and Las Vegas; or the escort payment structure. All prior identification and transportation testimony stands unchallenged.

**12. Combs Personally Directed Escort Selection and Arrangement**

Q: Would Dave turn you on? (Combs to Ventura, July 29, 2012 — Defense Exhibit 1019, Trial Tr. May 15, 2025, p. 962.)  Q: FYI, fucking Dave hit me. [Ventura:] LOL. Me too. So did Daniel. (Combs's text to Ventura, October 12, 2012 — Trial Tr. May 15, 2025, p. 1021.)  Combs to Ventura, December 14, 2012: 'You call Dave? Hello.' (Trial Tr. June 17, 2025, p. 6675.) Ventura to Combs, October 2015: 'Dave hit back.' (Gov. Exhibit B617, Trial Tr. June 17, 2025, p. 6695.)

These communications — introduced by both the government and the defense — establish that Combs personally monitored Plaintiff's availability, initiated contact with Plaintiff, and directed Ventura's communications regarding Plaintiff across the full duration of the enterprise from 2012 through 2016.

**13. Ventura's Testimony: Escorts Paid from Combs's Money; Freak-Offs Were a 'Job'**

Q: Whose money was used to pay [the escorts]? A: Sean's money. (Trial Tr. May 14, 2025, p. 657.)  Q: While you were on a break, you were still having a freakoff. Is that the idea? A: Yes. That was a job. (Trial Tr. May 15, 2025, p. 1039 — cross-examination by defense counsel, uncoerced admission.)  Q: Did that whole other job involve participating in and performing at freak-offs? A: Yup. (Trial Tr. May 16, 2025, p. 1309 — NOT stricken.)

**14. Coercion — Ventura Could Not Say No**

Q: Did you feel that you could say no? A: No. (Trial Tr. May 16, 2025, p. 1330 — over defense objection, overruled.)  Q: Did you try to tell Sean that you did not want to do freak-offs? A: I tried. Q: Once or more than once? A: More than once. (Trial Tr. May 16, 2025, p. 1330.)  Q: What concerns did you have, if any, about saying no to freak-offs? A: I worried for my safety, I worried for my career. (Trial Tr. May 16, 2025, p. 1331.)

**E. Authenticated Documentary and Financial Evidence Regarding Plaintiff**

The following documentary evidence — authenticated by party stipulation and verified by government witnesses — independently corroborates Ventura's testimony and establishes Plaintiff's trafficking as a matter of public record:

| Date | Location | Gov. Exhibit | Type | Content |
|------|----------|--------------|------|---------|
| Oct 13-14, 2012 | Trump Int'l Hotel, NYC, Room 612 | GX E325Z / B325 | Authenticated text messages (Ventura ↔ Howard) | Ventura books Plaintiff; cover name 'Janet Clark'; Room 612. Session 9 p.m.–7:40 a.m. |
| Oct 14, 2012 | Trump Int'l Hotel, NYC | GX 7Y-108 | Hotel invoice | Room 612; 'guest request room at 3 a.m.' Movie charge. Breakfast charge. Matches text chain precisely. |
| Oct 14, 2012 | Trump Hotel | GX BX204, BX206, BX207 | Freak-off videos (played in court) | Original videos created Oct 14, 2012. BX206-B identified by Ventura as depicting her and Plaintiff. |
| Aug 9, 2013 | Hilton Garden Inn, Riverhead, NY (Hamptons) | GX 1402 Line 35 | Master freak-off timeline chart | 'Casandra Ventura and Clayton Howard' — both named participants. Corroborates GHB overdose testimony. |
| Oct 21-22, 2013 | London Hotel, NYC, Room 3209 | GX B218Z | Authenticated text messages | 'Don't stop at desk.' Session 6 hrs. Post-session Combs asks if Plaintiff filmed anything. |
| Sept 15-17, 2014 | Four Seasons, Los Angeles | GX 1402 Line 46 | Master freak-off chart | 'Sean Combs, Clayton Howard a/k/a Dave' — both named. Howard's flight records authenticated. |
| Sept 15-17, 2014 | JFK → LAX → JFK | GX 6T108 | Bad Boy Entertainment travel invoice | Passenger: Clayton Howard. Round-trip flights on Bad Boy Entertainment letterhead. |
| Sept 2014 | Combs's AmEx / Bad Boy accounts | GX 1405-D, 1555 | AmEx statement + payment chain | Combs's personal AmEx (ending 5002) charged for Plaintiff's travel. $307,424 bill paid by five Bad Boy corporate entities. |
| March 19, 2016 | Four Seasons Hotel, Miami | GX 1411-R | Staff text messages | 'Clayton Howard needs access to room' — Combs's employee Dave Shirley arranged Plaintiff's hotel access. |
| All sessions | Multiple states | GX 1312-R | Party stipulation (defense signed) | Combs's defense team stipulated: phone number for 'Dave' in all records = Clayton Howard, a/k/a 'Dave.' Binding concession. |

Special Agent Penland confirmed: of the 20 entries in the government's comprehensive freak-off timeline chart with authenticated flight records, only four individuals are documented — "Julian Sapp, Jules Theodore, Casandra Ventura, Clayton Howard. That's it." (Trial Tr. June 17, 2025, p. 6577.) Howard is one of only two non-victims with authenticated flight records in the government's enterprise-wide documentation, categorized alongside identified escorts.

### III. LEGAL STANDARD

A Rule 12(b)(6) motion tests legal sufficiency of the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The court must accept all allegations as true and draw all reasonable inferences in Plaintiff's favor. The complaint need only allege sufficient facts to state a claim "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The Ninth Circuit further holds that courts must "construe the pleadings liberally and afford the plaintiff any benefit of the doubt." *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir. 2005). The Court may take judicial notice of adjudicative facts "not subject to reasonable dispute" under Fed. R. Evid. 201(b)(2), including federal court records. *Bias v. Moynihan,* 508 F.3d 1212, 1225 (9th Cir. 2007).

### IV. ARGUMENT

**A. DEFENDANT COMBS IS COLLATERALLY ESTOPPED FROM RELITIGATING THE INTERSTATE TRANSPORTATION AND COMMERCIAL SEX ELEMENTS OF PLAINTIFF'S TVPA CLAIM**

**1. All Four Parklane Elements Are Satisfied**

Under *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 330–31 (1979), offensive non-mutual collateral estoppel applies where: (1) the issue was actually litigated; (2) it was necessarily decided; (3) the judgment was final and valid; and (4) the party to be estopped had a full and fair opportunity to litigate. *Hydranautics v. FilmTec Corp.,* 204 F.3d 880, 885 (9th Cir. 2000). All four elements are met.

**Element 1 — Actually Litigated:** Combs's conviction followed a six-week fully-contested jury trial with 34 witnesses and thousands of documentary exhibits. Whether Combs transported individuals interstate for prostitution was exhaustively litigated. This is a unanimous jury verdict, not a stipulation or plea.

**Element 2 — Necessarily Decided:** 18 U.S.C. § 2421 required the jury to find: (a) knowing transportation; (b) in interstate commerce; (c) with intent that the individual engage in prostitution. The jury convicted on both Counts III and V. Each element is a mandatory

predicate. The sentencing court adopted Guidelines calculations counting Plaintiff as a victim within the scope of convicted conduct. ECF 516, pp. 9, 17, 44.

The estoppel force of this finding is reinforced by the trial record. The government's master freak-off timeline chart (Gov. Exhibit 1402) included Clayton Howard's authenticated flight records. Special Agent Penland testified Howard was one of only four individuals — alongside Jules Sapp, Jules Theodore, and Casandra Ventura — for whom authenticated flight records appear in the chart. (Trial Tr. June 17, 2025, p. 6577.) The Bad Boy Entertainment travel invoice (Gov. Exhibit 6T108) documents Howard's round-trip JFK-to-LAX flights on September 15-17, 2014. (Trial Tr. June 17, 2025, pp. 6566–6567.) Combs's personal American Express account (ending 5002) was charged for this travel, paid by five Bad Boy corporate entities from Combs's Signature Bank accounts. (Gov. Exhibits 1405-D, 1555.) These are not allegations — they are authenticated exhibits admitted at trial.

**Element 3 — Final and Valid:** Verdict entered July 2, 2025. Sentence entered October 3, 2025. Post-trial motion to vacate denied. A conviction is "final" for collateral estoppel purposes even during a pending direct appeal. *Robi v. Five Platters, Inc.,* 838 F.2d 318, 327 (9th Cir. 1988).

**Element 4 — Full and Fair Opportunity to Litigate:** Combs was represented by elite criminal defense counsel (Agnifilo, Geragos, Shapiro, Steel). He had full discovery, the right to confront all 34 prosecution witnesses, the right to present a defense, and the presumption of innocence. Allowing him to relitigate under the lower civil preponderance standard would be "anomalous." *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 569 (1951).

**2. The Parklane Fairness Factors All Favor Plaintiff**

Plaintiff did not "wait and see." Private citizens have no right to intervene in federal criminal prosecutions. Plaintiff cooperated with SDNY prosecutors for approximately 18 months and testified before a grand jury in March 2025. There are no inconsistent prior judgments. Combs had every incentive to litigate vigorously — his freedom and empire were at stake. The criminal proceeding afforded him more, not fewer, procedural protections than this civil proceeding.

**3. Estoppel Establishes Critical TVPA Elements — Amplified by Trial Record**

As to Count IV (§ 1595) and Count III (Cal. Civ. Code § 52.5), the following issues are precluded from contest:

**Interstate Transportation:** Combs cannot deny Plaintiff was transported across state lines for a prostitution enterprise. The jury necessarily found this beyond a reasonable doubt on Counts III and V. The Bad Boy Entertainment travel invoice (Gov. Exhibit 6T108) documents Howard's specific JFK-to-LAX flights. Ventura's testimony identifies New York, Miami, Los Angeles, and Las Vegas as transportation destinations for Plaintiff. (Trial Tr. May 14, 2025, p. 661.)

**Commercial Sex Act:** "Prostitution" under the Mann Act is coterminous with "commercial sex act" under the TVPA. *United States v. Jungers,* 702 F.3d 1066, 1072 (8th Cir. 2013). The jury found the transportation was for prostitution; Combs cannot deny commercial sex acts occurred. Ventura's testimony confirms escorts were paid from Combs's money — "anywhere from $1,500 to $5,000, $6,000" — for sex acts. (Trial Tr. May 13, 2025, p. 532.)

**Knowing Intent:** The Mann Act requires knowing, intentional transportation with specific intent. Combs is estopped from contesting this knowledge.

With three of five TVPA elements established by estoppel, only force, fraud, or coercion remains contested — and on that element, the 4AC makes specific, detailed, plausible allegations corroborated by Ventura's sworn trial testimony. Dismissal of Count IV would be legal error.

**B. THE DEFENSE INVERTED MED. MARIJUANA v. HORN — A CRITICAL MISREPRESENTATION OF CONTROLLING SUPREME COURT AUTHORITY**

This Court's attention is respectfully directed to a threshold error that pervades the Defense's RICO injury argument. The Motion to Dismiss cites *Medical Marijuana, Inc. v. Horn,* 604 U.S. 593 (2025), for the proposition that personal injuries are not cognizable under civil RICO. That is not what *Horn* held. The defense inverted the Supreme Court's holding entirely.

**The Actual Horn Holding:** In *Medical Marijuana, Inc. v. Horn,* 604 U.S. 593 (2025), decided April 2, 2025 — twenty-nine days before this Motion was filed — the Supreme Court held 5–4, Justice Barrett writing for the majority: "[A] plaintiff may seek treble damages for business or property loss even if the loss resulted from a personal injury." The Court explicitly rejected the "antecedent-personal-injury bar." *Horn* is a plaintiff-favorable decision that expanded — not contracted — the scope of cognizable RICO injury.

**The Correct Horn Rule Applied to Plaintiff's RICO Injuries:**

**(1) Lost Income from Underpayment:** Payment manipulation and controlled payment conditions — with payment withheld for "non-completion" — constitutes economic deprivation cognizable even if the underlying encounter involved personal harm.

**(2) Medical Expenses:** Plaintiff contracted a sexually transmitted disease during interstate freak-off encounters. Medical expenses for STD testing, diagnosis, treatment, and monitoring are "business or property" loss under *Horn.* Ventura testified she suffered recurrent UTIs requiring antibiotic treatment during frequent freak-offs. (Trial Tr. May 14, 2025, p. 677.) Plaintiff suffered analogous harms.

**(3) Reputational Business Harm:** Being publicly named in connection with the Combs prosecution — a consequence of the racketeering activity itself — caused direct damage to Plaintiff's business and contracting opportunities.

**(4) Lost Business Opportunities:** Psychological trauma symptoms attributable to the enterprise — including PTSD, depression, and anxiety — caused documented lost productivity and business development capacity.

The Defense's inverted citation of *Horn* infected the entirety of its RICO injury analysis. Because the actual *Horn* standard is plaintiff-favorable and was available to defense counsel twenty-nine days before the Motion was filed, this Court should treat the defense's RICO injury argument as without merit.

**C. COUNT IV: THREE INDEPENDENT STATUTORY PATHS ESTABLISH THE CHAPTER 77 PREDICATE UNDER § 1595**

**Path 1: § 1589 (Forced Labor/Services) — The Strongest and Cleanest Theory**

Section 1589 of Chapter 77 prohibits obtaining labor or services through: (a) force, threats, or physical restraint; (b) serious harm or threat thereof; (c) abuse of law or legal process; or (d) a scheme causing a person to believe they would suffer serious harm. This predicate requires no reliance on the Mann Act conviction whatsoever.

**§ 1589(a)(1) — Force/Threats:** Combs threatened to "pistol whip" Plaintiff and directed Ventura to retrieve a firearm. (4AC ¶ 12.) Ventura's trial testimony confirms Combs physically beat her at freak-offs in New York, Los Angeles, and Miami — "more than once" — and that escorts present heard and were aware of this violence. (Trial Tr. May 14, 2025, pp. 688–690.) Ventura confirmed she feared for her safety when contemplating refusal of freak-offs. (Trial Tr. May 16, 2025, p. 1331.)

**§ 1589(a)(2) — Serious Harm:** Controlled substance administration impairing Plaintiff's judgment constitutes obtaining services through "serious harm." Ventura confirmed drugs were provided by Combs, delivered by his staff, at every freak-off — including the Hamptons freak-off where Ventura overdosed on GHB in Plaintiff's presence and the freak-off nonetheless continued. (Trial Tr. May 14, 2025, pp. 697–698.)

**§ 1589(a)(4) — Coercive Scheme:** The systematic recording of encounters without consent — retained by Combs as leverage against future exposure — constitutes a "scheme, plan, or pattern" intended to cause Plaintiff to believe failure to continue would result in "serious harm." The Jonathan Oddi incident establishes that Combs deployed substantial resources to suppress unauthorized recordings. (Trial Tr. May 16, 2025, pp. 1189–1190.) Government Exhibit BX-206-B — a still image from a freak-off video depicting Plaintiff — was admitted at trial. (Trial Tr. May 14, 2025, p. 750.)

**Path 2: § 1591 (Sex Trafficking) — Directly Pled and Collaterally Established**

Section 1591 of Chapter 77 provides a civil predicate for § 1595 and is already pled in Count IV. (4AC ¶¶ 408–416.) The Mann Act conviction establishes — through collateral estoppel — the factual elements of the § 1591 conduct: knowing transportation, commercial sex, interstate commerce.

The trial record amplifies this: Combs's own credit card (American Express ending 5002) was charged for Plaintiff's interstate flights through Journey Corporation. (Gov. Exhibit 1405-D.) Those charges appeared on a Bad Boy Entertainment corporate travel invoice in Plaintiff's name. (Gov. Exhibit 6T108.) The AmEx balance was paid by five Combs/Bad Boy corporate entities. (Gov. Exhibit 1555.) This is documented financial proof of Combs "benefiting, financially or by receiving anything of value, from participation in a venture" — the precise § 1595 standard.

**Path 3: § 1595(c)(1) Discovery Accrual — All Claims Are Timely**

18 U.S.C. § 1595(c)(1) provides that the 10-year limitations period runs from "the later of" — (1) when Plaintiff knew or reasonably should have known he was a victim. Plaintiff's December 2023 DHS contact constitutes the triggering knowledge event. The 10-year period has not yet run on any claim.

Even under the defense's misreading, events from June 30, 2015 through 2019 remain facially timely. The March 2016 texts naming Plaintiff and coordinating hotel room access —

admitted at trial — establish facially timely encounters within this window. Any blanket time-bar argument as to Count IV is legally incorrect.

**Path 4 (Amendment): § 2421A(c) — Alternative Civil Remedy in Chapter 117**

To the extent any residual Chapter 77 predicate question persists, Plaintiff respectfully requests leave to add a standalone count under 18 U.S.C. § 2421A(c) in the Fifth Amended Complaint. Section 2421A(b) covers conduct in "reckless disregard of the fact that such conduct contributed to sex trafficking, in violation of § 1591(a)." A decade-long interstate transportation enterprise operating through Bad Boy's corporate infrastructure, resulting in a federal Mann Act conviction, unambiguously demonstrates reckless disregard for sex trafficking.

**D. THE 4AC ADEQUATELY PLEADS FORCE, FRAUD, AND COERCION AGAINST THE COMBS DEFENDANTS**

**1. Fraud — Identity Concealment as the Operational Gateway**

The 4AC alleges, and Ventura's own trial testimony confirms, that identity concealment was systematic operating policy. Ventura testified: "It was important to Sean not to have [the escorts'] identity known." (Trial Tr. May 13, 2025, p. 542.) Travel was booked as if escorts were "new staff members." Combs was introduced as Ventura's "husband who would only observe."

Plaintiff was recruited by individuals using aliases ("Jackie Star" and "Frank"). The October 2012 freak-off at the Trump International Hotel illustrates the concealment infrastructure in real time: Ventura provided Plaintiff with the cover name "Janet Clark" to use when accessing the hotel room, instructed him to identify himself as making a "drop-off," and coordinated with the front desk using the cover story "food and movies." (Gov. Exhibit E325Z, Trial Tr. June 16, 2025, pp. 6503–6504.) In March 2016, Plaintiff's hotel room access was arranged under his legal name by Combs's corporate staff — but his presence was concealed through the enterprise's internal logistics. Corroborating escort Sharay Hayes testified he did not learn Combs's identity for more than a year despite eight to twelve encounters: "It was just like a holy crap moment."

The Ninth Circuit's framework in *Croft v. Dolan,* 2025 WL 3720844 (9th Cir. Dec. 23, 2025), requires that fraud be "the mechanism that causes the commercial sex act itself." That standard is met: the identity concealment was causally necessary to obtain and sustain escort participation.

**2. Force — Physical Threats and Controlled Substance Administration**

The 4AC alleges Combs threatened to "pistol whip" Plaintiff and directed Ventura to retrieve a firearm. (4AC ¶ 12.) Ventura's trial testimony confirms Combs's use of violence as an enforcement mechanism: he "would grab me up, push me down, hit me in the side of the head, kick me" at freak-offs in "New York and Los Angeles for sure, Miami." (Trial Tr. May 14, 2025, pp. 688–690.) Escorts were present and "could hear it and would ask me afterwards if I was okay." (*Id.*, p. 689.) Ventura confirmed: "Did you feel that you could say no? A: No." (Trial Tr. May 16, 2025, p. 1330, over defense objection, overruled.)

Additionally, the administration of controlled substances without full informed consent constitutes force under 18 U.S.C. § 1591(e)(2)(A). Drugs were provided by Combs, delivered by his staff, at every freak-off — including ketamine, GHB, MDMA, ecstasy, and cocaine. *United States v. Rivera,* 799 F.3d 180, 185 (2d Cir. 2015).

### 3. Coercion — The Blackmail Recording Scheme

Combs systematically recorded freak-off encounters without escorts' knowledge or consent. The October 14, 2012 sealed video depicting Plaintiff was among these retained recordings. (Trial Day 25, June 17, 2025.) Government Exhibit BX-206-B — a still image from a freak-off video depicting Plaintiff — was admitted into evidence and published to the jury. (Trial Tr. May 14, 2025, p. 750.) A scheme of secret recording for leverage constitutes coercion under § 1591(e)(2)(B).

### 4. The 2016 Miami Incident — Fraud Delivered Into Fact

The 2016 Miami incident — Combs physically inserting himself into the encounter he had promised he would only observe — is the precise moment the "observer husband" misrepresentation was delivered into conduct. This single incident illustrates the TVPA's fraud theory at its most specific.

**E. FAC ¶ 272 DOES NOT FORECLOSE FRAUD CLAIMS — SUBJECTIVE BELIEF VERSUS OBJECTIVE TVPA STANDARD**

**1. Subjective Belief Is Not the TVPA Standard**

FAC ¶ 272 describes Plaintiff's subjective belief at the time of encounters — formed through a systematic deception framework. The TVPA applies an objective standard. A victim's subjective belief of consensuality does not foreclose fraud liability where fraud was the mechanism preventing understanding of the true nature of the arrangement. *United States v.*

*Flanders,* 752 F.3d 1317, 1334 (11th Cir. 2014) ("trafficking victims often do not self-identify as victims"); *United States v. Strevell,* 185 F. App'x 841, 848 (11th Cir. 2006).

Plaintiff was told: (1) his clients were a married couple with Combs as a non-participating observer; (2) recruitment was through individuals using false names; (3) commercial sex was characterized as voluntary companionship. His subjective belief of consensuality was itself the product of the fraud. Ventura's spontaneous characterization of freak-off participation as "a job" (Trial Tr. May 15, 2025, p. 1039 — uncoerced admission during defense cross-examination) and her description of freak-offs as requiring "a whole other job" (Trial Tr. May 16, 2025, p. 1309 — NOT stricken) confirm the commercial, obligatory nature of the enterprise from the enterprise's principal herself.

**2. Collateral Estoppel Defeats ¶ 272 as a Defense**

Combs's Mann Act conviction establishes that the transportation was for prostitution as a matter of federal law. "Prostitution" under federal law is not legally cognizable as "consensual" in the sense the Defense seeks to invoke. Plaintiff's subjective belief is irrelevant to Combs's objective conduct.

**3. Rule 15 Leave to Clarify ¶ 272 Should Be Granted**

To the extent the Court finds ¶ 272 ambiguous as a judicial admission, Plaintiff respectfully requests leave to amend to clarify that ¶ 272 describes Plaintiff's subjective contemporaneous belief — formed as a result of systematic fraud — and does not purport to constitute a legal admission as to the objective elements of force, fraud, or coercion under the TVPA. *Foman v. Davis,* 371 U.S. 178, 182 (1962).

**F. STATUTE OF LIMITATIONS: DISCOVERY ACCRUAL AND FRAUDULENT CONCEALMENT TOLLING**

**1. Count IV (TVPRA): Discovery-Based Accrual Renders All Claims Timely**

As established in Section IV.C above, § 1595(c)(1) is a discovery-accrual rule. Plaintiff's December 2023 DHS contact constitutes the triggering knowledge event. The 10-year period has not yet run on any claim under this analysis.

Even under the defense's misreading of § 1595(c)(1), events from June 30, 2015 through 2019 remain facially timely. The March 2016 Four Seasons Miami incident — corroborated by the staff text messages "Clayton Howard needs access to room" (Gov. Exhibit 1411-R, Trial Tr. June 16, 2025, p. 6348) — is a documented freak-off encounter within this window.

**2. Count VIII (RICO): Separate Accrual and Fraudulent Concealment**

Civil RICO's four-year period runs from injury discovery. *Agency Holding Corp. v. Malley-Duff & Assocs.,* 483 U.S. 143, 156 (1987). Multiple independent bases for timely claims exist:

**(a) New Injury Accruals:** Each new injury accruing post-June 2021 generates a new accrual. *Grimmett v. Brown,* 75 F.3d 506, 510 (9th Cir. 1996). Plaintiff's public identification in the 2024–2025 investigation and reputational business harm accrued within the four-year window.

**(b) December 2023 Discovery:** The full scope of the RICO enterprise — including its participants, duration, methods, and Combs's central role — became known to Plaintiff through DHS contact in December 2023.

**(c) Fraudulent Concealment:** The concealment architecture here was multi-layered: aliases throughout recruitment; pseudonymous hotel bookings ("Frank Black," "Janet Clark," "Eli Maroun"); escorts booked as "staff members"; recordings suppressed when discovered (Oddi incident); Combs's identity hidden throughout multiple encounters. Government Exhibit E325Z demonstrates Ventura providing Plaintiff with a cover name to use when accessing the Trump Hotel room. (Trial Tr. June 16, 2025, p. 6503.) This affirmative concealment of sufficient specificity survives Rule 12(b)(6). *Hexcel Corp. v. Ineos Polymers, Inc.,* 681 F.3d 1055, 1060 (9th Cir. 2012).

**3. Count II (Florida § 787.061): Statutory Delayed Accrual**

Florida Statutes § 95.11(8) defines the start of the limitations period as "when the victim leaves the dependency of the abuser or discovers both the injury and the causal relationship between the injury and the abuse, whichever occurs later." Plaintiff's December 2023 DHS contact triggers this provision.

**G. CORPORATE DEFENDANTS BAD BOY ENTERTAINMENT LLC AND CEEOPCO LLC ARE PROPERLY NAMED — GROUP PLEADING DEFECT IS CURABLE**

**1. BBE's Resources Were the Operational Infrastructure**

Bad Boy Entertainment LLC is not a nominal defendant. The criminal trial record — now extensively documented in the official transcripts — establishes its resources directly funded and facilitated the escort enterprise:

**Financial Infrastructure:** Bad Boy Entertainment's corporate travel account issued the travel invoice for Plaintiff's round-trip flights. (Gov. Exhibit 6T108, Trial Tr. June 17, 2025, pp. 6566–6567.) The charges were billed to Combs's American Express account ending 5002, with the $307,424 balance paid by five Bad Boy corporate entities. (Gov. Exhibits 1405-D, 1555.)

**Corporate Personnel as Operatives:** Kristina Khorram (Combs's chief of staff, government-designated "agent and co-conspirator") coordinated Plaintiff's hotel room access in March 2016. (Trial Tr. June 16, 2025, p. 6348.) Dave Shirley (Combs's employee, confirmed by Special Agent Penland at Trial Tr. June 17, 2025, p. 6697) transmitted "Clayton Howard needs access to room" to Khorram. Both were acting on company time, using company communications, in furtherance of enterprise activities.

**Hotel Logistics:** Hotel rooms were booked under aliases using corporate accounts. The Four Seasons Hotel record for September 2014 shows Kristina Khorram as the contact, Combs's American Express as payment, and Combs as the cardholder. (Gov. Exhibit 7D123, Trial Tr. June 17, 2025, pp. 6564–6565.)

**2. Named Agents Establish Entity Liability**

**Kristina Khorram:** Described by the Government as Combs's "agent and co-conspirator" and BBE's chief of staff. Her 2016 text: "Dave is at your room with the green." (Trial Tr. June 16, 2025, p. 6351.) Her role in coordinating Plaintiff's hotel access establishes BBE agency liability.

**Dave Shirley:** Confirmed Combs employee (Trial Tr. June 17, 2025, p. 6697) who transmitted "Clayton Howard needs access to room." A BBE employee performing escort logistics on company time, using company communications, in furtherance of the enterprise.

**BBE Travel Agent:** Ventura testified she told the travel agent to book escorts as "new staff members." That travel agent acted for BBE. The Bad Boy Entertainment travel invoice for Plaintiff's flights (Gov. Exhibit 6T108) was issued through Journey Corporation, a travel agency — confirming BBE's corporate travel account was the conduit for Plaintiff's interstate transportation financing.

Plaintiff respectfully requests leave to file a Fifth Amended Complaint naming Khorram and Shirley by name, attributing their acts to BBE, and removing all Bad Boy Records LLC (BBR) references.

**3. CeOpco: Direct Corporate Participation Theory**

CeOpco's liability rests on facilitating knowing transportation for prostitution — established by the criminal conviction. The better theory for both corporate defendants is not respondeat superior but direct participation in the RICO enterprise. Under civil RICO, an entity participates as an enterprise member when its financial infrastructure, employees, and communications are deployed to facilitate the underlying racketeering activity.

**4. Rule 12(e) Is the Correct Remedy, Not Dismissal with Prejudice**

The Ninth Circuit treats shotgun pleading defects as curable via amendment, not grounds for dismissal with prejudice. *Bautista v. Los Angeles Cty.,* 216 F.3d 837, 842 (9th Cir. 2000). The 4AC does attribute specific conduct to specific actors throughout. The standard remedy is Rule 12(e) or dismissal with leave to amend.

**H. THE CIVIL RICO CLAIM (COUNT VIII) SURVIVES UNDER THE CORRECTED *Horn* ANALYSIS**

The RICO enterprise, pattern, and injury elements are each adequately pled and independently supported by the criminal trial record.

**Enterprise:** The Combs enterprise operated through Bad Boy Entertainment LLC, its affiliated corporate entities, and named employees (Khorram, Shirley, the BBE travel agent) as organizational infrastructure. The freak-off operation was not conducted alongside the business — it was conducted through the business. Corporate financial resources (the Bad Boy Entertainment travel invoice, the Combs AmEx account, five Signature Bank corporate accounts) paid for Plaintiff's interstate transportation. The enterprise is not an abstraction — it is a documented corporate operation.

**Pattern of Racketeering Activity:** The predicate acts — Mann Act transportation (18 U.S.C. § 2421), TVPA violations (18 U.S.C. §§ 1589, 1591) — were committed repeatedly over at least a decade (2009–2019), across multiple states (New York, California, Florida, Nevada), involving multiple escorts (including Plaintiff), with documented financial transactions financing each occurrence. The October 2012 Trump Hotel session, the August 2013 Hamptons session, the October 2013 London Hotel session, the September 2014 Four Seasons Los Angeles session, the March 2016 Four Seasons Miami session — each is a documented predicate act with authenticated evidence. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 241 (1989).

**RICO Injury Under *Horn*:** As established in Section IV.B, the correct *Horn* standard encompasses economic losses — medical expenses, lost income, reputational business harm, lost

business opportunities — that derive from physical harms caused by the enterprise. Each of these categories is cognizable under the corrected *Horn* analysis. The defense's contrary argument rests on an inverted reading of binding Supreme Court authority.

**I. COUNTS I AND VI: CONCESSION AND PRESERVATION OF CIVIL ANALOGS**

Plaintiff concedes that Count I (Battery) and Count VI (Negligent Infliction of Emotional Distress) face significant hurdles under California's two-year statute of limitations. However, to the extent these counts arise from conduct within the limitations period or are tolled by fraudulent concealment (see Section IV.F), they are preserved. Plaintiff will seek leave to amend the limitations allegations upon the Court's direction.

**J. COUNT II: FLORIDA § 787.061 — PRONG 2 PRESENTS A FIRST-IMPRESSION QUESTION**

The Defense argues Florida § 787.061 requires proof the victim was transported "against the victim's will." Plaintiff's response is twofold.

First, Prong 2 of § 787.061 applies to transportation "for the purpose of subjecting the person to slavery, involuntary servitude, peonage, or forced labor." The question of whether freak-off conduct constitutes "forced labor" under Prong 2 is a first-impression question under Florida law — inappropriate for resolution at Rule 12(b)(6).

Second, the discovery-accrual rule of Fla. Stat. § 95.11(8) tolls the limitations period until Plaintiff "discovers both the injury and the causal relationship between the injury and the abuse, whichever occurs later." Plaintiff's December 2023 DHS contact triggers this provision. The factual questions raised by this tolling argument cannot be resolved on a motion to dismiss.

**K. RULE 8 SHOTGUN PLEADING: REMEDY IS AMENDMENT, NOT DISMISSAL WITH PREJUDICE**

The Ninth Circuit treats shotgun pleading defects as curable via amendment, not grounds for dismissal with prejudice. *Bautista v. Los Angeles Cty.,* 216 F.3d 837, 842 (9th Cir. 2000). The 4AC does attribute specific conduct to specific actors throughout. The global paragraph incorporation is a drafting convention, not a substantive pleading failure. The standard remedy is Rule 12(e) or dismissal with leave to amend.

Should the Court find the group pleading inadequate, Plaintiff requests leave to file a Fifth Amended Complaint that: (a) names Khorram and Shirley individually and attributes their specific acts to BBE; (b) removes BBR references; (c) specifies the corporate financial chain

documented in the trial record (the Bad Boy Entertainment travel invoice, the Combs AmEx account, the five Signature Bank corporate accounts) as the basis for BBE's direct participation in the RICO enterprise; and (d) clarifies FAC ¶ 272 as described in Section IV.E.

**L. EQUAL PROTECTION AND CVRA HARM ANALYSIS CORROBORATE PLAINTIFF'S VICTIM STATUS**

The CVRA (18 U.S.C. § 3771) affords crime victims the right to be treated with fairness and respect for dignity and privacy, the right to proceedings free from unreasonable delay, and the right to restitution. Plaintiff was specifically identified by name in the Government's sentencing memorandum (ECF 516, pp. 9, 17, 44) as within the scope of convicted conduct. The sentencing court's Guidelines calculations counted Plaintiff as a victim.

The trial record extensively corroborates Plaintiff's victim status: Ventura's sworn identification of Plaintiff by full legal name; the defense's own stipulation that the phone number for "Dave" belongs to Clayton Howard (Gov. Exhibit 1312-R); authenticated flight records, hotel invoices, text messages, and financial records documenting Plaintiff's participation in the enterprise; and freak-off video evidence (Gov. Exhibits BX204, BX206, BX207, BX-206-B) filmed at the same location and time as the authenticated text messages and hotel invoice.

The selective enforcement argument — that other enterprise participants received pre-verdict media appearances while Plaintiff received zero — is corroborated by the criminal trial record's documentation of the enterprise's systematic identity concealment. The cop-check vetting protocol (Ventura directed to lead escort conversations by declaring she was not law enforcement, 6–8 times over the relationship, per Combs's direction — Trial Tr. May 14, 2025, pp. 628–629) demonstrates Combs's awareness that the enterprise's activities would subject participants to legal jeopardy if disclosed. The deliberate suppression of escorts' identities throughout the enterprise is directly evidenced by the travel agent concealment testimony, the "Janet Clark" cover name for the Trump Hotel session, and the "new employee" cover story for Plaintiff's travel.

## V. CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1. DENY Defendants' Motion to Dismiss as to Count IV (TVPRA § 1595), Count III (Cal. Civ. Code § 52.5), and Count VIII (Civil RICO), on the grounds that: (a) Defendant Combs is collaterally estopped from relitigating the interstate transportation and

commercial sex elements; (b) the authenticated criminal trial record — including Ventura's four-day sworn testimony, Bad Boy Entertainment's corporate financial records, authenticated flight invoices, hotel records, text message evidence, and freak-off video exhibits — more than adequately supports the plausibility of Plaintiff's allegations; and (c) the Defense's RICO injury analysis rests on an inverted reading of the controlling Supreme Court authority in *Medical Marijuana, Inc. v. Horn,* 604 U.S. 593 (2025).

2. In the alternative, GRANT leave to file a Fifth Amended Complaint to: (a) clarify the Chapter 77 predicate structure of Count IV; (b) add a standalone count under 18 U.S.C. § 2421A(c); (c) name Kristina Khorram and Dave Shirley as named agents of BBE with specific acts attributed to the corporate defendant; (d) remove BBR references; and (e) clarify FAC ¶ 272 as describing Plaintiff's subjective contemporaneous belief formed as a result of systematic fraud.

3. Take judicial notice of the trial transcripts from *United States v. Sean Combs,* No. 24-cr-542 (S.D.N.Y.) — Documents 558, 560, 562, 564, 592, and 594 — as public records of official federal court proceedings pursuant to Federal Rule of Evidence 201(b), to the extent relevant to the Court's assessment of Plaintiff's factual allegations.

4. Grant such other and further relief as the Court deems just and proper.

Dated: May 25, 2026

Respectfully submitted,

*Clayton Howard*

**CLAYTON HOWARD**

Plaintiff, Pro Se

24 Orchard Street

Carteret, New Jersey 07008

(929) 781-7791

itsclaytonhoward@gmail.com

## TABLE OF AUTHORITIES

### UNITED STATES SUPREME COURT

***Agency Holding Corp. v. Malley-Duff & Assocs.***, 483 U.S. 143, 156 (1987). 19

*Cited at § IV.F.2 for the four-year civil RICO statute of limitations.*

***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009) ...................................................... 12

*Cited at § III (Legal Standard) for the plausibility standard under Rule 12(b)(6).*

***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007) ................................... 12

*Cited at § III (Legal Standard) for the 'plausible on its face' pleading standard.*

***Emich Motors Corp. v. General Motors Corp.***, 340 U.S. 558, 569 (1951) ..... 13

*Cited at § IV.A.1 (Element 4) — relitigation under civil preponderance after criminal conviction would be 'anomalous.'*

***Foman v. Davis***, 371 U.S. 178, 182 (1962).......................................................... 18

*Cited at § IV.E.3 for the Rule 15 leave-to-amend standard.*

***H.J. Inc. v. Northwestern Bell Tel. Co.***, 492 U.S. 229, 241 (1989)................. 21

*Cited at § IV.H (Civil RICO Claim) for the RICO pattern-of-racketeering continuity requirement.*

***Medical Marijuana, Inc. v. Horn***, 604 U.S. 593 (2025) ................... 2, 13, 22, 24

*Central authority of § IV.B — defense misrepresented holding. Correct holding: plaintiff may seek treble damages for business or property loss even if loss resulted from personal injury. Also cited at Preliminary Statement (p. 2), § IV.H (p. 22), and Conclusion (p. 24).*

***Parklane Hosiery Co. v. Shore***, 439 U.S. 322, 330-31 (1979)...................... 3, 12

*Central authority for § IV.A (Collateral Estoppel). First cited at p. 3 (Preliminary Statement); second at p. 12 (§ IV.A.1 opening).*

### UNITED STATES COURTS OF APPEALS

***Bautista v. Los Angeles Cty.***, 216 F.3d 837, 842 (9th Cir. 2000)............... 21, 22

*Cited at § IV.G.4 (p. 21) and § IV.K (p. 22) — Ninth Circuit rule that shotgun pleading defects are curable by amendment, not grounds for dismissal with prejudice.*

***Bias v. Moynihan***, 508 F.3d 1212, 1225 (9th Cir. 2007).................................. 12

*Cited at § III (Legal Standard) — courts may take judicial notice of proceedings in other courts with direct relation to matters at issue.*

***Croft v. Dolan***, 2025 WL 3720844 (9th Cir. Dec. 23, 2025) ............................ 16

*Cited at § IV.D.1 (Fraud) — Ninth Circuit standard requiring fraud to be 'the mechanism that causes the commercial sex act itself.'*

***Grimmett v. Brown***, 75 F.3d 506, 510 (9th Cir. 1996)........................................ 19

*Cited at § IV.F.2(a) — each new RICO injury accruing after the limitations cutoff generates a new accrual.*

***Hexcel Corp. v. Ineos Polymers, Inc.***, 681 F.3d 1055, 1060 (9th Cir. 2012) .. 19

*Cited at § IV.F.2(c) — controlling Ninth Circuit standard for fraudulent concealment tolling (three-element test).*

***Hydranautics v. FilmTec Corp.***, 204 F.3d 880, 885 (9th Cir. 2000)................. 12

*Cited at § IV.A.1 — sets out the four Parklane elements for offensive non-mutual collateral estoppel in the Ninth Circuit.*

***Knievel v. ESPN***, 393 F.3d 1068, 1072 (9th Cir. 2005).................................... 12

*Cited at § III (Legal Standard) — courts must 'construe the pleadings liberally and afford the plaintiff any benefit of the doubt.'*

***Robi v. Five Platters, Inc.***, 838 F.2d 318, 327 (9th Cir. 1988) ......................... 13

*Cited at § IV.A.1 (Element 3) — a conviction is 'final' for collateral estoppel purposes even during a pending direct appeal.*

***United States v. Flanders***, 752 F.3d 1317, 1334 (11th Cir. 2014).................... 18

*Cited at § IV.E.1 — 'trafficking victims often do not self-identify as victims'; subjective belief of consensuality does not foreclose fraud liability.*

***United States v. Jungers***, 702 F.3d 1066, 1072 (8th Cir. 2013) ....................... 13

*Cited at § IV.A.3 — 'prostitution' under the Mann Act is coterminous with 'commercial sex act' under the TVPA.*

***United States v. Rivera***, 799 F.3d 180, 185 (2d Cir. 2015)............................... 17

*Cited at § IV.D.2 — administration of controlled substances without informed consent constitutes force under 18 U.S.C. § 1591(e)(2)(A).*

***United States v. Strevell***, 185 F. App'x 841, 848 (11th Cir. 2006) ................... 18

*Cited at § IV.E.1 alongside Flanders — corroborating authority for the objective TVPA fraud standard.*

**TRIAL TRANSCRIPTS — UNITED STATES V. COMBS, NO. 24-CR-542 (AS) (S.D.N.Y.)**

*All six transcripts are publicly filed as Docs. 558, 560, 562, 564, 592, and 594 on the SDNY docket, filed December 18-19, 2025. Admissible as party admissions (Fed. R. Evid. 801(d)(2)(A)) and public court records (Fed. R. Evid. 201(b)).*

*Trial Tr. May 13, 2025* (Doc. 558) — Ventura Direct Examination.......... passim

*Cited throughout: identity (p. 535); recruitment via Backpage (p. 535); cities of transport (p. 535); concealment — 'new employee' (p. 542); payment structure (p. 532); cop-check vetting (pp. 628-629). Principal factual source for §§ II.D, IV.A.3, IV.D.1, IV.L.*

*Trial Tr. May 14, 2025* (Doc. 560) — Ventura Direct Examination.......... passim

*Cited throughout: 'I'll fly Dave in' GX B-622 (p. 661); cities of transport (p. 661); drug administration (pp. 543-544, 697-698); GHB overdose (pp. 697-698); video still GX BX-206-B (p. 750); escorts paid from Combs's money (p. 657); violence (pp. 688-690); cop-check protocol (pp. 628-629); UTI testimony (p. 677).*

*Trial Tr. May 15, 2025* (Doc. 562) — Ventura Cross-Examination . 9, 13, 16, 18

*'That was a job' uncoerced admission on defense cross (p. 1039, cited §§ IV.A.3, IV.E.1, pp. 13, 18); Defense Ex. 1019 — 'Would Dave turn you on?' / 'FYI, fucking Dave hit me' (p. 962, p. 1021, cited § II.D.12, p. 9, and § II.C, p. 13).*

*Trial Tr. May 16, 2025* (Doc. 564) — Ventura Redirect / Discharge3, 15, 16, 17, 18, 23

*'I'll fly Dave in' second reading (p. 1211, cited §§ II.D.5, IV.C); 'I'll send Dave to get' (p. 1211); 'A whole other job' — NOT stricken (p. 1309, cited §§ II.D.13, IV.E.1); 'Did you feel you could say no? A: No.' (p. 1330, cited § II.D.14); safety fears (p. 1331); Jonathan Oddi recording suppression (pp. 1189-1190, cited § IV.C).*

*Trial Tr. June 16, 2025* (Doc. 592) — Sankar and Penland....................... passim

*Hotel room access texts: 'Clayton Howard needs access to room' GX 1411-R (p. 6348); 'Dave is at your door with the green' (p. 6351); Trump Hotel text chain GX E325Z (pp. 6503-6504); Trump Hotel invoice GX 7Y-108 (pp. 6504-6505); video authentication GX BX204/206/207 (pp. 6511-6515). Cited in §§ II.B, II.C.5, IV.D.1, IV.F.2, IV.L.*

*Trial Tr. June 17, 2025* (Doc. 594) — Penland Cross / Redirect............... passim

*Bad Boy Entertainment travel invoice GX 6T108 (pp. 6566-6567); AmEx statement GX 1405-D (pp. 6560-6561); corporate payment chain GX 1555 (pp. 6562-6563); GX 7D123 hotel record (pp. 6564-6565); GX 1402 Line 46 — 'Sean Combs, Clayton Howard a/k/a Dave' (pp. 6559-6560); GX 1402 Line 35 — Hamptons (p. 6719); four individuals with flight records (p. 6577); 'want to get Dave out?' GX B638 (p. 6702); Dave Shirley confirmed Combs employee (p. 6697); 'You call Dave? Hello.' (p. 6675); 'Dave hit back' GX B617 (p. 6695). Cited in §§ II.B, II.C, II.D, IV.A.1-2, IV.C, IV.G.*

**FEDERAL STATUTES**

18 U.S.C. § 1589 (Forced Labor) ................................................................. 14, 21

*Cited at § IV.C (Path 1) — the 'strongest and cleanest' Chapter 77 predicate theory; and § IV.H as RICO predicate act.*

18 U.S.C. §§ 1591, 1595 (TVPA)................................................................. passim

*Central statutes of the action. § 1591 cited throughout as the definitional predicate and sex trafficking predicate. § 1595 is the civil remedy provision — Count IV.*

18 U.S.C. § 1595(c)(1) (TVPA — Discovery Accrual) ............................... 15, 18

*Cited at § IV.C (Path 3) for the ten-year discovery-based limitations period; and § IV.F.1 for the discovery accrual rule.*

18 U.S.C. § 1962 (Civil RICO)................................................................. 2, 21, 22

*Preliminary Statement (p. 2); Count VIII — Civil RICO analysis (§ IV.H, pp. 21-22).*

18 U.S.C. § 2421 (Mann Act) ................................................................. 2, 12, 21

*Preliminary Statement (p. 2); § IV.A.1 as the conviction statute establishing collateral estoppel elements (p. 12); § IV.H as RICO predicate act (p. 21).*

18 U.S.C. § 2421A(c)................................................................................... 16

*Cited at § IV.C (Path 4 / Amendment) as alternative civil remedy in Chapter 117 if Chapter 77 predicate question persists.*

18 U.S.C. § 3771 (CVRA) ............................................................................ 23

*Cited at § IV.L — Crime Victims' Rights Act provisions relevant to Plaintiff's victim status analysis.*

Cal. Civ. Code § 52.5........................................................................... 2, 12, 24

*Preliminary Statement (p. 2); § IV.A.3 as surviving California claim (p. 12); Conclusion ¶1 (p. 24).*

Fla. Stat. § 787.061 ............................................................................... 19, 22

*Cited at § IV.F.3 (p. 19) for delayed accrual argument; § IV.J (p. 22) for Florida trafficking claim analysis.*

Fla. Stat. § 95.11(8).................................................................................... 19, 22

*Cited at § IV.F.3 (p. 19) and § IV.J (p. 22) — Florida statutory delayed accrual from discovery of injury and causal relationship.*

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(6)................................................................................ 1, 12

*Title page (p. 1) and § III (Legal Standard, p. 12).*

Fed. R. Civ. P. 15 ............................................................................................ 18

*Cited at § IV.E.3 — leave to amend to clarify FAC ¶ 272.*

Fed. R. Evid. 201(b)(2) ............................................................................. 12, 24

*Cited at § III for judicial notice of adjudicative facts (p. 12); Conclusion ¶3 for judicial notice of trial transcripts (p. 24).*

Fed. R. Evid. 801(d)(2)(A) ........................................................................ passim

*Implicit authority throughout — Ventura's trial testimony is admissible against her as a party admission in this civil proceeding.*

## GOVERNMENT TRIAL EXHIBITS — UNITED STATES V. COMBS, NO. 24-CR-542 (AS) (S.D.N.Y.)

*All exhibits listed below were admitted at trial without defense objection and authenticated by party stipulation or sworn testimony.*

*Gov. Exhibit 1312-R* — Party Stipulation (Dave = Clayton Howard) ....... passim

*Defense-signed stipulation binding on all parties. Phone number for 'Dave' in all trial records = Clayton Howard, a/k/a 'Dave.' Cited throughout for Plaintiff's identity.*

*Gov. Exhibit 1402, Line 35* — Master Freak-Off Chart, August 9, 2013 (Hamptons) ............................................................................................. 8

*'Casandra Ventura and Clayton Howard' — Hilton Garden Inn, Riverhead, NY. Cited § II.D.7.*

*Gov. Exhibit 1402, Line 46* — Master Freak-Off Chart, September 2014 (Four Seasons LA) ................................................................................................ 4, 13

*'Sean Combs, Clayton Howard a/k/a Dave.' Howard's flight records authenticated. Cited §§ II.B, IV.A.2.*

*Gov. Exhibit 1405-D* — Combs's AmEx Statement (ending 5002) ........ 4, 15, 20

*Combs's personal AmEx charged for Howard's travel. Cited §§ II.B, IV.C Path 2, IV.G.1.*

*Gov. Exhibit 1411-R* — Staff Text Messages (March and June 2016)4, 18, 20, 23

*'Clayton Howard needs access to room.' 'Dave is at your door with the green.' Cited §§ II.B, IV.F.1, IV.G.1-2, IV.L.*

*Gov. Exhibit 1555* — AmEx Payment by Five BBE Corporate Entities  4, 15, 20

*$307,424 paid from Combs Enterprises LLC, 40 Hedges Realty, 207 Anderson LLC, 56th and Broadway LLC, Bad Boy Productions. Cited §§ II.B, IV.C Path 2, IV.G.1.*

*Gov. Exhibit 2A-612* — Photograph of Plaintiff.................................................. 6

*Admitted without objection, published to jury. Ventura identified Plaintiff by full legal name. Cited § II.D.1.*

*Gov. Exhibit 6T108* — Bad Boy Entertainment Travel Invoice.. 4, 12, 13, 15, 20

*Passenger: Clayton Howard. JFK→LAX→JFK, Sept 15-17, 2014. BBE corporate letterhead. Cited §§ II.B, IV.A.1-2-3, IV.C Path 2, IV.G.1.*

*Gov. Exhibit 7D123* — Four Seasons Hotel Record, September 2014 ............. 20

*Khorram as contact, Combs's AmEx as payment, Combs as cardholder. Cited § IV.G.1.*

*Gov. Exhibit 7Y-108* — Trump International Hotel Invoice, October 14, 2012 . 5

*'Room charge, guest request room at 3 a.m.' Movie and breakfast charges. Matches text chain. Cited § II.C.5.*

*Gov. Exhibit B-622* — Combs's Text: 'I'll Fly Dave In' ........................ 5, 7, 8, 15

*Admitted without objection. Read into record twice. Cited §§ II.C.2, II.D.5 (twice), IV.C Path 2.*

*Gov. Exhibit B218Z* — Text Messages, London Hotel, October 2013 ............. 10

*'Don't stop at desk.' Six-hour session. Post-session video inquiry. Cited § II.E (evidence table).*

*Gov. Exhibit B617* — Ventura to Combs: 'Dave Hit Back' (October 2015) ....... 9

*Cited § II.D.12 — Combs monitored Plaintiff's availability through 2015.*

*Gov. Exhibit B638* — Combs: 'Want to Get Dave Out?', March 2016 .............. 8

*'But you called Dave.' 'The hotel needs you to call to give Dave access.' Cited § II.D.10.*

*Gov. Exhibit BX-206-B* — Video Still Image Depicting Plaintiff. 5, 8, 15, 17, 23

*Admitted without objection. Published to jury. 'That's me and Dave. We are in a freak-off.' Cited §§ II.C.5, II.D.8, IV.C Path 1, IV.D.3, IV.L.*

*Gov. Exhibits BX204, BX206, BX207* — Freak-Off Videos, October 14, 201210, 23

*Original videos created October 14, 2012. Played in court with overflow feed off. Cited §§ II.E (evidence table), IV.L.*

*Gov. Exhibit E325Z / B325* — Text Messages, Trump Hotel, October 20125, 16, 19

*Cover name 'Janet Clark.' 'Drop-off' cover story. Session 9 p.m.–7:40 a.m. Cited §§ II.C.5, IV.D.1, IV.F.2.*