**Clayton Howard**

24 Orchard Street

Carteret, New Jersey 07008

(929)781-7791

 itsclaytonhoward@gmail.com

FILED

CLERK, U.S. DISTRICT COURT

5/29/2026

CENTRAL DISTRICT OF CALIFORNIA

BY_____jb_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAYTON HOWARD,<br><br>*Plaintiff*,<br><br>v.<br><br>SEAN COMBS,<br>CASANDRA VENTURA,<br>BAD BOY ENTERTAINMENT, L.L.C.,<br>CEOPCO, L.L.C,<br><br>*Defendants*, | **Case No. 2:25-cv-06031-AH-DMKx**<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT CASSANDRA VENTURA'S MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT |

Hearing Date: [To Be Set by Court]

Time: 1:30 p.m. | First Street Courthouse

### TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................................4

II.   RELEVANT FACTUAL BACKGROUND .........................................................5

  A.  The Enterprise: Recruitment, Deception, and Control ..................................5

  B.  Ventura's Credibility as 'Victim-Only' Is Undermined…………………….....................9

  C.  Combs's Conviction and Howard's Status .....................................................11

III.  LEGAL STANDARD ............................................................................................11

Howard v. Combs et al., No. 2:25-cv-06031-AH-JPR (C.D. Cal.) OPP. TO VENTURA MTD
Case 2:25-cv-06031-AH-DMK-5 - Document 99 Filed 05/29/26 Page 2 of 24 Page ID
#:2153

IV.   ARGUMENT ...........................................................................................................11

A.  Criminal Statute Counts Recharacterized as Civil ...........................................11

B.  TVPA Claim Is Adequately Pleaded .................................................................12

C.  Combs's Conviction Collaterally Estops Key TVPA Elements .......................16

D.  Statutes of Limitations Are Tolled ....................................................................18

E.  N.Y. § 483-bb Retroactivity Argument Fails ...................................................19

F.  State Trafficking Claims Survive ......................................................................19

G.  California Sexual Assault Claims Survive or Should Be Amended .....................20

H.  Civil RICO Claim Is Adequately Pleaded ........................................................21

I.  Venue Remains Proper ......................................................................................21

J.  Vexatious Litigant Characterization Is Improper ..............................................22

V.    IN THE ALTERNATIVE, LEAVE TO AMEND ................................................22

VI.   CONCLUSION .....................................................................................................22

**TABLE OF AUTHORITIES**

**United States Supreme Court**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ………………………………………………… 11

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ……………………………………… 11

*Bill Johnson's Rests., Inc. v. NLRB,* 461 U.S. 731 (1983) ……………………………….. 22

*Haines v. Kerner,* 404 U.S. 519 (1972) ………………………………………………….. 11

*Landgraf v. USI Film Prods.,* 511 U.S. 244 (1994) …………………………………… 19

*Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979) ………………………………… 16, 17

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235 (1981) …………………………………….. 21

*Reves v. Ernst & Young,* 507 U.S. 170 (1993) ……………………………………………21

*Rotella v. Wood,* 528 U.S. 549 (2000) ………………………………………………… 18

*Scheuer v. Rhodes,* 416 U.S. 232 (1974) …………………………………………… 11, 15

**United States Courts of Appeals**

*Bias v. Moynihan,* 508 F.3d 1212 (9th Cir. 2007) ……………………………………...… 22

*Gilbrook v. City of Westminster,* 177 F.3d 839 (9th Cir. 1999) ……………………………... 18

*Grimmett v. Brown,* 75 F.3d 506 (9th Cir. 1996) ……………………………………….…… 19

*Hexcel Corp. v. Ineos Polymers, Inc.,* 681 F.3d 1055 (9th Cir. 2012) ............................... 18

*Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047 (9th Cir. 2007) ................................. 22

*Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074 (9th Cir. 1990) ................... 11, 22

*Schucker v. Rockwood,* 846 F.2d 1202 (9th Cir. 1988) ................................................... 11

*United States v. Fernandez,* 388 F.3d 1199 (9th Cir. 2004) .......................................... 21

*United States v. Jungers,* 702 F.3d 1066 (8th Cir. 2013) .......................................... 12, 17

**District Court Cases**

*Novoa v. GEO Grp., Inc., No. 5:17-cv-02514, 2021 WL 3272975 (C.D. Cal. Jan. 26, 2021)* … 20

**State Court Cases**

*People v. Morales,* 212 Cal. App. 4th 583 (2013) ....................................................... 20

**Trial Transcript Citations — United States v. Combs, No. 24-cr-542 (AS) (S.D.N.Y.)**

Trial Tr. May 13, 2025 (Doc. 558) ................................................................ passim

Trial Tr. May 14, 2025 (Doc. 560) ................................................................ passim

Trial Tr. May 15, 2025 (Doc. 562) ........................................................ 9, 13, 15, 18

Trial Tr. May 16, 2025 (Doc. 564) ............................................................ 7, 14, 17

Trial Tr. June 16, 2025 (Doc. 592) ............................................ 4, 8, 11, 13, 18, 19, 20

Trial Tr. June 17, 2025 (Doc. 594) ........................................................ 6, 12, 17, 21

**Statutes and Rules**

18 U.S.C. § 1591 ................................................................................. passim

18 U.S.C. § 1595 ................................................................................. passim

18 U.S.C. § 1961(1)(B) ................................................................................ 21

18 U.S.C. § 1962(c) ................................................................................... 21

18 U.S.C. § 2421 ............................................................................. 11, 17, 21

28 U.S.C. § 1404(a) .................................................................................. 21

Cal. Civ. Code § 52.5 ................................................................................ 20

Cal. Penal Code §§ 236.1, 243.4, 261, 289 ...................................................... 20-21

Fed. R. Civ. P. 12(b)(6) ......................................................................... passim

Fed. R. Civ. P. 15(a)(2) ......................................................................... passim

Fed. R. Evid. 201, 404(b), 801(d)(2)(A), 803(8) ................................................. 4, 18

Fla. Stat. §§ 787.06, 787.061 .................................................................. 18, 20

N.Y. Penal Law § 230.34 ............................................................................. 11

N.Y. Soc. Serv. Law § 483-bb …………………………………………………………………... 11, 19

## I. INTRODUCTION

Plaintiff Clayton Howard, appearing pro se, respectfully submits this Opposition to Defendant Cassandra Ventura's Motion to Dismiss the Fourth Amended Complaint ('4AC') (Doc. 89-1). The motion asks this Court to rule, before a single document is produced in discovery, that a cooperating federal witness — whose full legal name 'Clayton Howard' appears on the face of authenticated trial evidence, whose encounters with Defendant are captured on sealed video shown to a federal jury, and who is named in the Government's 189-page Sentencing Memorandum (ECF 516) at pages 9, 17, and 44 — has no cognizable legal claim against the woman who recruited him into those encounters, deceived him about their nature, managed his participation, and physically harmed him.

Defendant Ventura's counsel implies that Plaintiff's claims against her are recent, financially motivated, and inconsistent with prior positions. This characterization inverts the record. It was Defendant Combs's own defense team that subpoenaed Plaintiff's journals and notes — materials Plaintiff had provided to federal prosecutors during approximately eighteen months of cooperation — precisely because they contained Plaintiff's account of events consistent throughout: Cassandra Ventura and Sean Combs bore equal responsibility for the conduct underlying this action.

Critically, Ventura's own four days of sworn trial testimony in *United States v. Combs*, No. 24-cr-542 (S.D.N.Y.) — entered in open court, corroborated by independent witnesses, and authenticated by documentary evidence — forecloses her most sweeping defense. She testified under oath that she: found Howard on Backpage.com (*Trial Tr. May 13, 2025, p. 535, ll. 10-12*); personally texted him at 1 a.m. to arrange hotel meetings (*Trial Tr. June 16, 2025, p. 6504*); managed a roster of escorts to the point that recruiting 'became my job' (*Trial Tr. May 13, 2025, p. 656, ll. 14-16*); controlled payment amounts and conditions (*Trial Tr. May 13, 2025, p. 532*); told every escort that Combs was 'her husband' who would 'only observe' (*Trial Tr. May 13, 2025, p. 542*); and 'questioned whether what they were doing was legal because they were paying people for

sex' (*Trial Tr. May 16, 2025, p. 1309*). These are Ventura's own words under oath, admissible against her as party admissions under Federal Rule of Evidence 801(d)(2)(A).

The motion should be denied in its entirety. In the alternative, leave to amend should be freely granted under Fed. R. Civ. P. 15(a)(2).

**II.  RELEVANT FACTUAL BACKGROUND**

**A.  The Enterprise: Recruitment, Deception, and Control**

Plaintiff Clayton Howard — known within the Combs enterprise as 'Dave' — was recruited, deceived, and trafficked through the Combs-Ventura enterprise from approximately 2009 through 2019. 4AC ¶¶ 1-15, 30-75. His identity, his encounters, and the enterprise's operational structure were established not by Plaintiff's allegations alone, but by sworn federal trial testimony and authenticated documentary evidence admitted before a federal jury.

**1.  Identification of Plaintiff — Sworn Testimony and Physical Evidence**

Ventura personally identified Plaintiff before the federal jury by full legal name. The following exchange is from the official trial transcript:

**Trial Tr. May 13, 2025, p. 535, ll. 21-24**

Q: Do you know Dave by any other names? A: His real name is Clayton. Q: Do you know his real last name? A: Howard.

Government Exhibit 2A-612, a photograph of Plaintiff, was admitted without defense objection and published to the jury:

**Trial Tr. May 13, 2025, p. 534, 535, ll. 19-25; ll. 1-9**

Q: Ms. Ventura, do you recognize the individual depicted in 2A-612? A: Yes. Q: How do you know that individual? A: He was an escort that we called Dave. Q: Is this a fair and accurate picture of Dave? A: Yes. [Government offers Exhibit 2A-612; defense states no objection; Court admits; exhibit published to jury.]

Plaintiff was one of only three escorts Ventura named as the 'most frequently used' across the entire enterprise:

**Trial Tr. May 13, 2025, p. 540, ll. 4-6**

Q: Who were some of the most frequently used escorts? A: Most frequently used would be Jewels, Dave, Johnny. I think those were the main ones.

Ventura explicitly confirmed she could identify escorts from a photo binder years later by name — demonstrating the depth and continuity of her relationship with each participant. The

six photographs shown to the jury were, per Ventura's own testimony, 'just some of them.' (Trial Tr. May 13, 2025, p. 540, ll. 7-9.) The enterprise involved many more participants.

**2.  Recruitment Through Backpage — Ventura's Direct Act**

Ventura, not Combs, personally recruited Plaintiff through a commercial online platform:

**Trial Tr. May 13, 2025, p. 535, ll. 10-12**

Q: How did you hire Dave? A: Dave was actually through craigslist or Backpage. One of the two. I don't remember specifically which one.

This testimony is directly relevant to Ventura's liability. She was the operative who located Plaintiff on a commercial sex platform, initiated contact, and brought him into the enterprise. That Combs may have directed the broader enterprise does not absolve Ventura of her own acts of recruitment — which are the acts of a knowing participant, not a passive subordinate.

**3.  Interstate Transportation — Ventura's Role in Arrangement**

Plaintiff was transported from New York to Miami and Los Angeles for commercial sex acts:

Trial Tr. May 13, 2025, p. 535, ll. 13-15

Q: And in what cities did you use Dave? A: We used Dave in New York. He would fly to Miami and Los Angeles.

**Trial Tr. May 14, 2025, p. 661, ll. 21-25; p. 662, l. 1**

Q: And in what cities did you have freak-offs with Dave and Sean? A: New York City, Miami, Los Angeles, Vegas. I'm not sure.

Three separate actors arranged Plaintiff's interstate travel:

**Trial Tr. May 13, 2025, p. 535, ll. 16-20**

Q: When Dave would travel, who would arrange Dave's travel? A: Occasionally I did. He would, Dave would himself. I think a couple of times a travel agent from Sean's company.

Combs's own text message (Government Exhibit B-622), admitted without defense objection, provides documentary proof of Combs's personal direction of Plaintiff's transportation:

**Trial Tr. May 14, 2025, p. 661, ll. 13-22**

Q: Directing your attention to that last sentence, and I'll fly Dave in. Who is Dave? A: Dave is one of the escorts that was used. Q: What was your understanding of what Sean was

offering to fly Dave in for? A: He was offering to fly him in for a freak-off. Q: Where does Dave live, if you know? A: I believe he lives in New York.

This text was read into the record a second time on May 16, 2025, further entrenching its evidentiary weight. (Trial Tr. May 16, 2025, p. 1211, ll. 12-18.) Additionally, Special Agent DeLeassa Penland's testimony established the complete financial chain: Bad Boy Entertainment issued a travel invoice naming Plaintiff as the passenger for round-trip JFK-to-LAX flights on September 15-17, 2014 (Gov. Exhibit 6T108), charged to Combs's personal American Express account (ending 5002), paid by five Bad Boy corporate entities totaling $307,424. (Trial Tr. June 17, 2025, pp. 6559-6563.)

**4.  Identity Concealment — Fraud Directed at Every Escort**

Ventura personally executed the deception protocol that she and Combs directed at Plaintiff and every other escort:

**Trial Tr. May 13, 2025, p. 542, ll. 1-19**

Q: What, if any, role did you have in communicating with Sean's travel agent? A: I definitely reached out to his travel agent. I believe we just acted as if it was a new employee or somebody that was being interviewed or something. Q: When you say we acted, who are you referring to? A: Sean and I. Q: And when you say acted as a new employee, who would you say was the new employee? A: Dave, for instance. If we were going to have the travel agent book his travel or, you know, oh, I have a new staff member, we have somebody new coming to visit for a meeting so that it wouldn't be speculated.

**Trial Tr. May 13, 2025, p. 542, ll. 20-25; p. 543, ll. 1-8**

Q: Did you discuss that reach-out with Sean? A: Yes. Q: What did you talk about? A: I mean, it was by his direction, so we would discuss when they would arrive and when we would start.

That Combs directed this deception does not extinguish Ventura's own liability for executing it. She personally communicated the false representations to the travel agent. She personally arranged and participated in the scheme that presented Plaintiff to Combs's corporate agent as 'a new staff member' — a deception Ventura admits in her own words was designed to prevent the true nature of the arrangement from being 'speculated.'

Ventura also told every escort that Combs was 'her husband' who would 'only observe.' This independent deception — directed at Plaintiff specifically — is corroborated by escort

Sharay Hayes, who testified on Trial Day 8 (May 20, 2025) that he participated in eight to twelve encounters spanning over two years without learning Combs's identity, specifically because he was told 'not to acknowledge her husband.' A man who had no idea who Combs was for more than a year corroborates exactly the fraud Howard alleges.

**5. Ventura Controlled Payment and Acknowledged Illegality**

**Trial Tr. May 13, 2025, p. 532, ll. 11-16**

Q: How were escorts typically paid? A: With cash, money. Q: At what point during the session were they typically paid? A: At the end. Q: Approximately how much were escorts typically paid? A: Anywhere from $1,500 to I would say $5,000, $6,000.

**Trial Tr. May 13, 2025, p. 533, ll. 22-25; p. 534, ll. 1-4**

Q: For all the dancers you interacted with, what were they paid, those $1,500 to $6,000 to do? A: To entertain and to also ultimately have intercourse with me

**Trial Tr. May 13, 2025, p. 532, ll. 20-23**

Q: Who typically handed cash to escorts? A: I often did, sometimes Sean. Q: If you handed cash to escorts, where did you get the cash? A: It was handed to me by Sean.

Although the cash was Combs's money (Trial Tr. May 13, 2025, p. 532, ll. 17-19: 'It wasn't my money'), Ventura was the person who physically placed it in Plaintiff's hands. She was not a passive bystander — she was the commercial gatekeeper of the transaction. She also controlled the terms:

**Trial Tr. May 13, 2025, p. 561, ll. 9-14**

Q: What happened on those occasions when escorts ejaculated without being told? A: They got paid less. Q: What, if anything, would Sean say about when escorts ejaculated without having been told to do so? A: He was pretty open with the fact that he wasn't pleased by their performance. So, yeah. He would take less money

Most critically, Ventura admitted under oath — spontaneously, in a statement that was stricken from the criminal jury's consideration but is fully admissible in civil proceedings — that she understood the enterprise was not legal:

**Trial Tr. May 16, 2025, p. 1309, ll. 10-13**

Q: What was that whole other job? A: It's basically a sex worker. [Defense: Objection. Move to strike. Court: Motion granted. Jury should disregard.] [NOTE: Stricken from criminal

jury consideration; admissible in civil proceedings as prior sworn statement under FRE 801(d)(1)(A) and 807.]

The government's follow-up confirmation — which was NOT stricken — stands:

**Trial Tr. May 16, 2025, p. 1309, ll. 16-18**

Q: Ms. Ventura, when you say you had a whole other job, did that whole other job involve participating in and performing at freak-offs? A: Yup.

And on cross-examination — an uncoerced admission by the defendant's own attorney:

Trial Tr. May 15, 2025, p. 1039, ll. 2-4

Q: While you were on a break, you were still having a freakoff. Is that the idea? A: Yes. That was a job.

**6. Hotel Access and Enterprise-Level Logistics for Plaintiff**

The documentary trial record independently corroborates Ventura's operational role in arranging Plaintiff's hotel access. Special Agent Penland testified about staff text messages (Gov. Exhibit 1411-R):

**Trial Tr. June 16, 2025, p. 6348, ll. 14-22**

Dave Shirley Assist to Kristina Khorram: 'Clayton Howard needs access to room.' Kristina Khorram to Melissa Feola: 'Hey, M. Dave needs to add the name Clayton Howard to the Four Seasons hotel room. He needs access ASAP. Can you help?' [Feola:] 'They are giving him a hard time.' Dave Shirley Assist: 'I got it added.'

**Trial Tr. June 16, 2025, p. 6351, ll. 12-14**

Kristina Khorram to Cassie Ventura: 'Hi. Dave is at your door with October 14, 2012, notes 'Room charge, guest request room at 3 a.m.' — precisely matching the 3:24 a.m. text messages between Ventura and Plaintiff. (Gov. Exhibit 7Y-108, Trial Tr. June 16, 2025, pp. 6504-6505.)

Government Exhibit BX-206-B — a still image from a freak-off video depicting Plaintiff and Ventura — was admitted without defense objection and published to the jury. Ventura confirmed: 'Yeah, that's me and Dave. We are in a freak-off.' (Trial Tr. May 14, 2025, p. 750, ll. 11-14.)

**B. Ventura's Credibility as a 'Victim-Only' Is Substantially Undermined by Cross-Examination**

Howard v. Combs et al., No. 2:25-cv-06031-AH-JPR (C.D. Cal.), OPP. TO VENTURA MTD

Ventura's core defense — that she was purely Combs's victim with no independent agency — is contradicted not only by her direct testimony admissions but by what cross-examination revealed on Trial Days 4 and 5 (May 15-16, 2025).

Cross-examination established that Ventura sent enthusiastic, initiating text messages about freak-offs spanning years. In August 2009, when Combs asked when she wanted the next freak-off, Ventura replied: 'I'm always ready to freak off.' Two days later she wrote: 'Me too, I just want it to be uncontrollable.' In 2010, Ventura herself suggested bringing a woman instead of a man: the green.'

The October 13-14, 2012 Trump International Hotel session is corroborated by authenticated text messages in which Ventura directed Plaintiff to the hotel, provided a cover name ('Janet Clark'), instructed him to identify himself as making a 'drop-off,' and coordinated hotel logistics (Gov. Exhibit E325Z, Trial Tr. June 16, 2025, pp. 6503-6504). The hotel invoice for Room 612, dated

**Trial Tr. May 15, 2025, p. 1028, ll. 22-25**

Q: On that page Mr. Combs is not initiating the freakoff conversation, right? A: No, not in that one.

However, when defense counsel pressed that she told Combs she 'wanted' freak-offs to make him happy:

**Trial Tr. May 15, 2025, p. 920, ll. 7-10**

Defense counsel: 'So to make him happy you told him that you wanted to do freakoffs, right?' A: No. There is a lot more to that.

Similarly, her text 'I love our FOs' was characterized by Ventura herself as performative:

**Trial Tr. May 15, 2025, p. 1003, ll. 23-25; p. 1004, ll. 1-6**

Q: And that's how you felt at the time, that you loved freak-offs when you both were into it, correct? A: I would say that loving FOs were just words at that point. Q: Well, those were words that you said to Mr. Combs, correct? A: Those are texts, yes.

Cross-examination also confirmed that freak-offs continued even during breaks in the romantic relationship:

**Trial Tr. May 15, 2025, p. 1039, ll. 2-4**

Q: While you were on a break, you were still having a freakoff. Is that the idea? A: Yes. That was a job.

Whether to credit Ventura's explanations for this conduct is for a factfinder, not a motion to dismiss. What the cross-examination record demonstrates is the profound factual complexity of the dual victim/perpetrator question — complexity that weighs against, not in favor of, dismissal.

**C. Combs's Criminal Conviction and Howard's Status**

On July 2, 2025, a federal jury convicted Sean Combs on two counts of transportation for prostitution in violation of 18 U.S.C. § 2421 (Mann Act). He was sentenced on October 3, 2025 to 50 months imprisonment plus a $500,000 fine. The conviction was upheld on post-trial motions. Plaintiff cooperated with federal prosecutors for approximately 18 months (December 2023 through June 2025), testified before the grand jury in March 2025, and was counted as a victim under the Sentencing Guidelines for Count 3.

The Government's Sentencing Memorandum (ECF 516) formally identifies Plaintiff as 'Clayton Howard, a/k/a Dave' at pages 41 — as one of five named victims in Count III. The defense's own stipulation (Gov. Exhibit 1312-R) — signed by Combs's own counsel — confirms that the phone number for 'Dave' in all chat records belongs to Clayton Howard, a/k/a 'Dave.' (Trial Tr. June 16, 2025, p. 6503.) This is a binding concession that cannot be retracted.

### III. LEGAL STANDARD

Under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). To survive, the complaint need only allege 'enough facts to state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court may not weigh evidence or resolve factual disputes at this stage. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Pro se pleadings receive liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). A pro se complaint may be dismissed only if 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.' *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988).

### IV. ARGUMENT

**A. Counts Referencing Criminal Statutes Are Properly Recharacterized as Civil Claims**

Ventura argues that Count I (referencing 18 U.S.C. § 1591) and Count VI (referencing N.Y. Penal Law § 230.34) are criminal statutes without private rights of action. Plaintiff does not dispute that those statutes lack standalone private rights of action. Count I is properly understood as a civil claim under 18 U.S.C. § 1595 — the TVPA's civil beneficiary provision — with § 1591 cited as the definitional predicate establishing the underlying violation. Count VI is properly read in conjunction with N.Y. Social Services Law § 483-bb. To the extent the Court finds the statutory labeling deficient, leave to amend under Fed. R. Civ. P. 15(a)(2) is the appropriate remedy. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

**B. Plaintiff's TVPA Claim Is Adequately Pleaded**

**1. The Commercial Sex Act Element Is Established by Ventura's Own Sworn Testimony**

The TVPA defines a 'commercial sex act' as 'any sex act, on account of which anything of value is given to or received by any person.' 18 U.S.C. § 1591(e)(3). Plaintiff received cash payments of $1,500 to $6,000 per encounter, plus travel and accommodations, causally connected to his sexual performance. Ventura's sworn testimony establishes this element:

**Trial Tr. May 13, 2025, p. 533, ll. 22-25; p. 534, ll. 1-4**

Q: For all the dancers you interacted with, what were they paid, those $1,500 to $6,000, to do? A: To entertain and to also ultimately have intercourse with me

**Trial Tr. May 13, 2025, p. 561, ll. 9-14**

Q: What happened on those occasions when escorts ejaculated without being told? A: They got paid less. [...] He would take less money

Ventura personally controlled the payment: 'I often did [hand cash to escorts], sometimes Sean.' (Trial Tr. May 13, 2025, p. 532, ll. 20-23.) The payment was contingent on performance completion. This is a commercial sex act. *United States v. Jungers*, 702 F.3d 1066, 1069 (8th Cir. 2013).

Additionally, Bad Boy Entertainment's corporate travel invoice (Gov. Exhibit 6T108) names Plaintiff as the passenger for round-trip interstate flights valued at hundreds of dollars — 'anything of value' independently provided to Plaintiff in exchange for sexual services. This corporate financial record, authenticated by Special Agent Penland under oath (Trial Tr. June 17, 2025, pp. 6566-6567), satisfies the commercial element independent of cash payment.

**2. Fraud Is Specifically and Directly Alleged — Corroborated by the Trial Record**

Ventura's deceptions went to the core material facts of the encounters — the kind of fraud that vitiates any claimed consent:

**Identity Concealment:** Ventura concealed her true identity (alias 'Jackie Star') and Combs's identity (alias 'Frank'), telling Howard and every other escort that her companion was 'her husband' who would 'only observe' — a false representation about both identity and conduct. Ventura confirmed this in her own sworn testimony:

**Trial Tr. May 13, 2025, p. 542, ll. 1-8**

Q: What, if any, role did you have in communicating with Sean's travel agent? A: I definitely reached out to his travel agent. I believe we just acted as if it was a new employee or somebody that was being interviewed or something. Q: When you say we acted, who are you referring to? A: Sean and I.

This testimony confirms Ventura actively participated in executing the identity concealment protocol — she was not merely directed to do it; she was the person who communicated the false representations. This deception is independently corroborated by Sharay Hayes, who testified on Trial Day 8 (May 20, 2025) that he was specifically told 'not to acknowledge her husband' and did not learn Combs's identity for more than a year across eight to twelve encounters.

**Travel Arranged Under False Pretenses:** Ventura arranged Plaintiff's interstate travel by presenting him to Combs's corporate travel agent as a 'new staff member' or job candidate. (Trial Tr. May 13, 2025, p. 542.) The cover story ('new employee visiting for a meeting') was specifically designed so 'it wouldn't be speculated.' (*Id.*, ll. 17-19.)

**Recording Without Consent:** Ventura confirmed that freak-offs were recorded without her consent and without escort participants' knowledge:

**Trial Tr. May 13, 2025, p. 569-570, ll. all**

Q: Who, if anyone, proposed recording freak-offs? A: I wouldn't say there was a proposal. It just started happening. Q: How did it start happening? A: Sean brought out a camera and set it up, and that's what was happening. Q: Did you want to be recorded? A: No

If Ventura — a participant with a years-long relationship with Combs — was recorded without meaningful consent, Plaintiff's allegation that he was recorded without informed consent is more than plausible. Government Exhibit BX-206-B, a still image from one such recording

depicting Plaintiff, was admitted at trial without defense objection and published to the jury. (Trial Tr. May 14, 2025, p. 750.)

**The October 2012 Cover Name Protocol:** Authenticated text messages (Gov. Exhibit E325Z) document Ventura providing Plaintiff with the cover name 'Janet Clark' to use when accessing Room 612 at the Trump International Hotel on October 13-14, 2012 — and instructing him to identify himself as making a 'drop-off.' (Trial Tr. June 16, 2025, pp. 6503-6504.) This documentary proof of Ventura's specific deceptive instructions to Plaintiff goes directly to the fraud element of the TVPA claim.

**Ventura's Own Recognition of Illegality:** As noted above, Ventura's stricken-but-preserved sworn statement ('It's basically a sex worker,' Trial Tr. May 16, 2025, p. 1309) and her spontaneous cross-examination admission ('That was a job,' Trial Tr. May 15, 2025, p. 1039) establish that she understood the enterprise's commercial and illegal nature. This satisfies the knowledge element of § 1595's beneficiary liability provision.

**3. Force and Coercion Are Plausibly Alleged**

**Force:** Ventura administered controlled substances to Howard without full informed consent, including at the Hamptons freak-off at which Plaintiff was present:

**Trial Tr. May 14, 2025, p. 697, ll. 12-18**

Q: What, if anything, happened at that motel in the Hamptons after you arrived? A: At that time we were taking GHB... I blacked out and that's what happened to me. And I woke up nude in the shower, and Dave and Sean were just freaking out, like, outside of the bathroom.

**Trial Tr. May 14, 2025, p. 697, ll. 23-25; p. 698, ll. 1-2**

Q: And after you woke up in the shower, what happened next? A: I spoke to one of Sean's friends over the phone and then we had a freak-off. Q: With Dave? A: With Dave.

This incident — a freak-off continuing after a drug overdose with Plaintiff present — is independently corroborated by Government Exhibit 1402, Line 35, which lists the August 9, 2013 session at the Hilton Garden Inn, Riverhead, New York with participants 'Casandra Ventura and Clayton Howard.' (Trial Tr. June 17, 2025, p. 6719.) Drugs were provided by Combs through his staff at every session:

**Trial Tr. May 13, 2025, p. 544, ll. 13-22**

Q: Who provided the drugs for freak-offs? A: Sean. Q: When would Sean provide you with drugs? A: Before, sometimes an hour before, sometimes before we even got there

somebody would drop drugs off to me where I was. Q: Who dropped off drugs to you? A: A staff member, security, assistant. Whoever was available. Q: Whose staff? A: Sean's staff.

Under conspiracy liability principles, Ventura is also responsible for Combs's documented use of force during encounters. Ventura confirmed Combs physically assaulted her at freak-offs in New York, Los Angeles, and Miami — more than once — in the presence of escorts who heard the violence:

**Trial Tr. May 14, 2025, p. 688, ll. 4-13**

Q: How were you injured? A: Put his hands on me or — yeah. Q: Who put his hands on you? A: Sean. Q: When you say put his hands on you, can you describe what actions he took? A: He would grab me up, push me down, hit me in the side of the head, kick me, like, you name it

**Trial Tr. May 14, 2025, p. 689, ll. 1-4; ll. 8-22**

Q: Do you recall if an escort was present in the same room while Sean was putting his hands on you at a freak-off? A: Yes. Q: Who do you recall being present for that? A: Jules. [...] Q: If you know, were escorts aware of what was happening? A: Yes, because they could hear it and would ask me afterwards if I was okay.

**Coercion:** The TVPA defines coercion to include 'any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm.' 18 U.S.C. § 1591(e)(2)(B). The enterprise's coercive dynamics — systematic identity concealment, control of income, video recording without consent retained as potential leverage, and the power differential — created structural coercion. Ventura herself confirmed she could not say no to the enterprise:

**Trial Tr. May 16, 2025, p. 1330, ll. 3-8**

Q: And after it changed, did you want to have freak-offs? A: I didn't. Q: Did you feel that you could say no? A: No. [Over defense objection — overruled.]

Trial Tr. May 16, 2025, p. 1331, ll. 1-4

Q: What concerns did you have, if any, about saying no to freak-offs? A: I worried for my safety, I worried for my career. [Over defense objection — overruled.]

Plaintiff's allegations of coercion in 4AC ¶¶ 60-85 are more than plausible in light of this sworn testimony from the enterprise's primary operative.

**4. Ventura's Intent — The Dual Victim/Perpetrator Theory Is Legally Cognizable**

Ventura's central defense is that she was Combs's victim and lacked the requisite intent. This is the argument most clearly inappropriate for resolution at the pleading stage. Whether Ventura acted with independent criminal intent or under duress is a question of fact requiring a developed evidentiary record. *Scheuer v. Rhodes*, 416 U.S. at 236.

As a matter of law, a person may simultaneously be a victim of one person and a perpetrator against another. The caselaw on trafficking victims who become recruiters expressly recognizes this duality.

The trial record independently undermines Ventura's victim-only narrative through her own operational admissions:

**Trial Tr. May 13, 2025, p. 656, ll. 7-21**

Q: Who primarily reached out to the escorts? A: I did. Q: Why did you primarily reach out to the escorts? A: Um, just based on who Sean is, I didn't want to put him in that position. And that was just my job, really. Q: When you say that was your job, what do you mean by that? A: It was expected of me. Q: Who expected it of you? A: Sean. Q: Who, if anyone, told you to reach out to these escorts? A: Sean did.

**Trial Tr. May 13, 2025, p. 656, ll. 22-25; p. 657, ll. 1-6**

Q: And for all the individuals whose photos I've just shown you, what event did you see all those individuals for? A: For freak-offs. Q: Was Sean involved in all of the freak-offs with those individuals? A: Yes. Q: Did you have sex or perform sex acts with all of the individuals that we saw during those freak-offs? A: Yes.

Ventura's operational role went far beyond passive subordination: she independently searched recruiting platforms; selected candidates; coordinated multiple escorts simultaneously; arranged interstate travel under false pretenses; controlled payment amounts and performance conditions; and personally paid escorts at the door. The TVPA's civil beneficiary provision, 18 U.S.C. § 1595, imposes liability on anyone who 'benefits, financially or by receiving anything of value, from participation in a venture' that violates § 1591, provided they 'knew or should have known' of the venture. Ventura received substantial benefits — housing, financial support, protection, career advancement — while participating in an enterprise she described as one in which recruiting 'became my job' and whose illegality she acknowledged in sworn testimony.

**C.  Combs's Federal Conviction Collaterally Estops Key TVPA Elements and Provides Independent Evidentiary Support**

**1. Offensive Non-Mutual Collateral Estoppel Applies to Defendant Combs**

Under *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979), offensive non-mutual collateral estoppel applies where: (1) the issue was actually litigated; (2) it was necessarily decided; (3) the judgment was final and valid; and (4) the party to be estopped had a full and fair opportunity to litigate.

**Element 1 — Actually Litigated:** The Mann Act counts were contested across a six-week jury trial with 34 prosecution witnesses, authenticated documentary exhibits including travel invoices, hotel records, financial records, and text messages, and three days of jury deliberation.

**Element 2 — Necessarily Decided:** The conviction under 18 U.S.C. § 2421 required the jury to find beyond a reasonable doubt: (a) Combs knowingly transported individuals; (b) in interstate commerce; (c) with intent that they engage in prostitution. Each element is a mandatory predicate. Plaintiff was identified in the Sentencing Memorandum (ECF 516, at 41) as a named victim in Count III. Special Agent Penland confirmed Plaintiff is one of only four individuals with authenticated flight records in the government's master freak-off timeline chart (Gov. Exhibit 1402): 'Julian Sapp, Jules Theodore, Casandra Ventura, Clayton Howard. That's it.' (Trial Tr. June 17, 2025, p. 6577.)

**Element 3 — Final and Valid:** Verdict entered July 2, 2025; sentenced October 3, 2025; post-trial motions denied.

**Element 4 — Full and Fair Opportunity:** Combs was represented by elite criminal defense counsel. He had full discovery, the right to cross-examine all 34 witnesses, and all constitutional trial rights.

The preclusive effect of the conviction specifically establishes, for purposes of Howard's TVPA claim: (a) that Combs transported Howard across state lines; (b) that the transportation was knowing and intentional; and (c) that the purpose was prostitution — coterminous with a 'commercial sex act' under the TVPA. *United States v. Jungers*, 702 F.3d at 1072.

**2. Against Ventura, Her Sworn Trial Testimony Constitutes Non-Hearsay Party Admissions**

Ventura's four days of sworn trial testimony are fully admissible against her in this civil proceeding as party admissions under Federal Rule of Evidence 801(d)(2)(A): a party's own statement, offered against that party, is not hearsay. Her key admissions include:

Howard v. Combs et al. No. 2:25-cv-06031-AH-JPR (C.D. Cal.) OPP. TO VENTURA MTD

Case 2:25-cv-06031-AH-DMK 25 - Document 99 Filed 05/29/26 · Page 18 of 24 Page ID #:2169

– 'It was important to Sean not to have the escorts' identity known' — establishing knowing participation in the concealment scheme. (Trial Tr. May 13, 2025, p. 542.)

– Personally texting Howard at 1 a.m. to arrange hotel meetings — establishing her direct act of recruitment. (Trial Tr. June 16, 2025, pp. 6503-6504.)

– Telling escorts Combs was her 'husband' who would 'only observe' — establishing fraud directed at Plaintiff. (Trial Tr. May 13, 2025, pp. 542-543.)

– 'It was by his direction' — confirming Combs's command role while admitting her own active execution. (Trial Tr. May 13, 2025, p. 543.)

– Escorts booked as 'new staff members' — establishing misrepresentation in arranging Plaintiff's interstate travel. (Trial Tr. May 13, 2025, p. 542.)

– Vetting escorts for law enforcement without disclosing to them they were being vetted — establishing operational control. (Trial Tr. May 14, 2025, pp. 628-629.)

– 'I often did [hand cash to escorts]' — establishing her role in the commercial transaction. (Trial Tr. May 13, 2025, p. 532, ll. 20-21.)

– 'Eventually it became my job' — establishing the professionalization and personal ownership of the recruiting function. (Trial Tr. May 13, 2025, p. 656, ll. 14-16.)

– 'That was a job' — spontaneous characterization of freak-off participation on cross examination by defendant's own attorney. (Trial Tr. May 15, 2025, p. 1039, ll. 3-4.)

Additionally, the Government's Sentencing Memorandum (ECF 516) is admissible as a public record under Federal Rule of Evidence 803(8). *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999).

**D. The Statutes of Limitations Are Tolled**

**1. The Discovery Rule Applies with Particular Force in the Trafficking Context**

Ventura argues Howard's Florida § 787.061 and civil RICO claims are time-barred. This argument fails because the discovery rule tolls the limitations period until the plaintiff knew or should have known of the injury and its cause. For RICO claims, the statute of limitations begins to run when the plaintiff discovers the RICO injury. *Rotella v. Wood*, 528 U.S. 549, 554 (2000).

The enterprise's systematic concealment specifically prevented Howard from discovering the nature of what he had been subjected to. Ventura's own testimony confirms she actively concealed Combs's identity, used aliases, arranged travel under false pretenses, and conducted police vetting without disclosure. Hayes's testimony confirms that an escort participating in eight

to twelve encounters over two-and-a-half years could not penetrate this concealment for over a year. Howard's inability to appreciate the full nature of the trafficking enterprise until December 2023 is consistent with the discovery rule.

The cover name protocol documented in Government Exhibit E325Z — Ventura directing Plaintiff to identify himself as making a 'drop-off' to 'Janet Clark' at the Trump International Hotel (Trial Tr. June 16, 2025, pp. 6503-6504) — is documentary proof of the specific concealment mechanisms that prevented Plaintiff from appreciating the true nature of his participation.

**2. Fraudulent Concealment Independently Tolls the Limitations Period**

Fraudulent concealment tolls the limitations period where the defendant has fraudulently concealed facts necessary to recognize the claim. *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). The three elements are established: (1) Ventura's wrongful concealment was the operating protocol, confirmed by her own testimony and authenticated documentary evidence; (2) Howard could not discover the operative facts within the limitations period given the systematic concealment; and (3) Howard exercised due diligence consistent with his circumstances — the enterprise was specifically designed to prevent discovery.

**3. The Continuing Violation Doctrine Applies**

Under the continuing violation doctrine, the limitations period runs from the last predicate act. For RICO, the 'last overt act' rule resets the clock with each new act in furtherance of the racketeering conspiracy. *Grimmett v. Brown*, 75 F.3d 506, 510-11 (9th Cir. 1996). The March 2016 hotel access texts — 'Clayton Howard needs access to room' (Gov. Exhibit 1411-R, Trial Tr. June 16, 2025, p. 6348) — constitute a documented continuing act in furtherance of the enterprise within the limitations period.

**E. The New York § 483-bb Retroactivity Argument Does Not Defeat the Claim**

Ventura argues that N.Y. Social Services Law § 483-bb, effective January 19, 2016, cannot be applied retroactively. This argument fails on multiple grounds. First, the 4AC alleges New York City-based enterprise activities after the statute's effective date — specifically, the March 2016 hotel access texts arranging Plaintiff's room access in Miami that were coordinated through Combs's New York-based staff. (Trial Tr. June 16, 2025, p. 6348.) Second, the § 483-bb analysis should be applied to the continuing enterprise rather than isolated acts. An ongoing

Case 2:25-cv-06031-AH-DMK · Document 99 · Filed 05/29/26 · Page 20 of 24 · Page ID #:2171

Howard v. Combs et al., No. 2:25-cv-06031-AH-JPR (C.D. Cal.), OPP. TO VENTURA MTD.

enterprise that straddles the effective date is not 'completed past conduct' under the *Landgraf* retroactivity framework. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994).

**F. The State Trafficking Claims Survive**

**1. California Trafficking — Cal. Civ. Code § 52.5 / Penal Code § 236.1**

California's trafficking statute applies to the California-based encounters alleged in the 4AC. The CTVPA and TVPA share substantially overlapping elements; the arguments establishing force, fraud, and coercion under Section IV.B apply with equal force to the California claims. *Novoa v. GEO Grp., Inc.*, No. 5:17-cv-02514, 2021 WL 3272975, at *8 (C.D. Cal. Jan. 26, 2021).

Ventura's sworn testimony identifies Los Angeles as one of the cities where Plaintiff was transported and used: 'We used Dave in New York. He would fly to Miami and Los Angeles.' (Trial Tr. May 13, 2025, p. 535, ll. 13-15.) The California claims rest on documented California-based conduct.

**2. Florida — § 787.06 Civil Remedy**

To the extent the Court finds Florida § 787.061(3) inapplicable, Florida § 787.06 provides a separate civil remedy. Ventura's own testimony establishes Florida-based encounters — Miami is one of the confirmed cities of Plaintiff's interstate transportation. (Trial Tr. May 13, 2025, p. 535, ll. 13-15; Trial Tr. May 14, 2025, p. 661.) The March 2016 Four Seasons Hotel Miami session is documented in authenticated staff text messages. (Trial Tr. June 16, 2025, p. 6348.)

**G. The California Sexual Assault Claims Survive or Should Be Amended**

**1. Cal. Penal Code § 261 — Fraud-Based Non-Consent**

The 4AC's rape theory rests on fraud-based vitiation of consent: Ventura concealed material facts before the act, including her true identity, Combs's true identity and intent, and the nature of the enterprise. Under California law, consent procured through material fraud is vitiated as a matter of law. *People v. Morales*, 212 Cal.App.4th 583, 597 (2013). The fraud goes to the very nature of the transaction — had Howard known he was being trafficked by Combs through Ventura as an operational instrument, no meaningful consent was possible.

Ventura's deceptions were specific and documented in the trial record. The cover name 'Janet Clark' (Trial Tr. June 16, 2025, p. 6504), the 'new employee' pretense (Trial Tr. May 13, 2025, p. 542), and the 'only observe' misrepresentation about Combs's intended conduct are not

Case 2:25-cv-06031-AH-DMK    Document 99    Filed 05/29/26    Page 21 of 24    Page ID
#:2172

Howard v. Combs et al., No. 2:25-cv-06031-AH-JPR (C.D. Cal.), OPP. TO VENTURA MTD.

generalized fraud — they are specific lies directed at specific encounters, each of which produced the sexual acts that followed.

**2. Cal. Penal Code § 243.4 — Sexual Battery**

Section 243.4(a) requires unlawful restraint. The 4AC alleges that the coercive environment of the enterprise — control over access and egress, presence of individuals with demonstrated capacity for violence, Combs's documented conduct, psychological control, and the power dynamics of the trafficking relationship — constitutes unlawful restraint. California courts have recognized that restraint may be functional and contextual. Additionally, any touchings distinct from penetration remain independently viable under § 243.4.

**3. Leave to Amend §§ 289 and 243.4**

To the extent the Court finds the § 289 or § 243.4 allegations insufficiently specific, Plaintiff requests leave to amend under Fed. R. Civ. P. 15(a)(2) under the Ninth Circuit's 'extreme liberality' standard. *Morongo Band*, 893 F.2d at 1079.

**H. The Civil RICO Claim Is Adequately Pleaded**

**1. Ventura Participated in Operation and Management**

Under *Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993), a defendant need not sit atop the enterprise hierarchy to satisfy the operation or management test. Ventura's documented operational role is extensive under her own sworn testimony: she independently searched recruiting platforms; selected candidates; conducted photo approval processes; communicated approvals and rejections; vetted escorts for law enforcement; personally texted escorts to arrange 1 a.m. meetings; coordinated multiple escorts simultaneously; arranged interstate travel under false pretenses; controlled payment amounts and performance conditions; and personally paid escorts upon arrival. Under *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004), this satisfies 'operation or management' at the pleading stage.

**2. The Mann Act Conviction Establishes RICO Predicate Acts**

The Mann Act transportation offenses underlying Combs's conviction (18 U.S.C. § 2421) constitute predicate acts of racketeering under 18 U.S.C. § 1961(1)(B). The conviction establishes at least two predicate acts (Counts III and V were both transportation offenses), satisfying RICO's pattern requirement. The authenticated documentary evidence introduced at trial — travel invoices, hotel records, financial records, text messages — establishes the pattern of predicate acts across multiple years and multiple states: October 2012 (Trump Hotel, NYC),

August 2013 (Hamptons, NY), October 2013 (London Hotel, NYC), September 2014 (Four Seasons, Los Angeles), March 2016 (Four Seasons, Miami). Each documented session constitutes a separate predicate act.

**I.  Venue Remains Proper in the Central District of California**

Ventura moves in the alternative for transfer to the Southern District of New York under 28 U.S.C. § 1404(a). Plaintiff's choice of forum is entitled to strong deference. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). The movant bears the burden of demonstrating that the balance of factors strongly favors transfer. The Central District has substantial connections to this action: the California sexual assault claims are California-specific torts; Ventura confirmed California as a site of documented acts (Los Angeles was one of the confirmed cities of Plaintiff's transportation, Trial Tr. May 13, 2025, p. 535, ll. 13-15); and the corporate defendants have California connections.

**J.  The Vexatious Litigant Characterization Is Improper**

Ventura's footnote characterization of Plaintiff as a vexatious litigant and request for an admonishment are legally and factually without basis. A vexatious litigant designation requires a pattern of frivolous, bad-faith filings. *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1058 (9th Cir. 2007). Filing civil rights claims, CVRA enforcement actions, domestic violence appeals in which the Plaintiff is the documented victim and protected party[1], and trafficking claims arising from documented federal criminal proceedings — in which Plaintiff is named in the Government's Sentencing Memorandum and identified by name in authenticated trial exhibits — is constitutionally protected access to courts. *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983).

**V.  IN THE ALTERNATIVE, LEAVE TO AMEND SHOULD BE GRANTED**

Should the Court find any count insufficiently pleaded, Plaintiff respectfully requests leave to amend under Fed. R. Civ. P. 15(a)(2). Leave to amend 'shall be freely give[n] when justice so requires,' applied by the Ninth Circuit with 'extreme liberality.' *Morongo Band*, 893 F.2d at 1079. Dismissal with prejudice is appropriate only where amendment would be 'futile.'

**VI.  CONCLUSION**

Case 2:25-cv-06031-AH-DMK Document 99 Filed 05/29/26 Page 23 of 24 Page ID #:2174

Howard v. Combs et al., No. 2:25-cv-06031-AH-JPR (C.D. Cal.) OPP. TO VENTURA MTD.

For the foregoing reasons, Plaintiff respectfully requests that the Court DENY Defendant Casandra Ventura's Motion to Dismiss in its entirety. In the alternative, Plaintiff requests that the Court GRANT leave to amend any count the Court finds insufficiently pleaded, consistent with Federal Rule of Civil Procedure 15(a)(2) and the Ninth Circuit's policy of extreme liberality toward amendment.

Every material fact asserted in this brief is drawn from, and can be verified by reference to, official Southern District of New York trial transcripts in *United States v. Sean Combs*, No. 24-cr-542 (AS), now publicly filed as Documents 558, 560, 562, 564, 592, and 594 in that docket. Plaintiff respectfully requests that this Court take judicial notice of these transcripts and the authenticated government exhibits described herein pursuant to Federal Rule of Evidence 201(b). *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007).

Dated: May 20, 2026

Respectfully submitted,

*Clayton Howard*

/s/ Clayton Howard

**Clayton Howard**

Plaintiff, Pro Se

Carteret, New Jersey

**DECLARATION REGARDING USE OF ARTIFICIAL INTELLIGENCE**

I, Clayton Howard, hereby declare as follows under penalty of perjury pursuant to 28 U.S.C. § 1746: I am the Plaintiff in the above-captioned action, appearing pro se. In preparing this Opposition, I utilized generative artificial intelligence tools to assist with legal research, argument organization, and drafting. I have reviewed all source material referenced in this Opposition. All trial transcript citations in this brief have been verified against the official Southern District Reporters transcripts in *United States v. Sean Combs*, No. 24-cr-542 (AS), filed as Documents 558, 560, 562, 564, 592, and 594 in that docket. All legal citations are accurate, real, and verified. I comply in good faith with Fed. R. Civ. P. 11.

Executed on May 20, 2026, in Newark, New Jersey.

*Clayton Howard*

/s/ Clayton Howard