CLAYTON HOWARD

24 Orchard Street

Caretert, New Jersey 07008

Telephone: (929)781-7791

Email: itsclaytonhoward@gmail.com

Plaintiff, Pro Se

FILED

CLERK, U.S. DISTRICT COURT

6/12/2026

CENTRAL DISTRICT OF CALIFORNIA

BY_____jb_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CLAYTON HOWARD,

*Plaintiff*,

v.

SEAN COMBS, et al.,

Defendants,

_____

Case No. 2:25-cv-06031-AH-DMKx

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT VENTURA'S LETTER REQUEST FOR A BRIEFING SCHEDULE ON A PROPOSED PROTECTIVE ORDER AND FOR RELIEF FROM LOCAL RULE 7-3 (ECF NO. 110)**

## I.    INTRODUCTION

Plaintiff Clayton Howard, appearing pro se, respectfully submits this response in opposition to the letter filed by counsel for Defendant Casandra Ventura on June 10, 2026 (ECF No. 110) (the "Letter"), which asks the Court to (1) set a briefing schedule for a contemplated motion for a "protective order" that would prohibit Plaintiff from making out-of-court statements concerning Defendant Ventura and her counsel, and (2) relieve Defendant Ventura of the meet-and-confer requirement of Local Rule 7-3, not only for the contemplated motion but for *all* future motions in this action.

The order previewed in the Letter — a judicial command forbidding a litigant from speaking publicly about his own case — is a prior restraint on speech, the "most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). The Ninth Circuit has vacated precisely such orders when entered against civil litigants. *In re Dan Farr Prods.*, 874 F.3d 590, 593–96 (9th Cir. 2017). The Letter does not attempt to satisfy, and cannot satisfy, the exacting standard such an order requires.

Moreover, Plaintiff has removed the video referenced in the Letter and represents to the Court that he will refrain from further public commentary concerning Defendant Ventura and her counsel while this action is pending, and will confine his statements regarding this litigation to filings before this Court. This voluntary undertaking independently eliminates any claimed need for judicial intervention and is itself the "less restrictive alternative" the First Amendment requires the Court to prefer.

Finally, the request for blanket, prospective relief from Local Rule 7-3 as to "any future motions" is overbroad and would prejudice a pro se litigant's ability to resolve or narrow disputes before motion practice, multiplying the burdens on the

Court. To the extent counsel articulates any concern about direct conferral, a written-only (email) conferral procedure fully addresses it.

## II.   ARGUMENT

**A.   The Requested Order Would Be an Unconstitutional Prior Restraint on a Litigant's Speech.**

Any system of prior restraints "comes to this Court bearing a heavy presumption against its constitutional validity." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971); *Near v. Minnesota*, 283 U.S. 697, 713 (1931). In *Keefe*, the Supreme Court reversed an injunction against a group's public leafleting campaign criticizing a litigant, holding that the claim that the speech was offensive, coercive, or intended to pressure its target did not justify enjoining it; the designation of speech as harassment "does not" strip it of First Amendment protection in advance of a final adjudication. 402 U.S. at 419–20.

In this Circuit, an order restricting the extra-judicial speech of trial participants may issue only upon findings that (1) the speech poses a serious and imminent threat to the administration of justice, (2) the order is narrowly drawn, and (3) less restrictive alternatives are unavailable. *Levine v. U.S. Dist. Court*, 764 F.2d 590, 595 (9th Cir. 1985). And in *In re Dan Farr Productions*, 874 F.3d 590 (9th Cir. 2017), the Ninth Circuit granted a writ of mandamus and vacated district court orders suppressing civil litigants' public commentary about their pending case, holding that such "unconstitutional prior restraints" could not stand where the asserted interest — protecting the proceeding from prejudice — could be served by less restrictive means. *Id.* at 593–96.

No *Levine* finding is possible here. This action is at the pleading stage. The pending motions to dismiss present questions of law that will be decided by the Court, not by a jury; there is no empaneled or imminent jury whose impartiality public commentary could taint, and an Article III judge is presumed impervious to

extra-judicial commentary. Whatever counsel's view of the propriety of Plaintiff's commentary, the Letter identifies no mechanism by which it threatens the *administration of justice* — the only interest a *Levine* order may serve. Reputational and dignitary grievances are addressed through damages actions subject to full adjudication, not through prior restraints. *Keefe*, 402 U.S. at 419.

Nor does Federal Rule of Civil Procedure 26(c), the only rule cited in the Letter, authorize the contemplated order. Rule 26(c) protective orders govern *discovery* — the sequence, scope, and confidentiality of information exchanged through the Court's processes. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–37 (1984), upheld restraints only on information a party obtained *through discovery*, and expressly distinguished restraints on information "gained through means independent of the court's processes." *Id.* at 34. The Letter concerns Plaintiff's commentary on his own experiences and on public trial testimony — not discovery materials — and Rule 26(c) therefore supplies no authority at all.

**B.    The Statements Identified in the Letter Are Rhetorical Hyperbole, Not "True Threats."**

The Letter's assertion that Plaintiff uttered "true threats of violence" is incorrect as a matter of law. A "true threat" is a "serious expression of an intent to commit an act of unlawful violence to a particular individual." *Virginia v. Black*, 538 U.S. 343, 359 (2003). Context is dispositive: in *Watts v. United States*, 394 U.S. 705, 708 (1969), the Supreme Court held that even a statement about shooting the President was constitutionally protected "political hyperbole" when its context, conditional phrasing, and setting showed it was not a serious expression of intent to do violence. And under *Counterman v. Colorado*, 600 U.S. 66, 69, 78–79 (2023), a statement cannot be punished as a true threat absent proof that the speaker was at least consciously reckless as to whether his words would be understood as threatening violence.

Context here forecloses the Letter's characterization. The statement the Letter isolates appears at the conclusion of a nine-minute commentary addressed to litigation strategy, immediately following Plaintiff's statement that the defense "continue[s] to make a bunch of smoke" rather than addressing the merits of his complaint. The "fire" figure of speech directly extends Plaintiff's own "smoke" metaphor — an invocation of the common idiom that where there is smoke there is fire — and conveys, in colloquial terms, Plaintiff's intent to expose what he contends is evasion and to prevail in this litigation. The same is true of the idiomatic expression "play stupid games, win stupid prizes," a commonplace figure of speech denoting consequences, not violence. The commentary concludes with the words "I'll see you in court" — the antithesis of a threat of extra-judicial violence, and an unambiguous statement that the consequences Plaintiff intends are *legal* ones.

Plaintiff expressly disavows any intent to threaten, intimidate, or cause physical harm to Defendant Ventura, her counsel, or any person, and represents to the Court that no statement in the video was made with any such intent or with disregard of any such construction. While Plaintiff acknowledges that his word choices were intemperate and do not reflect the tone he intends to bring to proceedings before this Court, intemperate and offensive speech remains protected speech, *Keefe*, 402 U.S. at 419, and the gulf between regrettable rhetoric and a constitutionally proscribable threat of violence is one the Letter cannot bridge.

**C.     Plaintiff's Voluntary Undertaking Is the Less Restrictive Alternative That Forecloses Any Order.**

As stated above, Plaintiff has removed the video at issue and undertakes to refrain from public commentary concerning Defendant Ventura and her counsel during the pendency of this action, confining his litigation-related statements to filings before this Court. Under *Levine*, 764 F.2d at 595, and *Dan Farr*, 874 F.3d at

595, the availability — here, the accomplished fact — of a less restrictive alternative is independently fatal to a prior restraint. There is nothing left for an order to restrain, and a briefing schedule would burden the Court and the parties with motion practice over a controversy that no longer exists.

**D.  Blanket Relief from Local Rule 7-3 for All Future Motions Is Overbroad and Unwarranted.**

Local Rule 7-3's conference requirement exists for the Court's benefit: it narrows disputes, eliminates unnecessary motions, and conserves judicial resources. Exempting one party from that obligation for the remainder of the case — as to motions not yet contemplated, on subjects unknown — would deprive Plaintiff of notice and any opportunity to resolve or narrow disputes before they reach the Court, and would predictably *increase* rather than decrease motion practice. The Letter cites no authority for such categorical prospective relief.

Counsel's assertion that conferral is futile does not withstand examination of the record. Plaintiff has never made any public statement concerning attorney Mélodie C. Han, who have appeared as counsel of record in this matter. Plaintiff has participated in written meet-and-confer correspondence throughout this action. The single scheduled conference Plaintiff did not attend — concerning Plaintiff's contemplated motion for judicial notice under Federal Rule of Evidence 201 — was missed because Plaintiff was involved delayed due to a Judge in Essex County New Jersey taking the bench 45 minutes later than scheduled due to being located out of the parking lot to the court. Plaintiff thereafter attempted in writing to reschedule, without response from counsel.

To the extent the Court credits any concern about direct conferral, the proportionate remedy is not abolition of the requirement but modification of its form: the Court may direct that all Local Rule 7-3 conferences between Plaintiff and counsel for Defendant Ventura be conducted exclusively in writing by email,

with a stated response period. Such a procedure protects counsel from any claimed risk while preserving the rule's purpose and Plaintiff's rights as a party. It is the obvious less restrictive alternative, and the Letter's failure to propose it confirms that the relief sought is broader than any legitimate need.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) decline to set a briefing schedule for the contemplated motion for a protective order  , which Plaintiff's removal of the video and voluntary undertaking have rendered unnecessary; (2) deny the request for blanket relief from Local Rule 7-3; and (3) in the alternative, direct that any required Local Rule 7-3 conferral between Plaintiff and counsel for Defendant Ventura proceed exclusively in writing by email.

Dated: June 12, 2026

Respectfully submitted,

*Clayton Howard*

Clayton Howard

Plaintiff, Pro Se