UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-06031-AH-DMKx | Date | July 23, 2026 |
| Title | *Clayton Howard v. Sean Combs et al.* | | |

Present: The Honorable   Anne Hwang, United States District Judge

| Yolanda Skipper | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:   (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS (DKT. NOS. 88, 89)**

Before the Court is (1) a motion to dismiss the Fourth Amended Complaint ("4AC") filed by Defendants Sean Combs; CeOpco, LLC f/k/a Combs Enterprises LLC and d/b/a Combs Global ("CeOpco"); and Bad Boy Entertainment LLC ("BBE"), Dkt. No. 88 ("Combs Mot."), and (2) a motion to dismiss the 4AC or, in the alternative, transfer venue filed by Defendant Casandra Ventura, Dkt. No. 89 ("Ventura Mot."). Plaintiff Clayton Howard ("Plaintiff") opposed both Mr. Combs and the corporate defendants' motion, Dkt. No. 93 ("Combs Opp'n"), and Ms. Ventura's motion, Dkt. No. 99 ("Ventura Opp'n"). Mr. Combs and the corporate defendants replied as to their motion, Dkt. No. 120 ("Combs Reply"), and Ms. Ventura replied as to her motion, Dkt. No. 121 ("Ventura Reply"). The Court held oral argument on July 22, 2026.[1] For the following reasons, the Court GRANTS IN PART and DENIES IN PART the motions.

---

[1] The Court provided an oral ruling on Plaintiff's ex parte applications for leave to file sur-replies. *See* Dkt. Nos 138, 141. The Court granted the ex parte applications and considered the proposed sur-replies in the interest of judicial economy and efficiency, without reaching whether good cause exists.

## I.   BACKGROUND[2]

Mr. Combs is a prominent rapper and record executive, and Ms. Ventura is a singer, actress, and model.  4AC ¶¶ 2–3.  Mr. Combs and Ms. Ventura maintained a "highly publicized" and "abusive" romantic relationship between 2007 to 2018.  *Id.* ¶ 4.  Plaintiff alleges he worked as an "male companion" for Mr. Combs and Ms. Ventura between 2009 and 2019.  *Id.* ¶¶ 1, 31, 37.

Over numerous encounters during this period, Plaintiff allegedly engaged in sexual activities with Ms. Ventura under the direction of Mr. Combs and received financial compensation and "perks like travel and small gifts" in return.  *Id.* ¶¶ 53, 63, 158, 409, 505.  Plaintiff alleges that Mr. Combs and Ms. Ventura transported him from New York City to Miami and Los Angeles for his services multiple times between 2012 and 2019.  *Id.* ¶¶ 155, 179, 336.  Plaintiff alleges he was drugged, subjected to nonconsensual sexual contact, and witnessed domestic violence during these encounters.  *Id.* ¶¶ 126, 187, 222, 241, 242.

In December 2023, Department of Homeland Security ("DHS") agents contacted Plaintiff regarding his involvement with Mr. Combs and Ms. Ventura.  *Id.* ¶ 235.  Plaintiff then cooperated as a government witness for the federal prosecution of Mr. Combs in the Southern District of New York.  *Id.* ¶ 238.  Mr. Combs was convicted of interstate transportation for prostitution in 2025, and Plaintiff alleges he was identified as a named victim in connection with this criminal case.  *Id.* ¶¶ 305–06.

Plaintiff initiated this action on June 30, 2025, and filed the First Amended Complaint on July 3, 2025.  Dkt. Nos. 1, 3.  The Court additionally granted leave to amend three times.  Dkt. Nos. 34, 55, 72.  On March 7, 2026, Plaintiff filed the 4AC, bringing the following causes of action: (1) sex trafficking under 18 U.S.C. § 1591; (2) human trafficking under Florida Statute § 787.061; (3) human trafficking pursuant to the California Trafficking Victims Protection Act ("CTVPA"), California Civil Code § 52.5; (4) human trafficking pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595; (5) sexual assault pursuant to California's Sexual Abuse and Cover Up Accountability Act, California Civil Procedure Code § 340.16; (6) sex trafficking

---

[2] The following facts are taken from the 4AC.  Dkt. No. 80.  The Court accepts well-pleaded factual allegations as true for the purposes of the motions before the Court.

under New York Penal Law § 230.34; (7) human trafficking under New York Services Law § 483-BB; and (8) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).  *See generally* 4AC.  On May 1, 2026, Mr. Combs and the corporate defendants moved to dismiss the 4AC, and Ms. Ventura moved to dismiss the 4AC or transfer venue.  Dkt. Nos. 88, 89.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A dismissal under a 12(b)(6) motion can be based on either a "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory."  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation modified).  On a 12(b)(6) motion, courts accept as true all well-pleaded allegations of material fact and construe them in a light most favorable to the non-moving party.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not" suffice.  *Id.* (citation modified).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Leave to amend "shall be freely given when justice so requires."  Fed. R. Civ P. 15(a).  However, a "district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).  "The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint."  *Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986).

## III.    DISCUSSION

### A.    Requests for Judicial Notice

When ruling on a motion to dismiss, a court may consider the allegations contained in the pleadings, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Courts may take judicial notice of information "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While a "court may take judicial notice of matters of public record," it "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citation modified).

Plaintiff requests that the Court take judicial notice of various court records and transcripts from the case *United States v. Sean Combs*, No. 24-cr-542 (AS) (S.D.N.Y.). Request for Judicial Notice ("RJN"), Dkt. Nos. 131, 132. Courts generally may take judicial notice of "other court proceedings if they directly relate to matters before the court." *NJOY, LLC v. Imiracle (HK) Ltd.*, 760 F. Supp. 3d 1084, 1098 (S.D. Cal. 2024) (citation modified). However, "when resolving disputes, courts may not take judicial notice of court documents provided for the truth of the facts asserted therein when such documents contain facts essential to support a contention in a cause then before it." *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1152 (C.D. Cal. 2005) (citation modified); *see also Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1101 (S.D. Cal. 2024) ("[A] court may consider documents properly subject to judicial notice, including the existence of court dockets and filings in related proceedings, . . . [but] cannot take judicial notice of those documents for the truth of any matter asserted therein."). Because Plaintiff requests that the Court take judicial notice of the court records and transcripts for the truth of the facts asserted therein, which are disputed in this case, the Court DENIES the RJN.[3]

---

[3] The Court accordingly disregards the citations to these court documents and trial transcripts in Plaintiff's Opposition briefs. *See generally* Combs Opp'n; Ventura Opp'n. In any event, "a plaintiff's opposition to a motion to dismiss does not constitute pleadings, and thus 'new' allegations raised in a plaintiff's opposition to a motion to dismiss are not considered when resolving a motion to dismiss." *See*

**B.      Motions to Dismiss**

### 1.      Lack of Private Rights of Action

Defendants argue that the first and sixth causes of action are brought under criminal statutes with no private right of action.  Combs Mot. at 6; Ventura Mot. at 6.

#### i.      *18 U.S.C. § 1591 (First Cause of Action)*

The 4AC asserts a claim under 18 U.S.C. § 1591, which criminalizes sex trafficking.  Because this criminal statute does not itself provide for a private right of action, Plaintiff cannot bring a valid claim under this section.[4]  *See Abcarian v. Levine*, 972 F.3d 1019, 1025–26 (9th Cir. 2020) ("If the statutory language *itself* does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one.") (emphasis in original) (citation modified); *see also, e.g.*, *Varner v. Univ. Med. Ctr. of S. Nevada*, 2025 WL 42250, at *2 n.1 (D. Nev. Jan. 7, 2025) (noting that "Section 1591 is a criminal statute that does not provide a private right of action," while "[section] 1595 provides a private right").

The Court GRANTS both motions as to the first cause of action, which is dismissed with prejudice.

#### ii.      *New York Penal Law § 230.34 (Sixth Cause of Action)*

The 4AC asserts a claim under New York Penal Law § 230.34, which criminalizes sex trafficking.  Again, this criminal statute does not provide for a private right of action.[5]  *See, e.g.*, *Smith v. AECOM Tishman*, 2022 WL 19410315, at *5 (S.D.N.Y. June 1, 2022) (dismissing claim under New York Penal Law § 230.34 because "there is no private right of action to enforce state or federal

---

*Sekerke v. City of Nat'l City*, 2020 WL 4435416, at *3 (S.D. Cal. Aug. 3, 2020) (citing *Khoja*, 899 F.3d at 1014).

[4] The Court addresses the merits of Plaintiff's claim under section 1595 of the TVPRA, which establishes a private right of action for violations of section 1591. *See infra* at III.B.3.i.

[5] The Court addresses the merits of Plaintiff's claim under New York Services Law § 483-bb, which establishes a private right of action for violations of New York Penal Law § 230.34.  *See infra* at III.B.3.iv.

---

criminal statutes") (citation omitted), *report and recommendation adopted*, 2023 WL 2734430 (S.D.N.Y. Mar. 30, 2023).

The Court GRANTS both motions as to the sixth cause of action, which is dismissed with prejudice.

## 2.   <u>Statute of Limitations</u>

Defendants argue that the second and eighth causes of action are barred by their respective statutes of limitations.[6]  Combs Mot. at 7–8; Ventura Mot. at 7–11. "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (citing *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).  "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* (citing *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

### i.   *Florida Statute § 787.061 (Second Cause of Action)*

The 4AC asserts a claim for human trafficking under Florida Statute § 787.061.  Actions under section 787.061 are subject to a four-year statute of limitations, beginning from the time "after the injured person leaves the dependency of the abuser, or . . . from the time of discovery by the injured party of both the injury and the causal relationship between the injury and the abuse, whichever occurs later."  Fla. Stat. § 787.061(4); *id.* § 95.11(8).  Under the "delayed discovery" provision, the cause of action accrues when "the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action." *Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000).

Plaintiff alleges the trafficking ended in 2019, which is more than four years before he initiated this action in 2025.  4AC ¶¶ 31, 272, 283.  Plaintiff argues the statute of limitations did not begin until the DHS contacted him in December 2023 under the statute's delayed discovery provision.  Combs Opp'n at 22.  But the 4AC alleges that Plaintiff was transported to Miami multiple times and "induced into

---

[6] Defendants also argue the fourth and seventh causes of action are partially time barred.  The Court discusses these issues below.  *See infra* at III.B.3.i, III.B.3.iv.

drug use, alcohol consumption, and prolonged unprotected sexual activity" between 2012 and 2019, and that in 2016, Plaintiff felt Mr. Combs "attempted to sexually manipulate him into an encounter," an experience that left him "traumatized for years." 4AC ¶¶ 170, 212–14. These allegations indicate Plaintiff knew of or reasonably should have known of his alleged injury and its relation to Defendants' conduct as early as 2016. The claim is therefore time barred.

The Court GRANTS both motions as to the second cause of action, which is dismissed with prejudice.[7]

### ii.    RICO (Eighth Cause of Action)

The 4AC brings a civil RICO claim. RICO "makes it criminal 'to conduct' an 'enterprise's affairs through a pattern of racketeering activity,' 18 U.S.C. § 1962(c), defined as behavior that violates certain other laws, either enumerated federal statutes or state laws addressing specified topics and bearing specified penalties, 18 U.S.C. § 1961(1)." *Rotella v. Wood*, 528 U.S. 549, 552 (2000). RICO provides for civil actions "by which '[a]ny person injured in his business or property' by a RICO violation may seek treble damages and attorney's fees." *Id.* (citing 18 U.S.C. § 1964(c)). "The statute of limitations for civil RICO actions is four years." *Pincay v. Andrews*, 238 F.3d 1106, 1108 (9th Cir. 2001) (citing *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 156 (1987)).

Defendants argue the RICO claim is time-barred because the trafficking underlying the RICO claim occurred between 2012 and 2019. Combs Mot. at 8; Ventura Mot. at 7–11. Plaintiff argues that accrual was delayed or the statute of limitations was tolled under four doctrines: the discovery rule, the separate accrual rule, the continuing violation doctrine, and the fraudulent concealment doctrine. Combs Opp'n at 19; Ventura Opp'n at 18–19.

Under the injury discovery rule for civil RICO claims, "the civil RICO limitations period begins to run when a plaintiff knows or should know of the

---

[7] Although the Court recognizes the liberal policy favoring amendments and that leave to amend should be freely granted, Plaintiff has not proposed any possible amendment under the delayed discovery doctrine and has amended his complaint three times, demonstrating that any amendment would be futile. Accordingly, the Court does not grant leave to amend this claim.

injury that underlies his cause of action." *Pincay*, 238 F.3d at 1109 (citation modified). "The plaintiff need not discover that the injury is part of a 'pattern of racketeering' for the period to begin to run." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996); *see also Rotella*, 528 U.S. at 555 ("[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock."). Plaintiff argues that the nature of the RICO enterprise first became known to him in December 2023 through the DHS contact. Combs Opp'n at 19; 4AC ¶¶ 272–73. But the limitations period begins with Plaintiff's discovery of his injuries, not his discovery of the enterprise or racketeering activity. *See Rotella*, 528 U.S. at 555. Plaintiff does not allege he was unable to discover his alleged injuries of lost income and medical expenses at the time they occurred between 2012 and 2019. 4AC ¶¶ 630–39.

Under the separate accrual rule, "a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Grimmett*, 75 F.3d at 510. Plaintiff argues his public identification during the 2024-2025 investigation and subsequent reputational harm from being associated with the criminal prosecution of Mr. Combs were new injuries that accrued a new cause of action. Combs Opp'n at 19; 4AC ¶ 633. As an initial matter, Plaintiff does not sufficiently allege that the harm to his reputation is an injury to "business or property," rather than a personal injury. *See Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 601 (2025) ("[B]y explicitly permitting recovery for harms to business and property, [section 1964(c)] implicitly excludes recovery for harm to one's person."). Moreover, to the extent Plaintiff argues the harm to his reputation somehow affected his business interests, such an injury was not caused by the alleged racketeering activity of trafficking and transportation for the purpose of prostitution, but rather by the government's prosecution of Mr. Combs. 4AC ¶¶ 611–12; *see Med. Marijuana*, 604 U.S. at 612 (noting that section 1964(c)'s "'by reason of' language demands some direct relation between the injury asserted and the injurious conduct alleged") (citation modified).

Under the continuing violations doctrine, which "functions as an exception to the discovery rule of accrual," "an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (citation modified). Citing this doctrine, Plaintiff argues March 2016 texts regarding Plaintiff's access to a hotel room was a continuing act in furtherance of the enterprise. Ventura Opp'n at 19. Plaintiff also repeatedly alleges the enterprise continued until and ceased in 2019. 4AC ¶¶ 285, 288. These events all occurred outside the four-year

---

limitations period, so the continuing violation doctrine does not save Plaintiff's claims, even if it applied to civil RICO claims. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997) (holding that the "last predicate act" rule, which allows the statute of limitations to run from the most recent predicate act, does not apply to civil RICO actions).

Finally, the fraudulent concealment doctrine "'equitably tolls' the running of a limitations period" when a defendant conceals a cause of action. *Id*. at 194 (citation omitted). "The doctrine of fraudulent concealment is invoked only if the plaintiff both pleads and proves that the defendant *actively* misled her, and that she had neither actual nor constructive knowledge of the *facts constituting his cause of action* despite her due diligence." *Grimmett*, 75 F.3d at 514 (emphasis in original). In the context of civil RICO claims, "a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'" *Klehr*, 521 U.S. at 194; *see also Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 502 (9th Cir. 1988) (asking whether the plaintiff "should have been alerted to facts that, following duly diligent inquiry, could have advised it of its claim"). A plaintiff "must plead with particularity the circumstances of the concealment and the facts supporting its due diligence." *Conmar*, 858 F.2d at 502.

Plaintiff alleges Mr. Combs and Ms. Ventura engaged in concealment by using aliases and claiming they were married, instructing Plaintiff to present as security for Bad Boy Records, facilitating travel arrangements through corporate entities, and preventing Plaintiff from learning about other victims.[8] 4AC ¶ 293. But the 4AC also alleges that Mr. Combs and Ms. Ventura directly solicited Plaintiff to travel across state lines multiple times to provide services and that they engaged in similar commercial sexual activities with other individuals in Plaintiff's presence. *See id.* ¶ 155, 163, 206, 411 (alleging that Ms. Ventura booked Plaintiff's flights and arranged his accommodations at hotels, and that Mr. Combs and Ms. Ventura "coerced" him into traveling from New York to Florida in 2016); *id.* ¶ 95–99 (describing Plaintiff's involvement in an "orgy with Ms. Ventura, Mr. Combs, and another male provider"). Plaintiff therefore had actual knowledge of the facts

---

[8] The 4AC also alleges that Ms. Ventura settled her civil claim against Mr. Combs and that attorneys coordinated to prevent Plaintiff from filing his lawsuit. 4AC ¶ 293. These allegations have no bearing on the concealment or knowledge of the underlying "facts constituting his cause of action," namely the alleged trafficking and transportation for the purposes of prostitution that occurred between 2012 and 2019. *See Grimmett*, 75 F.3d at 514.

giving rise to his claims, or at least "had available all the facts necessary to discover [his] cause of action with due diligence," but failed to allege that he exercised reasonable diligence to uncover his claim. *See Grimmett*, 75 F.3d at 515; *see also Klehr*, 521 U.S. at 195 (noting that "civil [RICO] actions seek not only to compensate victims but also to encourage those victims themselves diligently to investigate and thereby to uncover unlawful activity").

Accordingly, Plaintiff's RICO claim is barred by the statute of limitations. The Court GRANTS both motions as to the eighth cause of action, which is dismissed with prejudice.[9]

### 3.   Failure to State a Claim[10]

#### i.   *TVPRA (Fourth Cause of Action)*

The 4AC brings a claim under section 1595 of the TVPRA, which created a civil remedy for victims of substantive violations of the TVPRA against the perpetrator or anyone who "knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of" the TVPRA. 18 U.S.C. § 1595(a). The alleged predicate offenses are violations of section 1591 and 1589. 4AC ¶¶ 408–16. Section 1591 applies when a defendant "knowingly . . . in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person," or "benefits, financially or by receiving anything of value, from participation in a venture which has engaged in" such an act, "knowing, or, . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person

---

[9] As with the second cause of action, although the Court recognizes the liberal policy favoring amendments and that leave to amend should be freely granted, Plaintiff has not proposed any possible amendment and has amended his complaint three times, demonstrating that any amendment would be futile. Accordingly, the Court does not grant leave to amend this claim.

[10] The Court addresses the sufficiency of the remaining causes of action as brought against Mr. Combs and Ms. Ventura. The Court addresses the corporate defendants separately below. *See infra* at III.B.4.

to engage in a commercial sex act."[11]  18 U.S.C. § 1591.  Section 1589 applies when a defendant  "knowingly provides or obtains the labor or services of a person" by means of, in relevant part, "force, threats of force, physical restraint, or threats of physical restraint"; "serious harm or threats of serious harm"; or "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."  *Id.* § 1589(a).

As an initial matter, the statute of limitations for a civil action under section 1595 is "10 years after the cause of action arose."[12]  18 U.S.C. § 1595(c)(1). Plaintiff again argues the limitations period was triggered by the 2023 DHS contact under the discovery accrual rule.  Combs Opp'n at 18.  Courts within the Ninth Circuit have recognized that "the discovery rule does not apply to the TVPRA." *See, e.g.*, *Christina T. v. Bellagio LLC*, 806 F. Supp. 3d 1185, 1193 (D. Nev. 2025); *C.C. v. Rashid*, 2025 WL 1785273, at *5 (D. Nev. June 26, 2025) ("The TVPRA's accrual language does not wait until the plaintiff has 'discovered' his cause of action, but rather commences when the cause of action arose.").  In any event, the Court has addressed Plaintiff's delayed discovery arguments above.  Plaintiff has not raised any other basis for tolling the statute of limitations.  Plaintiff's claim is therefore time barred as to any discrete events that occurred before June 30, 2015.

Plaintiff does not specify when most of the alleged conduct occurred, but instead alleges broad time ranges that are only partially within the limitations period, such as sexual encounters between 2009 and 2017, drugging incidents

---

[11] The term "coercion" means, in relevant part, "threats of serious harm to or physical restraint against any person" or "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person."  18 U.S.C. § 1591(e)(2).  The term "commercial sex act" means "any sex act, on account of which anything of value is given to or received by any person."  *Id.* § 1591(e)(3).  The term "serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm."  *Id.* § 1591(e)(5).

[12] Plaintiff alleges he was an adult over the age of 18 at all times during the events alleged.  4AC ¶ 461.

between 2011 and 2016, and sex trafficking between 2012 and 2019.[13]  *See generally* 4AC.  These general allegations are too vague to state a claim, as they do not indicate at what point within those time periods the sex trafficking and forced labor activity occurred.  *See, e.g.*, *Doe v. Six Continents Hotels Inc.*, 2025 WL 2020003, at *5 (C.D. Cal. June 26, 2025) (concluding that a plaintiff's allegations that she "was trafficked from 2008 through December 2014" and from "2010 to December 2014" were "too vague to determine which party or parties are responsible for the unlawful behavior, if any," within the statute of limitations); *contrast with Jones v. Combs*, 2025 WL 896829, at *9 (S.D.N.Y. Mar. 24, 2025) (noting that the plaintiff provided "specific, dated examples of Combs making threats of violence"; "specific, dated allegations of Combs drugging and restraining Jones to secure his compliance"; and "a bounded timeframe within which Combs's conduct occurred—namely, the year that Jones spent living and traveling with Combs").  Other allegations of distinct events are specifically alleged to have occurred outside the limitations period and do not support the claim.  *See, e.g.*, 4AC ¶¶ 36–53, 276 (describing Plaintiff's first encounter with Mr. Combs and Ms. Ventura in 2009 and the alleged concealment of their identities and marital status via use of aliases for the first two years); *id.* ¶¶ (describing an encounter in 2011 during which Ms. Ventura allegedly gave Plaintiff ecstasy).

Additionally, Defendants argue that some of Plaintiff's allegations undermine his claim that the encounters resulted from force, threats, fraud, or coercion.  *See* Combs Mot. at 11; Ventura Mot. at 13.  For one, the 4AC alleges: "At all times during the encounters from 2009-2019, Plaintiff believed he was engaging in consensual arrangements with two private individuals operating within the bounds of legal adult activity, albeit morally questionable."[14]  4AC ¶ 272.

---

[13] The Court notes the following exceptions, which are specifically alleged to have occurred within the limitations period: the "Pink Molly" incident in fall 2015, 4AC ¶ 129–51; Plaintiff's travel to Florida and the ensuing encounter in March 2016, *id.* ¶ 206–15; and an encounter with Ms. Ventura in 2016, *id.* ¶ 219–20.

[14] Plaintiff argues his "subjective belief of consensuality was . . . the product of the fraud," referring to Mr. Combs and Ms. Ventura's representations that they were a married couple, the use of aliases, and the characterization of their relationship as "voluntary companionship."  Combs Opp'n at 18.  However, Plaintiff has not alleged these misrepresentations were material in inducing Plaintiff to participate in the encounters, especially given he continued to participate after learning of their real identities.  *See* 4AC ¶ 276 (indicating that Mr. Combs and Ms. Ventura used aliases for only two years).

Defendants argue Plaintiff alleges that he engaged in sexual intercourse and other sexual activities in exchange for financial compensation and "perks like travel and small gifts from Ms. Ventura," and not in response to "threats of serious harm to or physical restraint."  *Id.* ¶¶ 158, 409; *see* 18 U.S.C. § 1591(e)(2).  Most of Plaintiff's allegations to the contrary are merely conclusory.  *See, e.g.*, 4AC ¶ 233 ("When [Plaintiff's] services were needed, he would be coerced, manipulated, and seduced into drug use and compliance."); *id.* ¶ 513 ("[M]oney was used as a tool to coerce and bind Mr. Howard to the will of the Defendants . . . .").

Nonetheless, Plaintiff also alleges Mr. Combs and Ms. Ventura coerced him by confiscating his clothing and phone, isolating him in hotel suites, drugging him, and extending encounters beyond agreed-upon time frames or sexual activity,[15] in addition to alleging specific incidents within the limitations period.  *Id.* ¶¶ 322, 375–76, 410, 416.  On one occasion within the limitations period, Mr. Combs allegedly offered Plaintiff a drug described as "Pink MDMA" or "Pink Molly," which Plaintiff agreed to consume after Mr. Combs "hinted at Ms. Ventura's insistence on indulgence, explaining she may be angry if he didn't partake."[16]  *Id.* ¶¶ 129–34.  When construed liberally in Plaintiff's favor, these facts sufficiently allege Mr. Combs's knowledge that means of coercion would be used to cause Plaintiff to engage in a commercial sex act.  *See, e.g.*, *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 765–66 (C.D. Cal. 2024) (noting that the TVPRA is a remedial statute that requires broad interpretation).  Courts have recognized that allegations that a plaintiff was drugged may indicate that "force, fraud, and coercion were employed."  *See, e.g.*, *id.* at 769 (citation modified).  Courts have also recognized that confiscating a plaintiff's possessions to prevent him from

---

[15] The Court liberally construes the 4AC's allegation that Plaintiff was instructed to surrender his clothing and phone, isolated in hotel suites, and could not leave encounters until an extended amount of time during "all subsequent encounters" between 2009 and 2017.  4AC ¶¶ 54, 57–59, 81–83.  Additionally, the 2016 incident is alleged to have exceeded the scope of Plaintiff's consent.  *Id.* ¶¶ 212–15.

[16] Although the 4AC does not tie this particular incident to a commercial sex act, given that Plaintiff alleges he was released after experiencing physical symptoms in reaction to the drug, 4AC ¶¶ 134–51, section 1591 "does not require that the victim actually commit a sex act."  *See United States v. Hornbuckle*, 784 F.3d 549, 554 (9th Cir. 2015).  Rather, the "offense was complete when [the defendant] acted with the requisite knowledge" that a commercial sex act would occur.  *Id.* (citation omitted).

---

leaving plausibly alleges physical restraint. *See, e.g.*, *Jones*, 2025 WL 896829, at
*7 (concluding that the plaintiff alleged "physical restraint and a threat of force
resulting from Combs's seizing [the plaintiff's car] keys" and pressuring the
plaintiff into drinking liquor laced with drugs). Additionally, the 4AC's allegations
that Ms. Ventura and Mr. Combs flew Plaintiff from New York City to Miami and
Los Angeles and promised gifts, money, and vacations in return sufficiently allege
the interstate transportation and commercial sex act elements.[17] *See* 4AC ¶ 155–
56. Plaintiff, however, does not plausibly allege any specific, relevant incident as
to Ms. Ventura that exceeded the scope of his consent that occurred within the
limitations period.

Accordingly, Plaintiff's claims as alleged are barred by the statute of
limitations to the extent brought for specific incidents occurring prior to June 30,
2015.[18] The Court otherwise DENIES Mr. Combs's motion and GRANTS Ms.
Ventura's motion, with leave to amend, as to the fourth cause of action.

### ii.    CTVPA (Third Cause of Action)

The 4AC also brings a claim under the CTVPA, California Civil Code
§ 52.5, which provides a civil remedy for victims of human trafficking, as defined
in California Penal Code § 236.1. "A person who deprives or violates the personal
liberty of another with the intent to obtain forced labor or services, is guilty of
human trafficking."[19] Cal. Penal Code. § 236.1(a). Courts have noted "the
elements of a CTVPA and TVPA claim overlap significantly." *See, e.g.*, *Novoa v.
GEO Grp., Inc.*, 2021 WL 4913286, at *3 n.5 (C.D. Cal. Sept. 30, 2021). Here, the

---

[17] Because the 4AC's allegations are sufficient as to these elements, the Court does
not address Plaintiff's arguments that Mr. Combs is collaterally estopped from
disputing these elements. *See* Combs Opp'n at 11–13. The parties do not address
any other elements of the claim.

[18] The Court grants leave to amend if Plaintiff can specify what alleged conduct
occurred within the limitations period, or an applicable theory of tolling.

[19] "'Deprivation or violation of the personal liberty of another' includes substantial
and sustained restriction of another's liberty accomplished through force, fear,
fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the
victim or to another person." Cal. Penal Code. § 236.1(h)(3). "'Forced labor or
services' means labor or services that are performed or provided by a person and
are obtained or maintained through force, fraud, duress, or coercion, or equivalent
conduct that would reasonably overbear the will of the person." *Id.* § 236.1(h)(5).

parties repeat the same arguments as with the TVPRA, and the Court similarly finds Plaintiff has plausibly alleged a claim as to Mr. Combs.

Accordingly, the Court DENIES Mr. Combs's motion and GRANTS Ms. Ventura's motion, with leave to amend, as to the third cause of action.

### iii.    California Civil Procedure Code § 340.16 (Fifth Cause of Action)

Plaintiff asserts a claim for sexual assault pursuant to California Civil Procedure Code § 340.16, based on alleged violations of California Penal Code §§ 261 and 243.4.[20]  4AC ¶¶ 445–47.  Under section 261, an act of sexual intercourse is rape if it is accomplished, in relevant part, "against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."  Cal. Penal Code § 261(a)(2).  Under section 243.4, sexual battery is the "touch[ing] [of] an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse."  Id. § 243.4(a).  "Sexual battery" under section 243.4 "does not include the crimes defined in Section 261."  Id. § 243.4(g)(2).

The Court again notes at the outset the allegation that "[a]t all times during the encounters from 2009-2019, Plaintiff believed he was engaging in consensual arrangements with two private individuals."  4AC ¶ 272.  Plaintiff's sexual assault claim appears to arise solely from an incident during which Ms. Ventura engaged in sexual intercourse with Plaintiff while menstruating.  Id. ¶¶ 451–53.  Plaintiff alleges this contact was nonconsensual, "as demonstrated by his repeated requests for Ms. Ventura to 'wait,' his anger upon discovering she was menstruating heavily, and his questioning 'why she would do that to him.'"  Id. ¶ 453.  Ms. Ventura argues that Plaintiff's anger after learning that Ms. Ventura was menstruating does not render the sex act nonconsensual when it occurred.  Ventura Mot. at 22–24.

---

[20] The 4AC also cites section 289, which criminalizes "an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury," but does not allege any facts regarding an act of sexual penetration of Plaintiff.  Cal. Penal Code § 289(a)(1)(A); see also id. § 289(k)(1) ("'Sexual penetration' is the act of causing the penetration, however slight, of the genital or anal opening of any person . . . .").

Plaintiff does not respond to Ms. Ventura's arguments,[21] but instead argues that Ms. Ventura's concealment of her and Mr. Combs's true identities was fraud that invalidated his consent.  Ventura Opp'n at 20–21.  Again, these misrepresentations are not alleged to be material because Plaintiff does not allege he would not have engaged had he known their true identities, and he continued to engage after he learned of their true identities.

The Court GRANTS both motions as to the fifth cause of action, with leave to amend.

### iv.    *New York Services Law § 483-bb (Seventh Cause of Action)*

The 4AC brings a claim under New York Services Law § 483-bb, which provides a civil remedy for victims of human trafficking "against the perpetrator or whoever knowingly advances or profits from, or whoever should have known he or she was advancing or profiting from, an act in violation of" enumerated sections of the penal law."  The 4AC predicates the claim on a violation of New York Penal Law § 230.34, which establishes that a "person is guilty of sex trafficking if he or she intentionally advances or profits from prostitution by," as relevant here, providing drugs "with intent to impair [the] person's judgment"; "making material false statements, misstatements, or omissions to induce or maintain the person . . . to engage in or continue to engage in prostitution activity"; or "using force or engaging in any scheme, plan or pattern to compel or induce the person . . . to engage in or continue to engage in prostitution activity by means of instilling a fear" of various enumerated harms.  *See* 4AC ¶ 496.

Defendants correctly argue that section 483-bb, which became effective on January 19, 2016, does not apply retroactively to any conduct that occurred before it became effective.  *See, e.g.*, *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 156–57 (E.D.N.Y. 2020) (explaining that section 483-bb does not operate retroactively and dismissing section 483-bb claim because the alleged sex

---

[21] The Court therefore considers the arguments regarding this incident waived.  *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1096 n.4 (9th Cir. 2005) (noting that the plaintiff "abandoned her other . . . claims by not raising them in opposition"); *Hartranft v. Encore Capital Grp., Inc.*, 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021) ("[W]here a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived.").

trafficking took place prior to January 19, 2016).  Defendants also argue that section 483-bb does not apply to conduct that occurred outside of New York.  *See, e.g.*, *A.A. v. Omnicom Grp., Inc.*, 2026 WL 504904, at *22 (S.D.N.Y. Feb. 24, 2026) ("Neither the Penal Law provision prohibiting labor trafficking nor the private right of action on which Plaintiffs' suit is premised provides any express statement of extraterritoriality.  And . . . they do not piggyback on predicate offenses that refer to extraterritorial conduct or contain express grants of extraterritorial application."); *Smith v. AECOM Tishman*, 2023 WL 2734430, at *5 (S.D.N.Y. Mar. 30, 2023) ("[T]here is no evidence in [New York Penal Law §§ 135.5 and 230.34] that they were intended to apply outside of New York.").  Plaintiff does not respond to this argument, and it is unclear from the cause of action what conduct allegedly occurred after January 19, 2016, and what occurred in New York, as opposed to in Miami or Los Angeles.

Accordingly, the Court GRANTS the motions as to the seventh cause of action, with leave to amend.

### 4.    <u>Corporate Defendants</u>

The 4AC alleges the corporate defendants participated in the trafficking activities by providing financial resources and logistical support, including booking accommodations and presenting Plaintiff as "security" for Bad Boy Records at hotels.[22]  4AC ¶¶ 423, 517, 568, 615.  Specifically, Plaintiff was granted access to hotel suites by BBE staff and Mr. Combs's personal assistant, Kristina Khorram, and Ms. Ventura booked travel accommodations through a company travel agent.  *Id.* ¶ 615.  The 4AC also states in a conclusory fashion that the corporate defendants were an "employer" of Plaintiff.  *Id.* ¶¶ 34–35.

The corporate defendants argue the 4AC fails to state any claim against them because of impermissible group pleading and lack of direct or vicarious liability.[23]

---

[22] Defendants represent that BBE does not own and is not affiliated with Bad Boy Records.  Combs Mot. at 15.

[23] Mr. Combs and the corporate defendants argue the 4AC violates Rule 8 through impermissible group pleading or "shotgun pleading."  Combs Mot. at 8; *see* Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief").  The Court does not address this issue because it dismisses the corporate defendants on other grounds.  To the extent Plaintiff

Combs Mot. at 15–18.  The 4AC does not specify which corporate defendant, or which agents or employees beyond Ms. Khorram, provided financial or logistical support, or any theory under which any corporate defendant would be liable for acts by Mr. Combs.  As Defendants argue, the 4AC does not allege any facts indicating that the two corporate defendants may be treated as a single enterprise or alter egos for purposes of liability.  *See, e.g.*, *Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1107–08 (2013) ("Under the 'single business enterprise' doctrine, separate corporations may operate with integrated resources in pursuit of a single business purpose.") (citation omitted); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 943 (D. Or. 2020) (finding that a plaintiff failed to allege TVPRA liability under an alter ego theory where the plaintiff did not allege "unity of interest and ownership," as required to apply the alter ego doctrine) (quoting *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984)).  The 4AC also does not allege facts indicating that the corporate defendants, or their agents or employees, were aware of or benefited from the sexual conduct between Plaintiff and Ms. Ventura and Mr. Combs.  *See Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (holding that beneficiary liability under the TVPRA requires "actual knowledge and a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit") (citation modified); *contrast with Canosa v. Ziff*, 2019 WL 498865, at \*23 (S.D.N.Y. Jan. 28, 2019) (denying a motion to dismiss beneficiary liability claims where the plaintiffs alleged affiliates of Harvey Weinstein "knew that Weinstein's recurrent practice—indeed, pattern—was to lure women . . . into pretextual meetings and then subject them to forced sexual acts" and "nevertheless continued to pay for and facilitate Weinstein's interstate and foreign travel," as well as "gave Weinstein the medications he required to perform sexual acts and cleaned up after his sexual assaults").

Neither does the 4AC allege facts supporting vicarious liability for the conduct of Mr. Combs or Ms. Ventura.  Plaintiff does not allege that Mr. Combs or Ms. Ventura were employees of the corporate defendants or acting within the scope of employment, as required for vicarious liability under state law.  *See Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 967 (1986) ("Under the doctrine of respondeat superior, an employer is vicariously liable for his employee's torts committed within the scope of the employment.").  Plaintiff only alleges that BBE is a music, media, and entertainment company founded by Sean Combs and does

intends to amend, Plaintiff must plead his interactions with each defendant with sufficient specificity.

not allege any information about the nature of CeOpco.  4AC ¶¶ 34–35.  These allegations are insufficient to establish an agency relationship under federal common law, which "exists when a principal and agent manifest assent that the agent will act on the principal's behalf and the principal will retain control over the undertaking."  *See, e.g.*, *Doe (K.R.D.) v. Hilton Worldwide Holdings Inc.*, 798 F. Supp. 3d 1082, 1090–91 (N.D. Cal. 2025) (applying the federal common law of agency in determining indirect liability under the TVPRA) (citation omitted); *contrast with Nash v. Combs*, 2026 WL 1484285, at *13 (C.D. Cal. May 26, 2026) (finding that vicarious liability was plausibly alleged where the plaintiff alleged the corporate entities existed "*for the purpose of* moving, disposing of, and/or insulating [Combs's] assets, including in connection with his criminal and civil activities and to avoid liability" and that a corporate defendant's employees "directed Nash to clean up rooms where Combs had coerced sexual encounters and instructed Nash not to speak about the incident") (emphasis in original).

Accordingly, the Court GRANTS the corporate defendants' motion and dismisses all claims against the corporate defendants, with leave to amend.

## C.    Transfer of Venue

Ms. Ventura additionally moves to transfer venue to the Southern District of New York.[24]  Ventura Mot. at 24.  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1401(a).  In a transfer motion, the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Ms. Ventura argues that Plaintiff and Defendants' counsel are all located in New Jersey or New York and that witnesses are likely to be located in New York, given that the criminal case against Mr. Combs and most relevant facts in this case occurred in New York.  Ventura Mot. at 25.  But Ms. Ventura has not provided the "witnesses' identities, locations, and content and relevance of their testimony," such that the Court is able to "examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum."  *See, e.g.*, *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1043 (S.D. Cal. 2023) (citations omitted); *see also Zimpelman v. Progressive N. Ins. Co.*, 2010 WL 135325, at *1 (N.D. Cal. Jan. 8, 2010) ("[C]ourts generally do not consider the convenience

---

[24] Mr. Combs and the corporate defendants do not address transfer of venue.

of counsel to be a relevant factor in considering a motion to transfer venue."). Plaintiff responds that the California sexual assault claims are California-specific torts for acts that occurred in California, which Ms. Ventura does not address. Ventura Opp'n at 22.

On balance, Ms. Ventura has not carried the burden to disturb Plaintiff's choice of forum. The Court DENIES the motion to transfer venue.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the motions. The first, second, sixth, and eighth causes of action are dismissed with prejudice. The fifth and seventh causes of action are dismissed as to all defendants with leave to amend. The third and fourth causes of action are dismissed as to Ms. Ventura and the corporate defendants, with leave to amend.

Any amended complaint must be filed within **fourteen (14) days** from the date of this Order.[25]

**IT IS SO ORDERED.**

---

[25] During oral argument, counsel for Ms. Ventura argued that any amended complaint cannot directly contradict prior pleadings and therefore any amendment would be futile. Although contradictory pleadings are not a basis to dismiss a complaint on their own, the Court notes that allegations in prior pleadings are judicial admissions. *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) ("[T]here is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading."); *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.").