Clayton Howard

24 Orchard Street

Carteret, New Jersey 07008

(929)781-7791

itsclaytonhoward@gmail.com

Plaintiff, Pro se

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| CLAYTON HOWARD, | **Case No. 2:25-cv-06031-AH-DMKx** |
|---|---|
| *Plaintiff*, | |
| v. | |
| SEAN COMBS; | |
| CASANDRA VENTURA; | FIFTH AMENDED COMPLAINT |
| BAD BOY ENTERTAINMENT, LLC; and | |
| CeOpco, LLC | |
| (f/k/a Combs Enterprises, LLC), | JURY TRIAL DEMANDED |
| *Defendants*, | |

FIFTH AMENDED COMPLAINT — 1

Plaintiff Clayton Howard (a/k/a "Dave"), appearing pro se, alleges as follows against Defendants Sean Combs ("Mr. Combs"), Casandra Ventura ("Ms. Ventura"), Bad Boy Entertainment, LLC ("BBE"), and CeOpco, LLC (f/k/a Combs Enterprises, LLC) ("CeOpco") (collectively, "Defendants"):

**Note on this amendment:** This Fifth Amended Complaint is filed pursuant to the Court's Order of July 23, 2026 (Dkt. 154) granting leave to amend. It re-pleads only the causes of action for which the Court granted leave — the California Trafficking Victims Protection Act (Cal. Civ. Code § 52.5), the Trafficking Victims Protection Reauthorization Act (18 U.S.C. § 1595), the California Sexual Abuse and Cover Up Accountability Act (Cal. Code Civ. Proc. § 340.16), and New York Social Services Law § 483-bb. The causes of action previously dismissed with prejudice (former Counts I and VI under criminal statutes, former Count II under Florida Statute § 787.061, and former Count VIII under civil RICO) are not re-pleaded here and are omitted without waiver of Plaintiff's right to seek appellate review of their dismissal.

**Note on record citations.** Citations to "Trial Tr." are to the transcript of *United States v. Combs*, No. 1:24-cr-00542 (AS) (S.D.N.Y.), which is continuously paginated across the following filed volumes: Tr. 328–594 (May 13, 2025) (ECF No. 558); Tr. 595–859 (May 14, 2025) (ECF No. 560); Tr. 860–1142 (May 15, 2025) (ECF No. 562); Tr. 1143–1448 (May 16, 2025) (ECF No. 564); Tr. 6315–6538 (June 16, 2025) (ECF No. 592); and Tr. 6539–6731 (June 17, 2025) (ECF No. 594). A page cited herein appears in the volume whose page range includes that page.

## PRELIMINARY STATEMENT

1. Plaintiff brings this civil action arising from a course of systematic sexual exploitation and trafficking that occurred between approximately 2009 and 2019, during which Defendants Combs and Ventura procured Plaintiff — a paid male companion — for commercial sexual encounters accomplished through fraud, drugging, physical restraint, and coercion, and administered and financed those encounters through Defendants BBE and CeOpco.

2. Mr. Combs is a prominent recording artist and record executive. Ms. Ventura is a singer, actress, and model. Between 2007 and 2018 they maintained a publicized personal relationship. Beginning in 2009, and continuing through 2019, they engaged Plaintiff to participate in recurring sexual encounters that Ms. Ventura arranged and Mr. Combs observed and directed.

3. Ms. Ventura testified as a government witness in *United States v. Combs*, No. 1:24-cr-00542 (AS) (S.D.N.Y.), and there identified Plaintiff by his legal name and described, under oath, how she and Mr. Combs recruited, transported, paid, and directed male participants, including Plaintiff. Many of the allegations below are corroborated by that sworn testimony and by documentary exhibits admitted at that trial. On or about July 2,

2025, Mr. Combs was convicted of interstate transportation for prostitution in violation of 18 U.S.C. § 2421, and Plaintiff is identified as a victim of that count in the Government's sentencing submission.

4. At all times Plaintiff was an adult over the age of eighteen. Plaintiff does not contend that he never accepted payment or never understood the encounters to be sexual. He contends that his participation was procured and maintained by Defendants' affirmative misrepresentations and concealment of material facts, and by drugging, physical restraint, and coercion, such that his apparent agreement did not extend to the acts and conditions actually imposed upon him.

5. This action seeks compensatory, statutory, punitive, injunctive, and declaratory relief under the California Trafficking Victims Protection Act (Cal. Civ. Code § 52.5), the Trafficking Victims Protection Reauthorization Act (18 U.S.C. § 1595), the California Sexual Abuse and Cover Up Accountability Act (Cal. Code Civ. Proc. § 340.16), and New York Social Services Law § 483-bb.

**JURISDICTION AND VENUE**

6. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts a claim under 18 U.S.C. § 1595. The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28

U.S.C. § 1367(a) because those claims arise from the same case or controversy.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims — including the sexual encounters in Los Angeles, California — occurred in this District, and because Defendant Ventura resides in California. By Order dated July 23, 2026, the Court denied Defendant Ventura's motion to transfer venue.

## PARTIES

8. Plaintiff Clayton Howard is a resident of New Jersey. Beginning in the fall of 2009, he worked as an independent male companion in New York under the name "Dave." He was engaged by Defendants beginning in 2009, and his engagements with Defendants concluded in 2019.

9. Defendant Sean Combs is, upon information and belief, presently in federal custody serving a fifty-month sentence following his conviction under 18 U.S.C.§ 2421 in *United States v. Combs*, No. 1:24-cr-00542 (AS) (S.D.N.Y.). At all relevant times Mr. Combs personally arranged, directed, financed, and participated in the encounters alleged herein.

10. Defendant Casandra Ventura, upon information and belief, resided in the State of California at all relevant times and is subject to the personal

jurisdiction of this Court, having appeared and litigated in this action. At all relevant times Ms. Ventura personally recruited, engaged, transported, paid, and directed Plaintiff in connection with the encounters alleged herein.

11. Defendant Bad Boy Entertainment, LLC ("BBE") is a music, media, and entertainment company founded and controlled by Defendant Combs. At all relevant times BBE, through its agents and employees and its financial accounts, procured, paid for, and administered travel and accommodations used to transport Plaintiff for the encounters alleged herein.

12. Defendant CeOpco, LLC (f/k/a Combs Enterprises, LLC) ("CeOpco") is a limited liability company affiliated with and controlled by Defendant Combs. At all relevant times CeOpco, together with BBE and through shared agents, employees, and financial accounts, procured, paid for, and administered travel and accommodations used to transport Plaintiff for the encounters alleged herein.

## FACTUAL ALLEGATIONS

13. Plaintiff incorporates by reference, pursuant to Federal Rule of Civil Procedure 10(c), the sworn trial testimony of Casandra Ventura given in *United States v. Combs*, No. 1:24-cr-00542 (AS) (S.D.N.Y.) (testimony

of May 13–16, 2025), as identified by transcript page and line herein. Plaintiff cites that testimony as evidence of the statements Ms. Ventura made under oath and as admissions, and not for the truth of every characterization she offered; where Plaintiff's own account differs, Plaintiff pleads his account of his own personal knowledge as a party and percipient witness to the events described.

### I. The Initial Engagement and the False "Private Married Couple" Representation (2009)

14. In late 2009, Ms. Ventura — using the alias "Jackie Star" — engaged Plaintiff to serve as a male companion at The London hotel in New York City.

15. Ms. Ventura concealed her identity using makeup, a wig, and dim lighting, and did not disclose that another person would be present. She introduced Mr. Combs, who was present, under the alias "Frank," and represented that "Frank" was her husband who had consented to her engaging a male companion and who preferred to watch.

16. The representation that Defendants were a private married couple engaged in a purely private arrangement was false. Defendants were public figures whose encounters were arranged, financed, and administered through business entities and paid staff, as set forth below.

Plaintiff did not know these facts and could not have discovered them, because Defendants actively concealed them.

## II. Concealment of Identity

17. At the inception of the encounters, Ms. Ventura identified herself to Plaintiff as "Jackie Star." She later testified under oath that she used that name "instead of my own name," both when engaging male participants and as the name on hotel reservations. Trial Tr. 501, 520.

18. At the inception of the encounters, Mr. Combs identified himself to Plaintiff as "Frank" and, at other times, "Frank Black." Ms. Ventura confirmed under oath that "Frank Black" and "Frank White" were aliases used by Mr. Combs. Trial Tr. 501.

19. Defendants maintained these false identities for more than two years, during which Plaintiff did not know the true identity of either Defendant.

20. The false identities were embedded in the commercial records of the encounters. A hotel invoice for the Trump International Hotel & Tower at Columbus Circle in Manhattan, reflecting an arrival date of October 14, 2012 and Room 612, was issued in the name "Mr. Frank Black." Trial Tr. 6505. A hotel invoice for the InterContinental New York Times Square dated October 5, 2012 was likewise issued in the name "Mr. Frank Black." Trial Tr. 6572. Hotel rooms used for the encounters were booked

in names including "Jackie Star," "Frank Black," and "Frank White." Trial Tr. 501.

21. Upon Plaintiff's arrival at encounters, Defendant Ventura directed him to identify himself falsely to hotel staff. In electronic messages dated October 13–14, 2012, recovered from a device identified by stipulation as belonging to Ms. Ventura, Ms. Ventura directed Plaintiff to a room registered under the name "Janet Clark" and asked whether he had "the name who to say you are dropping off to." Trial Tr. 6503; Gov't Ex. E325Z.

### III.  The Structure of the Encounters (2009–2017)

22. The first encounter established the structure for those that followed. Upon arrival, Plaintiff was instructed by Defendant Ventura to surrender his clothing, his identification, and his cellular telephone; his telephone was turned off; and in some suites floor access required a key, so that Plaintiff could not readily leave.

23. The encounters were structured into phases with Defendant Ventura, progressing from no contact to intercourse, and could consist of many individual sessions over the course of one to several days. Ms. Ventura controlled when each encounter began and sought Mr. Combs's permission to progress; Mr. Combs controlled the pace, but not the

duration. The session continued until Defendant Ventura climaxed, after which she required a break. When Defendant Ventura was ready to begin again, she would ask Defendant Combs. If he agreed, another session began, if not – she waited.

24. Ms. Ventura testified that encounters typically lasted two to three days, that the longest lasted four days, that she did not sleep during them, and that "ultimately, it would be Sean" who decided when an encounter was over. Trial Tr. 483–84. Regardless of who set the overall pace of, or ultimately ended, any given encounter, Ms. Ventura's own testimony establishes that she personally performed the operative acts alleged herein — including recruiting, contacting, arranging, transporting, and paying Plaintiff — so that her liability does not depend on who was ultimately in control.

25. Controlled substances were consumed at the encounters. Ms. Ventura testified that controlled substances were used at every such encounter without exception. Trial Tr. 541–42. Prolonged, directed masturbation caused Plaintiff physical injury, including skin tears and scarring.

26. The rooms were arranged so that Mr. Combs could observe. Ms. Ventura testified that candles were "placed so that Sean could see me and the escort," and that studio lighting was later brought in by Mr. Combs's

assistants. Trial Tr. 509–10. Music was played during the encounters at a volume that prevented sound from carrying between rooms. Trial Tr. 1064.

### IV. Affirmative Misrepresentation to Procure Plaintiff's Travel — the "New Employee" Cover Story

27. Defendants did not merely withhold their identities. To obtain services for the encounters, they affirmatively misrepresented Plaintiff's identity and purpose to third parties.

28. Ms. Ventura testified that she contacted Mr. Combs's corporate travel agent to arrange travel for male participants, and that in doing so she and Mr. Combs represented the traveler to be a business colleague: "I definitely reached out to his travel agent. I believe we just acted as if it was a new employee or somebody that was being interviewed or something." Trial Tr. 541.

29. Asked who "we" referred to, Ms. Ventura answered, "Sean and I." Asked who the purported new employee was, she answered, "Dave, for instance," and explained that the representation to the travel agent would be that they had "somebody new coming to visit for a meeting so that it wouldn't be speculated." Trial Tr. 541 (May 13, 2025) (ECF No. 558).

30. The representation that Plaintiff was a new employee of Mr. Combs's company was false; Plaintiff was never employed by any Combs entity. That false representation was the means by which Plaintiff's commercial air travel was procured on corporate accounts and documented on corporate paper, as set forth in Section V. For example, following that misrepresentation, Plaintiff's round-trip air travel between New York and Los Angeles on or about September 15–16, 2014 was procured on corporate accounts and documented on a travel invoice issued under Bad Boy Entertainment letterhead naming Plaintiff as the passenger (see infra ¶ 34).

### V. Institutional and Corporate Support, and Its Concealment (BBE and CeOpco)

31. Plaintiff understood the arrangements to be private and personal to Defendants Combs and Ventura. In fact, the encounters were funded and administered through corporate entities and paid staff, a fact Defendants concealed from Plaintiff.

32. Ms. Ventura testified that hotel rooms were booked by staff, that Mr. Combs paid for them, and that the rooms were stocked in advance by Mr. Combs's "[a]ssistants, security." Trial Tr. 501–02. She testified that

travel for Plaintiff was arranged in part by "a travel agent from Sean's company." Trial Tr. 535.

33. American Express statements introduced at trial were billed to corporate entities, including 207 Anderson LLC c/o Bad Boy Entertainment Worldwide, Combs Enterprises LLC c/o Bad Boy Entertainment, 40 Hedges Realty Inc. c/o Bad Boy Entertainment Worldwide, and 56th and Broadway LLC c/o Bad Boy Entertainment. Trial Tr. 6557, 6562. Each such account was administered in care of Bad Boy Entertainment, reflecting shared corporate administration. Each of these limited-liability companies was administered through the same corporate apparatus of which Defendants BBE and CeOpco are a part. Plaintiff alleges, on information and belief and subject to confirmation in discovery, that BBE and CeOpco are the entities — or the alter egos of the entities — that funded and administered Plaintiff's travel and the logistics of the encounters through these commonly administered accounts.

34. Government Exhibit 1405-D reflects charges by Journey Corporation, a travel agency, for a "service for travel itinerary," with Plaintiff listed as the passenger, paid by an American Express account ending in 5002 held by Mr. Combs. Trial Tr. 6561.

35. Government Exhibit 6T108 is a travel invoice issued under the letterhead of Bad Boy Entertainment, listing Plaintiff as the passenger for a flight departing John F. Kennedy International Airport on September 15, 2014 and arriving in Los Angeles, with a return segment on September 16, 2014. Trial Tr. 6566. Government Exhibit 1402, line 46, corresponds to that same travel and records a reservation at the Four Seasons in Los Angeles in the name "Eli Maroun," together with the names "Sean Combs, Clayton Howard a/k/a Dave." Trial Tr. 6559.

36. Members of Mr. Combs's paid staff coordinated Plaintiff's access to the hotel suites where the encounters occurred. In text messages dated March 18–20, 2016, David Shirley, an assistant to Mr. Combs, wrote to Kristina Khorram, Mr. Combs's chief of staff, "Clayton Howard needs access to room." Trial Tr. 6348; Gov't Ex. 1411-R. Ms. Khorram in turn instructed staff to "add the name Clayton Howard to the Four Seasons hotel room," stating that he needed "access ASAP." Trial Tr. 6348. Plaintiff's contemporaneous airline itinerary reflects his return from Fort Lauderdale to New York on March 20, 2016 (Exhibit B), corroborating his presence in South Florida during this period.

37. These corporate agents — the chief of staff who arranged Plaintiff's room access, and the assistants and security personnel who stocked the

encounter suites and administered travel and payment — had actual knowledge that the encounters were commercial sexual encounters arranged and maintained through fraud and coercion, by virtue of their direct roles in facilitating them — including stocking the encounter suites in advance with baby oil, lubricant, and condoms (Trial Tr. 501–02); confiscating participants' clothing, identification, and telephones on Mr. Combs's direction (Trial Tr. 460–61); setting up and maintaining access to the devices used to record the encounters (Trial Tr. 569–70); and coordinating Plaintiff's specific access to the encounter rooms (Gov't Ex. 1411-R). Their knowledge, obtained within the scope of their employment, is attributable to BBE and CeOpco.

38. BBE and CeOpco knowingly benefited from their participation in the venture. The entities functioned as the administrative and financial vehicles through which Mr. Combs's demands were serviced and through which his assets were held, moved, and insulated, and they derived value from servicing the venture as part of their ongoing business operations. The same corporate defendants named here — Bad Boy Entertainment, LLC and CeOpco, LLC — together with related Combs entities, were held in this District to be adequately alleged alter egos and vicariously liable employers of Mr. Combs in *Nash v. Combs*, No. 2:25-cv-11033-

MEMF-PVC, Dkt. No. 41, 2026 WL 1484285 (C.D. Cal. May 26, 2026), where the court sustained corporate liability on allegations that the entities existed "for the purpose of moving, disposing of, and/or insulating [Combs's] assets, including in connection with his criminal and civil activities and to avoid liability," and that their employees "directed [the plaintiff] to clean up rooms where Combs had coerced sexual encounters and instructed [the plaintiff] not to speak about the incident." The corporate role alleged here is materially the same. Plaintiff was procured through corporate accounts and corporate staff in furtherance of that venture. More concretely, BBE and CeOpco existed to service and monetize Mr. Combs, their controlling principal; servicing his demands — including procuring and paying for Plaintiff's interstate travel and arranging his access to the encounter suites — preserved the business relationship and revenue that were the entities' reason for being, and the entities obtained the value of the services extracted from Plaintiff, charged to and administered through their own corporate accounts. The benefit BBE and CeOpco derived was therefore causally connected to their participation in the venture.

## VI.  Defendant Casandra Ventura's Personal and Operational Role

39. Ms. Ventura's participation was not passive. Whatever direction she received from Mr. Combs, she personally performed the acts that produced Plaintiff's presence at, and participation in, each encounter.

40. Ms. Ventura personally located and engaged Plaintiff through an online advertising site, testifying, "Dave was actually through craigslist or Backpage." Trial Tr. 535 (May 13, 2025) (ECF No. 558). She used the alias "Jackie Star" and her own telephone number to do so. Trial Tr. 520.

41. Ms. Ventura personally initiated contact with Plaintiff. In Government Exhibit E325Z, recovered from her own device, she wrote to Plaintiff on October 13, 2012, "Hey, are you avail tonight?" Trial Tr. 6503. In Government Exhibit B218Z she again wrote, "Hey, are you available tonight?" Trial Tr. 6527.

42. Ms. Ventura personally selected and disclosed the venue, wrote to Plaintiff the alias under which the room was registered and the room number ("Janet Clark. 408."), instructed Plaintiff what to tell hotel staff, and arranged in-room services in advance. Trial Tr. 6503.

43. Ms. Ventura personally arranged Plaintiff's travel on occasion ("Occasionally I did") and personally contacted Mr. Combs's corporate travel agent, making the false "new employee" representation described in Section IV. Trial Tr. 535, 541.

44. Ms. Ventura personally screened prospective male participants and personally handed cash to them at the conclusion of encounters, testifying, "I often did, sometimes Sean." Trial Tr. 530–31 (May 13, 2025) (ECF No. 558). She testified that male participants were paid in cash at the conclusion of each encounter in amounts ranging from approximately $1,500 to $6,000 or $7,000. Trial Tr. 531–32.

45. Ms. Ventura identified Plaintiff among the individuals "[m]ost frequently used," naming "Jewels, Dave, Johnny," and testified that Plaintiff was used in New York and "would fly to Miami and Los Angeles." Trial Tr. 535, 540. Each of the foregoing acts was performed by Ms. Ventura personally and is sufficient, independent of any direction she received, to establish her participation in the conduct alleged.

46. On or about March 5, 2016, at the InterContinental Century City hotel in Los Angeles, Mr. Combs violently assaulted Ms. Ventura in a hallway before the elevators, an assault captured on hotel surveillance video and later described by Ms. Ventura under oath. Trial Tr. 572, 573, 578–582 (May 13, 2025) (ECF No. 558).

47. In the period following that assault, Ms. Ventura and Mr. Combs continued to communicate and to plan sexual encounters, and Ms. Ventura's own messages — introduced at trial by both the Government

and the defense — reflect her continued and at times affirmative participation, including her statements that she "love[d] our FOs" "when [they] both want it." Trial Tr. 1002–1003 (May 15, 2025) (ECF No. 562).

48. Plaintiff alleges, on personal knowledge and on reasonable inference from these communications, that Ms. Ventura exercised meaningful autonomy in approving and selecting the male participants brought to the encounters; that Mr. Combs asked Ms. Ventura whether she wished to have "Dave" — that is, Plaintiff — join them; and that Ms. Ventura assented. Mr. Combs's practice of consulting Ms. Ventura as to Plaintiff, and of arranging to "fly Dave in … for a freak-off," is reflected in the trial record. Trial Tr. 661, 962 (ECF Nos. 560, 562).

49. Consistent with that assent, Plaintiff was summoned and traveled to meet Ms. Ventura and Mr. Combs in South Florida within weeks of the March 2016 assault, as reflected in Plaintiff's contemporaneous travel records attached hereto as Exhibit B. This Freak off lasted four (4) days, with the Plaintiff being worked by Defendant Ventura to a point that skin lacerations developed along the shaft of the Plaintiff's penis. This sexual trauma was a direct result of being ordered by Defendant Ventura to masturbate for hours while Defendant Ventura watched and occasionally pleasured herself.  Plaintiff pleads these facts to establish that Ms.

Ventura was not a passive bystander but exercised agency and directed conduct toward Plaintiff, and is therefore independently liable for her own acts of inducement, manipulation, and exploitation alleged herein.

50. Defendant Ventura derived substantial financial benefit from her association with Mr. Combs and from her role in the enterprise. She was signed to Mr. Combs's record label, Bad Boy, and her recording career and public engagements were financed and controlled through Mr. Combs and his companies. Trial Tr. 416, 419 (May 13, 2025) (ECF No. 558). Ms. Ventura testified that, as an artist, she earned money performing and appearing at events. Trial Tr. 423. During the same period in which she recruited and arranged the participation of male companions including Plaintiff, Ms. Ventura continued to receive the benefit of that Combs-financed career, including performing in New York in or about May 2016 in connection with Bad Boy anniversary and reunion performances, at or about the time of the New York encounters alleged herein. Plaintiff alleges that Ms. Ventura's continued receipt of these benefits was causally connected to her participation in and advancement of the enterprise, in which she recruited, approved, and supplied male participants, including Plaintiff, and performed the encounters that were its object.

*VII. Concealment of the Scope of the Arrangement*

51. Defendants concealed from Plaintiff that other men were being recruited, transported, and paid to participate in materially identical encounters, and that the arrangement was ongoing and organized rather than a private personal matter.

52. Ms. Ventura testified that she was tasked with locating male participants; that she initially responded to advertisements on Craigslist and Backpage; and that as the encounters "became really consistent," Defendants engaged a commercial escort service, Cowboys 4 Angels, with escorts "in, like, all the major cities in the U.S." Trial Tr. 516–17, 520. She testified that she communicated with a representative of that service to arrange for escorts based on the city Defendants were in. Trial Tr. 521.

53. Ms. Ventura identified several male participants by photograph and testified that they were "[j]ust some of them," not all of the men engaged. Trial Tr. 534–40. Had Plaintiff known that he was one of a group of men engaged across multiple states over a period of years through a commercial escort service as part of an ongoing, organized arrangement, he would not have agreed to participate.

54. In August 2013, Mr. Combs caused a significant laceration to Ms. Ventura's eyebrow by throwing her onto a bed frame; the wound was sutured by a plastic surgeon and left a permanent scar, as Ms. Ventura later described under oath. Trial Tr. 692–694, 698 (May 14, 2025) (ECF No. 560).

55. During the period alleged, Plaintiff personally observed the sutured injury to Ms. Ventura's eyebrow. When Plaintiff asked Ms. Ventura how she had been injured, Ms. Ventura told Plaintiff that she had fallen off a four-wheeler while in Dubai. Ms. Ventura did not tell Plaintiff that Mr. Combs had caused the injury or assaulted her, and at no point in her four days of trial testimony did she attribute the injury to a fall from a four-wheeler or to any event in Dubai.

56. Plaintiff alleges that, by giving him a false and innocuous explanation for a visible injury in fact inflicted through violence, Ms. Ventura actively concealed from Plaintiff the coercive and abusive character of the arrangement into which he had been drawn, and affirmatively deceived Plaintiff as to material facts, consistent with the inducement and concealment alleged elsewhere in this Complaint.

## VIII. Drugging Incidents (2011–2016)

57. Ms. Ventura administered controlled substances to Plaintiff to lower his inhibitions and prolong the encounters. During an encounter in the later part of 2011, Ms. Ventura offered Plaintiff ecstasy, representing it to be "light and harmless," and, as Plaintiff later learned, tripled his dosage. On another occasion in late 2011, after Plaintiff complained of exhaustion, Ms. Ventura crushed an ecstasy pill into a drink she gave him, representing that it was a small dosage; Plaintiff became severely intoxicated, and the encounter continued for more than two days. Ms. Ventura later admitted she had drugged him.

58. On or about the fall of 2015, at the Trump property at Columbus Circle in New York City, Mr. Combs drugged Plaintiff. Mr. Combs offered Plaintiff a pink substance described as "Pink MDMA" or "Pink Molly," and suggested that Ms. Ventura would be displeased if Plaintiff did not partake. Against his better judgment, Plaintiff consumed a small amount. Defendant Combs administered it in the course of an encounter he intended to continue, as part of the established pattern of drugging to induce and prolong the sexual sessions. Within minutes he became extremely warm, began sweating uncontrollably, suffered violent spasms, and vomited repeatedly. Ms. Ventura later stated that the substance was not "Molly." Plaintiff was given approximately $1,500 and released, and

walked more than forty blocks in December conditions before obtaining help. Plaintiff alleges that Mr. Combs administered this substance in the course of an encounter he intended to continue, as part of the established pattern by which Defendants used controlled substances to lower Plaintiff's inhibitions, overcome his resistance, and prolong the commercial sexual encounters, and not as an isolated act that merely ended the evening.

59. Plaintiff is the individual identified in Ms. Ventura's testimony as "Dave," and Plaintiff was personally present at an encounter at a motel in the Hamptons, New York, described in that testimony, at which Ms. Ventura ingested GHB, lost consciousness, and was found unresponsive in the shower. Trial Tr. 697–698 (May 14, 2025) (ECF No. 560).

60. Contrary to any suggestion that the sexual encounter that followed was initiated or compelled by Mr. Combs, Plaintiff states of his own personal knowledge that it was Ms. Ventura who asked for and pressed to proceed with the encounter, and that Mr. Combs in turn pressured Plaintiff to comply in order to please Ms. Ventura.

61. Plaintiff further alleges that Ms. Ventura manipulated him by representing that Plaintiff had saved her life during the overdose and had therefore earned and deserved a reward, thereby placing Plaintiff under

extreme psychological pressure to engage in the sexual conduct that followed. This incident is representative of the pattern of inducement, pressure, and manipulation directed at Plaintiff alleged throughout this Complaint.

### IX.  Interstate Transportation for Commercial Sex (2012–2019)

62. Beginning in or about early 2012, Ms. Ventura and Mr. Combs arranged Plaintiff's travel from New York City to Miami and Los Angeles on numerous occasions to participate in commercial sexual encounters; as Ms. Ventura testified, the airfare for these trips was paid, depending on the occasion, by Ms. Ventura, by a travel agent acting at Mr. Combs's direction, or by Plaintiff himself. Ms. Ventura used promises of gifts, money, and vacations to induce Plaintiff to travel.

63. The first such instance occurred when Plaintiff was flown to Miami from New York. A JetBlue flight was booked and paid for by Ms. Ventura. Plaintiff met Defendants at a hotel in Miami and checked in under the alias "Frank Black" supplied by Ms. Ventura. During the trafficking instances, Plaintiff was presented to hotel staff as "security" for Bad Boy Entertainment.

64. Ms. Ventura confirmed that encounters involving Plaintiff occurred in "New York City, Miami, Los Angeles, Vegas." Trial Tr. 661. Mr.

Combs's own communications reflect that Plaintiff's attendance was procured by air travel at Mr. Combs's expense; in Government Exhibit B-622, Mr. Combs wrote that he would "fly Dave in," which Ms. Ventura testified meant he "was offering to fly him in for a freak-off." Trial Tr. 661.

65. Once transported and under Defendants' control at a distant location, Plaintiff had no ready means to return home without complying with Defendants' demands; asked to come for one day, he was on occasion not released for three days.

### X.   The Beverly Hills Hotel Encounter (October 2014)

66. On or about October 7, 2014, at the Beverly Hills Hotel in Los Angeles, Ms. Ventura engaged in sexual intercourse with Plaintiff during her menstrual cycle. Plaintiff had traveled to Los Angeles under Defendants' direction. Plaintiff's contemporaneous airline itinerary reflects travel from New York (JFK) to Los Angeles (LAX) on October 7, 2014 (Exhibit A). Upon arrival the setting differed from prior encounters, and Ms. Ventura was angry that Plaintiff had initially declined to travel.

67. Ms. Ventura forced herself upon Plaintiff, positioned him on a sofa, and, while he was in a compromised position and repeatedly asking her to wait, took hold of him and initiated intercourse. When Plaintiff was able

to reach a light, he discovered that Ms. Ventura was menstruating heavily. Ms. Ventura later acknowledged that she had been aware of her condition. Mr. Combs, who was present, offered Plaintiff additional money and directed him to a separate suite.

## XI. Concealment and Transmission of a Sexually Transmitted Infection (2016) — New York

68. Throughout the period alleged, Plaintiff engaged in sexual contact with Ms. Ventura without a condom. Prior to meeting Defendants, Plaintiff had no sexually transmitted infection and, apart from his own committed partner, did not engage in unprotected contact; Ms. Ventura was the only other person with whom he did not use a condom.

69. Unprotected contact was Ms. Ventura's established practice. Daniel Phillip, another male participant, testified that at his first encounter with Ms. Ventura she did not ask him to wear a condom. Trial Tr. 355. Condoms were among the supplies stocked for the encounters but were not used. Trial Tr. 501–02.

70. Ms. Ventura had actual knowledge of her own recurring genitourinary infections arising from these encounters. She testified that the infections were recurring and severe; that she participated in encounters while infected ("Sometimes I couldn't get rid of it and I was actually doing the

freak-off with an infection"); that her infections became refractory to antibiotics; and that Mr. Combs was aware of them and required her to participate notwithstanding. Trial Tr. 677, 680 (May 14, 2025) (ECF No. 560); Tr. 1329 (May 16, 2025) (ECF No. 564). Across four days of testimony, Ms. Ventura did not testify that she ever disclosed any infection or symptom to any male participant. Trial Tr. 500–1448.

71. On or about May 2016, in connection with Bad Boy performances in New York (including at Barclays Center in Brooklyn on May 20, 2016, at which Ms. Ventura performed), Plaintiff was summoned to a hotel in New York for an encounter with Ms. Ventura. Upon Plaintiff's entry, and consistent with Defendants' established practice, Defendants seized Plaintiff's identification and cellular telephone and retained them, depriving him of the means to leave or to summon assistance. The encounter proceeded without a condom. Ms. Ventura did not disclose, before or during the encounter, that she had been diagnosed with, treated for, or exposed to any sexually transmitted infection.

72. In the weeks following that encounter, Plaintiff experienced discomfort on urination that persisted and worsened. On or about June 2016, Plaintiff was tested and received a positive result for Chlamydia trachomatis, for which he received and completed antibiotic treatment.

73. On or about September 2016, after Plaintiff had completed treatment for the infection and in connection with further New York-area performances (including at Madison Square Garden in New York City on September 4, 2016), Plaintiff met with Defendants again. Upon Plaintiff's entry, and as at the prior New York encounter, Defendants again seized Plaintiff's identification and cellular telephone and retained them. Because of the infection he had contracted, Plaintiff produced a condom at the outset. When Mr. Combs questioned it and Plaintiff explained that he wished to use protection, Ms. Ventura interjected, stating to Mr. Combs words to the effect of, "Oh, babe, he might be talking about the chlamydia thing."

74. When Plaintiff — who had said nothing about chlamydia — asked what she meant, Ms. Ventura stated that she had had "a chlamydia scare" some weeks earlier; that she attributed it to Mr. Combs's infidelity; that she had intended to contact Plaintiff about it; and that she had assumed he was unaffected because he had not contacted her. Ms. Ventura's statements are admissions that she was infected at or about the time of her sexual contact with Plaintiff, that she knew of the infection, and that she consciously elected not to inform him. Fed. R. Evid. 801(d)(2)(A).

75. A sexual partner's knowledge that she is or may be infected with a communicable sexually transmitted infection is material to any decision

FIFTH AMENDED COMPLAINT — 29

to engage in unprotected sexual contact. Plaintiff would not have engaged in any sexual contact with Ms. Ventura had he been informed that she was or might be infected. Plaintiff's consent extended to sexual contact with a partner he had been given to understand was free of infection; it did not extend to exposure to a communicable disease. Ms. Ventura's failure to disclose was not inadvertent, and Mr. Combs, who knew of her infection, made no disclosure either. Defendant Ventura and Defendant Combs thereby acted with actual knowledge, or at minimum reckless disregard, of the risk of transmission to Plaintiff, and caused Plaintiff to contract a communicable infection.

## XII.  The December 2016 Miami Encounter: Confiscation, Witnessed Assault, and Confinement

76. On or about December 16–18, 2016, Plaintiff traveled to Miami Beach, Florida at Defendants' direction for an encounter with Ms. Ventura and Mr. Combs. Plaintiff's contemporaneous photographs reflect his arrival in Miami on December 16, 2016, and the hotel suite on December 18, 2016 (Exhibit C). Upon Plaintiff's entry into the hotel suite, Defendants took possession of Plaintiff's clothing, his identification, and his mobile telephone, and retained those items. Plaintiff alleges that this deprivation of his liberty was continuous throughout the encounter — beginning with

the confiscation of his clothing, identification, and telephone upon arrival, continuing through the period of sexual servitude, and extending through the confinement described below — and constituted a substantial and sustained restriction of his personal liberty within the meaning of California Penal Code § 236.1(h)(3).

77. This was Defendants' established practice: at each encounter, Defendant Ventura took possession of Plaintiff's clothing, identification, and telephone upon arrival and retained them until Defendants elected to return them, thereby depriving Plaintiff of the means to leave, to summon assistance, to identify himself, or to travel. Ms. Ventura testified that Mr. Combs took her own possessions "[a]ll the time," including laptops and telephone, taken by Mr. Combs and by security personnel on his direction, and returned only when the period she "was being punished for" had ended. Trial Tr. 460–61.

78. At the Miami encounter, consistent with the established structure, Plaintiff engaged in sexual intercourse with Ms. Ventura while Mr. Combs observed. Music was playing at a volume that prevented sound from carrying between rooms. Upon the conclusion of the act, Plaintiff withdrew as instructed. Ms. Ventura then remained with Mr. Combs, and Mr. Combs initiated intercourse with her.

79. While Mr. Combs was engaged with Ms. Ventura, she gestured toward Plaintiff in a manner Mr. Combs perceived as disrespect. Mr. Combs disengaged and kicked Ms. Ventura. When Plaintiff said words to the effect of "calm down," Mr. Combs directed a profane instruction at Plaintiff and ordered him into the adjoining room, and Plaintiff complied. Mr. Combs's use of a kick was consistent with the method of assault Ms. Ventura described under oath (that Mr. Combs would "mash me in my head, knock me over, . . . drag me, kick me, . . . stomp me in the head"). Trial Tr. 406, 754, 1329.

80. Plaintiff remained in the adjoining room for approximately twelve hours. Throughout that period Plaintiff had no clothing, no identification, and no telephone, all of which Defendants had taken upon his arrival. Plaintiff knocked on the door of the master suite and attempted to communicate with Defendants; Defendants did not respond. Plaintiff could not leave the suite: he had no clothing to wear, no identification with which to travel or satisfy hotel staff, and no telephone with which to summon assistance. Plaintiff did not consent to being confined, and his confinement ended only when Defendants elected to end it. Taken together, the confiscation of Plaintiff's clothing, identification, and telephone upon his entry, the sexual services he was required to perform

during the encounter, and his ensuing confinement for approximately twelve hours were not separate or isolated episodes but a single, continuous deprivation of Plaintiff's personal liberty, lasting from his arrival through his release and accomplished through coercion, duress, and physical restraint — a substantial and sustained restriction of his liberty within the meaning of California Penal Code § 236.1(h)(3).

81. Plaintiff does not purport to describe events that occurred outside his presence, and, because of the music, did not hear what occurred in the master suite after he was ordered from it. Plaintiff's agreement to attend the Miami encounter did not extend to being deprived of his clothing, identification, and telephone; to witnessing an assault; or to being confined for approximately twelve hours in a room he could not leave.

## XIII.  *Non-Consensual Recording*

82. Defendants recorded Plaintiff during encounters without his knowledge or consent. Ms. Ventura testified that encounters were recorded beginning "[p]retty early on. Within the first year," using "his devices and my own," and that Mr. Combs set up the recording equipment. Trial Tr. 569–70. She identified a still image taken from a video as "me and Dave." Trial Tr. 749–50.

83. By stipulation, video files were recovered from the "Frank Black" user profile on a device that Ms. Ventura provided to the government. Trial Tr. 6667. The recordings were therefore stored under the false identity Mr. Combs used with Plaintiff, on a device within Ms. Ventura's possession and control. Plaintiff never consented to being recorded, to the retention of any recording, or to any use of any recording. Several of the "Freakoff" videos from the criminal trial of Defendant Combs contained the Plaintiff engaged with Defendant Ventura.

## XIV. *Pattern Evidence Corroborating Plaintiff's Account*

84. Plaintiff's account of Defendants' practices is corroborated by the sworn testimony of Daniel Phillip, another male participant engaged by Defendants. Mr. Phillip testified that Mr. Combs threw a liquor bottle across the room when Ms. Ventura asked him to wait; that Mr. Combs grabbed Ms. Ventura by her hair and dragged her into the bedroom; and that Mr. Phillip then heard smacking sounds and heard Ms. Ventura apologize. Trial Tr. 388–89. Mr. Phillip testified that he put on his underwear because he "was afraid," and that he could see Ms. Ventura "was afraid," was "really upset," and had been "crying." Trial Tr. 385–86.

85. The pattern Mr. Phillip described is the same pattern Plaintiff describes: a male participant present in the suite; a sudden act of violence by Mr. Combs against Ms. Ventura arising from a perceived slight; the male participant removed from or excluded from the room; and the encounter's continuation or termination determined entirely by Mr. Combs.

86. Taken together, the foregoing establishes a pattern in which Plaintiff was systematically procured, pressured, and manipulated into sexual conduct for Defendants' benefit: Plaintiff was selected and approved as a participant with Ms. Ventura's assent; was transported at Defendants' arrangement and expense; was pressured to comply in order to please Ms. Ventura and induced to believe he was owed or had earned such conduct; and was kept from understanding the coercive and violent character of the arrangement by Ms. Ventura's affirmative misrepresentations. These acts were not isolated but formed part of the systematic exploitation and sexual manipulation alleged throughout this Complaint.

## XV. Government Cooperation and Public Identification (2023–2025)

87. On or about December 15, 2023, agents of the U.S. Department of Homeland Security contacted Plaintiff regarding his encounters with Defendants. From December 2023 through approximately June 2025, Plaintiff served as a cooperating witness for the United States Attorney's

Office for the Southern District of New York in *United States v. Combs*, No. 1:24-cr-00542 (AS) (S.D.N.Y.), providing airline receipts, boarding passes, hotel photographs, and communications, and detailed information regarding the encounters.

88. On or about July 2, 2025, Mr. Combs was convicted by jury verdict of interstate transportation for prostitution in violation of 18 U.S.C. § 2421. Plaintiff is identified as a victim in connection with that count in the Government's sentencing submission. Ms. Ventura testified at that trial and there identified Plaintiff by his legal name and described the conduct alleged herein.

## VITIATION OF CONSENT

89. Plaintiff's prior pleadings alleged that, at the time of the encounters, Plaintiff believed he was engaging in consensual arrangements with two private individuals. That allegation describes Plaintiff's contemporaneous, subjective state of mind — a state of mind Defendants deliberately manufactured and maintained through concealment and affirmative misrepresentation — and is not an allegation that Plaintiff's consent was in fact valid, informed, or coextensive with the conduct and conditions Defendants imposed. To be clear, Plaintiff does not disavow that he participated in the encounters or that he was paid; he alleges that

the prior characterization of those encounters as "consensual" described the induced state of mind Defendants manufactured at the time, and that such an induced belief is not valid legal consent because his participation was procured by the fraud, drugging, and physical restraint alleged herein. Plaintiff pleads the legal effect of the same facts, not a contradiction of them.

90. Plaintiff's apparent agreement to participate was procured by Defendants' affirmative misrepresentations as to their identities and purpose (including the false representation, made to procure his interstate travel, that Plaintiff was a "new employee" of Mr. Combs's company), and by their concealment of facts within their exclusive knowledge. The concealed facts were not collateral. They went to the essential character of the transaction: Plaintiff would be contacted by Defendant Ventura – who made promises of money/gifts if the plaintiff was available to see her. Plaintiff was selected by Defendant Ventura, he was procured through corporate accounts and his movement managed by corporate staff, under a false representation that he was an employee, as one of a series of men supplied to an ongoing arrangement, while being recorded without his knowledge, and while exposed without disclosure to a communicable infection.

91. Plaintiff's agreement did not extend to being filmed or to the retention or use of the recordings; to unprotected exposure to a sexually transmitted infection; to the administration of controlled substances at concealed or increased dosages; or to being deprived of his clothing, identification, and telephone and confined against his will. Plaintiff directly objected to being filmed to Defendant Ventura repeatedly. Agreement to one act is not agreement to a different or additional act, and consent procured through material misrepresentation and concealment of the nature of the transaction is not valid consent. Independently, fraud is an enumerated statutory means under the trafficking statutes pleaded herein; where a commercial sex act is caused by fraud, the apparent agreement of the person so induced is not a defense.

**TIMELINESS**

92. This action was commenced on June 30, 2025. The causes of action pleaded herein rest on specific incidents occurring within the applicable limitations periods, including the New York encounters and concealment and transmission of a sexually transmitted infection in 2016, and the Miami encounter and confinement in December 2016, each of which occurred after June 30, 2015.

93. Plaintiff's claim under 18 U.S.C. § 1595 is subject to a ten-year limitations period and is timely as to the conduct alleged. Plaintiff's claim under New York Social Services Law § 483-bb is limited herein to conduct occurring in the State of New York on or after January 19, 2016. Plaintiff's California claims are timely under the limitations periods provided by Cal. Civ. Code § 52.5 and Cal. Code Civ. Proc. § 340.16. As to § 340.16, the December 2016 sexual battery is timely within the ten-year limitations period; the October 2014 incident, pleaded in the alternative, is brought within the revival window of § 340.16(e) (open from January 1, 2026 through December 31, 2027) and was additionally tolled 178 days by California Emergency Rule of Court 9.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Human Trafficking — California Trafficking Victims Protection Act (Cal. Civ. Code § 52.5; Cal. Penal Code § 236.1)**

*(Against All Defendants)*

94. Plaintiff realleges and incorporates each preceding paragraph.

95. California Civil Code § 52.5 provides a civil remedy to a victim of human trafficking as defined by California Penal Code § 236.1, which prohibits depriving or violating the personal liberty of another with the

intent to obtain forced labor or services, or with the intent to effect or maintain a violation of specified sexual-exploitation offenses.

96. **As to Defendant Ventura.** Defendant Ventura deprived and violated Plaintiff's personal liberty with the intent to obtain forced services and to effect commercial sexual exploitation, accomplished principally through coercion and physical restraint and, in addition and in the alternative, through fraud and deceit. (a) Coercion and physical restraint: at the December 2016 Miami encounter, Plaintiff's clothing, identification, and telephone were taken and he was confined for approximately twelve hours. (b) Fraud and deceit, pleaded in addition and in the alternative: Ms. Ventura concealed a communicable sexually transmitted infection while engaging in unprotected contact with Plaintiff in New York in 2016, and made and participated in the false "new employee" misrepresentation to procure his travel. Each such act occurred within the limitations period and after June 30, 2015.

97. **As to Defendant Combs.** Defendant Combs deprived and violated Plaintiff's personal liberty with the same intent and by the same means, including by drugging Plaintiff (the 2015 "Pink Molly" incident), by directing and controlling the encounters, by procuring Plaintiff's

interstate transportation for commercial sex, and by the confiscation and confinement at the December 2016 Miami encounter.

98. **As to Defendants BBE and CeOpco.** BBE and CeOpco are liable as beneficiaries and participants in the venture. Through their agents acting within the scope of their employment — including Mr. Combs's chief of staff, assistants, and security personnel — the corporate defendants took affirmative acts furthering the venture (procuring and paying for Plaintiff's interstate travel on corporate accounts and Bad Boy Entertainment letterhead, and arranging Plaintiff's access to the encounter suites), with actual knowledge of the venture's character, and knowingly derived a benefit therefrom. In the alternative, BBE and CeOpco operated as a single enterprise and as instrumentalities of Mr. Combs, sharing administration, accounts, and personnel, such that the corporate form should be disregarded. The alter-ego and single-enterprise doctrines apply where (i) there is such a unity of interest and ownership that the separate personalities of the corporation and its owner do not in reality exist, and (ii) an inequitable result would follow if the acts are treated as those of the corporation alone. Plaintiff alleges the following factors: (a) commingling of funds and shared administration, in that the corporate accounts used to pay for Plaintiff's travel and accommodations,

including multiple affiliated limited-liability entities, were administered through common American Express accounts billed "c/o Bad Boy Entertainment"; (b) common ownership and control, in that Mr. Combs founded and controls both BBE and CeOpco; (c) shared personnel, in that the same chief of staff, assistants, and security personnel served the enterprise across entities; and (d) Adherence to the fiction of separate corporate existence would sanction fraud and promote injustice by permitting Mr. Combs to extract Plaintiff's services through, and shield the resulting liability behind, entities that operated as his instrumentalities. On materially similar allegations, and against these same corporate defendants, the court in *Nash v. Combs*, 2026 WL 1484285, Dkt. No. 41, at 19–20 (C.D. Cal. May 26, 2026), sustained an alter-ego claim, holding that allegations that the entities were "controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets … and to avoid liability," and that their employees were directed to clean up the rooms where Combs coerced sexual encounters and to stay silent, sufficiently addressed the common-ownership, shared-employee, shell-or-conduit, and common-officer factors.

99. **Vicarious liability (respondeat superior) — Defendants BBE and CeOpco.** Further in the alternative, BBE and CeOpco are vicariously liable for Mr. Combs's conduct under the doctrine of respondeat superior. Plaintiff alleges, on information and belief, that at all relevant times Mr. Combs acted within the scope of an employment and agency relationship with BBE and CeOpco, whose enterprise existed in significant part to service Mr. Combs's demands and to shield his assets and conduct from liability, and whose employees furthered the venture by procuring travel, arranging access to the encounter suites, stocking supplies, handling recording devices, and confiscating participants' belongings. On materially identical allegations, and against these same corporate defendants, the court in *Nash v. Combs*, 2026 WL 1484285, Dkt. No. 41, at 21–22 (C.D. Cal. May 26, 2026), sustained respondeat-superior liability, holding that where "one significant purpose of the Corporate Defendants' enterprise was expressly to shield Combs' assets, hide his crimes, and minimize his liability," it "stand[s] to reason that Combs' alleged misconduct was within the scope of his employment by these Corporate Defendants and the Corporate Defendants are responsible for his misconduct."

FIFTH AMENDED COMPLAINT — 43

100.     As a direct and proximate result, Plaintiff suffered injury and is entitled to actual, compensatory, and exemplary damages, civil penalties, attorney's fees and costs, and injunctive and equitable relief under Cal. Civ. Code § 52.5.

## SECOND CAUSE OF ACTION

## Trafficking Victims Protection Reauthorization Act (18 U.S.C. § 1595; predicate 18 U.S.C. §§ 1591, 1589)

### *(Against All Defendants)*

101.     Plaintiff realleges and incorporates each preceding paragraph. Section 1595 provides a civil remedy against a perpetrator of a violation of Chapter 77 of Title 18, and against whoever knowingly benefits from participation in a venture that the person knew or should have known engaged in such a violation.

102.     **Perpetrator liability — Defendant Ventura.** Within the limitations period, Defendant Ventura knowingly recruited, enticed, obtained, and transported Plaintiff, and arranged and caused his interstate transportation, knowing and in reckless disregard that coercion and fraud would be used to cause him to engage in commercial sex acts. Ms. Ventura employed coercion and physical restraint as a means, in that at the December 2016 Miami encounter Plaintiff was deprived of his

clothing, identification, and telephone and confined for approximately twelve hours. In addition and in the alternative, Ms. Ventura employed fraud as a means, in that she concealed her communicable infection while engaging in unprotected contact with Plaintiff in New York in 2016 (which he would not have done had he known), and made the false "new employee" misrepresentation to procure his travel. Plaintiff was paid for the commercial sex acts.

103.    **Perpetrator liability — Defendant Combs.** Within the limitations period, Defendant Combs knowingly obtained, transported, and maintained Plaintiff for commercial sex acts, knowing and in reckless disregard that force, fraud, and coercion would be used, including by drugging Plaintiff, by confiscating his belongings and confining him, and by procuring his interstate transportation. As the Court has already determined, the Complaint states a Section 1595 claim against Mr. Combs.

104.    **Beneficiary liability — Defendants BBE and CeOpco.** BBE and CeOpco knowingly benefited from participation in a venture that they knew, or should have known, engaged in acts in violation of 18 U.S.C. § 1591. Through their agents acting within the scope of their roles — including chief of staff Kristina Khorram and Mr. Combs's assistants and

security personnel — the corporate defendants took affirmative acts furthering the venture, including procuring and paying for Plaintiff's interstate air travel (documented on Bad Boy Entertainment letterhead and on corporate American Express accounts) and arranging Plaintiff's access to the hotel suites where the encounters occurred. Those agents had actual knowledge of the venture's character by virtue of their direct roles — including stocking the encounter suites with supplies for the encounters, handling the recording devices, and confiscating participants' belongings — and the corporate defendants received a benefit causally related to that affirmative conduct: the, entities' business was to monetize and protect Mr. Combs and the enterprise built around him, and servicing his private demands maintained that revenue-generating relationship and the value of that enterprise; the entities obtained the value of the services Plaintiff was procured to render and the use of their accounts, staff, and letterhead to obtain them; and the entities served to hold, move, and insulate Mr. Combs's assets and to shield him from liability. In the alternative to beneficiary liability, and as alleged in the First Cause of Action, BBE and CeOpco are liable for Mr. Combs's violations of 18 U.S.C. §§ 1591 and 1595 as his alter egos and under respondeat superior — the corporate-liability theories the court sustained against these same

corporate defendants in *Nash v. Combs*, 2026 WL 1484285 (C.D. Cal. May 26, 2026).

105. The conduct alleged occurred within ten years before the filing of this action. As a direct and proximate result, Plaintiff suffered injury and is entitled to damages, punitive damages, attorney's fees, and costs under 18 U.S.C. § 1595(a).

## THIRD CAUSE OF ACTION

**Sexual Assault — California Sexual Abuse and Cover Up Accountability Act (Cal. Code Civ. Proc. § 340.16; Cal. Penal Code §§ 243.4, 261)**

*(Against Defendants Ventura and Combs)*

106. Plaintiff realleges and incorporates each preceding paragraph. Section 340.16 provides an extended limitations period for a civil action for damages arising from a sexual assault committed against an adult, and requires an underlying act of nonconsensual sexual conduct that would constitute an offense under, among others, California Penal Code §§ 243.4 or 261.

107. **Sexual battery during unlawful restraint — Miami, December 2016 (Ventura and Combs).** At the December 2016 Miami encounter, Plaintiff engaged in sexual contact with Ms. Ventura while he was unlawfully restrained. Upon his arrival, Ventura took and retained his

clothing, identification, and mobile telephone and confined him, depriving him of any means to leave, and the sexual contact occurred under those conditions of restraint and against his will as to the conditions imposed upon him. The touching of intimate parts occurred while Plaintiff was so restrained and for the purpose of sexual arousal, gratification, or abuse, constituting sexual battery under California Penal Code § 243.4. Defendant Ventura directed this encounter and enforced the restraint and is liable as a direct participant and accomplice. In the alternative, and to the extent the December 2016 sexual contact is characterized as an act of sexual intercourse to which Section 243.4 does not apply, the same conduct — accomplished while Plaintiff was unlawfully restrained and against his will by the duress and menace of the confiscation and confinement described above — constitutes an offense under California Penal Code § 261, which is an act to which Section 340.16 applies.

108.    **In the alternative — the October 2014 Beverly Hills encounter (Ventura).** Defendant Ventura accomplished an act of sexual intercourse against Plaintiff's will by physical means: she pressured herself upon him, positioned him on a sofa, and, while he repeatedly asked her to wait and was physically positioned and overborne, took hold of him and

initiated intercourse without his agreement. Plaintiff discovered after Ventura's climax he was covered in Ventura's menstruation. Ventura cared nothing for this, completely disregarding it. Mr. Combs, who was present, then acted to contain and silence Plaintiff — using staff and resources administered through Defendants BBE and CeOpco, and offering Plaintiff money — so that Plaintiff would not report the assault to law enforcement. Ventura confiscated Plaintiff's identification upon entry into the suite and did not return it until his departure flight several days after the assault.  This course of conduct and the events described are in violation of California Penal Code § 261. This claim is timely under the revival provision of California Code of Civil Procedure § 340.16(e), which applies to a cause of action pending on January 1, 2026 and remains open through December 31, 2027 for a sexual assault as to which one or more entity defendants bear legal responsibility and engaged in a cover-up — including the confidential resolution of related claims funded by Mr. Combs's companies, the entity Defendants' funding of the accommodations at which the assault occurred, the false "Security" cover story used to conceal Plaintiff's presence and purpose, and the payments made to Plaintiff to keep him silent and to deter any report to law enforcement — as alleged herein; the limitations period was

additionally tolled 178 days under California Emergency Rule of Court 9. This claim does not rest on any theory that fraud or nondisclosure vitiated Plaintiff's consent.

109.    As a direct and proximate result, Plaintiff suffered physical and psychological injury and is entitled to compensatory and punitive damages under Cal. Code Civ. Proc. § 340.16 and applicable law.

**FOURTH CAUSE OF ACTION**

**Human Trafficking — New York Social Services Law § 483-bb (predicate N.Y. Penal Law § 230.34)**

*(Against All Defendants)*

110.    Plaintiff realleges and incorporates each preceding paragraph. New York Social Services Law § 483-bb(c) provides a civil remedy to a victim of trafficking against the perpetrator and against whoever knowingly advances or profits, or knew or should have known he or she was advancing or profiting, from a trafficking offense.

111.    **Limitation of this Count.** This Count is limited to conduct occurring in the State of New York on or after January 19, 2016, the effective date of § 483-bb, and does not rely on conduct occurring in Miami or Los Angeles or before that date.

112. **As to Defendant Ventura.** In New York, on or after January 19, 2016, Defendant Ventura knowingly advanced and profited from prostitution activity involving Plaintiff by one or more statutory means, including by withholding and confiscating Plaintiff's identification with intent to impair his freedom of movement (N.Y. Penal Law § 230.34(3)), and by making material omissions concerning her communicable infection to induce his continued participation (id. § 230.34(2)), in connection with the May 2016 and September 2016 New York encounters.

113. **Advancing prostitution.** Ms. Ventura's liability under this Count rests principally on her advancement of prostitution activity within the meaning of New York Penal Law § 230.15(1): acting other than as a prostitute or a patron, she knowingly engaged in conduct designed to institute, aid, and facilitate the prostitution enterprise, including by recruiting and approving male participants, arranging and procuring Plaintiff's attendance at the New York encounters, and coordinating those encounters. In the alternative, and to the extent she received value connected to that activity, she profited from it. Ms. Ventura's advancement of prostitution occurred in New York on or after January

19, 2016, including in connection with the May 2016 and September 2016 New York encounters alleged herein.

114.    **As to Defendant Combs.** In New York, on or after January 19, 2016, Defendant Combs knowingly advanced and profited from that prostitution activity, including by directing and financing the encounters and by procuring Plaintiff's attendance, and by applying at the May 2016 and September 2016 New York encounters the same established practice of confiscation and isolation alleged above — taking Plaintiff's clothing, identification, and mobile telephone upon arrival and isolating him — thereby compelling and inducing Plaintiff's continued participation in prostitution activity by force and by a scheme, plan, or pattern designed to instill fear, a coercive means under New York Penal Law § 230.34(3) that is independent of, and in addition to, any fraud-based means and does not depend on the fraud-causation issue.

115.    **As to Defendants BBE and CeOpco.** BBE and CeOpco knowingly advanced and profited from, and knew or should have known they were advancing and profiting from, that prostitution activity, through the affirmative acts of their agents in procuring travel and arranging Plaintiff's access to the New York encounters.

116.    As a direct and proximate result, Plaintiff suffered injury and is entitled to compensatory and punitive damages, attorney's fees, and costs under N.Y. Soc. Serv. Law § 483-bb.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and award the following relief:

1. Compensatory and actual damages according to proof;

2. Statutory damages, civil penalties, and exemplary or punitive damages as provided by Cal. Civ. Code § 52.5, 18 U.S.C. § 1595, Cal. Code Civ. Proc. § 340.16, and N.Y. Soc. Serv. Law § 483-bb;

3. Past, present, and future medical and mental-health treatment expenses attributable to Defendants' conduct;

4. Injunctive relief enjoining Defendants from contacting, harassing, or retaliating against Plaintiff, and from using or disseminating any recording of Plaintiff;

5. Reasonable attorney's fees and costs as provided by 18 U.S.C. § 1595(a), Cal. Civ. Code § 52.5, Cal. Code Civ. Proc. § 340.16, and N.Y. Soc. Serv. Law § 483-bb;

6. Pre- and post-judgment interest as provided by law; and

7. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution.

Dated: July 30, 2026

Respectfully submitted,

*Clayton Howard*

Clayton Howard,

Plaintiff Pro Se

24 Orchard Street,

Carteret, New Jersey 07008

(929) 781-7791

itsclaytonhoward@gmail.com

## <u>RULE 11(b) CERTIFICATION</u>

I, Clayton Howard, Plaintiff pro se, certify pursuant to Rule 11(b) of the Federal Rules of Civil Procedure that this Fifth Amended Complaint is not presented for any improper purpose; that the legal contentions are warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law; and that the factual contentions have evidentiary support or, where specifically

identified, are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery. Plaintiff has conducted a reasonable inquiry into the facts and law prior to filing.

Dated: July 30, 2026

*Clayton Howard*
_____

Clayton Howard, Plaintiff Pro Se

**VERIFICATION (28 U.S.C. § 1746)**

I, Clayton Howard, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on July 30, 2026, at Carteret, New Jersey

.

*Clayton Howard*
_____

Clayton Howard

Plaintiff, Pro se

**EXHIBIT INDEX**

The following true and correct copies of records in Plaintiff's possession are submitted in support of this Complaint and are incorporated by reference pursuant to Fed. R. Civ. P. 10(c):

**Exhibit A** — Airline itinerary, New York (JFK) to Los Angeles (LAX), October 7, 2014 (JetBlue confirmation CSGHYA), reflecting Plaintiff's travel in connection with the October 2014 Los Angeles encounter.

**Exhibit B** — Airline itinerary, Fort Lauderdale to New York, March 20, 2016 (JetBlue confirmation ZGPGVM), reflecting Plaintiff's return from South Florida in connection with the March 2016 encounter.

**Exhibit C** — Photographs dated December 16, 2016 (arrival, Miami) and December 18, 2016 (hotel suite and interior corridor, Miami Beach), reflecting Plaintiff's December 2016 Miami trip and confinement.

**Exhibit D** — Airline itinerary, New York to Miami, November 8, 2013, reflecting Plaintiff's travel during the earlier period alleged.

**Exhibit E** — Airline itinerary, Fort Lauderdale to New York (JFK), October 20, 2014, reflecting Plaintiff's travel to and from South Florida.

**Exhibit F** — Contact entries maintained by Plaintiff for "Jackie" / "Jackie 2" and "Mr Sean," reflecting the aliases through which Defendants communicated with Plaintiff.

**DECLARATION AUTHENTICATING EXHIBITS (28 U.S.C. § 1746)**

I, Clayton Howard, declare under penalty of perjury under the laws of the United States that Exhibits A through F are true and correct copies of airline itineraries, photographs, and contact records maintained by me and retrieved from my own electronic mail account and mobile telephone, and that the travel and events they reflect occurred on the dates shown.

Executed on July 30, 2026, at Carteret, New Jersey.

*Clayton Howard*

Clayton Howard, Plaintiff Pro Se