Michael Schonbuch (Bar No. 150884)
schonbuch@schonbuchhallissy.com
Lilah N. Cook (Bar No. 350775)
cook@schonbuchhallissy.com
SCHONBUCH HALLISSY LLP
11999 San Vicente Boulevard
Suite 300
Los Angeles, CA 90049
Tel.: (310) 556-7900
*Attorneys for Defendants Sean Combs,*
*CeOpco, LLC,*
*and Bad Boy Entertainment LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CLAYTON HOWARD,<br><br>Plaintiff,<br><br>v.<br><br>SEAN COMBS, CASANDRA VENTURA, BAD BOY ENTERTAINMENT, LLC, and CEOPCO, LLC,<br><br>Defendants. | Case No. 2:25-cv-6031-AH-JPRx<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIFTH AMENDED COMPLAINT**<br><br>Hearing Date: October 7, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Anne Hwang<br>Courtroom: 9C |

# TABLE OF CONTENTS

INTRODUCTION .......... 1
BACKGROUND .......... 2
A. The FAC Allegations .......... 2
B. Procedural History .......... 4
LEGAL STANDARD .......... 5
ARGUMENT .......... 6
A. The State Law Claims Are Limited to Intra-state Conduct .......... 6
B. No Claim Is Stated Against Mr. Combs .......... 7
1. CTVPA (First Cause of Action) .......... 7
2. TVPRA (Second Cause of Action) .......... 12
3. Sexual Assault (Third Cause of Action) .......... 14
4. Human Trafficking (Fourth Cause of Action) .......... 15
C. No Claim Is Stated Against the Corporate Defendants .......... 16
1. The Corporate Defendants Cannot Be Treated as a Single Entity .......... 16
2. The Corporate Defendants Are Not Liable to Plaintiff .......... 20
3. The Corporate Defendants Are Not Vicariously Liable to Plaintiff .......... 21
CONCLUSION .......... 22

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A.A. v. Omnicom Grp., Inc.*,
2026 WL 504904 (S.D.N.Y. Feb. 24, 2026) .......... 7

*Acevedo v. eXp Realty, LLC*,
713 F. Supp. 3d 740 (C.D. Cal. 2024) .......... 12

*APT Elecs. v. SMTC Corp.*,
2025 WL 2653177 (C.D. Cal. Sept. 16, 2025) .......... 18, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*CRST, Inc. v. Super. Ct.*,
11 Cal.App.5th 1255 (Cal. Ct. App. 2017) .......... 21

*Daramola v. Oracle Am., Inc.*,
92 F.4th 833 (9th Cir. 2024) .......... 6

*Diamond Multimedia Sys., Inc. v. Super. Ct.*,
19 Cal.4th 1036 (1999) .......... 6

*Doe v. Gross*,
2024 WL 3729007 (S.D.N.Y. Aug. 7, 2024) .......... 14

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......... 5

*Far West Financial Corp. v. D & S Co.*,
46 Cal.3d 796 (1988) .......... 22

*Farmers Ins. Grp. v. County of Santa Clara*,
11 Cal.4th 992 (1995) .......... 21

*Fleites v. MindGeek S.A.R.L.*,
801 F. Supp. 3d 1045 (C.D. Cal. 2025) .......... *passim*

*Gerritson v. Warner Bros. Entm't Inc.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015) .......... 17, 18, 19

*Greenspan v. LADT, LLC*,
191 Cal.App.4th 486 (Cal. Ct. App. 2010) .......... 17

*In re Cloudera, Inc.*,
121 F.4th 1180 (9th Cir. 2024) .......... 5, 10

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012)....................5

*Lisa M. v. Henry May Newhall Mem. Hosp.*,
12 Cal.4th 291 (1995)....................21

*Lofthus v. Long Beach Veterans Hosp.*,
214 F. Supp. 3d 908 (C.D. Cal. 2016)....................8, 11, 12

*Mary M. v. Los Angeles*,
54 Cal.3d 202 (1991)....................21

*Mortenson v. United States*,
322 U.S. 369 (1944)....................8

*Nash v. Combs*,
2026 WL 1484285 (C.D. Cal. May 26, 2026)....................19

*People v. Lamb*,
37 N.Y.3d 1174 (2021)....................15, 16

*Ratha v. Phatthana Seafood Co.*,
35 F.4th 1159 (9th Cir. 2022)....................21

*Russo v. APL Marine Servs., Ltd.*,
135 F. Supp. 3d 1089 (C.D. Cal. 2015)....................6

*SEC v. Hickey*,
322 F.3d 1123 (9th Cir. 2003)....................18

*Smith v. AECOM Tishman*,
2022 WL 19410315 (S.D.N.Y. June 1, 2022)....................7

*Sonora Diamond Corp. v. Super. Ct.*,
83 Cal.App.4th 523 (Cal. Ct. App. 2000)....................18

*Sullivan v. Oracle Corp.*,
51 Cal.4th 1191 (2011)....................6

*Talib v. Guerrero*,
2016 WL 1470082 (C.D. Cal. Mar. 14, 2016)....................8

*Toho-Towa Co., Ltd. v. Morgan Creek Prods., Inc.*,
217 Cal.App.4th 1096 (Cal. Ct. App. 2013)....................17, 18

*Ward v. United Airlines, Inc.*,
9 Cal.5th 732 (2020)....................6


**Statutes**


18 U.S.C. § 1589....................12

18 U.S.C. § 1591....................12

Cal. Civ. Code § 52.5 ........ 6
Cal. Code Civ. Proc. § 340.16 ........ 6, 14
Cal. Penal Code § 243.4 ........ 14
Cal. Penal Code § 261 ........ 14
N.Y. Penal Law § 230.34 ........ 7, 15, 16
N.Y. Soc. Servs. Law § 483-bb ........ 7, 15

**Rules**

Fed. R. Civ. P. 12 ........ 1
Fed. R. Civ. P. 9(b) ........ 5

Defendants Sean Combs ("Mr. Combs"), CeOpco, LLC f/k/a Combs Enterprises LLC and d/b/a Combs Global ("CeOpco"), and Bad Boy Entertainment LLC ("BBE," and together with CeOpco, the "Corporate Defendants") respectfully submit this Memorandum of Points and Authorities in support of their motion to dismiss the Fifth Amended Complaint ("FAC"), dated August 3, 2026 (the "Motion"). Defendants move to dismiss the FAC under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## INTRODUCTION

The FAC still fails to state a claim against any of the Defendants. It acknowledges that Plaintiff knowingly participated in a years-long, paid, sexual arrangement, but now seeks to convert it into "sex trafficking" by labeling various circumstances (alleged fraud, drug use, recording, and confiscation of personal items) as coercive. The facts pleaded do not plausibly show that Mr. Combs used any of those means to obtain or receive Plaintiff's commercial sex acts. Plaintiff's business was sex for pay. He was a paid sex worker for Ms. Ventura.

The defects in the FAC are self-evident. The California trafficking claim relies on a 2015 drug incident in New York and an alleged 2016 confinement in Miami, neither of which are actionable under the statute. His fraud theory rests on a "new employee" cover story allegedly told to a travel agent, not to Plaintiff. And his alleged confinement occurred only after the sex act was completed. None of those allegations plausibly establish the necessary statutory elements of any claim.

The claims alleged against the Corporate Defendants are baseless. The FAC alleges alter-ego, corporate knowledge, and a supposed employment relationship, but the underlying facts show, at most, that personnel arranged travel, hotel access, and other logistics for consensual, paid sexual activities. Knowledge of commercial sex is not synonymous with knowledge of sex trafficking. And the allegations tie much of the financial activity to third parties, while pleading allegations applying to the Corporate Defendants "on information and belief and subject to confirmation in discovery."

Plaintiff has failed to state any claim against the Defendants. Enough is enough; this action should be dismissed with prejudice to end this colossal waste of time, money, and valuable judicial resources.

## BACKGROUND

### A. The FAC Allegations

From 2009 through 2019, Plaintiff worked as a prostitute. The FAC alleges that Defendant Casandra Ventura ("Ms. Ventura") and Mr. Combs were among his regular clients. The FAC alleges a continuous commercial arrangement in which Ms. Ventura and Mr. Combs paid Plaintiff to perform sexual acts. (FAC ¶ 1.) It does not allege that Plaintiff performed those acts without compensation, or that the parties interacted outside their scheduled encounters. It was based on a *quid pro quo*, sex for money.

According to the FAC, the paid sex encounters followed a routine:

- Plaintiff received information from Ms. Ventura on the when, where, and what (*e.g.*, hotel, room number, etc.). (*Id.* ¶¶ 14, 20, 22, 42);
- Upon arrival, Plaintiff agreed to surrender his clothing, identification, and phone to Ms. Ventura for the encounter. (*Id.* ¶ 22);
- Each encounter was divided into sessions. (*Id.* ¶ 23);
- Ms. Ventura would initiate a session with verbal interplay (*e.g.*, "no contact" interaction). (*Id.*);
- Ms. Ventura would seek Mr. Combs's permission to progress the session from no contact to contact, including full intercourse, with Mr. Combs observing the sex acts. (*Id.* ¶¶ 23, 26);
- A session ended when Ms. Ventura climaxed, after which the participants paused. (*Id.* ¶ 23);
- After the break, if she wanted to, Ms. Ventura would ask Mr. Combs if she could participate in another session with Plaintiff. (*Id.*);

- If Mr. Combs agreed, Ms. Ventura would initiate a new session, progressing in the same sequence from verbal interplay to full intercourse. (*Id.*);
- Each encounter, involving however many sessions, generally lasted between two to three days. (*Id.* ¶ 24.)

Plaintiff and Ms. Ventura allegedly used drugs during the encounters. (*Id.* ¶ 25.) Plaintiff received drugs from Ms. Ventura, although the FAC alleges that Mr. Combs supplied them once. (*Id.* ¶¶ 25-26.) It also alleges that on three occasions Plaintiff consumed a greater quantity of substances than he recognized. (*Id.* ¶¶ 57-58.) During one occasion, Plaintiff became too intoxicated to engage in sex but nevertheless was paid for his time. (*Id.* ¶ 58.)

The encounters allegedly began in New York City, Plaintiff's home city. (*Id.* ¶¶ 14, 20.) Beginning in 2012, Plaintiff traveled to Miami, Los Angeles, and Las Vegas for "commercial sexual encounters" with Ms. Ventura and Mr. Combs. (*Id.* ¶¶ 62, 64.) Ms. Ventura or Mr. Combs allegedly made the arrangements, while Plaintiff arranged other trips. (*Id.* ¶¶ 42, 62.)

The FAC also alleges that the Corporate Defendants financed or assisted in arranging encounters. Unidentified staff allegedly booked hotel rooms, prepared rooms, arranged flights, and provided logistical assistance for Ms. Ventura or Mr. Combs. (*Id.* ¶¶ 27-38.) But the FAC does not identify which Corporate Defendant employed these individuals and which employee did what. Nor does the FAC attribute the alleged financial assistance to the Corporate Defendants. Instead, it identifies accounts associated with other corporate entities, alleging "on information and belief and subject to confirmation in discovery" that the Corporate Defendants were the responsible entities or alter egos. (*Id.* ¶¶ 33-35.) The FAC contends that the Corporate Defendants operated as a single corporate apparatus and that they may each be held liable, regardless of which entity actually engaged in a specified act. (*Id.* ¶¶ 33, 35, 37-38.)

The FAC readily admits that Plaintiff consented to all sexual encounters with Ms. Ventura. (*Id.* ¶ 89.) However, it further alleges that two encounters were not consensual in particular aspects of the sexual activity. First, in October 2014, while in Beverly Hills, California, Ms. Ventura allegedly forced Plaintiff to have sex while she was menstruating. (*Id.* ¶¶ 66-67.) Second, in May 2016, while in New York City, Plaintiff allegedly had sex with Ms. Ventura while she had chlamydia, which she allegedly was aware of but did not disclose to him. (*Id.* ¶¶ 68-75.)

The FAC also alleges that, in December 2016, while in Miami, Plaintiff witnessed Mr. Combs assault Ms. Ventura. (*Id.* ¶¶ 76-81.) According to Plaintiff, after Plaintiff engaged in sex with Ms. Ventura, she was assaulted. (*Id.* ¶¶ 78-79.) Mr. Combs allegedly ordered Plaintiff into an adjoining room, where Plaintiff remained for several hours because he was afraid to leave. (*Id.* ¶¶ 79-80.)

**B. Procedural History**

On May 1, 2026, Defendants moved to dismiss the Fourth Amended Complaint based on the statute of limitations and failure to state a claim. (Dkt. Nos. 88-89.) On July 23, 2026, the Court granted, in part and denied in part, Defendants' motion. (Dkt. No. 154.) Plaintiff was granted leave to amend. (*Id.* at 20.)

On August 3, 2026, Plaintiff filed the FAC, purporting to allege the following:

- First Cause of Action: Violation of the California Trafficking Victims Protection Act ("<u>CTVPA</u>") under Cal. Civ. Code § 52.5);
- Second Cause of Action: Violation of the Trafficking Victims Protection Reauthorization Act ("<u>TVPRA</u>") under 18 U.S.C. § 1595;
- Third Cause of Action: Sexual Assault under Cal. Code Civ. Proc. § 340.16 (against Ms. Ventura and Mr. Combs only); and
- Fourth Cause of Action: Human Trafficking under N.Y. Soc. Servs. Law § 483-bb.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A court need not accept as true a plaintiff's characterization of pleaded conduct as "coercive," "fraudulent," "confinement," or "trafficking" where the underlying factual allegations do not plausibly support the characterization. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678; *see Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).

Additionally, if a claim alleges liability based on fraudulent conduct, then such allegations must be pleaded "with particularity." Fed. R. Civ. P. 9(b). "To properly plead fraud with particularity . . . a pleading must identify the who, what, when, where, and how of the misconduct charged." *In re Cloudera, Inc.*, 121 F.4th 1180, 1187 (9th Cir. 2024) (quotation omitted). "In other words, it must provide an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Id.* (quotation omitted). The complaint also must explain "why the statements were false or misleading at the time they were made." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012); *see In re Cloudera*, 121 F.4th at 1187.

## ARGUMENT

### A. The State Law Claims Are Limited to Intra-state Conduct

The FAC alleges sexual conduct for pay in several states. Although the TVPRA claim may encompass conduct occurring in multiple jurisdictions, Plaintiff's state-law claims are subject to the presumption against extraterritoriality and therefore must rest only on actionable conduct occurring within the respective state.

As is the case with federal law, California presumes that its laws do not apply extraterritorially. *See Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011); *Daramola v. Oracle Am., Inc.*, 92 F.4th 833, 843 (9th Cir. 2024). California courts presume its legislature did not intend a law to govern out-of-state conduct unless that intent is clearly expressed or reasonably inferred. *See Sullivan*, 51 Cal.4th at 1207. That presumption reflects the principle that a legislature legislates for domestic concerns, which avoids unintended conflicts with other sovereigns. *See Ward v. United Airlines, Inc.*, 9 Cal.5th 732, 749-50 (2020).

The non-extraterritoriality of state-law applies to the CTVPA claim. Nothing in Cal. Civ. Code § 52.5 expressly (or implicitly) authorizes extraterritorial application, notwithstanding that the statute has been amended multiple times. The same limitation applies to Plaintiff's sexual assault claim under Cal. Code Civ. Proc. § 340.16. Nothing in that statute authorizes its application to conduct occurring outside California.

The same policy applies if the Court is ruling on the merits of Plaintiff's sexual assault claim under California common law. Although the statutory presumption against extraterritoriality does not formally govern common-law claims, California similarly limits its common law where "the conduct which gives rise to liability" occurred outside California. *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1096 (C.D. Cal. 2015) (quoting *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal.4th 1036, 1059 (1999)).

New York follows the same general policy as California. New York legislation is presumptively inapplicable to conduct outside the state unless the legislature

expressly provides otherwise. *See A.A. v. Omnicom Grp., Inc.*, 2026 WL 504904, at *22 (S.D.N.Y. Feb. 24, 2026). Neither N.Y. Soc. Servs. Law § 483-bb nor its criminal predicate, N.Y. Penal Law § 230.34, contains an express statement of extraterritorial application. *See id.*; *Smith v. AECOM Tishman*, 2022 WL 19410315, at *5 (S.D.N.Y. June 1, 2022). Therefore, such laws apply internally only.

The Court should therefore assess the California and New York claims based only on actionable conduct within the state whose law supplies the claim.

**B. No Claim Is Stated Against Mr. Combs**

*1. CTVPA (First Cause of Action)*

The CTVPA claim fails against Mr. Combs because the conduct alleged occurred outside California. The FAC invokes the 2015 "Pink Molly" incident in New York and the December 2016 confiscation and confinement in Miami. (FAC ¶ 97.) For the reasons discussed above, neither out-of-state encounter can support liability. The FAC's remaining allegations do not identify a deprivation of Plaintiff's liberty based upon a statutorily prohibited means.

A "[d]eprivation or violation of the personal liberty of another" requires a "substantial and sustained restriction" of liberty accomplished through specified means, including force, fear, fraud, deceit, coercion, violence, duress, menace, or specified threats. Cal. Penal Code § 236.1(h)(3). Yet the FAC alleges that Plaintiff consented to all encounters, which all were planned in advance and, at times, involved travel to places other than Plaintiff's home state. (FAC ¶ 89.) Although Plaintiff attempts to characterize that consent as having been improperly procured or maintained, he must still plead facts plausibly showing that Mr. Combs both substantially and for a measurable period restricted his liberty through a prohibited means. The FAC does not do so.

Plaintiff attempts to avoid the consequences of his voluntary participation by alleging that what he regarded as consensual arrangements were procured (or maintained) through fraud, drugging, and restraint. (*Id.* ¶¶ 89-91.)

Accepting Plaintiff's subjective belief does not require the Court to accept a mere legal conclusion that Plaintiff's liberty was deprived or constituted trafficking. *See Iqbal*, 556 U.S. at 679. The issue is whether the facts plausibly show that Mr. Combs used prohibited means to obtain or maintain Plaintiff's services. They do not.

Focusing on the discrete incidents where Plaintiff alleged lack of consent to engage in sex for pay, a CTVPA claim is still not stated against Mr. Combs. Only one incident allegedly occurred in California when Plaintiff claims he was forced to have sex with Ms. Ventura while she menstruated. (*Id.* ¶¶ 66-67.)

The FAC does not allege that Mr. Combs knew Ms. Ventura was menstruating, let alone that he intentionally assisted her in forcing Plaintiff to engage in sex. (*Id.*); *see* Cal. Penal Code § 236.1 (a-c) (requiring victim's personal liberty be deprived or violated with *intent* to obtain forced labor/services); *Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1045, 1086-87 (C.D. Cal. 2025) (dismissing claim because complaint failed to adequately plead defendants *intended* to obtain forced labor/services from plaintiff); *Lofthus v. Long Beach Veterans Hosp.*, 214 F. Supp. 3d 908, 916 (C.D. Cal. 2016) (dismissing claim, in part, because the complaint failed to allege defendants acted with intent); *Talib v. Guerrero*, 2016 WL 1470082, at *11 (C.D. Cal. Mar. 14, 2016) (dismissing claim because complaint failed to allege requisite intent).

That Mr. Combs allegedly offered Plaintiff additional money after the alleged forced sex incident and directed him to another suite (FAC ¶ 67) does not plausibly establish intent to deprive Plaintiff of his liberty. *Post hoc* conduct cannot supply a missing allegation of antecedent intent. *See Mortenson v. United States*, 322 U.S. 369, 374-75 (1944).

Lastly, Plaintiff's new theory that his consent was "procured by [] fraud, drugging, and physical restraint" fails because there are no plausible allegations that

Mr. Combs used those means to obtain or maintain Plaintiff's participation in the sex encounters for which Plaintiff was paid. (FAC ¶ 89.)[1]

(a) <u>No Plausible Allegations of Fraud</u>

The fraud theories alleged concern use of a false identity, representations concerning Plaintiff's identity to third parties, the hiring of prostitutes, the alleged concealment of Mr. Combs's domestic abuse, and the alleged recording of encounters. (*Id.* ¶¶ 19, 21, 27-30, 43, 51-56, 82-83.) The FAC does not plausibly connect those alleged misrepresentations or omissions to Plaintiff's decision to participate in any California encounter.

Notably, the "new employee" representation was not alleged to have been made to Plaintiff. The FAC alleges that Ms. Ventura contacted Mr. Combs's corporate travel agent and that she and Mr. Combs described Plaintiff to that third party as a "new employee" so his travel could be booked without attracting questions. (*Id.* ¶¶ 28-30.) But Plaintiff does not allege that anyone told him he was an employee (not identifying which Defendant), that he believed he was traveling for employment, or that the representation affected his decision to travel. A misrepresentation made to conceal the purpose of travel does not plausibly establish that Plaintiff was fraudulently induced to travel or perform commercial sex acts. *See Fleites*, 801 F. Supp. 3d 1045, 1087 (CTVPA requires showing that causal connection between the wrongful acts and the commercial sex act in question). Those defects also apply to misrepresentations allegedly made to hotel personnel or third parties. *See id.*

Ms. Ventura and Mr. Combs's alleged use of aliases is not actionable either. The FAC alleges that they used aliases at the beginning of the pay-for-sex encounters but that Plaintiff knew their true identities before he began traveling out-of-state for those trysts. (FAC ¶¶ 19, 62.) The Penal Code requires that the restriction of liberty be

---

[1] This theory also contradicts the "judicial admissions" in the Fourth Amended Complaint that Plaintiff, without qualification, consented to the sexual encounters "[a]t all times." (Fourth Am. Compl. ¶ 272); (Dkt. No. 154 at 20 n.25.)

accomplished through fraud. *See* Cal. Penal Code § 236.1(h)(3). Once Plaintiff knew the identities of Defendants Combs and Ventura, the earlier aliases could not fraudulently induce a later encounter. Such inference is especially implausible because Plaintiff used a pseudonym in his job as a sex worker. (FAC ¶ 8); *see* Cal. Penal Code § 236.1; *Fleites*, 801 F. Supp. 3d at 1086.

The alleged hiring of sex workers other than Plaintiff cannot plausibly establish any fraud. The claim is incomprehensible. The FAC alleges no agreement or representation of exclusivity and no fact that Plaintiff's participation was conditioned on Ms. Ventura and Mr. Combs not hiring other sex workers. (FAC ¶¶ 51-53); *see Fleites*, 801 F. Supp. 3d at 1086.

The allegation that Mr. Combs fraudulently failed to disclose his alleged abuse of Ms. Ventura is also deficient to support a cause of action. (*Id.* ¶¶ 54-56.) The FAC does not allege facts showing that Mr. Combs had an obligation to disclose such purported information to Plaintiff as a condition of their voluntary and commercial arrangement. Regardless, the FAC does not plead where any actionable omission occurred, as required by Rule 9(b). *See In re Cloudera*, 121 F.4th at 1187. Because the CTVPA claim must rest on actionable conduct in California, the failure to plead such fact is fatal.

Finally, the allegedly recorded encounters are insufficiently pleaded to support a fraud. The FAC does not allege: (i) whether every encounter was recorded, (ii) which particular encounters were allegedly recorded; (iii) the location where recorded encounters occurred; (iv) the method used to create recordings; or (v) what Mr. Combs allegedly said or omitted concerning those recorded encounters. (FAC ¶¶ 82-83.) Although Plaintiff now claims that he objected to being filmed on some occasions (*id.* ¶ 91), that allegation underscores rather than cures the pleading deficiencies: the FAC does not distinguish between recordings Plaintiff knew about and either objected to or approved with recordings allegedly made without his knowledge or consent, much less identify a California encounter that was surreptitiously recorded. *See Fleites*, 801 F.

Supp. 3d at 1086 (wrongful acts must have actually caused the deprivation of the plaintiff's personal liberty).

The FAC therefore does not plausibly allege that Mr. Combs obtained or maintained Plaintiff's participation in any California encounter by fraud.

(b) No Plausible Allegations of Drugging

A CTVPA claim is not stated against Mr. Combs based on intentional drugging because the only drugging incident attributed to him occurred in New York, not California. (FAC ¶ 58.) Moreover, the FAC does not plausibly allege that Mr. Combs used drugs in California to compel Plaintiff's participation in any of his encounters with Ms. Ventura.

The FAC alleges that Plaintiff knowingly consumed drugs during every encounter. (*Id.* ¶ 25.) Plaintiff does not allege that he refused drugs or told either Ms. Ventura or Mr. Combs that he would not consume them. (*Id.* ¶¶ 25, 57-58.) And he continued participating in drug use even after an alleged overdose in 2011. (*Id.* ¶ 57.) There are no allegations that Mr. Combs administered drugs in California to obtain or maintain Plaintiff's participation through force or coercion. *See Lofthus*, 214 F. Supp. 3d at 916 (dismissing claim for failure to adequately plead wrongful acts done *with the intent* to obtain forced labor or services). Accordingly, a CTVPA claim is not stated against Mr. Combs.

(c) No Plausible Allegations of Confinement

Plaintiff's confinement allegations fail to state a CTVPA claim against Mr. Combs. Only one specific allegation of confinement is alleged and it concerns an alleged incident in Miami in December 2016. (*Id.* ¶¶ 76-81.) That conduct cannot underlie a CTVPA claim in California.

The FAC also relies on the purported recurring practice of taking Plaintiff's clothing, identification, and telephone upon arrival at an encounter. (*Id.* ¶¶ 22, 77, 91.) The Court must accept the pleaded facts concerning possession of the items, but it need not accept Plaintiff's conclusion that the practice necessarily constituted "physical

restraint," "coercion," or a deprivation of liberty. *See Iqbal*, 556 U.S. at 678. The FAC must plead facts supporting that inference.

According to the FAC, the practice occurred repeatedly. Yet the FAC does not allege that before an actionable California sex act any of the following: (i) Mr. Combs threatened to confiscate Plaintiff's belongings unless he performed sex; (ii) Mr. Combs refused any request to return Plaintiff's belongings; (iii) Mr. Combs physically prevented Plaintiff from leaving an encounter, or (iv) Mr. Combs communicated that surrender of the items was a means of compelling Plaintiff's participation in a sex act. *See Lofthus*, 214 F. Supp. 3d at 916; *Fleites*, 801 F. Supp. 3d at 1086.

The distinction between Mr. Combs's purported possession of the belongings and the coercive use of them is dispositive at the pleading stage. The FAC's conclusion that Plaintiff "could not readily leave" or was thereby restrained does not establish that Mr. Combs substantially restricted his liberty for a sustained period for the purpose of obtaining forced services. (FAC ¶ 22.) Accordingly, the CTVPA claim against Mr. Combs should be dismissed.

*2. TVPRA (Second Cause of Action)*

The TVPRA provides a civil remedy for violations of designated federal trafficking statutes. *See Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 763 (C.D. Cal. 2024). The FAC relies on 18 U.S.C. §§ 1591 and 1589. (FAC at 44.) Section 1591 applies where a defendant "knowingly recruits, entices, harbors, transports, provides, or obtains" a person for a commercial sex act knowing that "force, threats, fraud, or coercion" will be used; Section 1589 prohibits knowingly obtaining labor or services through specified coercive means. *See* 18 U.S.C. §§ 1591(a)(1), 1589(a).

The FAC does not plausibly allege that Mr. Combs obtained or maintained Plaintiff's participation in sexual activity through any prohibited means. The Court's July 23, 2026 order held that the TVPRA claim is barred as to events preceding June 30, 2015. (Dkt. No. 154 at 11.) Putting aside the inadequately pleaded allegations purporting to vitiate Plaintiff's consent to the sexual activities, as discussed above, the

FAC identifies only two incidents in 2016 that were purportedly nonconsensual: the New York encounter in which Ms. Ventura allegedly failed to disclose having chlamydia, and the Miami encounter where Plaintiff allegedly witnessed Mr. Combs assault Ms. Ventura. (FAC ¶¶ 68-81.) Neither plausibly alleges that Mr. Combs obtained Plaintiff's commercial sex acts through force, threats, fraud, or coercion.

The first encounter relies on fraud. But it does not plead Mr. Combs's participation in that alleged fraud with particularity. The FAC specifically alleges that Ms. Ventura knew she had chlamydia. (*Id.* ¶¶ 68-75.) Although it alleges that Mr. Combs knew Ms. Ventura experienced chlamydia "flare ups" (*id.* ¶ 70), that allegation is insufficient to prove he knew she had chlamydia, or any transmissible infection, during the May 2016 encounter; let alone that he knowingly kept that information from Plaintiff to facilitate his participation. *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 517-18 (S.D.N.Y. 2018) (liability requires showing defendant's "awareness, at the initial recruitment or enticement stage, that certain prohibited means [like fraud] will be employed to achieve . . . a commercial sex act."); *Croft v. Dolan*, 2024 WL 4536309, at *3 (C.D. Cal. Sept. 17, 2024) (dismissing TVPRA claim because allegations failed to establish "causal connection" between wrongful conduct and achievement of a commercial sex act). The FAC also fails to plead facts showing that Mr. Combs made or participated in a particular omission for the purpose of inducing Plaintiff to participate in sexual activity. *See id.* Whatever claim might be supportable against Ms. Ventura, the FAC fails to plead any knowing participation in the alleged fraud against Mr. Combs with the necessary particularity required under Rule 9(b).

The December 2016 allegations fail for a different reason: the chronology alleged in the FAC disconnects the supposed confinement from the commercial sex act. Plaintiff alleges that he first engaged in intercourse with Ms. Ventura while Mr. Combs watched. (*Id.* ¶ 78.) Only afterward did Mr. Combs allegedly assault Ms. Ventura, order Plaintiff into the adjoining room, and leave Plaintiff for approximately twelve hours. (*Id.* ¶¶ 79-80.) Thus, the confinement (*i.e.*, the most substantial restraint

alleged), occurred after the commercial sex act was complete. It therefore cannot plausibly have been the means by which Mr. Combs "obtained" that sex act. *See Croft v. Dolan*, 2025 WL 3720844, at *2 (9th Cir. Dec. 23, 2025).

Other facts alleged in the FAC fail to establish the knowledge required under Sections 1591 or 1589. It is alleged that after the assault, Mr. Combs ordered him into another room and eventually went to sleep. The FAC does not allege that Mr. Combs: (i) heard Plaintiff's later knocking, (ii) knew Plaintiff believed himself unable to leave, (iii) refused a request to return his property, or (iv) locked him in the room or threatened consequences if he departed. Nor does the FAC allege a mirroring prior pattern of conduct from which their knowledge could be inferred. *See Huett v. Weinstein Co. LLC*, 2018 WL 6314159, at *2 (C.D. Cal. Nov. 5, 2018); *Croft*, 2025 WL 3720844, at *2.

To the extent the TVPRA claim relies on fraud or drug-based circumstances, they fail for the reasons previously discussed above. Accordingly, the TVPRA claim against Mr. Combs cannot be sustained.

*3. Sexual Assault (Third Cause of Action)*

Because Section 340.16 provides no private right of action, this claim rests on violations of either Cal. Penal Code §§ 243.4 or 261. *See Doe v. Gross*, 2024 WL 3729007, at *3 (S.D.N.Y. Aug. 7, 2024); (FAC at 47.) However, no violation is adequately pleaded against Mr. Combs. The 2016 Miami encounter and 2014 California encounter (FAC ¶¶ 107-08), as explained above, cannot serve as predicate facts for the claim. Only California conduct is relevant, so the Miami encounter is inapplicable, and the encounter in California did not violate Cal. Penal Code § 261.

No liability can lie against Mr. Combs because no allegation accuses him of having sex with Plaintiff. Section 261, which covers the crime of rape, requires "an act of sexual intercourse." Cal. Penal Code § 261. The failure to allege this conduct destroys the claim. The Court should dismiss Plaintiff's sexual assault claim against Mr. Combs.

*4. Human Trafficking (Fourth Cause of Action)*

N.Y. Soc. Servs. Law § 483-bb provides a civil remedy for violations of specified criminal trafficking statutes. *See* N.Y. Soc. Servs. Law § 483-bb(c)(i). The FAC invokes N.Y. Penal Law § 230.34, which requires a defendant to intentionally advance or profit from prostitution through specified prohibited means, including administering drugs to impair judgment, making materially false statements or omissions to induce or maintain participation, or using force, threats, or specified coercive schemes. (FAC at 50.) The FAC does not plausibly allege those elements against Mr. Combs.

The Court's July 23, 2026 order held that Section 483-bb does not apply retroactively to events before January 19, 2016. (Dkt. No. 154 at 16.) The FAC pleads two principal statutory violations against Mr. Combs: (1) alleged participation in concealing Ms. Ventura's chlamydia, and (2) alleged confiscation of Plaintiff's belongings during the May and September 2016 New York encounters to compel Plaintiff's participation by force or a scheme to instill fear. (*Id.* ¶ 114.) Neither is adequately pleaded.

As discussed above, the FAC does not plead with particularity that Mr. Combs knew Ms. Ventura was infected during the May 2016 encounter or intentionally withheld that information to induce Plaintiff's participation. The September 2016 encounter does not cure that defect: Plaintiff's allegation that Ms. Ventura later referred to "the chlamydia thing" may bear on her knowledge but does not establish that Mr. Combs knew of her condition during the earlier encounter or intentionally concealed it from Plaintiff. (*Id.* ¶ 73.); *see People v. Lamb*, 37 N.Y.3d 1174, 1175 (2021) (Section 230.34 requires engaging in prohibited conduct (like fraud) *with the intent* of advancing or profiting off of prostitution).

The confiscation claim is insufficient because the factual allegations do not plausibly establish that force or a scheme to instill fear was ever employed. (FAC ¶ 114.) Plaintiff alleges that surrender of his belongings was the parties' practice over

years of encounters. For the May and September 2016 New York encounters, the FAC does not allege that Mr. Combs: (i) threatened Plaintiff; (ii) told him his property would be withheld unless he performed sex; (iii) refused a request for its return; (iv) prevented Plaintiff's departure; or (v) otherwise used possession of the property to compel prostitution. *See Lamb*, 37 N.Y.3d at 1175; *see id.* at 1184, 1186 (Singas, J. concurring).

Those omissions matter because the statutory theory requires more than an allegation that Mr. Combs possessed Plaintiff's belongings while prostitution occurred. It requires facts plausibly showing that he used force or a scheme designed to instill fear to induce or maintain Plaintiff's participation. *See* N.Y. Penal Law § 230.34; *Lamb*, 37 N.Y.3d at 1186 (Singas, J. concurring) (discussing Section 230.34's knowledge and causation requirements). Merely attaching that statutory conclusion to a pattern and practice is not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff's claim against Mr. Combs under Section 483-bb should be dismissed.

## C. No Claim Is Stated Against the Corporate Defendants

### 1. *The Corporate Defendants Cannot Be Treated as a Single Entity*

The FAC concedes that the Corporate Defendants are separate entities. (FAC ¶¶ 11-12.) Even so, it fails to differentiate among them for purposes of pleading and liability. For example, the FAC fails to particularize:

- Which Corporate Defendant, and which agents or employees, provided specific financial resources or logistical support for Ms. Ventura's and Mr. Combs's sexual arrangement with Plaintiff (*Id.* ¶¶ 31-38);
- Whether each Corporate Defendant, and any of its agents or employees, was aware of the sexual arrangement

between Ms. Ventura and Plaintiff and when such knowledge was acquired (*Id.*).[2]

Unable to plead liability against each entity based on specific conduct, Plaintiff instead invokes alter-ego and single-enterprise theories, alleging common ownership, shared personnel and administration, and purported commingling as a substitute. (FAC ¶ 98.) That is insufficient. California's single-enterprise doctrine permits affiliated corporations to be treated as one where nominally separate entities, in substance, constitute a single enterprise. *See Toho-Towa Co., Ltd. v. Morgan Creek Prods., Inc.*, 217 Cal.App.4th 1096, 1107-09 (Cal. Ct. App. 2013); *Greenspan v. LADT, LLC*, 191 Cal.App.4th 486, 512 (Cal. Ct. App. 2010). Relevant considerations include commingling, common ownership, shared offices or personnel, disregard of corporate formalities, and use of an entity as a shell or conduit. *See Toho-Towa*, 217 Cal.App.4th at 1108-09.

Plaintiff's supposed "commingling" allegation does not actually allege that the Corporate Defendants' funds were mixed together or with Mr. Combs's personal assets. Instead, the FAC alleges that several entities' American Express accounts were billed "c/o Bad Boy Entertainment" or administered through a common corporate apparatus. (FAC ¶¶ 33, 98.) Common administrative handling of accounts belonging to separate affiliates is not a commingling of the assets in those accounts. *See Gerritson v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1139 (C.D. Cal. 2015) (rejecting single enterprise theory, despite allegations of commingling of assets).

The FAC likewise alleges that Mr. Combs controlled BBE and CeOpco and that personnel served across affiliated entities. (*Id.* ¶ 98.) But common ownership, control, or shared administrative personnel among affiliates does not by itself establish that separate corporate personalities ceased to exist. *See Gerritson*, 116 F. Supp. 3d at

[2] The only employees named in the FAC are Mr. Combs's alleged chief of staff and one of his assistants. (*Id.* ¶ 36.) But neither person is alleged to be an employee of either Corporate Defendant.

1139-40; *Toho-Towa*, 217 Cal.App.4th at 1108 (same common principles between alter ego and single enterprise theories). The FAC does not allege disregard of corporate formalities, inadequate capitalization, lack of separate records, assumption of one entity's liabilities by another, or other facts showing that the Corporate Defendants were shells rather than separate entities.

The alter ego allegations similarly fail. The alter ego doctrine requires (i) a unity of interest and ownership that the separateness of the individual and corporation has effectively ceased and (ii) circumstances in which respecting the separate corporate form would "sanction a fraud or promote injustice." *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003). It is an "extreme remedy" that is designed to be "sparingly used." *See Sonora Diamond Corp. v. Super. Ct.*, 83 Cal.App.4th 523, 539 (Cal. Ct. App. 2000).

Plaintiff recites only the second element by alleging that respecting corporate separateness would permit Mr. Combs to extract Plaintiff's services and shield liability behind instrumentalities. (FAC ¶ 98.) But that is the very conclusion the alter-ego doctrine requires Plaintiff to support with facts. *See Sonora Diamond Corp.*, 83 Cal. App. 4th at 539 (there must be evidence of injustice specifically "flowing from the recognition [of the company's] separate corporate identity" to satisfy the doctrine's second element). The FAC does not plead facts showing that: (i) either BBE or CeOpco was created or used to evade an existing obligation to Plaintiff; (ii) assets were transferred to defeat recovery; or (iii) either entity's separate existence caused the alleged injury. The FAC's assertion that an "inequitable result" would otherwise follow restates the legal element. *See APT Elecs. v. SMTC Corp.*, 2025 WL 2653177, at *3-4 (C.D. Cal. Sept. 16, 2025) (rejecting alter ego theory where the plaintiff's allegations were "little more than a conclusory recitation of the alter ego factors" considered by the courts); *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539 (rejecting alter ego theory for similar reasons).

Plaintiff relies on *Nash v. Combs*, 2026 WL 1484285 (C.D. Cal. May 26, 2026), but it does not address the deficiencies here. (FAC ¶¶ 38, 98-99, 104, 115.) *Nash* addressed the allegations and circumstances there, and the decision underscores that alter ego analysis "relies on the unique circumstances of each case." *Nash*, 2026 WL 1484285, at *11. Whatever the merits of the allegations in *Nash*, Plaintiff must plead facts establishing alter ego here. Repeating language from another complaint or decision is not a substitute for alleging facts that plead alter ego liability here.

*Nash* highlights the defects here. According to the FAC, *Nash* involved allegations that corporate employees cleaned rooms following coerced sexual encounters, instructed plaintiff not to speak about them, and that the entities were used to conceal misconduct and shield assets. (FAC ¶¶ 38, 98-99.) Here, by contrast, the conduct Plaintiff attributes to staff is principally booking travel, arranging room access, stocking ordinary sexual supplies, and handling logistical matters. Plaintiff then adduces the legal conclusion that the employees knew the encounters were "maintained through fraud and coercion." (FAC ¶ 37.)

The FAC's entity-specific allegations are trumped up without substance. Plaintiff identifies accounts associated with non-parties 207 Anderson LLC, Combs Enterprises LLC, 40 Hedges Realty Inc., 56th and Broadway LLC, and an American Express account held by Mr. Combs. (*Id.* ¶¶ 33-34.) He then alleges "on information and belief and subject to confirmation in discovery," without identifiable basis, that the Corporate Defendants were the relevant entities or their alter egos. (*Id.* ¶ 33.) A single travel invoice does not establish that the Corporate Defendants jointly operated without corporate separateness (*i.e.,* as alter egos). *See Gerritson*, 116 F. Supp. 3d at 1138-43 (collecting cases and rejecting alter ego theory for similar reasons). The alter ego theory requires the pleading of "specific facts" supporting the destruction of corporate separateness. *APT Elecs.*, 2025 WL 2653177, at *3-4. Because the FAC alleges only conclusions, the alter ego doctrine cannot apply.

Plaintiff cannot cure the absence of entity-specific allegations by suing multiple companies collectively and asserting joint liability without pleading what each entity did and why that conduct creates liability. Nor may he defer the necessary allegations until discovery by stating that his theory remains "subject to confirmation in discovery." (FAC ¶ 33.) The claims against the Corporate Defendants cannot rest on a single-entity basis and should be dismissed.

*2. The Corporate Defendants Are Not Liable to Plaintiff*

The FAC alleges that the Corporate Defendants facilitated the commercial encounters by arranging or paying for travel and accommodations. (FAC ¶¶ 11-12, 31, 89.) Those logistical-type allegations do not plausibly state sex trafficking or sexual-assault. The FAC for the first time alleges that corporate agents had "actual knowledge" that the encounters were maintained through fraud and coercion. (*Id.* ¶ 37.) But that is a mere conclusion.

The Court must examine the facts Plaintiff offers to support it. *See Iqbal*, 556 U.S. at 678. Those facts are that personnel allegedly stocked rooms with baby oil, lubricant, and condoms; arranged travel and room access; handled recording equipment; and participated in taking belongings prior to a sexual encounter. (FAC ¶ 37.) All that the above allegations infer is that a sexual encounter was potentially afoot. They do not plausibly establish that the involved personnel knew that Plaintiff was allegedly trafficked. Knowledge of commercial sex is not knowledge that force, fraud, or coercion is used to obtain the sex worker's participation. *Croft*, 2024 WL 4536309, at *4 (no TVPRA claim without knowledge of wrongful means being used to procure commercial sex act).

Indeed, the FAC never bridges the gap with facts showing that a BBE or CeOpco employee witnessed Mr. Combs threaten Plaintiff, knew Plaintiff was participating involuntarily, was told Plaintiff wanted to leave, or knew of a specific fraud inducing his participation. *See id.* (dismissing TVPRA claim against certain defendants because

no plausible allegations existed that they knew commercial sex was being procured through force, fraud, or coercion).

The same deficiency defeats TVPRA beneficiary liability. Section 1595 does not impose civil trafficking liability merely because a business provided ordinary logistical services connected with commercial sex. Plaintiff must plausibly allege participation in and benefit from a venture that the defendant knew or should have known engaged in a violation of Sections 1589 or 1591. *See Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1176 (9th Cir. 2022). The factual allegations concerning the Corporate Defendants do not plausibly establish such knowledge.

Accordingly, the Court should dismiss any direct liability theory against the Corporate Defendants.

*3. The Corporate Defendants Are Not Vicariously Liable to Plaintiff*

The FAC fails to plead vicarious liability. "[A]n employer is vicariously liable for torts committed by its employees within the scope of their employment." *CRST, Inc. v. Super. Ct.*, 11 Cal.App.5th 1255, 1260 (Cal. Ct. App. 2017) (quotation omitted). The question is whether, "in the context of the particular enterprise[,] an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 209 (1991) (quotation omitted).

This test applies even more strictly in cases involving sexual torts. "[A] sexual tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-related events or conditions," such as where the sexual tort "serv[ed the company's] interests[.]" *Lisa M. v. Henry Mayo Newhall Mem. Hosp.*, 12 Cal.4th 291, 301 (1995). Outside limited circumstances (*e.g.*, "on-duty police officers against members of the public"), an "employer is not vicariously liable to the third party for such [sexual] misconduct." *Farmers Ins. Grp. v. County of Santa Clara*, 11 Cal.4th 992, 1006-07 (1995).

The FAC does not plausibly allege that Ms. Ventura or Mr. Combs were employed by CeOpco or BBE. There are no allegations regarding their positions with either entity, the duties they allegedly performed, or other facts showing that procuring commercial sex or committing the alleged torts was conduct they were employed to perform. Vicarious liability depends on the alleged conduct of identified corporate agents or employees. (FAC ¶¶ 98, 104, 115.) Here, the FAC fails to identify those individuals, their positions, their employers, or the particular tortious acts they allegedly committed.

The FAC also fails to plead facts showing that any such improper conduct fell within the scope of employment. It does not allege what the unidentified employees' responsibilities were, how the alleged misconduct furthered either Corporate Defendant's business, or why trafficking or sexual misconduct could fairly be regarded as typical of or broadly incidental to an entertainment enterprise. *See Far West Financial Corp. v. D & S Co.*, 46 Cal.3d 796, 813, fn. 13 (1988).

Accordingly, the Court should dismiss any claim based on vicarious liability against the Corporate Defendants.

**CONCLUSION**

Based on all of the foregoing, the Court should grant the Motion, together with such other and further relief as the Court deems just and proper.

Dated: August 24, 2026

SCHONBUCH HALLISSY LLP

*/s/ Michael Schonbuch*

Michael Schonbuch
Lilah N. Cook

*Attorneys for Defendants Sean Combs, CeOpco, LLC, and Bad Boy Entertainment LLC*

**CERTIFICATION OF COMPLIANCE**

The undersigned, counsel of record for Mr. Combs, CeOpco, and BBE certifies that this brief contains 6,836 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 24, 2026

________________________________

Michael Schonbuch
Lilah N. Cook