Mélodie Han (Bar No. 357207)
Douglas H. Wigdor (*pro hac vice* forthcoming)
Meredith A. Firetog (*pro hac vice* forthcoming)
mhan@wigdorlaw.com
dwigdor@wigdorlaw.com
mfiretog@wigdorlaw.com
**WIGDOR LLP**
85 Fifth Avenue, Floor 5
New York, NY 10003
Tel. (212) 257-6800
Fax. (212) 257-6845

*Counsel for Defendant Casandra Ventura*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CLAYTON HOWARD,<br><br>Plaintiff,<br><br>v.<br><br>SEAN COMBS, CASANDRA VENTURA, BAD BOY ENTERTAINMENT, L.L.C., CEOPCO, L.L.C.<br><br>Defendants. | **Case No. 2:25-cv-6031-AH-JPR**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CASANDRA VENTURA'S MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDED COMPLAINT**<br><br>Hearing Date: October 21, 2026<br>Time: 1:30 PM<br>Judge: Hon. Anne Hwang<br>Courtroom: 9C |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

FACTUAL BACKGROUND ..... 4

- I. The Alleged Arrangement ..... 4
- II. The Allegations of Combs's Violence and Control Over Ms. Ventura ..... 4
- III. Procedural History ..... 5

LEGAL STANDARD ..... 6

ARGUMENT ..... 6

- I. The 5AC's Incorporation Of The Criminal Trial Record Does Not Cure Its Deficiencies ..... 6
- II. Plaintiff Again Fails To State A Trafficking Claim Against Ms. Ventura (Counts I & II) ..... 7
  - A. The Complaint Does Not Plead Force As To Ms. Ventura ..... 7
  - B. The Alleged "Frauds" Are Not Fraud Within the Meaning of the Trafficking Statutes ..... 8
  - C. The Complaint Fails to Allege Coercion By Ms. Ventura ..... 10
  - D. Ms. Ventura Was Herself a Victim of Combs And Did Not Act With Intent to Traffic Plaintiff ..... 11
  - E. The 5AC Pleads Only Perpetrator Liability Against Ms. Ventura, and a Beneficiary Theory Would Fail in Any Event ..... 13
  - F. The CTVPA Claim Fails for the Additional Reason That It Rests on Conduct Outside California ..... 13
- III. The § 340.16 Sexual Assault Claim (Count III) Is Time-Barred And Again Fails To State A Claim ..... 14
  - A. Section 340.16 Does Not Reach the Florida Conduct ..... 14
  - B. The October 2014 Claim Is Untimely, and No Entity Cover-Up Revives It ..... 14
  - C. The October 2014 Allegations Do Not Plead a Nonconsensual Act ..... 15
- IV. The New York § 483-BB Claim (Count IV) Fails As To Ms. Ventura ..... 16
  - A. Ms. Ventura Cannot "Advance or Profit From" Her Own Paid Encounters as a Matter of New York Law ..... 16

B. No Qualifying Means, and No Timely Sex Act in New York ..................17
V. Dismissal Should Be With Prejudice ..................17
CONCLUSION ..................17

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988) ........ 5, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ........ 17

*Croft v. Dolan*,
No. 24-6150, 2025 WL 3720844 (9th Cir. Dec. 23, 2025) ........ 8, 10

*David v. Weinstein Co. LLC*,
431 F. Supp. 3d 290 (S.D.N.Y. 2019) ........ 8

*Does 1–6 v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022) ........ 13

*Fid. Fin. Corp. v. Fed. Home Loan Bank of S.F.*,
792 F.2d 1432 (9th Cir. 1986) ........ 17

*Noble v. Weinstein*,
335 F. Supp. 3d 504 (S.D.N.Y. 2018) ........ 8

*Novoa v. GEO Grp., Inc.*,
2021 WL 4913286 n.5 (C.D. Cal. Sept. 30, 2021) ........ 7

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
514 F.3d 856 (9th Cir. 2007) ........ 6

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ........ 6

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) ........ 13

*United States v. Maynes*,
880 F.3d 110 (4th Cir. 2018) ........ 8

Statutes

18 U.S.C. § 1591 ........ passim

18 U.S.C. § 1595 ........ 5

Cal. Civ. Code § 52.5 ........ 5

Cal. Code Civ. Proc. § 340.16 ........ 5, 14, 15

Cal. Penal Code § 236.1(a) ........ 11

Cal. Penal Code § 261(a) .......... 16

Cal. Penal Code § 777 .......... 13

Cal. Penal Code § 27(a)(1) .......... 14

California Penal Code § 236.1 .......... 13

N.Y. Penal Law § 230.15(1) .......... 16

N.Y. Penal Law § 230.34 .......... 5, 16

N.Y. Soc. Serv. Law § 483-bb .......... 5

Section 340.16(a) .......... 14

§ 340.16(e) .......... 14

Rules

Fed. R. Civ. P. 10(c) .......... 6

Fed. R. Civ. Proc. 12(b)(6) .......... 6

**PRELIMINARY STATEMENT**

In 2023, Casandra Ventura ("Ms. Ventura," a defendant in the instant case) filed a lawsuit alleging that music mogul Sean Combs ("Combs," also a defendant in the instant case) trafficked and abused her for many years. The lawsuit prompted a criminal investigation into Combs, resulting in Combs's conviction of interstate transportation for prostitution of several victims, including Ms. Ventura. Combs is currently serving time in prison for these offenses. *See U.S. v. Combs*, No. 24 Cr. 542 (AS) (S.D.N.Y.).

Plaintiff Clayton Howard worked as a paid male companion and escort who alleges that over the course of nearly a decade, he repeatedly returned to accept money in exchange for sex with Ms. Ventura while Combs watched. Now, more than a decade after he first agreed to engage in this conduct, Plaintiff asserts that when he was working as a professional escort, he was trafficked by Combs *and* the woman who was Combs's primary victim and for whose abuse Combs is now imprisoned. It is precisely baseless and harassing lawsuits like Mr. Howard's that disincentivize actual victims of sexual abuse from coming forward or testifying truthfully as government witnesses. This Court should not countenance this misuse of our legal system.

This Fifth Amended Complaint ("5AC") is Plaintiff Clayton Howard's sixth attempt to plead claims against Ms. Ventura, and it fares no better than the last. In its Order of July 23, 2026 (Dkt. 154) (the "Order"), this Court dismissed every claim asserted against Ms. Ventura in the Fourth Amended Complaint ("4AC"), holding, among other things, that Plaintiff "does not plausibly allege any specific, relevant incident as to Ms. Ventura that exceeded the scope of his consent that occurred within the limitations period." Order at 14. The Court identified precisely the deficiencies Plaintiff was required to cure, and he has not cured them. The 5AC should be dismissed as to Ms. Ventura, this time with prejudice.

First, while now alleging that certain "encounters" took place after June 30, 2015, Plaintiff still does not allege that Ms. Ventura used force, fraud, or coercion to cause him to engage in a commercial sex act, as every one of his trafficking claims requires. The 5AC continues to allege what every one of Plaintiff's complaints has alleged: that Mr. Howard, a professional escort who advertised his services online, was engaged by Ms. Ventura for sexual encounters; that he attended those encounters,

performed the services he agreed to perform, and was paid in cash — between $1,500 and $7,000 — "at the conclusion of each encounter," and that he continued to accept those engagements for a decade. Second, the frauds Plaintiff now alleges are neither material nor plausibly the cause of his decision to have sex with Ms. Ventura. Third, Plaintiff cannot plead that Ms. Ventura acted with the intent to traffic him, because Ms. Ventura was herself Combs's trafficking victim, and the 5AC is replete with allegations of Combs's violence and control over her. Fourth, the California sexual assault claim fails because Plaintiff does not allege any institutional cover-up as required by the statute he invokes, and in the alternative, he fails to state a claim for assault. The 5AC should be dismissed. And after six opportunities to amend, dismissal should be with prejudice.

## FACTUAL BACKGROUND

### I. The Alleged Arrangement

The 5AC alleges that Combs and Ms. Ventura maintained a "publicized" personal relationship between 2007 and 2018. 5AC ¶ 2. Plaintiff worked as "a paid male companion" under the alias "Dave" and advertised his services on websites such as Craigslist and Backpage. *Id.* ¶¶ 1, 8, 40. In late 2009, Ms. Ventura engaged Plaintiff "to serve as a male companion" at a New York hotel. *Id.* ¶ 14. Over the following decade, Plaintiff repeatedly accepted engagements for multi-day sexual encounters with Ms. Ventura, which Defendant Combs observed and directed. *Id.* ¶¶ 2, 22–24. Male participants in Combs's "freak offs," including Plaintiff, were paid in cash at the conclusion of each encounter, in amounts ranging from approximately $1,500 to $7,000. *Id.* ¶ 44. Plaintiff traveled from New York to Miami and Los Angeles to participate in encounters. Ms. Ventura "used promises of gifts, money, and vacations to induce Plaintiff to travel." *Id.* ¶ 62.

### II. The Allegations of Combs's Violence and Control Over Ms. Ventura

The 5AC pleads at length that Ms. Ventura herself was Combs's victim and that Combs directed and controlled the sexual encounters. Plaintiff alleges that "Ms. Ventura controlled when each encounter began and sought Mr. Combs's permission to progress," that "Mr. Combs controlled the pace," and that when Ms. Ventura wished to continue "she would ask Defendant Combs. If he agreed, another session began, if not - she waited." *Id.* ¶ 23. "[U]ltimately, it would be Sean" who decided when an encounter was over. *Id.* ¶ 24. Similarly, the hotel rooms were "arranged so that Mr. Combs could observe," and Combs's assistants brought in studio lighting to enhance his viewing experience. *Id.* ¶ 26. It was Combs's security personnel who confiscated participants' clothing, identification, and telephones, "on Mr. Combs's direction," and Combs took Ms. Ventura's possessions "[a]ll the time," returning them only "when the period she 'was being punished for' had ended." *Id.* ¶¶ 37, 77.

The 5AC catalogs Combs's violence against Ms. Ventura. It alleges that in August of 2013, Combs "caused a significant laceration to Ms. Ventura's eyebrow by throwing her onto a bed frame," leaving a "permanent scar." *Id.* ¶ 54. On or about March 5, 2016, at the InterContinental Century City hotel in Los Angeles, Combs "violently assaulted Ms. Ventura in a hallway before the elevators,

an assault captured on hotel surveillance video." *Id.* ¶ 46. Plaintiff alleges that Ms. Ventura testified that Combs's "method of assault" was to "mash me in my head, knock me over, . . . drag me, kick me, . . . stomp me in the head." *Id.* ¶ 79. At a December 2016 Miami encounter, Combs "kicked Ms. Ventura," and, "when Plaintiff said words to the effect of 'calm down,'" ordered Plaintiff into the adjoining room. *Id.* ¶ 79. Plaintiff further alleges that another male participant, Daniel Phillip, witnessed Combs throw a liquor bottle across the room, grab Ms. Ventura "by her hair," drag her into the bedroom, and that Phillip then "heard smacking sounds and heard Ms. Ventura apologize," and could see that Ms. Ventura "was afraid," "really upset," and had been "crying." *Id.* ¶ 84. Plaintiff alleges Combs "required" Ms. Ventura to participate in encounters even while she suffered painful recurring urinary infections. *Id.* ¶ 70.

## III. <u>Procedural History</u>

Plaintiff commenced this action on June 30, 2025, and has amended five times. Dkt. Nos. 1, 3, 35, 58, 80, 159. On July 23, 2026, the Court: (i) denied Plaintiff's request for judicial notice of the *Combs* trial record because it was offered for the truth of disputed facts, and disregarded Plaintiff's transcript citations, Dkt. No. 154 ("Order") at 4–5 & n.3; (ii) dismissed the claims under 18 U.S.C. § 1591, N.Y. Penal Law § 230.34, Florida law, and civil RICO with prejudice, *id.* at 5–10; (iii) held the TVPRA claim time-barred "as to any discrete events that occurred before June 30, 2015," and dismissed the TVPRA and CTVPA claims as to Ms. Ventura because Plaintiff pleaded no specific, timely incident as to her exceeding the scope of his consent, *id.* at 11–15; (iv) dismissed the § 340.16 claim, noting Plaintiff waived any response to Ms. Ventura's arguments and that his fraud-based consent theory failed for lack of materiality, *id.* at 15–16 & n.21; and (v) dismissed the § 483-bb claim because that statute does not apply retroactively or extraterritorially, *id.* at 16–17. Additionally, the Court cautioned that "allegations in prior pleadings are judicial admissions," which are "conclusively binding on the party who made them." *Id.* at 20 n.25 (citing *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)).

Plaintiff filed the 5AC on August 3, 2026, re-pleading four causes of action: (1) the CTVPA, Cal. Civ. Code § 52.5; (2) the TVPRA, 18 U.S.C. § 1595; (3) sexual assault under Cal. Code Civ. Proc. § 340.16; and (4) N.Y. Soc. Serv. Law § 483-bb. Dkt. No. 159. Each fails as to Ms. Ventura.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[L]abels and conclusions" and "formulaic recitation[s] of the elements" are disregarded. *Id.* (citation modified). Nor must a court accept "conclusory allegations which are contradicted by documents referred to in the complaint," *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998), or allegations contradicted by the plaintiff's own prior pleadings, which are "judicial admissions conclusively binding on the party who made them." *Am. Title*, 861 F.2d at 226; *see also PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858–60 (9th Cir. 2007); Order at 20 n.25.

## ARGUMENT

### I. <u>The 5AC's Incorporation Of The Criminal Trial Record Does Not Cure Its Deficiencies</u>

This Court has already held that it "cannot take judicial notice of disputed facts contained in" public records, and it disregarded Plaintiff's citations to the *Combs* trial transcripts because they were offered for their truth. Order at 4–5 & n.3. In the 5AC, Plaintiff rebranded his request for judicial notice as an incorporation by reference, 5AC ¶ 13, recopies dozens of the same transcript excerpts into the pleading itself and alleged as true his implausible interpretation of those trial records. *See, e.g.*, *id.* ¶¶ 17–21, 24–26, 28–29, 32–37, 40–48, 50, 52–53, 70, 77, 79, 82–85.

A plaintiff may plead facts within his personal knowledge. He may not convert another witness's testimony from another proceeding into "allegations" and then insist that his characterizations of that testimony be accepted over the testimony itself. Where a pleading is built upon a document, the document — not the pleader's interpretation on it — controls. Fed. R. Civ. P. 10(c); *see also Steckman*, 143 F.3d at 1295–96.

The 5AC's central "allegations" against Ms. Ventura are exactly such extrapolations. For instance, paragraph 70 transforms Ms. Ventura's testimony about recurring urinary tract infections, which are not sexually transmissible diseases, into what Plaintiff interprets as "actual knowledge" of a chlamydia infection. *See infra* § II.B. Paragraph 48 converts a text message from Combs about "fly[ing] Dave in" into Ms. Ventura's "meaningful autonomy" over the encounters. Instead of

pleading his personal knowledge, Plaintiff is advancing arguments about what someone else's testimony means. These are the same arguments this Court refused to entertain on judicial notice.

Even if the testimony Plaintiff incorporates were considered on its own terms, it would defeat his claims. The 5AC itself makes it clear that Ms. Ventura's testimony was the account of a woman who was directed, beaten, punished, and controlled by Combs; who sought his "permission" to proceed; and for whom "ultimately, it would be Sean" who decided when each encounter ended. 5AC ¶¶ 23–24, 46, 54, 70, 77, 79, 84–85. Plaintiff cannot borrow Ms. Ventura's account of her own victimization and simultaneously ask the Court to infer from it that she was a trafficker. *See infra* § II.D.

## II. Plaintiff Again Fails To State A Trafficking Claim Against Ms. Ventura (Counts I & II)

A defendant violates Section 1591 when he knowingly recruits, entices, transports, obtains, or maintains a person, "knowing, or, . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1). The CTVPA rises and falls with the federal claim: its elements "overlap significantly" with the TVPRA. Order at 14 (quoting *Novoa v. GEO Grp., Inc.*, 2021 WL 4913286, at *3 n.5 (C.D. Cal. Sept. 30, 2021)). Both claims are also time-barred "as to any discrete events that occurred before June 30, 2015." Order at 11. While the CTVPA contemplates additional prohibited means, Plaintiff only pleaded force, fraud and coercion in the 5AC. 5AC ¶ 96. Therefore, the analysis for the federal and California trafficking claims is co-extensive. *See* Order at 14-15

Here, assuming *arguendo* that Plaintiff has met his burden of pleading a commercial sex act, his trafficking claims against Ms. Ventura would still fail, because the 5AC does not plausibly allege that Ms. Ventura used force, fraud, or coercion at all — much less that any such means *caused* Plaintiff to engage in a commercial sex act within the limitations period, or that Ms. Ventura acted with the intent the statutes require.

### A. The Complaint Does Not Plead Force As To Ms. Ventura

The 5AC does not allege that Ms. Ventura ever used or threatened force against Plaintiff. The 4AC's vague reference to a "pistol whip" threat — which the Court found insufficient even as to

Combs's conduct, and which never involved any threat by Ms. Ventura — has been abandoned. The only violence alleged anywhere in the 5AC ran from Combs *to* Ms. Ventura. 5AC ¶¶ 46, 54, 79, 84–85.

B. <u>The Alleged "Frauds" Are Not Fraud Within the Meaning of the Trafficking Statutes</u>

In common parlance and at law, "fraud" is "a knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment." FRAUD, *Black's Law Dictionary* (12th ed. 2024). Under § 1591, the concept is narrower still: it is not enough that a lie existed somewhere in the parties' dealings; the fraud must be the means "used to cause a commercial sex act to take place." *Croft v. Dolan*, No. 24-6150, 2025 WL 3720844, at *2 (9th Cir. Dec. 23, 2025) (allegation that plaintiff was lied to about why she was invited to Los Angeles insufficient, because the lie merely "caused her to be in close proximity to" the alleged exploitation).

The cases sustaining trafficking-by-fraud claims share a common structure: *the fraud was the inducement*. In other words, the defendant must have offered a counterfeit consideration in exchange for the sex act, which the defendant never intended to deliver. *See, e.g.*, *Noble v. Weinstein*, 335 F. Supp. 3d 504, 517–21 (S.D.N.Y. 2018) (false promises of film roles and career advancement used to entice the plaintiff into sexual encounters); *David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290, 303–05 (S.D.N.Y. 2019) (false promise of an acting role in exchange for sex, never intended to be honored); *United States v. Maynes*, 880 F.3d 110, 113–14 (4th Cir. 2018) (false promises of housing and money used to recruit women into prostitution). In each, the victim engaged in the sex act *because of* a promised benefit that was a lie.

Nothing of the kind is alleged here. Rather, Plaintiff alleges that he was promised money, gifts, and travel in exchange for his services. 5AC ¶¶ 62, 90. And, critically, the 5AC alleges that he received exactly that at the conclusion of every encounter, for a decade. *Id.* ¶¶ 4, 44, 58. A commercial exchange fully performed as agreed is the opposite of fraud. Measured against the statutory standard, each of the 5AC's alleged deceptions fails:

*First*, the "private married couple" representation and the aliases (*id.* ¶¶ 14–21) were abandoned years before June 30, 2015 and cannot support a timely claim. *Id.* ¶ 19; Order at 11–12. The Court has also already held these misrepresentations immaterial. Order at 12 n.14 (Plaintiff "has

not alleged these misrepresentations were material in inducing Plaintiff to participate in the encounters, especially given he continued to participate after learning of their real identities"). Plaintiff (who himself worked under an alias, 5AC ¶ 8) continued accepting engagements for roughly eight years after learning exactly who his clients were.

*Second*, the "new employee" cover story (*id.* ¶¶ 27–30) was, by Plaintiff's own telling, a representation made to Combs's third party corporate travel agent. *Id.* ¶ 29. A statement Plaintiff has never even heard could not have deceived him or induced him to do anything. Moreover, the only dated instance of the resulting travel was September 2014 and predates the limitations period. *Id.* ¶ 30.

*Third*, the allegation that Defendants concealed "that other men were being recruited, transported, and paid to participate in materially identical encounters," such that Plaintiff would not have participated had he known (*id.* ¶¶ 51–53) is flatly refuted by Plaintiff's own prior pleading. The 4AC alleges that in 2011, Plaintiff was a participant in "an orgy with Ms. Ventura, Mr. Combs, and another male provider named Daniel Phillip"; that "[t]he orgy's goal was to determine who could please Ms. Ventura longest: Mr. Howard or Mr. Phillip"; that the encounter "lasted nearly two days"; and that "[w]hen Mr. Howard outlasted Mr. Phillip, he was declared the winner and the exclusive arrangement was proposed." 4AC ¶¶ 95–99. Those factual assertions are judicial admissions binding on Plaintiff. Order at 20 n.25. The 5AC's contrary allegation is an attempt to plead around this Court's Order by contradicting Plaintiff's own admissions. It is an impermissible amendment and the Court should disregard it.[1]

*Fourth*, Ms. Ventura's alleged statement that an injury to her eyebrow resulted from an accident rather than from Combs's violence (5AC ¶¶ 54–56), is not fraud in any actionable sense. Plaintiff's theory is that, had Ms. Ventura disclosed her own abuse to him, he would have understood "the coercive and abusive character of the arrangement." *Id.* ¶ 56. As a primary issue, that allegation contradicts other allegations that Plaintiff saw or otherwise knew about Ms. Ventura being physically

[1] Moreover, it is simply not plausible that a man who engaged in a two-day long sex competition to win the opportunity to continue to have sex with Ms. Ventura while Combs watched, was in any way coerced into those sex acts.

harmed by Combs. *See*, *e.g.*, *id.* ¶ 79. And further, that is not a misrepresentation used to cause a commercial sex act. It is at most information that might have colored Plaintiff's view of his surroundings, and it is an attenuated theory that fails under *Croft*. 2025 WL 3720844, at *2. The premise of the allegation, moreover, is that Ms. Ventura was concealing *her own victimization* — an allegation that supports her defense, not Plaintiff's claim. *See infra* § II.D.

*Fifth*, the undisclosed recording of encounters began, by Plaintiff's account, "[w]ithin the first year," *i.e.*, by 2010, outside the limitations period. 5AC ¶¶ 82–83, 91. Plaintiff simultaneously pleads that he "directly objected to being filmed to Defendant Ventura repeatedly," *id.* ¶ 91, meaning he knew of the recording at or near the time it happened, but continued to meet with Defendants for years thereafter. The recording did not cause Plaintiff to engage in any sex act.

*Sixth*, the allegation that Ms. Ventura concealed a chlamydia infection at a May 2016 New York encounter fails at every step. The 5AC pleads no facts plausibly showing that Ms. Ventura knew she had chlamydia in May 2016. Paragraph 70's assertion that she had "actual knowledge of her own recurring genitourinary infections" extrapolates from Ms. Ventura's trial testimony about recurring *urinary tract infections* — a condition that is neither sexually transmitted nor communicable. Ms. Ventura's testimony that she was made to perform sex acts while suffering from an infection says nothing about chlamydia, and the 5AC's use of the phrase "genitourinary infections" to blur that distinction is precisely the kind of impermissible extrapolation addressed *supra* in § I. The only chlamydia-specific allegation is Ms. Ventura's purported statement, four months later in September 2016, that she had had "a chlamydia scare" "some weeks earlier." 5AC ¶ 74. "Some weeks" before September is far off from May. The 5AC does not plausibly allege that Ms. Ventura knew of any infection at the time of the encounter.[2]

C. The Complaint Fails to Allege Coercion By Ms. Ventura

"Coercion" under § 1591 means threats of serious harm or physical restraint, or a "scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person," measured objectively against a reasonable

---

[2] Even if Ms. Ventura knowingly concealed an infection, the alleged failure to disclose did not *cause* Plaintiff to engage in a commercial sex act. The inducement for the May 2016 encounter was what it had been since 2009: payment.

person in the plaintiff's circumstances. 18 U.S.C. § 1591(e)(2), (e)(5); Order at 11 n.11. The 5AC pleads no such thing as to Ms. Ventura.

The December 2016 Miami encounter (5AC ¶¶ 76–81) is the only incident within the limitations period as to which Plaintiff alleges anything resembling restraint by Ms. Ventura, and it fails because the alleged coercion occurred after the sex act.[3] Plaintiff alleges that he traveled voluntarily to Miami, engaged in intercourse with Ms. Ventura "consistent with the established structure," and, critically, that "[u]pon the conclusion of the act, Plaintiff withdrew as instructed." 5AC ¶ 78. Only *afterward*, when Combs physically abused Ms. Ventura and ordered Plaintiff into the adjoining room, did the alleged twelve-hour wait occur. *Id.* ¶¶ 79–80. The alleged restraint cannot have been a means used to *cause* that act.

The routine surrender of Plaintiff's phone, clothing, and identification at the door also cannot plausibly constitute coercion by Ms. Ventura. By Plaintiff's own account, that routine was an "established practice" that occurred at "each encounter" from the very first one in 2009. *Id.* ¶¶ 22, 77. At the conclusion of each time session, Plaintiff accepted payment, returned home, then voluntarily returned for more. The same process repeated for ten years. The Court has already held materially identical allegations insufficient as to Ms. Ventura. Order at 13–14.

### D. <u>Ms. Ventura Was Herself a Victim of Combs And Did Not Act With Intent to Traffic Plaintiff</u>

Even if any illicit means were adequately pleaded, both statutes require a culpable mental state: § 1591 requires that Ms. Ventura acted knowing or in reckless disregard that prohibited means "will be used to cause" a commercial sex act, and California's § 236.1 requires the specific "intent to obtain forced labor or services." 18 U.S.C. § 1591(a)(1); Cal. Penal Code § 236.1(a). The 5AC affirmatively

---

[3] The remaining allegations fare no better. The March 2016 Florida trip (5AC ¶¶ 48–49) alleges no illicit means at all: Plaintiff traveled voluntarily, and alleges only that the encounter was long and physically taxing. The claim that Ms. Ventura "manipulated" Plaintiff by telling him he had "saved her life" during her overdose and had "earned . . . a reward," 5AC ¶ 61, describes flattery at an encounter tied to events years outside the limitations period. Moreover, gratitude is not a threat of "serious harm" that would compel a reasonable person to perform commercial sex. 18 U.S.C. § 1591(e)(5). The 2011 drugging allegations, 5AC ¶ 57, are expressly time-barred. The fall 2015 "Pink Molly" incident was Combs's act alone. The 5AC, like the 4AC, alleges that Combs offered the substance and invoked Ms. Ventura's supposed displeasure, not that Ms. Ventura had any knowledge of or role in it. 5AC ¶ 58; Order at 13.

negates those inferences, because it pleads, repeatedly, and through the very testimony it incorporates, that Ms. Ventura acted under Combs's violence and control:

- Ms. Ventura "sought Mr. Combs's permission to progress"; "ultimately, it would be Sean" who decided when an encounter was over; if he did not agree, "she waited." 5AC ¶¶ 23–24.
- In August 2013, Combs threw her onto a bed frame, lacerating her brow and leaving a permanent scar. *Id.* ¶ 54.
- On March 5, 2016, Combs violently assaulted her in a hotel hallway, on video. *Id.* ¶ 46.
- Combs took her telephone and laptops "[a]ll the time," returning them only when her "punish[ment]" ended. *Id.* ¶ 77.
- At the December 2016 Miami encounter, Combs kicked her; he would "mash me in my head, knock me over, . . . drag me, kick me, . . . stomp me in the head." *Id.* ¶ 79.
- Combs knew of her recurring, painful infections "and required her to participate notwithstanding." *Id.* ¶ 70.
- Daniel Phillip watched Combs drag her by the hair, heard smacking and her apologies, and saw that she "was afraid," "really upset," and "crying." *Id.* ¶¶ 84–85.

The United States agrees. The Government's sentencing memorandum in the criminal case identifies Ms. Ventura as a victim of the count as to which Plaintiff claims victim status. Dkt. No. 135 at 52 ("There are five victims of Count Three (Ventura; Clayton Howard, a/k/a 'Dave' . . .").

It is not a reasonable inference that a woman who pleaded for permission, was beaten for perceived slights, was punished by confiscation of her own property, and was required to perform through painful infections simultaneously harbored the specific intent to deprive Plaintiff of his liberty and traffic him for commercial sex. The 5AC's contrary characterizations that Ms. Ventura "exercised meaningful autonomy" and "was not a passive bystander" are conclusions, not facts, and they are contradicted by the testimony on which the 5AC itself is built. 5AC ¶¶ 48-49; *Iqbal*, 556 U.S. at 678.

E. The 5AC Pleads Only Perpetrator Liability Against Ms. Ventura, and a Beneficiary Theory Would Fail in Any Event

The 5AC asserts § 1595 liability against Ms. Ventura solely as a perpetrator. 5AC ¶ 102 ("Perpetrator liability — Defendant Ventura"). Beneficiary liability is pleaded only against the corporate defendants. *Id.* ¶ 104. That is the end of the inquiry as to any beneficiary theory. But even if Plaintiff had attempted one, it would fail. Beneficiary liability requires that the defendant knowingly received a benefit with "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Does 1–6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (citation modified); Order at 18. The only "benefits" the 5AC identifies are Ms. Ventura's recording career, performance income, and "Combs-financed career." 5AC ¶ 50. These benefits flow from her recording contract with Bad Boy, a relationship that long predated Plaintiff and had nothing to do with him or the sex acts at the center of his allegations. Plaintiff alleges no facts connecting any other benefit to the alleged trafficking of him, as opposed to Ms. Ventura's preexisting career as a recording artist.

F. The CTVPA Claim Fails for the Additional Reason That It Rests on Conduct Outside California

Civil Code § 52.5 provides a remedy to "a victim of human trafficking, as defined in Section 236.1 of the Penal Code." California law presumes "the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (citation omitted). The Penal Code says so expressly: California punishes offenses "commit[ted] in whole or in part" within the State. Cal. Penal Code §§ 27(a)(1), 777. Yet the Ventura-specific predicate acts pleaded in Count One occurred in Florida and New York: the December 2016 confiscation and confinement at a Miami Beach hotel, and the 2016 New York encounters and the "new employee" call to Combs's travel agent. 5AC ¶ 96. Out-of-state conduct cannot violate California Penal Code § 236.1, just as conduct in Miami and Los Angeles cannot support a claim under New York's trafficking statute. Order at 16–17. The only California incident involving Ms. Ventura — the October 2014 Beverly Hills encounter — is time-barred and pleads no illicit means. Order at 11, 14; *infra* § III.

Because the CTVPA claim otherwise mirrors the TVPRA claim, it fails with it.

## III. The § 340.16 Sexual Assault Claim (Count III) Is Time-Barred And Again Fails To State A Claim

Count Three alleges, primarily, a "sexual battery during unlawful restraint" at the December 2016 Miami encounter and, "in the alternative," the October 2014 Beverly Hills incident this Court already dismissed. 5AC ¶¶ 107–08. Neither theory is viable.

### A. Section 340.16 Does Not Reach the Florida Conduct

Section 340.16 applies to actions for "sexual assault," defined as conduct that "would constitute" enumerated offenses under the California Penal Code, including sections 243.4 and 261. Cal. Code Civ. Proc. § 340.16(a), (b)(1). For the reasons set out above, California's Penal Code does not criminalize conduct occurring wholly in Florida. Cal. Penal Code § 27(a)(1), *see supra* § II.F. The December 2016 encounter took place at a Miami Beach hotel. 5AC ¶ 76. It therefore cannot supply the predicate for a California sexual assault claim.

### B. The October 2014 Claim Is Untimely, and No Entity Cover-Up Revives It

Section 340.16(a) gives an adult plaintiff ten years from the assault, or three years from discovery of a resulting injury or illness, whichever is later. Cal. Code Civ. Proc. § 340.16(a). The three-year discovery prong is inapplicable; this Court has already rejected Plaintiff's delayed-discovery theories (*see* Order at 6–7, 11), and it is apparent from the pleadings that Plaintiff discovered the circumstances of the encounter and became angry about them the same night. 5AC ¶ 67; 4AC ¶¶ 195–99.

The ten-year limitations period expired on October 7, 2024 because the alleged assault occurred on or about October 7, 2014. 5AC ¶ 66. Adding all 178 days of tolling available under the COVID-19 Emergency Rule 9 extends that date only to early April 2025. Plaintiff commenced this action more than two months later, on June 30, 2025. Order at 2. The claim is untimely even with every day of Emergency Rule 9 tolling.

As a last resort, Plaintiff invokes the revival provision of § 340.16(e). 5AC ¶ 108. Revival is available only where the plaintiff alleges, plausibly, that (i) he was sexually assaulted; (ii) "one or more entities . . . are legally responsible for damages arising out of the sexual assault"; and (iii) the

entity or entities, including their officers, directors, representatives, employees, or agents, "engaged in a cover up or attempted a cover up" of a previous instance or allegations of sexual assault by an alleged perpetrator. Cal. Code Civ. Proc. § 340.16(e)(2). The 5AC does not plausibly allege any of the three prongs.

A "cover up" is "a concerted effort to hide evidence relating to a sexual assault" that "incentivizes individuals to remain silent or prevents information . . . from becoming public or being disclosed." *Id.* § 340.16(e)(5)(A). Here, the "confidential resolution of related claims funded by Mr. Combs's companies" has no relation to any assault on Plaintiff. *See* Order at 9 n.8 (holding that Ms. Ventura's own 2023 settlement of her claims against Combs "have no bearing" on Plaintiff's claims). The entities' "funding of the accommodations at which the assault occurred" is limited to the booking of a hotel room *before* the alleged assault and could not have concealed evidence. The "false 'Security' cover story" was an alias Plaintiff himself willingly used at check-in throughout the relationship, not a concerted effort to hide evidence of an assault. 5AC ¶¶ 108, 63. Lastly, the "payments made to Plaintiff to keep him silent" describe cash handed to Plaintiff by Combs personally moments after the encounter, i.e., the same payment the 4AC described as part of Plaintiff's ordinary compensation and in no sense a "concerted effort" by any *entity*.[4] *Id.* ¶¶ 108, 67. Entity cover-up is not plausibly alleged, and Plaintiff's sexual assault claim is out of time.

C. The October 2014 Allegations Do Not Plead a Nonconsensual Act

The Court dismissed this precise claim, noting that Plaintiff waived any response to Ms. Ventura's arguments and that his sole surviving theory of "fraud-based vitiation of consent" (4AC at 20) failed because the fraud alleged was not material. Order at 15–16 and nn.20–21. The 5AC now disclaims any fraud-vitiation theory altogether. 5AC ¶ 108 ("This claim does not rest on any theory that fraud or nondisclosure vitiated Plaintiff's consent"). What remains are the same facts the Court has already seen. In the 4AC, Plaintiff made judicially binding allegations that the October 2014 encounter was caused by seduction and foreplay, that he became angry only after he discovered that Ms. Ventura was menstruating, and that "[a]t all times during the encounters from 2009–2019" he

[4] Indeed, this Court has already held that Plaintiff failed to allege that the corporate defendants or their employees even knew of any sexual conduct involving Plaintiff. Order at 17–18.

"believed he was engaging in consensual arrangements." 4AC ¶¶ 188–97, 272. Anger and disgust after a paid encounter are not "force, violence, duress, menace, or fear of immediate and unlawful bodily injury" accomplishing an act of intercourse against one's will. *See* Cal. Penal Code § 261(a)(2); *see also* Dkt. No. 121 at 16-17 (Defendant Ventura's reply in further support of her motion to dismiss the 4AC, discussing Cal. Penal Code § 261(a)(4)(C)-(D)).

## IV. The New York § 483-BB Claim (Count IV) Fails As To Ms. Ventura

Count Four against Ms. Ventura rests entirely on the May 2016 and September 2016 encounters in New York. 5AC ¶¶ 112–13; *see also id.* ¶ 111 (expressly limiting Count Four to conduct occurring in New York on or after January 19, 2016, as this Court's Order requires). It fails for two independent reasons.

### A. Ms. Ventura Cannot "Advance or Profit From" Her Own Paid Encounters as a Matter of New York Law

Section 483-bb provides a remedy for violations of N.Y. Penal Law § 230.34, which requires that the defendant "intentionally advance[] or profit[] from prostitution" by enumerated means. New York defines those terms restrictively. A person "advances prostitution" only "when, acting other than as a person in prostitution or as a patron thereof," she knowingly aids or facilitates an act or enterprise of prostitution. N.Y. Penal Law § 230.15(1). A person "profits from prostitution" only when "acting other than as a person in prostitution receiving compensation for personally rendered prostitution services," she accepts money or property pursuant to an agreement to participate in the proceeds of prostitution activity. *Id.* § 230.15(2). In simpler terms, New York's sex trafficking statute targets those who exploit the prostitution of others for profit. It does not reach the paying participant in the encounters at issue, and that is exactly what Count Four alleges as to Ms. Ventura. 5AC ¶¶ 112–13 (alleging that Ms. Ventura contacted Plaintiff, arranged her own encounters with him, coordinated logistics and paid him). Moreover, the 5AC does not allege that Ms. Ventura received proceeds from Plaintiff's services. Rather, she is alleged to have *paid* for them. The alternative that she "received value connected to that activity," *id.* ¶ 113, is conclusory, fails to identify any value, and merely recites the statutory language.

B. No Qualifying Means, and No Timely Sex Act in New York

The claim independently fails because Plaintiff does not allege any statutory means. As to September 2016, the 5AC alleges that "Defendants again seized Plaintiff's identification and cellular telephone," that Plaintiff "produced a condom at the outset" of the meeting, and that a conversation about chlamydia ensued. 5AC ¶¶ 73–74. It does not allege any sex act. As to May 2016, Plaintiff offers two theories, both inadequate. First, the alleged "seizure" of Plaintiff's identification and telephone could not have induced anything because it was the standard practice of every encounter since 2009, known and accepted by Plaintiff. Second, the alleged "material omissions concerning her communicable infection," *id.* ¶ 112, fail for the reasons shown above. *See supra* § II.B.[5]

## V. Dismissal Should Be With Prejudice

A "district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile," and its "discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011); *Fid. Fin. Corp. v. Fed. Home Loan Bank of S.F.*, 792 F.2d 1432, 1438 (9th Cir. 1986); *see* Order at 3. This is Plaintiff's sixth pleading. Given a sixth opportunity and specific guidance from this Court, Plaintiff produced a complaint that contradicts his own judicial admissions, extrapolates from testimony the Court has already declined to accept for its truth, and pleads Ms. Ventura's victimization in the same breath as her supposed criminal intent. The means, causation, intent, territorial, and timeliness failures of this Fifth Amended Complaint are inherent in the facts Plaintiff has now sworn to six times. These defects are not curable by better drafting or any reframing of the facts. Leave to amend should be denied.

## CONCLUSION

For the foregoing reasons and those stated in the Court's July 23, 2026 Order, Defendant Casandra Ventura respectfully requests that the Court dismiss the Fifth Amended Complaint as against her in its entirety, with prejudice, and grant such other relief as the Court deems just and proper.

---

[5] The remaining statutory means — force, or a "scheme, plan, or pattern" instilling fear — is pleaded against Combs alone. 5AC ¶ 114.

Dated: August 24, 2026

Respectfully submitted,

By: ______________________

Mélodie Han
Douglas Wigdor (*pro hac vice* forthcoming)
Meredith Firetog (*pro hac vice* forthcoming)
WIGDOR LLP
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Telephone: (212) 257-6800
mhan@wigdorlaw.com
dwigdor@wigdorlaw.com
mfiretog@wigdorlaw.com

*Counsel for Casandra Ventura*

## CERTIFICATION OF COMPLIANCE

The undersigned, counsel of record for Ms. Ventura, certifies that this brief contains 6200 words, which complies within the word limit of L.R. 11-6.1.

Dated: August 24, 2026

Respectfully submitted,

By: ______________________

Mélodie Han