Michael Schonbuch (Bar No. 150884)
schonbuch@schonbuchhallissy.com
Jonathan D. Gottlieb (Bar No. 339650)
gottlieb@schonbuchhallissy.com
SCHONBUCH HALLISSY LLP
11999 San Vicente Boulevard, Suite 300
Los Angeles, CA 90049
Tel.: (310) 556-7900

*Attorneys for Defendants Sean Combs, CeOpco, LLC, and Bad Boy Entertainment LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CLAYTON HOWARD,<br><br>Plaintiff,<br><br>v.<br><br>SEAN COMBS, CASANDRA VENTURA, BAD BOY ENTERTAINMENT, LLC, and CEOPCO, LLC,<br><br>Defendants. | Case No. 2:25-cv-6031-AH-JPRx<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIFTH AMENDED COMPLAINT**<br><br>Hearing Date: October 21, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Anne Hwang<br>Courtroom: 9C |

# TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 3

A. Mr. Combs Is Not Estopped From Challenging the CTVPA/TVPRA Claims ... 3

B. Plaintiff's State Law Claims Are Limited to Intrastate Conduct .......... 4

C. No Claim Is Stated Against Mr. Combs .......... 5

1. CTVPA (First Cause of Action) .......... 5

2. TVPRA (Second Cause of Action) .......... 7

3. Sexual Assault (Third Cause of Action) .......... 8

4. Human Trafficking (Fourth Cause of Action) .......... 9

D. No Claim Is Stated Against the Corporate Defendants .......... 9

1. Cross-Referencing of Mr. Combs's Criminal Trial Violates Rule 8 .......... 9

2. The Corporate Defendants Cannot Be Treated as a Single Entity .......... 10

3. The Corporate Defendants Are Not Directly Liable to Plaintiff .......... 11

4. The Corporate Defendants Are Not Vicariously Liable to Plaintiff .......... 12

E. Plaintiff Should Not Be Granted Leave to Amend .......... 12

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Bautista v. Los Angeles County*,
216 F.3d 837 (9th Cir. 2000) .......... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Bellaire Recovery, Inc. v. Premera Blue Cross Blue Shield of Alaska*,
2026 WL 826641 (C.D. Cal. Mar. 23, 2026) .......... 4

*Blantz v. Cal. Dep't of Corrs. and Rehab., Div. of Corr. Health Care*,
727 F.3d 917 (9th Cir. 2013) .......... 10

*Claiborne v. Water of Life Cmty. Church*,
2017 WL 9565337 (C.D. Cal. Aug. 25, 2017) .......... 12

*Colum. Sussex Mgmt., LLC v. City of Santa Monica*,
482 F. Supp. 3d 1002 (C.D. Cal. 2020) .......... 9

*Croft v. Dolan*,
2024 WL 4536309 (C.D. Cal. Sept. 17, 2024) .......... 7, 11

*Croft v. Dolan*,
2025 WL 3720844 (9th Cir. Dec. 23, 2025) .......... 8

*Erickson v. Pardus*,
551 U.S. 89 (2007) .......... 5

*Fortaleza v. PNC Fin. Servs. Grp., Inc.*,
642 F. Supp. 2d. 1012 (N.D. Cal. 2009) .......... 5

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
903 F. Supp. 2d 880 (C.D. Cal. 2012) .......... 3, 4

*Jacobson v. Schwarzenegger*,
226 F.R.D. 395 (C.D. Cal. 2005) .......... 10

*Nash v. Combs*,
2026 WL 1484285 (C.D. Cal. May 26, 2026) .......... 11

*Noble v. Weinstein*,
335 F. Supp. 3d 504 (S.D.N.Y. 2018) .......... 8

*People v. Betts*,
34 Cal.4th 1039 (2005) .......... 4, 5

*People v. Campbell*,
51 Cal. App. 5th 463 (Cal. Ct. App. 2020) .......... 6

*People v. Lamb*,
37 N.Y.3d 1174 (2021)....................9

*People v. Zambia*,
51 Cal.4th 965 (2011)....................6

*Ratha v. Phatthana Seafood Co.*,
35 F.4th 1159 (9th Cir. 2022)....................12

*Sapien v. Wells Fargo Bank, N.A.*,
2017 WL 8220418 (C.D. Cal. Jan. 31, 2017)....................5

*Scosche Indus., Inc. v. S & T Montgomery Distrib., Inc.*,
2024 WL 4003894 (C.D. Cal. June 5, 2024)....................5

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017)....................10

*Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*,
495 F. Supp. 3d 848 (C.D. Cal. 2020)....................9, 10, 11

*United States v. Chang Ru Meng Backman*,
817 F.3d 662 (9th Cir. 2016)....................7

*United States v. Hornbuckle*,
784 F.3d 549 (9th Cir. 2015)....................7

*W.V. v. Whittier Union High Sch. Dist.*,
2016 WL 11520809 (C.D. Cal. Oct. 20, 2016)....................12

**Statutes**

18 U.S.C. § 1591....................8

18 U.S.C. § 1595....................12

Cal. Penal Code § 9....................4

Cal. Code Civ. Proc. § 32....................4

Cal. Penal Code § 236.1....................5

Cal. Penal Code § 266i....................6

Cal. Penal Code § 778a....................4, 5

N.Y. Penal Law § 230.34....................9

**Other Authorities**

*The Art of Dialogue, "Cassie Is A C** Dumpster" Diddy & Cassie Former Worker Says Cassie Lied To Him & He's A Victim*, YouTube, https://www.youtube.com/watch?v=2aVX_iQMHBE (last accessed Sept. 23, 2026)....................2

The Bluebook: A Uniform System of Citation R. 10.8.1 (Columbia Law Review Ass'n et al. eds., 19th ed. 2010) ........ 8

**Rules**

Fed. R. Civ. P. 8 ........ 10

Defendants respectfully submit this Reply Memorandum of Points and Authorities in further support of the Motion.[1]

## **INTRODUCTION**

The Opposition confirms, rather than cures, the previously identified defects in the FAC. Instead of identifying allegations that satisfy the pleading obligations of the applicable law, Howard repeatedly misrepresents Defendants' arguments, relies on conclusory assertions, and attempts to supplement the FAC with material in the Opposition, which is prohibited under controlling precedents.

This reckless, if not psychotic, attempt to plead a claim must end. The legal standard that a complaint state *plausible* claims is not so pliable that merely *possible* claims pass the test. Common sense also factors into whether a claim is plausible. Howard is a prostitute. He is paid for sex for a living. To perform his job, he sheds his clothes and personal effects to engage in an array of sexual acts, including vaginal and oral copulation. That is his professional pursuit, selling his body for cash to assist his curated clientele to achieve whatever sexual desire, fantasy, or fetish is demanded. His objective is to please. It is beyond ludicrous for Howard to claim that his arranging, traveling for, and participating in sex, in accordance with his clients' wishes and expense, was induced by force, compulsion, or otherwise without knowing or voluntary engagement.

Howard is similar to a restaurant, offering choices both on and off the menu. If Howard was displeased with his menu offerings, or those requested off the menu, then he alone was empowered to change it or just say no. He did neither. He is not a victim, but an enabler and exploiter, whose talent is elevating his willingness to do

---

[1] Capitalized terms have the same meaning as in Defendants' moving brief, dated August 24, 2026. (Dkt. No. 162-1 ("<u>Moving Brief</u>" or "<u>Moving Br.</u>") "<u>Opposition</u>" or "<u>Opp.</u>" refers to the opposition brief, dated September 4, 2026 (Dkt. No. 165).

whatever is asked of him to make a buck.[2] Howard's career choice demonstrates his purposefulness and dogged ambition. This lawsuit is an extension of Howard's pursuit of money, as it is nothing more than crude extortion by judicial process.

What Howard complains about in the FAC is not forced labor. He volunteered to participate in this nefarious world. But that is his choice, and one that has been made by men and women for centuries. It requires little overhead or training and apparently is a preferrable lifestyle to those in the "oldest profession in the world," in lieu of a conventional one. Howard is deserving of no tears, pity, or sympathy, and certainly not civil damages.

Had he believed that any sex act, choice, or conduct that Ms. Ventura desired was repugnant, distasteful, or unacceptable, then he could have stopped after the initial encounter, or such encounter that no longer suited his fancy or price tag. But he did not, knowing full well what Ms. Ventura's routine comprised of the very things that he complains about now. The obvious answer as to why he did not stop his sexual engine is because there was always a payday with Ms. Ventura.

Howard just kept coming back—whenever and wherever—for more sex and cash. He was never under lock and key or inconvenienced, confined, or deterred by his voluntary travel, whether by land, air, or sea, to meet up at a hotel. Howard's lawsuit highlights all of his *inconvenient truths* that lay bare that the claims are nonsense and an abuse of the legal process. None of the claims are plausible.

As demonstrated in the Motion, the claims against Mr. Combs are doomed for multiple reasons. He is not estopped from challenging the CTVPA and TVPRA claims,

---

[2] Howard's public statements are insight into the man. During this case, he has referred to Ms. Ventura as a "cum dumpster" and "whore," stated she "put a million miles on her vagina *for absolutely nothing*," accused her of lying about being trafficked, and threatened her. (ECF No. 110 at 1-2.) *See also The Art of Dialogue, "Cassie Is A C** Dumpster" Diddy & Cassie Former Worker Says Cassie Lied To Him & He's A Victim*, YouTube, https://www.youtube.com/watch?v=2aVX_iQMHBE (last accessed Sept. 23, 2026).

even though they were previously considered, and Plaintiff cannot evade the presumption against extraterritoriality of certain of his claims. The FAC does not plausibly allege that Mr. Combs engaged in sex trafficking, false imprisonment, or the use of force, fraud, or coercion for the purpose of causing a commercial sex act. Gratefully—although six complaints too late— Howard has finally abandoned his sexual assault claim against Mr. Combs. He never touched him.

Furthermore, no claims are stated against the Corporate Defendants. Plaintiff cannot satisfy Rule 8 by requiring Defendants and the Court to reconstruct his claims from materials collected from a criminal proceeding, which he asks both the Court and defense to wade through. Nor may he collapse distinct corporate entities into a single defendant without plausibly alleging a basis to do so.

None of the above are technical pleading deficiencies, but essential missing elements. Howard has been provided multiple opportunities to fix them. However, he cannot fix what he could not fix four times before. There is no escaping that he is a prostitute, who was always paid, who always accepted the money, who always came back for more, and who never complained until his profitable sex business with Ms. Ventura ended. This lawsuit is his response to losing the Ventura money train. He has been granted multiple chances to plead a claim, but none can be in the sane world, as opposed to his fantasy world where prostitutes sue clients for providing the very service they were hired to perform. The Court should grant the Motion with prejudice.

## ARGUMENT

### A. Mr. Combs Is Not Estopped From Challenging the CTVPA/TVPRA Claims

Plaintiff erroneously argues that Mr. Combs is estopped from moving to dismiss the CTVPA/TVPRA claims because of the July 23 Order. (Dkt. No. 154); (Opp. at 5.) An amended complaint supersedes the prior complaint, rendering the prior pleading nonexistent. *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012). "Courts in this Circuit therefore have permitted

defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available." *Id.*; *Bellaire Recovery, Inc. v. Premera Blue Cross Blue Shield of Alaska*, 2026 WL 826641, at *5 n.5 (C.D. Cal. Mar. 23, 2026).

The CTVPA cannot proceed because the alleged conduct occurred *outside of California* and no deprivation of liberty is properly pleaded—sex workers shed their clothes and sell their time for money, which is precisely what happened here. And the TVPRA claim fails to show that Mr. Combs caused Plaintiff's participation in sexual acts through any prohibited means. Thus, because the Motion addresses the new pleading, estoppel cannot apply here.

**B. Plaintiff's State Law Claims Are Limited to Intrastate Conduct**

Plaintiff recognizes that extraterritoriality limits his claims under Cal. Code Civ. Proc. § 340.16 and N.Y. Soc. Servs. Law § 483-bb to *intrastate conduct* only. (Opp. at 5-6.) Even so, he erroneously argues that Cal. Penal Code § 778a overrides that presumption for the CTVPA claim, permitting reliance on conduct attributable to Mr. Combs, whether interstate or intrastate.

The availability of a criminal remedy does not *ipso facto* determine the territorial reach of a distinct civil remedy. *See* Cal. Code Civ. Proc. § 32 ("When the violation of a right admits of both a civil and criminal remedy, the right to prosecute the one is not merged in the other."); Cal. Penal Code § 9 (limitations on liability, damages, and the like imposed under criminal law do not limit actions under civil law); *People v. Betts*, 34 Cal.4th 1039, 1053 (2005) (explaining differences between limits of territorial jurisdiction under criminal and civil law). Plaintiff cannot import the Penal Code's jurisdictional reach into his civil CTVPA claim. *See Betts*, 34 Cal.4th at 1052 (Section 778a is a "statute[] defining jurisdiction over criminal acts." (emphasis added) (quotation omitted).)

Even if Section 778a applied to the CTVPA claim, then it would have no effect because its jurisdictional requirements are not satisfied here. The statute permits

prosecution of crimes occurring partly outside California only if *some material element of the crime occurred within the state*. *See* Cal. Penal Code § 778a(a); *Betts*, 34 Cal.4th at 1052. Neither the alleged 2015 "Pink Molly" incident in New York City, nor the December 2016 confiscation and confinement in Miami occurred in California, whether in whole or in part. (FAC ¶¶ 58, 76-81.) Thus, Section 778a cannot apply. *See Scosche Indus., Inc. v. S & T Montgomery Distrib., Inc.*, 2024 WL 4003894, at *4 (C.D. Cal. June 5, 2024) (finding Section 778a inapplicable because no alleged offense occurred in state). Accordingly, Section 778a cannot be used here to circumvent the presumption against extraterritoriality of the CTVPA claim.

**C. No Claim Is Stated Against Mr. Combs**

1. *CTVPA (First Cause of Action)*

Ironically, Howard contends that Defendants misread the CTVPA claim because Mr. Combs's alleged liability arises under Cal. Penal Code § 236.1(b), rather than Section 236.1(a). However, that clarification exposes yet another pleading defect barring the claim. (Opp. at 6-7.)

It is not for Defendants to guess Plaintiff's theory of liability. Rule 8 requires allegations sufficient to provide Defendants with "fair notice" of the claims asserted and the grounds upon which they rest. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleading a general violation of a statute that has multiple distinct subdivisions, without identifying which one was violated, is not fair notice. *See Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d. 1012, 1020 (N.D. Cal. 2009) (dismissing claim for failure to satisfy Rule 8's fair notice requirement); *Sapien v. Wells Fargo Bank, N.A.*, 2017 WL 8220418, at *4 (C.D. Cal. Jan. 31, 2017) (same). The CTVPA claim cannot be sustained.

Regardless, the FAC fails to state a claim against Mr. Combs under Section 236.1(b), which imposes criminal liability on "[a] person who deprives or violates the personal liberty of another with the intent to effect or maintain a violation of" certain enumerated statutes. Plaintiff does not identify the statute—which is yet

another denial of fair notice. But, if Howard is relying on Cal. Penal Code § 266i (pandering), then the FAC fails to plausibly allege such a violation anyway.

Neither the 2015 Pink Molly incident nor 2016 Miami incident occurred in California. However, beyond the territorial defects of those incidents, neither violates Section 266i, which has nothing to do with hiring a prostitute. Section 266i prohibits pandering, which is "the business of recruiting a prostitute, finding a place of business for a prostitute, or soliciting customers for a prostitute." *People v. Campbell*, 51 Cal. App. 5th 463, 484 (Cal. Ct. App. 2020) (quotation omitted); *see People v. Zambia*, 51 Cal.4th 965, 973 (2011) (statutory purpose "is to deter pimps or others from establishing new working relationships in the unlawful prostitution trade."). The FAC nowhere alleges that Mr. Combs engaged in any violation of Section 266i.

Furthermore, the FAC does not plausibly allege that Plaintiff's consent to his scheduled and curated pay-for-sex encounters were "procured by [] fraud, drugging, and physical restraint." (FAC ¶ 89); (Moving Br. at 8-12.) He abandons the more specific conduct alleged (*i.e.*, fraud-based means using aliases, marital status, statements for employee status, multiple men, and taped recordings), but fails to substitute them with anything beyond bland assertions: "directing and controlling the encounters, procuring Plaintiff's interstate transportation for commercial sex, the 2015 administration of a misrepresented substance, and the December 2016 confiscation and confinement." (FAC ¶ 97); (Moving Br. at 7-8.) Indeed, the Court ruled that any alleged "fraud" had to be "material in inducing Plaintiff to participate in the encounters[.]" (July 23 Order at 12 n.14.) No such material facts are alleged in the FAC.

And, beyond failing to allege a violation under Section 236.1(b), the FAC also fails to plausibly allege that Mr. Combs deprived or violated Plaintiff's personal liberty.[3] Shedding clothes, identification, and a telephone are not atypical in prostitution, as sex acts are committed either naked or partially naked, particularly in

[3] Defendants never argued that the CTVPA claim was time-barred. (*See* Opp. at 8-9.)

hotel settings, as alleged here. The forced surrender of liberty allegation is implausible on its face because it is nonsensical in the context alleged—repeated encounters of sex for cash. Plaintiff's CTVPA claim against Mr. Combs should be dismissed with prejudice.

2. *TVPRA (Second Cause of Action)*

Plaintiff contends that Defendants misunderstand the TVPRA because it does not require a commercial sex act to occur. (Opp. at 9.) But Defendants never argued that it must, but, instead, argued that wrongful conduct must be present to induce a commercial sex act, whether or not sex occurs. (Moving Br. at 12-14.) Wrongful conduct is the "causal connection" identified in the Moving Brief. (*Id.* (quoting *Croft v. Dolan*, 2024 WL 4536309, at *3 (C.D. Cal. Sept. 17, 2024)).) Plaintiff's authorities confirm that requirement. *See United States v. Chang Ru Meng Backman*, 817 F.3d 662, 666 (9th Cir. 2016) ("What [18 U.S.C. § 1591] requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future coerce a prostitute to engage in prostitution." (quotation omitted)); *United States v. Hornbuckle*, 784 F.3d 549, 554 (9th Cir. 2015) (Section 1591 "requires that the defendant knowingly take certain actions . . . knowing that the victim will be caused to engage in a commercial sex act." (emphasis added) (quotation omitted)).

The FAC is deficient because it does not plausibly allege that Mr. Combs obtained or maintained Plaintiff's participation in a sex act through prohibited means. Plaintiff argues that the alleged 2016 Miami incident supports TVPRA liability because his clothing, identification, and telephone were taken before having sex with Ms. Ventura. (Opp. at 10.) But that assumes the very fact the FAC omits: that the taking of those items was *nonconsensual*. (*See supra* at 6.) Because the FAC does not plausibly allege any taking, the timing of the alleged conduct does not cure the deficiency. (Moving Br. at 11-12.)

Plaintiff also rejects that the allegations concerning the 2015 Pink Molly incident are deficient.[4] (Opp. at 10.) But the Opposition merely repeats allegations from the FAC without explaining how they satisfy the statutory requirements. The alleged drugging might support a TVPRA claim, but only if it negated Plaintiff's knowing consent to the activities and was used to induce him to engage in a commercial sex act. *See* 18 U.S.C. § 1591(a), (e); (FAC ¶ 89.) The FAC does not plausibly allege that connection.

To the contrary, the FAC alleges that Plaintiff knowingly consumed drugs during every encounter. (FAC ¶ 25.) Nowhere does it allege that Plaintiff refused those drugs or told Ms. Ventura or Mr. Combs that he would not consume them. (*Id.* ¶¶ 25, 57-58.) And the FAC does not allege that drugs were used as the means to induce Howard to participate in commercial sex acts. According to the allegations and commonsense, Howard, a prostitute, already agreed to participate in a sex act before arriving at the pre-agreed sexual encounter. (*Id.* ¶ 1 (Plaintiff was "a paid male companion [] for commercial sexual encounters.") The alleged drug use therefore cannot supply the necessary causal link for a TVPRA claim. *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 518 (S.D.N.Y. 2018) (prohibited means have to be used for the purpose of causing the person to engage in the commercial sex act).[5] The Court should dismiss Plaintiff's TVPRA claim against Mr. Combs.

3. *Sexual Assault (Third Cause of Action)*

Plaintiff represents that he no longer "press[es] the Third Cause of Action against Mr. Combs." (Opp. at 10.) Accordingly, the Court should dismiss it with prejudice.

---

[4] Defendants have never argued that a TVPRA claim cannot be asserted if the conduct occurred outside of California. (*See* Opp. at 10.)

[5] *Croft v. Dolan*, 2025 WL 3720844 (9th Cir. Dec. 23, 2025) is properly cited in the Moving Brief, which notes its unpublished status. (Opp. at 9-10.) *See* The Bluebook: A Uniform System of Citation R. 10.8.1 (Columbia Law Review Ass'n et al. eds., 19th ed. 2010).

4. *Human Trafficking (Fourth Cause of Action)*

Plaintiff offers no meaningful defense to sustain the human trafficking claim under N.Y. Soc. Servs. Law § 483-bb. The Opposition rests on the assertion that taking away Plaintiff's clothing, identification, and telephone before an encounter constituted a scheme, plan, or pattern intended to instill fear in him. (Opp. at 11.) But the FAC does not plausibly allege that those acts were undertaken for that purpose, and they are nonetheless customary steps prostitutes undertake before engaging in commercial sex: removing clothes and laying aside personal items. (Moving Br. at 15-16); *see supra* at 6.

Further, Defendants did not ignore Section 230.34(2), which addresses "material false statements, misstatements, or omissions to induce or maintain the person being patronized to engage or continue to engage in prostitution activity." N.Y. Penal Law § 230.34(2); (Opp. at 11.) The Moving Brief explained why the alleged false statements did not negate Howard's knowing consent. (Moving Br. at 9-11.) Indeed, the FAC fails to plead an alleged particularized, false statement necessary to explain how any statement was made with intent to advance or profit from prostitution. *See People v. Lamb*, 37 N.Y.3d 1174, 1184-85 (2021) (Singas, J. concurring). Plaintiff concedes this deficiency. *See Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, 495 F. Supp. 3d 848, 854 (C.D. Cal. 2020); *Colum. Sussex Mgmt., LLC v. City of Santa Monica*, 482 F. Supp. 3d 1002, 1016 (C.D. Cal. 2020).

The FAC fails to satisfy the general pleading rules under Fed. R. Civ. P. 8—let alone Fed. R. Civ. P. 9(b)—concerning his claim against Mr. Combs under N.Y. Soc. Servs. Law § 483-bb. The Court should dismiss the claim with prejudice.

**D. No Claim Is Stated Against the Corporate Defendants**

1. *Cross-Referencing of Mr. Combs's Criminal Trial Violates Rule 8*

The Opposition repeatedly invokes documents and testimony from *United States v. Combs*, No. 24-cr-542 (S.D.N.Y.) to defend the sufficiency of the claims against the Corporate Defendants. The FAC references those criminal proceedings to bolster his

deficient pleading. But doing so requires the Court to reconstruct Plaintiff's claims through external materials, which is prohibited under Rule 8.

Rule 8 requires a "short and plain" statement of the claim for relief. Fed. R. Civ. P. 8(a). "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Bautista v. Los Angeles County*, 216 F.3d 837, 841 (9th Cir. 2000).

Consistent with Rule 8, courts reject complaints that require poring through sprawling allegations and cross-referenced materials. *See Jacobson v. Schwarzenegger*, 226 F.R.D. 395, 397 (C.D. Cal. 2005). Plaintiff cannot incorporate an entire criminal proceeding—comprising thousands of pages and exhibits—as a substitute for pleading the material facts supporting claims against the Corporate Defendants. The Court should reject it and disregard those exhibits.

2. *The Corporate Defendants Cannot Be Treated as a Single Entity*

Plaintiff does not contest that the single-enterprise doctrine offers no basis for group pleading for liability purposes. *See Travelers Cas. Ins. Co. of Am.*, 495 F. Supp. 3d at 854. In the July 23 Order, the Court ruled, as to the Corporate Defendants, that "[t]o the extent Plaintiff intends to amend, Plaintiff must plead his interactions with each defendant with sufficient specificity." (July 23 Order at 17-18 n.23.)

Plaintiff's alter-ego response is deficient and does not authorize group pleading. *Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017) provides no support. (Opp. at 15.) Plaintiff relies on *Soo Park* to contend that Rule 8 permits allegations "upon information and belief" when the defendant is in "possession and control" of facts or "where the belief is based on factual information that makes the inference of culpability plausible." *Id.* at 928. But that principle does not relieve a pleader of stating a plausible claim. *See Blantz v. Cal. Dep't of Corrs. and Rehab., Div. of Corr. Health Care*, 727 F.3d 917, 926-27 (9th Cir. 2013).

The FAC does not plausibly allege that the Corporate Defendants are Mr. Combs's alter egos. Plaintiff stitches together a handful of conclusory allegations to blanketly state that the elements are satisfied. (Opp. at 14-15.) That is insufficient under Rule 8 or the requirements of alter-ego liability. (Moving Br. at 16-20.) Nor does *Nash v. Combs*, 2026 WL 1484285 (C.D. Cal. May 26, 2026) establish alter-ego liability merely because that case survived a motion to dismiss. (Opp. at 15.) Indeed, *Nash* recognized that alter-ego analysis "relies on the unique circumstances of each case." *Nash*, 2026 WL 1484285, at *11. Alter-ego liability rises or falls on the allegations.

The alter-ego allegations are insufficient here because they are nothing more than a canned recitation of black letter elements for liability, instead of factually specific allegations unique to this case.

3. *The Corporate Defendants Are Not Directly Liable to Plaintiff*

Plaintiff argues that the Corporate Defendants are directly liable to him because they had constructive knowledge of the alleged wrongdoing. (Opp. at 12-14.) But that addresses only the TVPRA claim, as Plaintiff concedes direct liability is absent as to the other claims. *See Travelers Cas. Ins. Co. of Am.*, 495 F. Supp. 3d at 854. But even so, directly liability cannot be sustained for the TVPRA claim.

Relying exclusively on Paragraph 104 of the FAC, Plaintiff argues that the Corporate Defendants had constructive knowledge of Mr. Combs's alleged wrongdoing because their agents helped facilitate and arrange the sexual trysts. (Opp. at 14.) But even if this conclusory allegation is accepted, facilitating or arranging the encounters does not plausibly establish constructive knowledge.

Knowledge that commercial sex is occurring is not knowledge that force, fraud, or coercion will be used to obtain a sex worker's participation through those means. *See Croft*, 2024 WL 4536309, at *4. The allegation that the Corporate Defendants facilitated sexual encounters does not, without more, plausibly establish that they knew Plaintiff was being trafficked against his will. (Moving Br. at 20-21.)

The FAC also fails to plausibly allege that the Corporate Defendants knowingly benefitted from the alleged trafficking. *See* 18 U.S.C. § 1595(a); *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022). It conclusorily alleges that the Corporate Defendants obtained unspecified, intangible benefits keeping Mr. Combs happy, despite not alleging he was an employee. (FAC ¶ 104.) Such allegations are deficient, but coupled with the Corporate Defendants' ignorance that human trafficking was afoot destroys any plausible claim. *See Ratha*, 35 F.4th at 1180-81 (affirming judgment where only benefit was theoretical and uncertain).

4. *The Corporate Defendants Are Not Vicariously Liable to Plaintiff*

Plaintiff futilely defends his vicarious liability claim on the ground that it is a factual question, which is unresolvable on a motion to dismiss. This dodge is insufficient. Courts routinely dismiss vicarious liability theories at the pleading stage when the complaint fails to allege the necessary elements. *See Claiborne v. Water of Life Cmty. Church*, 2017 WL 9565337, at *6 (C.D. Cal. Aug. 25, 2017); *W.V. v. Whittier Union High Sch. Dist.*, 2016 WL 11520809, at *2-3 (C.D. Cal. Oct. 20, 2016).

Plaintiff has failed to amend his claim by alleging any fact that plausibly alleges that Ms. Ventura or Mr. Combs were employees of either Corporate Defendant, the allegedly improper conduct fell within the scope of employment, that it furthered either company's business, or why such improper conduct was typical of or incidental to either business.

**E. Plaintiff Should Not Be Granted Leave to Amend**

Plaintiff has filed his sixth complaint. The defects identified in the Motion concern essential elements of his claims and have not been corrected, despite repeated opportunities to do so. Another amendment would prolong this litigation, impose further expense to Defendants, and be futile. Leave to amend should be denied.

**<u>CONCLUSION</u>**

Based on all of the foregoing, the Court should grant the Motion, together with such other and further relief as the Court deems just and proper.

Dated: October 7, 2026

SCHONBUCH HALLISSY LLP

*/s/ Jonathan Gottlieb*

________________________________

Michael Schonbuch
Jonathan D. Gottlieb
Attorneys for Defendants Sean Combs, CeOpco, LLC, and Bad Boy Entertainment LLC

**CERTIFICATION OF COMPLIANCE**

The undersigned, counsel of record for Mr. Combs, CeOpco, and BBE certifies that this brief contains 4,044 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 7, 2026

*/s/ Jonathan Gottlieb*

Michael Schonbuch
Jonathan D. Gottlieb