Mélodie C. Han (Bar No. 357207)
Douglas H. Wigdor (*pro hac vice* forthcoming)
Meredith A. Firetog (*pro hac vice* forthcoming)
mhan@wigdorlaw.com
dwigdor@wigdorlaw.com
mfiretog@wigdorlaw.com
**WIGDOR LLP**
85 Fifth Avenue, Floor 5
New York, NY 10003
Tel. (212) 257-6800
Fax. (212) 257-6845

*Counsel for Defendant Casandra Ventura*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

CLAYTON HOWARD,

Plaintiff,

v.

SEAN COMBS, CASANDRA VENTURA, BAD BOY ENTERTAINMENT, L.L.C., CEOPCO, L.L.C.

Defendants.

**Case No. 2:25-cv-6031-AH-DMK**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT CASANDRA VENTURA'S MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDED COMPLAINT**

Hearing Date: October 21, 2026
Time: 1:30 PM
Judge: Hon. Anne Hwang
Courtroom: 9C

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii
PRELIMINARY STATEMENT ..... 2
ARGUMENT ..... 3
I. PLAINTIFF'S OPPOSITION NARROWS THE CASE ..... 3
A. The 5AC Adds Dates and Labels to Facts Already Rejected by the Court ..... 3
B. The Opposition Concedes Most of Ms. Ventura's Motion ..... 3
II. THE THREE "DEFECTS" PLAINTIFF ATTRIBUTES TO MS. VENTURA'S BRIEF DO NOT SAVE THE 5AC ..... 4
A. The December 2016 Allegations Do Not Plead Coercion ..... 4
B. The TVPA Requires a Link Between the Alleged Means and Plaintiff's Participation ..... 5
C. Plaintiff's Prior Pleadings Are Relevant to the 5AC's Plausibility and the Futility of Amendment ..... 6
III. THE REMAINING ALLEGATIONS FAIL TO STATE A CLAIM ..... 6
A. The 5AC Fails To Plead Fraud ..... 6
B. The 5AC Fails to Plead Knowledge of Coercion ..... 7
C. The CTVPA Claim Fails Because Plaintiff Failed to Plead a Timely or Plausible Trafficking Situation ..... 8
D. Count III Is Based On Allegations the Court Already Dismissed ..... 9
E. Count IV Fails to State a Claim Under New York Law ..... 9
IV. DISMISSAL SHOULD BE WITH PREJUDICE ..... 10
CONCLUSION ..... 12

# TABLE OF AUTHORITIES


Cases — Page(s)

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595 (9th Cir. 2014) .......... 6, 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 7

*Croft v. Dolan*, No. 24-6150, 2025 WL 3720844 (9th Cir. Dec. 23, 2025) .......... 5

*Fid. Fin. Corp. v. Fed. Home Loan Bank of S.F.*, 792 F.2d 1432 (9th Cir. 1986) .......... 10

*Jenkins v. Cnty. of Riverside*, 398 F.3d 1093 (9th Cir. 2005) .......... 9

*PAE Government Services, Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007) .......... 6

*Reddy v. Litton Indus., Inc.*, 912 F.2d 291 (9th Cir. 1990) .......... 6, 11

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .......... 7

*United States v. Chang Ru Meng Backman*, 817 F.3d 662 (9th Cir. 2016) .......... 5

*United States v. Hornbuckle*, 784 F.3d 549 (9th Cir. 2015) .......... 5

Statutes

18 U.S.C. § 1591 .......... 4, 5, 7

Cal. Civ. Code § 52.5 .......... 8

Cal. Code Civ. Proc. § 340.16 .......... 2, 3

Cal. Penal Code § 236.1 .......... 7, 8, 11

Cal. Penal Code § 261(a)(2) .......... 9

Cal. Penal Code § 266 .......... 11

Cal. Penal Code § 266h .......... 11

Cal. Penal Code § 266i .......... 11, 12

N.Y. Penal Law § 230.02 .......... 10

N.Y. Penal Law § 230.15 .......... 9

N.Y. Penal Law § 230.34 .......... 9, 10, 12

Rules

Ninth Circuit Rule 36-3(b) .......... 5

## PRELIMINARY STATEMENT

Plaintiff's Opposition (Dkt. No. 166, "Opp.") claims that it "answers every argument" in Ms. Ventura's opening brief (Dkt. No. 163-1, "Br."). Opp. at 2. In reality, the Opposition concedes most of them. Plaintiff concedes that Ms. Ventura used no force against him, abandons all but one of the fraud theories in the Fifth Amended Complaint (Dkt. No. 159, "5AC"), accepts that most of his remaining allegations are not trafficking means employed by Ms. Ventura, and does not respond to Ms. Ventura's argument that Cal. Code Civ. Proc. § 340.16 cannot reach the December 2016 Miami encounter.

Plaintiff has thus helpfully narrowed the issues for the Court. Four allegations remain against Ms. Ventura, and none support a plausible claim for relief: (i) the alleged December 2016 confiscation and confinement, which involved a pattern and procedure Plaintiff had accepted since 2009 and confinement Defendant Combs imposed after the agreed act ended; (ii) the alleged nondisclosure of an infection in May 2016, which Ms. Ventura is not alleged to have known about; (iii) the October 2014 encounter, which relies on allegations the Court already dismissed; and (iv) the May 2016 seizure of Plaintiff's identification, which does not amount to a violation of New York law. Plaintiff's new § 52.5(c) limitations theory also fails.

Each remaining theory fails for the same reason: Plaintiff advertised his services as a paid male companion, learned at the first encounter in 2009 how the encounters worked, accepted cash at the end of each encounter, and returned for more over the next seven years. The 5AC pleads no facts showing that force, fraud, or coercion by Ms. Ventura caused Plaintiff to do anything he had not already agreed to do for money.

The Opposition identifies three supposed "defects" in Ms. Ventura's brief, Opp. at 6, and each rests on a misreading of the 5AC or of the governing law.

Because this is Plaintiff's sixth complaint and the facts he has now pleaded six times foreclose relief, the Court should dismiss the 5AC as against Ms. Ventura with prejudice.

## ARGUMENT

## I. PLAINTIFF'S OPPOSITION NARROWS THE CASE

### A. The 5AC Adds Dates and Labels to Facts Already Rejected by the Court

The Court dismissed every claim against Ms. Ventura in the Fourth Amended Complaint (Dkt. No. 80, "4AC") because Plaintiff did "not plausibly allege any specific, relevant incident as to Ms. Ventura that exceeded the scope of his consent that occurred within the limitations period." Dkt. No. 154 ("Order") at 14. The 5AC drops the four counts dismissed with prejudice, limits Count IV to New York conduct on or after January 19, 2016, assigns approximate dates to encounters in May, September, and December 2016, and invokes the revival provision of Cal. Code Civ. Proc. § 340.16(e). 5AC ¶¶ 71-81, 108, 111.

Despite these changes, the underlying facts remain the same. The 4AC already alleged the surrender of Plaintiff's belongings, the 2016 infection, and Plaintiff's requests that Ms. Ventura "wait" in October 2014, and the Court found those allegations insufficient. 4AC ¶¶ 57, 191, 219–20; Order at 13 n.15, 14-16. The 5AC merely adds dates, adjectives, and legal conclusions to those facts, but it does not add facts showing that Ms. Ventura obtained Plaintiff's participation through force, fraud, or coercion.

### B. The Opposition Concedes Most of Ms. Ventura's Motion

The Opposition narrows the case in eight respects: Plaintiff (i) concedes that Ms. Ventura did not use force against him, Opp. at 5, 13; (ii) withdraws, as fraudulent means, the alleged concealment of Defendants' identities and marital status, the "new employee" representation, the participation of other men, Ms. Ventura's explanation of her eyebrow injury, and the recording of encounters, *id.* at 5, 14; (iii) withdraws Paragraph 70's allegation that Ms. Ventura knew of "recurring genitourinary infections," the only factual allegation of her knowledge of any infection before May 2016, *id.* at 9; (iv) concedes that the March 2016 Florida trip did not involve illicit means by Ms. Ventura, that Ms. Ventura's statement that he had "earned" a reward is

not a threat of serious harm, *id.* at 19, and that the 2011 drugging allegations and the "Pink Molly" incident are not timely under Count II, *id.* at 5, 19; (v) concedes that the 5AC pleads only perpetrator liability, not beneficiary liability, against Ms. Ventura, *id.* at 21; (vi) declines to brief whether California's sexual assault statute reaches the December 2016 Miami encounter, *id.* at 22; (vii) concedes that the September 2016 meeting did not involve any sex act, *id.* at 5; and (viii) abandons the "profits from prostitution" theory of Count IV, *id.* at 26.

## II. THE THREE "DEFECTS" PLAINTIFF ATTRIBUTES TO MS. VENTURA'S BRIEF DO NOT SAVE THE 5AC

### A. The December 2016 Allegations Do Not Plead Coercion

Plaintiff contends that Ms. Ventura misstated the timeline of the December 2016 Miami encounter because Paragraphs 76, 77, and 80 allege that Defendants took his belongings before the sex act. Opp. at 6, 15-16. But Ms. Ventura's brief addressed that allegation, Br. at 11, and the paragraphs Plaintiff quotes confirm her point in two ways.

*First*, Plaintiff agreed to the practice the 5AC describes. At the first encounter in 2009, Ms. Ventura "instructed" Plaintiff to surrender his clothing, identification, and telephone, and Plaintiff returned to the same arrangement, for cash, for seven years. 5AC ¶¶ 8, 22, 44. The relevant question is whether Plaintiff alleges a "specific, relevant incident as to Ms. Ventura that exceeded the scope of his consent." Order at 14. A procedure that Plaintiff accepted at every paid encounter since 2009 falls within that consent, and Plaintiff agreed to attend the Miami encounter before anyone took anything from him. 5AC ¶ 81. Ms. Ventura therefore could not have known that the procedure would be "used to cause" Plaintiff to engage in a commercial sex act. 18 U.S.C. § 1591(a)(1).

*Second*, the alleged confinement occurred after the act and at Defendant Combs's direction. According to the 5AC, Plaintiff "withdrew as instructed" after intercourse, and Combs then kicked Ms. Ventura and "ordered [Plaintiff] into the adjoining room." 5AC ¶¶ 78-79. The 5AC thus attributes the confinement to Combs and pleads that Ms.

Ventura was herself the target of his violence at that moment.[1] A confinement imposed by Combs after Plaintiff completed the agreed act cannot be a means that Ms. Ventura used to cause that act.

Plaintiff also argues that the Order "settled" the legal theory in his favor. Opp. at 16-17. The Court tied its physical restraint discussion to "Combs's knowledge that means of coercion would be used," and it held that the same allegations fell short as to Ms. Ventura. Order at 13-14.

### B. The TVPA Requires a Link Between the Alleged Means and <u>Plaintiff's Participation</u>

Plaintiff faults Ms. Ventura for citing *Croft v. Dolan*, No. 24-6150, 2025 WL 3720844 (9th Cir. Dec. 23, 2025), an unpublished disposition. Opp. at 6. *Croft* is citable under Ninth Circuit Rule 36-3(b), but Ms. Ventura's argument is based on the statute itself, which requires that the defendant know, or recklessly disregard, that prohibited means "*will be used to cause* the person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1) (emphasis added). Plaintiff must therefore plead facts showing that the defendant knew prohibited means would be the instrument of his participation.

Plaintiff's authorities address a different question. *United States v. Hornbuckle*, 784 F.3d 549, 553-54 (9th Cir. 2015), held at sentencing that a completed sex act is not itself an element of a § 1591 conviction, and *United States v. Chang Ru Meng Backman*, 817 F.3d 662, 665 (9th Cir. 2016), relied on the same principle to reject a but-for causation jury instruction. Neither decision dispenses with the statute's knowledge requirement, which for an adult requires that prohibited means will be used to cause a commercial sex act. *See Hornbuckle*, 784 F.3d at 554 (offense complete when the

[1] Plaintiff's allegation that Ms. Ventura took his belongings in December 2016, 5AC ¶ 107, is conclusory and implausible in light of the 5AC's own factual allegations that Defendant Combs confiscated Ms. Ventura's own belongings as punishment, *id.* ¶ 77, and that Combs's security personnel confiscated participants' belongings "on Mr. Combs's direction," *id.* ¶ 37. The Opposition's offer to plead the point "from personal knowledge" in a sixth amended complaint, Opp. at 27-28, confirms that the 5AC does not.

defendant "acted with the requisite knowledge"). The 5AC pleads the opposite: that Ms. Ventura "made promises of money/gifts if the plaintiff was available to see her," Plaintiff accepted, and he was paid at the end of every encounter. 5AC ¶¶ 4, 44, 62, 90. Based on Plaintiff's own allegations, it was money that caused his participation, not coercion or fraud.

### C. Plaintiff's Prior Pleadings Are Relevant to the 5AC's Plausibility and the Futility of Amendment

Plaintiff argues, citing *PAE Government Services, Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007), that the Court may not rely on his prior pleadings. Opp. at 6-8. Ms. Ventura does not ask the Court to strike the 5AC. As the Court has recognized, contradictory pleadings are not "a basis to dismiss a complaint on their own," but "allegations in prior pleadings are judicial admissions." Order at 20 n.25. Plaintiff's prior allegations therefore bear on plausibility. They also bear on futility because a party may not amend its pleadings to directly contradict an earlier assertion. *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990).

## III. THE REMAINING ALLEGATIONS FAIL TO STATE A CLAIM

### A. The 5AC Fails To Plead Fraud

Plaintiff's only remaining fraud theory is that Ms. Ventura concealed a chlamydia infection at a May 2016 New York encounter. 5AC ¶¶ 71, 96, 102. Fraudulent concealment requires knowledge of the concealed fact, and the 5AC does not plead facts showing that Ms. Ventura knew she had an infection in May 2016.

Having withdrawn Paragraph 70, Opp. at 9, Plaintiff bases Ms. Ventura's knowledge on two paragraphs. Paragraph 72 alleges that Plaintiff tested positive in June 2016, which describes Plaintiff's own diagnosis and does not reveal anything about what Ms. Ventura knew in May. Paragraph 74 alleges that, four months after the encounter, Ms. Ventura said she had experienced "a chlamydia scare" "some weeks earlier," that she "had intended to contact Plaintiff about it," and that she "had assumed

he was unaffected because he had not contacted her." Those statements place the "scare" in the summer of 2016, and the only plausible inference from them is that Ms. Ventura learned of a possible infection *after* the May encounter and then intended to warn Plaintiff.

Plaintiff's prior pleading confirms that reading. The 4AC alleged that when Plaintiff next saw Ms. Ventura, "she revealed she had contracted it and advised him to get checked." 4AC ¶ 220. The 5AC's new assertion that Ms. Ventura "consciously elected not to inform him," 5AC ¶ 74, is a conclusion that contradicts both the facts the 5AC pleads and Plaintiff's earlier account. Rejecting that conclusion does not require weighing competing inferences. *Contrast* Opp. at 15 (citing *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011)). The inference Plaintiff seeks to draw is implausible as a result of the allegations in his complaints.

Finally, even if Plaintiff plausibly pleaded Ms. Ventura's knowledge of an infection, her failure to disclose it to Plaintiff could not have been what *caused* Plaintiff's participation. The 5AC alleges that unprotected sex was the "established practice" of the encounters, that condoms were stocked but not used, and that Plaintiff had unprotected sex with Ms. Ventura throughout the period he alleges. 5AC ¶¶ 68-69. Plaintiff attended the May 2016 encounter, as he attended every other encounter, because he was offered money. *Id.* ¶¶ 44, 90.

**B. <u>The 5AC Fails to Plead Knowledge of Coercion</u>**

Even if Plaintiff had pleaded a prohibited means, the trafficking claims would fail because the 5AC does not plausibly allege that Ms. Ventura knew such means would be used against him. 18 U.S.C. § 1591(a)(1); Cal. Penal Code § 236.1(a). When a complaint's own allegations suggest an "obvious alternative explanation," the plaintiff must plead facts that tend to exclude it. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009).

The 5AC supplies an obvious alternative explanation. It attributes control over the encounters to Defendant Combs: he decided when encounters ended, his security personnel confiscated participants' belongings "on Mr. Combs's direction," and he took

Ms. Ventura's own belongings as punishment. 5AC ¶¶ 23–24, 37, 77. It also alleges that Combs beat Ms. Ventura repeatedly, including during the December 2016 encounter, and that Combs ordered Plaintiff into the adjoining room. *Id.* ¶¶ 46, 54, 79. Based on these allegations, Ms. Ventura was a participant subject to Combs's control, and the 5AC contains no facts showing that she knew anyone would use coercion to cause Plaintiff's participation.

The conduct Plaintiff attributes to Ms. Ventura—finding him online in 2009, texting him in October 2012, and handing participants cash that Combs provided—shows that she arranged paid encounters. *Id.* ¶¶ 14, 40-42, 44. It does not show that she knew coercion would be used against Plaintiff in May or December 2016.

### C. <u>The CTVPA Claim Fails Because Plaintiff Failed to Plead a Timely or Plausible Trafficking Situation</u>

The CTVPA provides a remedy only to "[a] victim of human trafficking, as defined in Section 236.1 of the Penal Code." Cal. Civ. Code § 52.5(a). Section 236.1 requires a deprivation or violation of personal liberty, which includes a "substantial and sustained restriction of another's liberty," undertaken with the intent to obtain forced labor or services. Cal. Penal Code § 236.1(a), (h)(3). Instead, the 5AC describes a paid commercial arrangement that Plaintiff entered voluntarily and left at will. Plaintiff advertised his services, responded to Ms. Ventura's offers, traveled to the encounters, accepted payment at the end of each one, went home, and kept returning for more. 5AC ¶¶ 8, 40, 44, 62, 90. Those allegations describe a client relationship, not a trafficking situation.

Plaintiff's new limitations theory fails. Plaintiff argues that § 52.5(c) runs for seven years from the date he was "freed from the trafficking situation," and that he was freed in 2019 because his "engagements with Defendants concluded in 2019." Opp. at 11-12. The date on which a transactional relationship ended differs from the date on which a person was "freed from the trafficking situation." The 5AC alleges that Plaintiff left each encounter with his payment and went home, and it does not plead any

specific encounter with Ms. Ventura after December 2016. 5AC ¶¶ 44, 58, 76–81. Even if the December 2016 confinement created a trafficking situation, Plaintiff was freed from it by December 18, 2016. The seven-year period therefore expired in December 2023, long before Plaintiff filed this action on June 30, 2025.

### D. Count III Is Based On Allegations the Court Already Dismissed

Plaintiff now asserts that Count III "rests principally on the October 2014 Beverly Hills encounter." Opp. at 22. Plaintiff does not respond to Ms. Ventura's argument that § 340.16 does not reach the December 2016 Miami encounter, Opp. at 22, and has therefore waived any response to Defendant's arguments set forth in her Motion. *See* Order at 16 n.21, applying *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1096 n.4 (9th Cir. 2005); Br. at 14-16. Plaintiff also asserts that the 5AC pleads "physical non-consent contemporaneous with the act," an allegation that the 4AC "did not contain." Opp. at 24. The 4AC contained that allegation, 4AC ¶¶ 191, 451, 453, and the Court quoted it when it dismissed the claim. Order at 15-16. The same 4AC paragraphs alleged that Ms. Ventura "seduced him into compliance" through "foreplay," and that Plaintiff "became angry" only after he "discovered Ms. Ventura was menstruating heavily." 4AC ¶¶ 188-89, 195-97. The 5AC describes the same sequence, placing Plaintiff's objection after intercourse. 5AC ¶¶ 67, 108.

Cal. Penal Code § 261(a)(2) requires an act of intercourse "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." Plaintiff's request to "wait" during foreplay, at a paid encounter, followed by Combs's payment of "substantial bills," fails to plead that element. 4AC ¶¶ 191, 200.

### E. Count IV Fails to State a Claim Under New York Law

Count IV requires that Ms. Ventura "advance[]" prostitution, N.Y. Penal Law § 230.34, and a person advances prostitution only when "acting other than as a person in prostitution or as a patron thereof," *id.* § 230.15(1). Taking the allegations in the 5AC as true, Plaintiff alleges that Ms. Ventura acted as a patron. New York law defines

patronizing to include soliciting or requesting "another person to engage in sexual conduct with him or her in return for a fee." *Id.* § 230.02(1)(c). Ms. Ventura contacted Plaintiff, "made promises of money/gifts if the plaintiff was available to see her," and engaged in sexual conduct with him in exchange for payment. 5AC ¶¶ 41, 44, 90.

The "operational" conduct Plaintiff cites falls outside Count IV, which reaches only conduct "in the State of New York on or after January 19, 2016." 5AC ¶ 111. Ms. Ventura's use of Craigslist and Backpage dates back to 2009, her messages about room aliases date to October 2012, and Paragraph 64 alleges only that encounters occurred in four cities. *Id.* ¶¶ 14, 40-42, 64; Opp. at 25.

Plaintiff's theory under N.Y. Penal Law § 230.34(3), which reaches a person who advances prostitution by confiscating another's government identification "with intent to impair said person's freedom of movement," fails as well. Here, the 5AC alleges that "Defendants seized" Plaintiff's identification in May 2016 "consistent with Defendants' established practice," and it recites the intent element without supporting facts. 5AC ¶¶ 71, 112; *see supra* § II.A. Those allegations do not plausibly plead that Ms. Ventura intended to impair Plaintiff's freedom of movement.

The N.Y. Penal Law § 230.34(2) theory (requiring "material false statements, misstatements, or omissions to induce or maintain" a person in prostitution activity) fails for the reasons stated *supra* in § III.A.

## IV. <u>DISMISSAL SHOULD BE WITH PREJUDICE</u>

This is Plaintiff's sixth complaint, and the Court's "discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint." *Fid. Fin. Corp. v. Fed. Home Loan Bank of S.F.*, 792 F.2d 1432, 1438 (9th Cir. 1986). Plaintiff argues that the 5AC is the first pleading directed at the Order. Opp. at 27. The Order identified exactly what Plaintiff needed to plead, Order at 14 & n.18, and the 5AC still describes paid encounters that Plaintiff chose to attend on terms he had accepted since 2009.

Plaintiff's proposed Sixth Amended Complaint (Dkt. No. 166-2, Ex. 4 ("P6AC"))

confirms that further amendment would be futile.[2] *First*, the P6AC adds that Plaintiff told Ms. Ventura "to stop" during the October 2014 encounter. P6AC ¶¶ 67, 108. Plaintiff has described that encounter in two prior pleadings without any refusal, and the 4AC alleged that he objected only after he discovered that Ms. Ventura was menstruating. 4AC ¶¶ 188–97; 5AC ¶ 67. A party may not amend its pleadings to directly contradict an earlier assertion made in the same proceeding. *Airs Aromatics*, 744 F.3d at 600; *Reddy*, 912 F.2d at 296–97.

*Second*, the P6AC's new detail about the December 2016 encounter confirms that Plaintiff agreed to the surrender procedure. Plaintiff now alleges that he had his own room connecting to Defendants' suite, waited there, and surrendered his belongings upon entering the suite, as he had at "several venues." P6AC ¶¶ 22A, 76A, 77. Those allegations describe the entry procedure of a paid encounter, and they indicate that the "adjoining room" in which Plaintiff claims he was confined was his own hotel room. *Id.* ¶¶ 76A, 79-80.

*Third*, the P6AC modifies Count I with Cal. Penal Code § 236.1(b) and alleges that Ms. Ventura intended to effect violations of §§ 266, 266h, and 266i. P6AC ¶ 96. None of those statutes applies. Section 266 applies only to the enticement of "a person under 18 years of age." Cal. Penal Code § 266. Section 266h requires that the defendant derive support from another person's prostitution, but the P6AC alleges that Ms. Ventura handed Plaintiff cash that Defendant Combs provided. *Id.* § 266h(a); P6AC ¶ 44. Section 266i requires that the defendant procure another person for prostitution (also known as "pandering"), but the P6AC alleges that Ms. Ventura engaged Plaintiff

---

[2] The P6AC departs from the Opposition in several respects. The Opposition promised to plead "Ms. Ventura's personal confiscation of Plaintiff's belongings in December 2016, pleaded from personal knowledge," Opp. at 27-28, but the P6AC adds no such allegation, and its December 2016 paragraphs still attribute that taking to "Defendants," P6AC ¶¶ 76, 76A. The Opposition promised "additional prohibited means under Cal. Penal Code § 236.1," Opp. at 27, but the P6AC leaves the alleged means unchanged, P6AC ¶ 96. And the Opposition offers Exhibit C as "a corroborating exhibit" for the December 2016 encounter, Opp. at 17, and the 5AC described the photographs as depicting the "hotel suite," 5AC ¶ 76, but the P6AC now alleges that "neither depicts Defendants' suite," P6AC ¶ 76A.

for sexual conduct with herself. *Id.* § 266i(a); P6AC ¶¶ 41, 90. The new theory also relies on the same 2019 end date, which does not render Count I timely as to Ms. Ventura for the reasons stated above. *See supra* § III.C.

*Finally*, the P6AC's beneficiary theory rests on Ms. Ventura's receipt of the "commercial sexual services" provided at the encounters, which describes, at most, a participant in the encounters rather than a beneficiary of a venture, and its § 230.34(5) theory rests on "the same established practice" of confiscation. P6AC ¶¶ 102A, 112A. Neither theory adds a fact, and no amendment can change the facts Plaintiff has now pleaded six times.

## CONCLUSION

For the foregoing reasons and those stated in Ms. Ventura's moving brief, Ms. Ventura respectfully requests that the Court dismiss the Fifth Amended Complaint as against her in its entirety, with prejudice, and grant such other relief as the Court deems just and proper.

Dated: October 7, 2026

Respectfully submitted,

By: ______________________

Mélodie C. Han
Douglas Wigdor (*pro hac vice* forthcoming)
Meredith Firetog (*pro hac vice* forthcoming)
WIGDOR LLP
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Telephone: (212) 257-6800
mhan@wigdorlaw.com
dwigdor@wigdorlaw.com
mfiretog@wigdorlaw.com

*Counsel for Casandra Ventura*

## CERTIFICATION OF COMPLIANCE

The undersigned, counsel of record for Ms. Ventura certifies that this brief contains 3699 words, which complies within the word limit of L.R. 11-6.1.

Dated: October 7, 2026

Respectfully submitted,

By: ______________________
Mélodie C. Han