Michael Schonbuch (Bar No. 150884)
schonbuch@schonbuchhallissy.com
Jonathan D. Gottlieb (Bar No. 339650)
gottlieb@schonbuchhallissy.com
SCHONBUCH HALLISSY LLP
11999 San Vicente Boulevard, Suite 300
Los Angeles, CA 90049
Tel.: (310) 556-7900

*Attorneys for Defendants Sean Combs, CeOpco, LLC, and Bad Boy Entertainment LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

CLAYTON HOWARD,

Plaintiff,

v.

SEAN COMBS, CASANDRA VENTURA, BAD BOY ENTERTAINMENT, LLC, and CEOPCO, LLC,

Defendants.

Case No. 2:25-cv-6031-AH-JPRx

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO FILE REVISED SIXTH AMENDED COMPLAINT**

Hearing Date: October 21, 2026
Time: 1:30 p.m.
Judge: Hon. Anne Hwang
Courtroom: 9C

Defendants respectfully submit this Memorandum of Points and Authorities in opposition to Plaintiff's *Ex Parte* Application for Leave to File a Revised Sixth Amended Complaint (the "Second Application").[1]

## INTRODUCTION

Whether a litigant is *pro se* or not, the court procedures must be faithfully followed and not abused. Plaintiff violates both mandates. And the cost is an out-of-control docket and skyrocketing legal costs coupled with an unnecessary diversion of judicial resources. Enough already!

Plaintiff has manufactured yet another non-emergency. With the *Ex Parte* Application for a Sur-Reply to the Motion (the "First Application") fully briefed and set for hearing in days, Plaintiff filed another application Thursday night before the dust had settled on the FAC (the *sixth iteration* of the pleading). He now files an *ex parte* application for an order substituting the FAC with a 73-page Revised *Sixth Amended Complaint* even though he is simultaneously trying to sustain the FAC, which he has not formally abandoned.

Whether Plaintiff is behaving in this unrestrained manner on purpose or out of sheer ignorance is irrelevant because, either way, it subverts the customary and permitted progression of a lawsuit, transforming it into a circus of simultaneous activities in the Court's ring, which demands papers and decisions on a compressed timetable.

Plaintiff must be restricted from engaging in such freewheeling conduct again and be required to obtain court permission before filing any future applications. This Second Application fails for at least two reasons:

---

[1] Capitalized terms have the same meaning as in Defendants' moving brief, dated August 24, 2026. (Dkt. No. 162-1 ("Moving Brief" or "Moving Br.").) "Opposition" or "Opp." refers to the opposition brief, dated September 4, 2026 (Dkt. No. 165). "Reply" refers to the reply brief, dated October 7, 2026 (Dkt. No. 169). Unless otherwise stated, internal quotations and citations are omitted and emphasis added.

First, no irreparable prejudice or injury will be suffered by Plaintiff if the Court refuses, as it should, to consider this *seventh pleading* before the hearing on the Motion. He has already requested leave to amend the FAC in the Opposition, and the Court can address that request when deciding the Motion.

Second, any urgency—which none exists—is entirely of Plaintiff's making or is made up. Plaintiff knew the substance and nature of Defendants' challenges to his legal claims long ago and certainly before filing the Opposition and latest revised proposed pleading. Had there been an emergency requiring *ex parte* relief, it should have been *to withdraw with prejudice the ex parte application for a sur-reply* to save the Court the substantial time and effort of considering those papers and allowing it to decide the Motion based on the Opposition, which included a request for leave to amend if the Motion was dispositive.

The Second Application should be summarily denied.

## **BACKGROUND**

Defendants moved to dismiss the FAC on four grounds: (1) the presumption against extraterritoriality bars all or some of the state-law claims; (2) the coercion or involuntary servitude claims (supporting sex trafficking) are implausible; (3) the sexual assault claim fails based on the absence of sexual intercourse; and (4) the FAC lacks any basis to impose vicarious liability on either Corporate Defendant. (Dkt. No. 162.) Plaintiff opposed the Motion and sought leave to amend, if the Motion succeeded. (Dkt. No. 165 at 13, 15-16.) He also attached to the Opposition a proposed Sixth Amended Complaint (the "SAC"). (Dkt. No. 165-2, Ex. 1.) Briefing concluded on October 7, 2026. (Dkt. Nos. 165, 169.)

A week before the Wednesday, October 21, 2026 hearing on the Motion (the "10/21 Hearing"), Plaintiff sought the *ex parte* right to file a sur-reply, leaving Defendants 48 hours to respond. *See* Civil Standing Order § G.10. The next day, Plaintiff filed the Second Application to replace the SAC altogether with a new revised pleading with numerous new allegations (the "Revised SAC"). (Dkt. No. 176.)

The logic or legitimacy of this stunt is not recognizable, but one certain consequence of it was to require Defendants to work over the weekend to respond to the Second Application because of the compressed response time for such applications. (*Id.*) This ambush-style litigation tactic, which is disguised as "emergency" relief, fools no one and should not continue without behavior-altering consequences to Plaintiff. *See* Civil Standing Order § G.10.

## LEGAL STANDARD

*Ex parte* applications "are inherently unfair, and [] pose a threat to the administration of justice." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). As the Court in *Mission Power* noted:

> [*Ex parte* applications] debilitate the adversary system. Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced. Often, the moving party's papers reflect days, even weeks, of investigation and preparation; *the opposing party has perhaps a day or two. This is due primarily to gamesmanship.* The opposing party is usually told by telephone when the moving party has completed all preparation of the papers and has a messenger on the way to court with them. *The goal often appears to be to surprise opposing counsel or at least to force him or her to drop all other work to respond on short notice.*

*Id*. These risks are even more pronounced when the movants are *pro se* because they are not bound by the same ethical requirements as attorneys. *See id.*

Owing to these concerns, "[c]ircumstances justifying the issuance of an *ex parte* order are extremely limited." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). The movant must show (1) irreparable prejudice "if the underlying motion is heard according to regular noticed motion procedures" and (2) the movant is not at fault "for creating the crisis that requires *ex parte* relief," or at least "the crisis occurred as a result of excusable neglect." *Mission Power*, 883 F. Supp. at 492.

**ARGUMENT**

Courts in this district have repeatedly rejected attempts to obtain leave to amend through *ex parte* applications. *See Silva v. Cal. Highway Patrol*, 2025 WL 873013, at *2 (C.D. Cal. Jan. 22, 2025) ("an *ex parte* application is not the appropriate means to seek" an amendment); *Alton v. United Am. Indian Involvement*, 2026 WL 1708535, at *1-2 (C.D. Cal. June 5, 2026) (denying *ex parte* application to amend); *Rayo Int'l Trading Co. v. JWO Corp.*, 2024 WL 5372400, at *3-4 (C.D. Cal. Dec. 12, 2024).

The Second Application should be denied. Neither irreparable prejudice nor lack of fault on Plaintiff's part justifies any extraordinary relief.

**A. Plaintiff Will Not Be Irreparably Prejudiced.**

Plaintiff contends that he will suffer irreparable prejudice unless permitted to substitute the Revised SAC for the SAC before the 10/21 Hearing. (Dkt. No. 176-2 at 3.) But nothing requires Plaintiff to submit a proposed amended complaint during the briefing on the current Motion to preserve his opportunity to amend. In fact, Plaintiff already requested such relief in the Opposition. (Dkt. No. 165 at 13, 15-16.) Denying the Application would not extinguish that request or prevent the Court from considering an amendment request later.

Plaintiff nowhere explains why ordinary motion practice is inadequate. Plaintiff has already amended five times, not counting his original pleading. If Plaintiff wishes to pursue another amendment, then it must be sought through a regularly noticed motion and an adjournment of the 10/21 Hearing. That procedure affords all parties an opportunity to address the proposed amendments and avails the Court of a full record. *See Mission Power*, 883 F. Supp. at 491 (explaining that adversary system is intended to provide courts with "the best possible presentation of the merits and demerits of the case on each side").

Plaintiff identifies no reason why the customary procedures should not apply or would cause him irreparable harm. His indefensible decision to submit yet another proposed pleading to the Court ahead of the 10/21 Hearing is vexatious and not an

emergency under any measure. *See Alton*, 2026 WL 1708535, at *2 (denying *ex parte* request for leave to amend where applicant failed to establish grounds for emergency relief).

Here, prejudice runs deep against Defendants. Plaintiff claims the Revised SAC is not prejudicial because it "narrows what Defendants must defend." (Dkt. No. 176-2 at 4.) But Plaintiff already withdrew his sexual assault claim. And to the extent the new revised proposed complaint limits the New York trafficking claim to Mr. Combs, it ignores that Plaintiff never possessed any claim against the Corporate Defendants. (Moving Br. at 20-22; Reply at 11-12.) Those purported concessions are meaningless and not emergent.

Further, Defendants have devoted substantial time and money briefing a motion challenging the FAC, then the First Application, only for Plaintiff to next demand the right to amend the FAC before the 10/21 Hearing. Permitting Plaintiff entitlement to repeatedly revise his allegations at the eleventh hour undermines briefing and customary scheduling, multiplies litigation costs, and rewards procedural maneuvering that *ex parte* practice is actually intended to bar.

Plaintiff is plainly wrong that the Second Application is inapplicable to the Motion. By submitting the Revised SAC, he tips his hand that the current pleading is deficient and that it needs more bolstering or falsehoods to survive. In other words, the Second Application is a disguised sur-reply of its own, which supplements the Opposition and the proposed Sur-Reply, after Plaintiff benefits from knowing the arguments in the Reply and the opposition to the First Application. This is yet another attempt to have the last word!

Courts have long disfavored efforts to circumvent ordinary motion practice and this behavior should not be countenanced by the Court. *See Sims v. Paramount Gold & Silver Corp.*, 2010 WL 5367483, at *8 (D. Ariz. Dec. 21, 2010) (collecting cases); *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001) ("Surreplies . . . are highly

*disfavored* … [and] usually a strategic effort . . . *to have the last word*"). The Revised SAC has no bearing on the FAC, which will be decided on the existing record.

Leave to amend may be denied where amendment would be futile, cause undue prejudice or delay, reflect bad faith, or follow repeated failures to cure pleading deficiencies. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 & n.3 (9th Cir. 1987). Plaintiff has been afforded numerous opportunities to amend. (Dkt. No. 154 at 10 n.9.) This current application satisfies all the reasons for denying another amendment: futility, undue prejudice, delay, bad faith, and multiple prior failed amendments. The Court's discretion to deny further amendment is "particularly broad" in such circumstances and dictates that another amendment be denied here. *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

This *seventh try* at stating plausible claims for relief is not based on any "new" facts that were not previously available to Plaintiff. *See Chodos*, 292 F.3d at 1003 (affirming denial of leave where plaintiff possessed the purported new facts before filing earlier amendments); *Cordes v. Boulder Brands USA, Inc.*, 2019 WL 1002513, at *4-5 (C.D. Cal. Jan. 30, 2019) (denying leave where purported new facts could have been discovered before earlier complaints filed).

Defendants have already expended substantial time and money challenging claims that Plaintiff cannot possibly plausibly plead. He is a prostitute who was paid for sex acts he agreed to perform, on multiple occasions, under conditions he was accustomed to. He met Ms. Ventura when and where she arranged. He took off his clothes to engage in sexual acts (which presumably could not be performed with a phone or identification in his hands). And he willingly engaged in sex acts with Ms. Ventura, as he was requested or that he pursued without prompting, to satisfy her or purportedly Mr. Combs. Plaintiff could have said no to performing as he did, but he did not because he entered into a contract to perform sex acts in exchange for money. It is that simple and uncomplicated. No civil claim exists against Defendants.

Neither Defendants nor the Court should be required to endure another round of motion practice because Plaintiff wants to repackage lies he could have asserted long ago. *See Cordes*, 2019 WL 1002513, at *4-5 (denying further leave to amend, in part, where the defendant was already "forced to expend resources moving to dismiss an [earlier] amended complaint that suffered from the same defects as the original."). Plaintiff should not be humored at Defendants' expense.

**B. Plaintiff Contrived an Emergency.**

Plaintiff devotes two sentences to explaining why he waited until the eve of the 10/21 Hearing to move to amend his already five-time amended lawsuit. He erroneously argues that the Reply raised new arguments that revealed deficiencies in the SAC. (Dkt. No. 176-2 at 3.) The Opposition to the First Application points out that no new arguments were raised by Defendants and Plaintiff cannot demonstrate otherwise. (Dkt. No. 178 at 4-7.)

The record also defeats any claim of diligence by Plaintiff. Defendants identified the deficiencies in the FAC during the pre-motion meet and confer, which preceded the filing of the Motion. Plaintiff stood fast on the FAC, opposed dismissal of the FAC, and submitted the SAC mid-stream to try and defeat the Motion. Only after Defendants filed the Reply did he try to revise the SAC again. Any urgency—none which exists here—is the product of Plaintiff's choices and not circumstances outside his control. *See Rayo Int'l Trading Co.*, 2024 WL 5372400, at *4 (denying *ex parte* leave to amend following other motion filing).

As this district routinely recognizes, "[*e*]*x parte* applications are not intended to save the day for parties who have failed to present requests when they should have." *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989). The Second Application should be denied.

**<u>CONCLUSION</u>**

The Second Application highlights the desultory and inexplicable manner in which Plaintiff is litigating this lawsuit. In a brief span, Plaintiff has filed three *ex*

*parte* requests. (Dkt. Nos. 173, 175, 176.) This has forced Defendants to divert time, resources, and substantial money to respond to make believe emergencies Plaintiff has concocted out of whole cloth. This is precisely the kind of abuse *Mission Power, supra*, addressed and condemned.

Guardrails must be established and followed here. Plaintiff should be barred from filing another *ex parte* application or, at the very least, any more should first be screened by the Court before Plaintiff is poised to waste Defendants' time and money.

The Court should deny the Second Application, grant the Motion, and once and for all end Plaintiff's implausible claims, money grab, and harassment of Defendants.

Dated: October 19, 2026

SCHONBUCH HALLISSY LLP

________________________________

Michael Schonbuch
Jonathan D. Gottlieb
Attorneys for Defendants Sean Combs, CeOpco, LLC, and Bad Boy Entertainment LLC

**CERTIFICATION OF COMPLIANCE**

The undersigned, counsel of record for Mr. Combs, CeOpco, and BBE, certifies that this brief contains 2,416 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 19, 2026

______________________________
Michael Schonbuch
Jonathan D. Gottlieb